UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

DAMIEN PERRY,

                          Petitioner,

                                                        9:22-CV-1161
v.                                                      (BKS/ML)


D. CHRISTENSEN, Warden,

                          Respondent.

_____

APPEARANCES:                                OF COUNSEL:

DAMIEN PERRY
  *Pro se* Petitioner
Fort Dix Federal Correctional Institution
Post Office Box 2000
Joint Base MDL, New Jersey 08640
(last known address)


OFFICE OF THE UNITED STATES          RANSOM P. REYNOLDS, ESQ.
ATTORNEY FOR THE NORTHERN            Assistant United States Attorney
DISTRICT OF NEW YORK
  Counsel for Respondent
100 South Clinton Street
Syracuse, New York 13261

MIROSLAV LOVRIC, United States Magistrate Judge


## REPORT and RECOMMENDATION

### I.      INTRODUCTION

Currently before the Court in this habeas corpus proceeding filed by the petitioner,

Damien Perry ("Petitioner"), pursuant to 28 U.S.C. § 2241, is a referral to the undersigned for a

report and recommendation from Chief United States District Judge Brenda K. Sannes regarding

the Petition.  (Dkt. No. 1.)  In seeking a writ of habeas corpus, Petitioner argues that (1) he was wrongfully denied credit for 1,462 days of presentence detention (from September 8, 2017, through September 10, 2021), and (2) his rights were violated by the failure to accurately apply First Step Act ("FSA") credits to his sentence.  (Dkt. No. 1 at 2, 6.)

Respondent filed a response, with exhibits, to the Petition.  (Dkt. No. 9.)  Respondent seeks denial of the Petition arguing that (1) the Federal Bureau of Prisons ("BOP") correctly calculated Petitioner's sentence, (2) Petitioner is not entitled to earned time credit under the FSA, and (3) in the alternative, the Petition must be dismissed for failure to exhaust administrative remedies.  (*Id*.)

Petitioner filed a traverse and argued that before filing this motion for habeas corpus, he exhausted all his administrative remedies.  (Dkt. No. 12 at 2.)  In addition, Petitioner argued that he should receive credit for the time that he served awaiting trial and sentencing.  (*Id*. at 3-5.)

On January 21, 2026, the undersigned issued a text order noting that a review of BOP.gov reflects that Petitioner was released from custody as of July 16, 2025.  (Dkt. No. 18.)  The undersigned directed that on or before January 28, 2026, Petitioner and Respondent file status reports indicating whether an action controversy remains in this action and whether the relief sought can no longer be given or is no longer needed.  (*Id*.)  In addition, Respondent was directed to provide an update regarding why Petitioner was released on July 16, 2025, despite a projected release date of December 30, 2029.  (*Id*.)

On January 28, 2026, Respondent filed a status report that included a declaration of Jon McEvoy, which was signed under penalty of perjury.  (*See generally* Dkt. No. 22.)  Mr. McEvoy is employed by BOP as a management analyst.  (Dkt. No. 22, Attach. 1 at ¶ 1.)  Mr. McEvoy declared that Petitioner was released pursuant to an Order of Clemency on July 16, 2025.  (*Id*. at

¶ 7.)  Mr. McEvoy also declared that—although BOP maintains that Petitioner's sentence computation was correctly determined—he ran a hypothetical sentence calculation and if BOP had given Petitioner presentence custody credit from September 8, 2017, through September 10, 2021, Petitioner's release date would have been December 21, 2026.  (*Id*. at ¶ 8.)  Moreover, Mr. McEvoy noted that assuming Petitioner had earned the maximum 12 months of FSA time credit, and BOP applied them toward the release date that included presentence custody credit, then the earliest Petitioner would have been eligible for release was December 21, 2025.  (*Id*. at ¶ 9.)  Mr. McEvoy identified that December 21, 2025, is approximately five months later than Petitioner's release date via clemency, hence, Petitioner began his term of supervision earlier than he would have if he was granted all the relief he sought in the Petition.  (*Id*. at ¶ 10.)

To date, Petitioner has not responded to the undersigned's text order of January 21, 2026.  (*See generally* docket sheet.)

## II.     BACKGROUND

On August 29, 2018, Petitioner was sentenced in 3:16-CR-0205 (VLB) (D. Conn.) to a term of 92-months imprisonment for conspiracy to distribute and to possess with intent to distribute controlled substances ("Connecticut Sentence").  (Dkt. No. 9, Attach. 1 at ¶ 8; Dkt. No. 9, Attach. 4 at 2.)  On September 10, 2021, Petitioner was sentenced in 1:19-CR-0088 (JAW) (D. Me.) to a term of 137-months imprisonment for possession with intent to distribute controlled substances and aiding and abetting, and unlawful use of a communication facility and aiding and abetting ("Maine Sentence").  (Dkt. No. 9, Attach. 1 at ¶ 9; Dkt. No. 9, Attach. 5 at 3.)  The Maine Sentence was to run concurrently with the Connecticut Sentence.  (Dkt. No. 9, Attach. 1 at ¶ 9; Dkt. No. 9, Attach. 5 at 3.)  Petitioner's projected release date was December 30, 2029.  (Dkt. No. 9, Attach. 1 at ¶ 12; Dkt. No. 9, Attach. 7 at 2.)

On March 18, 2022, Petitioner filed a Request for Administrative Remedy, challenging his sentence calculation and seeking the application of prior custody credit. (Dkt. No. 9, Attach. 1 at ¶ 18; Dkt. No. 9, Attach. 11 at 2.) On March 28, 2022, Petitioner's request was denied by the Warden. (Dkt. No. 9, Attach. 1 at ¶ 18; Dkt. No. 9, Attach. 11 at 3.) Petitioner appealed via his Regional Administrative Remedy Appeal on or about April 15, 2022. (Dkt. No. 9, Attach. 1 at ¶ 18; Dkt. No. 9, Attach. 11 at 2.) However, on April 18, 2022, Petitioner's appeal was rejected for not having a legible page. (Dkt. No. 9, Attach. 1 at ¶ 18; Dkt. No. 9, Attach. 10 at 4.) Petitioner was informed that he could resubmit his appeal in proper form within 10 days. (Dkt. No. 9, Attach. 1 at ¶ 18.)

On April 29, 2022, Petitioner refiled his Regional Administrative Remedy Appeal, seeking review of his sentencing computation. (Dkt. No. 9, Attach. 1 at ¶ 18.) On July 11, 2022, Petitioner's appeal was denied when the Regional Director affirmed the sentence computation. (*Id*.; Dkt. No. 9, Attach. 12 at 3.) On August 17, 2022, Petitioner attempted to file a Central Office Administrative Remedy Appeal related to his sentence computation. (Dkt. No. 9, Attach. 1 at ¶ 18; Dkt. No. 9, Attach. 10 at 6.) On August 25, 2022, Petitioner's appeal was rejected for not including a copy of the Institutional Request and Response. (Dkt. No. 9, Attach. 1 at ¶ 18; Dkt. No. 9, Attach. 10 at 6.) Petitioner was advised that he could resubmit his appeal in proper form within 15 days. (Dkt. No. 9, Attach. 1 at ¶ 18; Dkt. No. 9, Attach. 10 at 6.) Petitioner did not resubmit his appeal to the Central Office related to his sentence computation and he did not ever raise the issue of his earned time credit calculation under FSA within the BOP's Administrative Remedy Program. (Dkt. No. 9, Attach. 1 at ¶ 18.)

### III.   LEGAL STANDARDS

#### A.   Legal Standard Governing Habeas Petitions

Habeas corpus relief is available where a prisoner is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  "A § 2241 petition is generally the appropriate vehicle to raise claims arising from a prison official's computation of a prisoner's sentence."  *Clapper v. Langford*, 186 F. Supp. 3d 235, 238 (N.D.N.Y. 2016) (Kahn, J.) (citing *Poindexter v. Nash*, 333 F.3d 372, 377 (2d Cir. 2003)).  Therefore, § 2241 is the proper vehicle for Petitioner's claims.  *See*, *e.g.*, *Lugo v. Hudson*, 13-CV-0753, 2014 WL 11350815, at *4 (N.D.N.Y. June 16, 2014) (Suddaby, J.) (petitioner's claims "challenging the BOP's calculation of his federal sentence . . . [were] properly brought pursuant to section 2241."), *aff'd*, 785 F.3d 852 (2d Cir. 2015).

It is well established that "[t]he Bureau of Prisons, and not the courts, determines when a defendant's sentence starts and whether the defendant should receive credit for any prior time spent in custody."  *United States v. Montez-Gaviria*, 163 F.3d 697, 700-01 (2d Cir. 1998) (citing *United States v. Labeille-Soto*, 163 F.3d 93, 98 (2d Cir. 1998); *Werber v. United States*, 149 F.3d 172, 179 (2d Cir. 1998); *United States v. Pineyro*, 112 F.3d 43, 45 (2d Cir. 1997)); 18 U.S.C. § 3585); *see also Thomas v. Warden FCI Ray Brook*, 18-CV-0430, 2021 WL 4086139, at *4 (N.D.N.Y. June 28, 2021) (Dancks, M.J.) ("Although a prisoner may later seek judicial review, it is the responsibility of the BOP, and not the courts, to determine the commencement of a federal sentence and calculate any credit toward that sentence for time already served."), *report and recommendation adopted*, 2021 WL 4084306 (N.D.N.Y. Sept. 8, 2021) (D'Agostino, J.).  Thus, with respect to a § 2241 petition challenging the computation of credit on a federal sentence, a district court has the power only to review a decision by the BOP, not to make credit

determinations in the first instance.  *Wright v. Hudson*, 12-CV-1638, 2015 WL 5971055, at *1

(N.D.N.Y. Oct. 14, 2015) (Singleton, J.).

      **B.**      **Legal Standard Governing Challenges Pursuant to the First Step Act**

The First Step Act "encourages federal inmates to participate in evidence-based

recidivism reduction programs" and "other productive activities" by "providing time credits to"

incarcerated persons "who successfully" participate in those programs.  *Rivera-Perez v. Stover*,

757 F. Supp. 3d 204, 207 (D. Conn. 2024).  Bureau of Prison staff complete an incarcerated

person's initial risk and needs assessment within 28 days of their arrival at the designated prison.

*Rivera-Perez*, 757 F. Supp. 3d at 207.  The BOP also reassesses incarcerated persons at each

regularly scheduled program review throughout the remainder of the incarcerated person's

confinement.  *Id.*  An incarcerated person "earns either 10 or 15 days of" First Step Act "time

credits for every 30 days of successful participation in" evidence-based recidivism reduction

programs or productive activities.  *Id.* at 208.

      **C.**      **Legal Standard Governing Exhaustion of Administrative Remedies**

A petitioner seeking relief pursuant to 28 U.S.C. § 2241 must exhaust their administrative

remedies.  *See Carmona v. United States Bureau of Prisons*, 243 F.3d 629, 634 (2d Cir. 2001).

"This requires compliance with the BOP's four-step Administrative Remedy Program." *Lallave*

*v. Martinez*, 609 F. Supp. 3d 164, 179 (E.D.N.Y. 2022) (citing 28 C.F.R. § 542.10(a)).

To exhaust the BOP's four-step Administrative Remedy Program a prisoner must

complete the following steps:

> The first step of the prescribed process entails making an effort to obtain
> an early resolution of the matter by raising the issue informally to staff.  In
> the event this avenue does not lead to a successful resolution, the inmate
> next may submit a formal written [Administrative Remedy ("AR")] to the
> warden of the particular facility involved, utilizing a designated BP–9
> form, within twenty days of the relevant event.  If the AR is denied, an

appeal may be taken to the appropriate BOP Regional Director within twenty calendar days of the date of denial. As a fourth and final step, an unfavorable decision from the Regional Director may be appealed to the General Counsel's office (also referred to as the "Central Office" [or "CORC"]) within thirty days of the date on which the Regional Director rejects the inmate's appeal.

*Barber v. Perdue*, 11-CV-0127, 2012 WL 5996342, at *4 (N.D.N.Y. Nov. 9, 2012) (Peebles, M.J.) (internal citations omitted), *report and recommendation adopted*, 2012 WL 5996866 (N.D.N.Y. Nov. 30, 2012) (Mordue, J.).[1] In sum, "[n]o administrative appeal is fully exhausted until the BOP's Central Office reviews it." *Reynolds v. Warden of FCI Ray Brook*, 16-CV-1264, 2019 WL 8064012, at *3 (N.D.N.Y. Aug. 5, 2019) (Dancks, M.J.), *affirmed*, 850 F. App'x 132 (2d Cir. 2021). The burden of demonstrating exhaustion rests with the petitioner. *See Spring v. Schult*, 08-CV-0531, 2009 WL 3232183, at *1 (N.D.N.Y. Oct. 1, 2009) (Kahn, J.).

A federal inmate's failure to exhaust the administrative remedies available to him prior to commencing a Section 2241 action may "only be excused upon a showing of cause and prejudice." *Carmona*, 243 F.3d at 634. To demonstrate legal "cause," a petitioner must establish that "something external to the petitioner, something that cannot be fairly attributed to him," prevented the petitioner from fully exhausting his administrative remedies. *Tineo v. United States*, 977 F. Supp. 245, 253 (S.D.N.Y. 1996) (quoting *Coleman v. Thompson*, 501 U.S. 722, 753 (1991)). Factors that constitute "cause" include "interference by officials that makes compliance with procedural rules impractical." *Hinebaugh v. Wiley*, 137 F. Supp. 2d 69, 75 (N.D.N.Y. 2001) (cleaned up) (Kahn, J.) (quoting *Tineo*, 977 F. Supp. at 253). General and conclusory allegations will not be enough to establish cause; rather, a petitioner must plead

---

[1]    The exhaustion provisions imposed by the Prisoner Litigation Reform Act ("PLRA") do not apply to habeas corpus Petitions. *See Carmona*, 243 F.3d at 634 ("[W]e note that although . . . the P[LRA] . . . contains a statutory administrative exhaustion requirement, . . . the requirements of the [PLRA] do not apply to habeas proceedings.").

specific facts. *See Rosario v. Quay*, 15-CV-0523, 2017 WL 337977, at *3 (D. Conn. Jan. 23, 2017). To establish prejudice, a petitioner must show "actual harm resulting from the alleged [interference]." *Hinebaugh*, 137 F. Supp. 2d at 75.

## IV. ANALYSIS

After carefully considering the matter, I recommend that the Petition be denied as moot.

"Article III, Section 2 of the United States Constitution limits the subject matter of the federal courts to those cases which present a 'case or controversy.'" *Islam v. New York State Bd. of Parole*, 13-CV-0854, 2016 WL 3943668, at *2 (N.D.N.Y. June 2, 2016) (Dancks, M.J.) (citing *Spencer v. Kemna*, 523 U.S. 1, 7 (1998)). Accordingly, "in order for there to be a valid exercise of subject matter jurisdiction, a federal court must have before it an actual controversy at all stages of review, not simply at the time it is filed." *In re Flanagan*, 503 F.3d 171, 178 (2d Cir. 2007). "The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed." *Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983).

Here, because Petitioner was granted clemency and released on July 16, 2025, he has received the relief he requested. (Dkt. No. 22.) Petitioner has not raised any other grounds for habeas relief and does not contend that he is currently being held in custody in violation of the Constitution or any other federal law. (Dkt. Nos. 1, 12.) Accordingly, because the relief sought can no longer be given, no live controversy remains. Thus, I recommend that Petitioner's claim for relief be denied as moot.

In the alternative, I recommend that the Petition be denied and dismissed for the reasons stated in Respondent's memorandum of law. (Dkt. No. 9 at 6-11.) The following is intended to supplement—not supplant—those reasons.

### A.    Calculation of Petitioner's Sentence

In this case, BOP calculated Petitioner's Maine Sentence beginning on September 10, 2021, the date that it was imposed.  (Dkt. No. 9, Attach. 1 at ¶ 10.)  The concurrent Connecticut Sentence and Maine Sentence produced an aggregate sentence of 14 years, 5 months, and 12 days.[2]  (*Id*.; Dkt. No. 9, Attach. 7 at 5.)

Petitioner received presentence credit for (1) December 15, 2016, (2) May 7, 2017, and (3) September 8, 2017, through August 28, 2018 (the day before imposition of his Connecticut Sentence), because this time was not credited to another sentence.  (Dkt. No. 9, Attach. 1 at ¶ 10; Dkt. No. 9, Attach. 7 at 5.)  Thus, Petitioner received prior custody credit of 357 days.  (Dkt. No. 9, Attach. 1 at ¶ 10; Dkt. No. 9, Attach. 7 at 5.)

The expiration full term date is February 18, 2032.  (Dkt. No. 9, Attach. 7 at 5.)  However, based on good time credit earned and good time credit that Petitioner is projected to earn, his projected release date is December 30, 2029.  (*Id*.)

To the extent that Petitioner argues that he should receive credit for August 29, 2018, through September 9, 2021 (approximately 1,107 days), the time that he served on the Connecticut Sentence before the imposition of the Maine Sentence, I reject that argument.

The law is clear that where an individual is serving time on a sentence and is then sentenced on another crime, the time served on the prior sentence cannot be credited toward the new sentence.  *See United States v. Fermin*, 252 F.3d 102, 108 n.10 (2d Cir. 2001) ("The Bureau of Prisons could not credit Fermin for the time he had already served because it was credited

---

[2]    This is calculated by combining (1) the time that Petitioner was incarcerated pursuant to his Connecticut Sentence (from August 29, 2018) before the imposition of his Maine Sentence (on September 10, 2021), which equaled 3 years and 12 days, and (2) the 137-month Maine Sentence.  The total aggregate sentence is 14 years, 5 months, and 12 days.  (Dkt. No. 1, Attach. 1 at 18, 22.)

against another sentence."). Indeed, 18 U.S.C. § 3585(b) "prohibits defendants from receiving 'double credit for [their] detention time.'" *Clapper v. Langford*, 186 F. Supp. 3d 235, 239 (N.D.N.Y. 2016) (Kahn, J.) (quoting *United States v. Wilson*, 503 U.S. 329, 337 (1992)) (collecting cases); *see Sarro v. Billingsley*, 11-CV-9395, 2013 WL 120817, at *4 (S.D.N.Y. Jan. 10, 2013) ("§ 3585(b) does not authorize giving a credit on a federal sentence for any prison time that has already been credited to another sentence, whether state or federal.") (collecting cases).

Moreover, "under 18 U.S.C. § 3585(a), a federal sentence cannot commence prior to the date on which it is imposed." *Lopez v. Terrell*, 654 F.3d 176, 185 (2d Cir. 2011) (citing *United States v. Labeille-Soto*, 163 F.3d 93, 98 (2d Cir. 1998)); *see Greenough v. Hufford*, 12-CV-8836, 2013 WL 4534997, at *1 (S.D.N.Y. Aug. 27, 2013) ("18 U.S.C. § 3585(a) . . . establishes that a federal sentence begins only after that sentence is first pronounced."). Hence, the earliest date that Plaintiff's Maine Sentence could have commenced is September 10, 2021, the date that it was imposed.

As a result, I find that BOP correctly calculated Petitioner's sentence and recommend that his request to double count the time he served from August 29, 2018, until September 9, 2021, be denied.

### B.    Earned Time Credit Pursuant to FSA

The FSA includes a list of 68 statutes, the violation of which renders an inmate ineligible for FSA time credits. *See* 18 U.S.C. § 3632(d)(4)(D). Relevant to this action, 18 U.S.C. § 3632(d)(4)(D) provides, in relevant part:

> Ineligible prisoners. – A prisoner is ineligible to receive time credits under this paragraph if the prisoner is serving a sentence for a conviction under any of the following provisions of law:
>
> ****

10

> (lxvi) Subparagraph (A)(vi) or (B)(vi) of section 401(b)(1) of the Controlled Substances Act (21 U.S.C. 841(b)(1)) or paragraph (1)(F) or (2)(F) of section 1010(b) of the Controlled Substances Import and Export Act (21 U.S.C. 960(b)), relating to manufacturing, distributing, dispensing, or possessing with intent to manufacture, distribute, or dispense, a mixture or substance containing a detectable amount of [fentanyl], or any analogue thereof.

18 U.S.C. § 3632(d)(4)(D)(lxvi).

Here, Petitioner was convicted in the District of Maine under 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(vi). (Dkt. No. 9, Attach. 1 at ¶¶ 13-14; Dkt. No. 9, Attach. 5; Dkt. No. 9, Attach. 7 at 4.) The conduct underlying Petitioner's conviction includes an incident on July 20, 2017, during which Petitioner provided a package of narcotics containing 130.441 grams of fentanyl to three other individuals. (Dkt. No. 9, Attach. 3 at ¶¶ 15, 51A.)

As a result, I find that Petitioner is statutorily disqualified from FSA eligibility pursuant to 18 U.S.C. § 3632(d)(4)(D)(lxvi) and recommend that the Court deny the petition for habeas relief on this basis.

## C.    Exhaustion of Administrative Remedies

In the alternative, I recommend that Petitioner's habeas petition be denied because he failed to exhaust his administrative remedies.

"A prisoner who seeks review of the Bureau of Prisons' denial of his nunc pro tunc designation request must first . . . exhaust his administrative remedies." *Henriquez v. United States*, 12-CV-5590, 2012 WL 6739422, at *3 (S.D.N.Y. July 16, 2012) (citing *inter alia Setser v. United States*, 566 U.S. 231, 244 (2012) (stating that petitioner is free to challenge BOP's time credit determination first "through the Bureau's Administrative Remedy Program . . . [a]nd if that does not work, [through] . . . a writ of habeas corpus.")). In addition, a prisoner seeking review of BOP's failure to accurately apply his FSA credits to his sentence must first exhaust his

11

administrative remedies.  *See Mason v. Alatary*, 23-CV-0193, 2024 WL 3950643, at *13-14 (N.D.N.Y. Aug. 27, 2024) (Kahn, J.).

To the extent that Petitioner argues that he has exhausted his administrative remedies, the exhibits attached to the Petition (Dkt. No. 1), Respondent's Response (Dkt. No. 9), and Petitioner's Traverse (Dkt. No. 12) do not support his assertion.  Petitioner's appeal to the Central Office was rejected on August 25, 2022, for failing to include a copy of the Institutional Request and Response.  (Dkt. No. 9, Attach. 1 at ¶ 18; Dkt. No. 9, Attach. 10 at 6.)  Petitioner did not resubmit this appeal to comply with the exhaustion requirements and does not suggest that he was denied the opportunity to do so.  (Dkt. No. 9, Attach. 1 at ¶ 18; Dkt. No. 1, Attach. 1 at 3.)  Because the administrative record shows that Petitioner did not complete his Central Office Administrative Remedy Appeal, and Petitioner does not argue otherwise, the undersigned finds that he has failed to satisfy the administrative exhaustion requirement.  *See Poindexter v. United States*, 24-CV-1258, 2025 WL 2781320, at *3 (S.D.N.Y. Sept. 30, 2025) (citing *Johansson v. Strada*, 12-CV-5296, 2012 WL 6093534, at *3 (E.D.N.Y. Dec. 7, 2012) (finding that the petitioner failed to exhaust administrative remedies where "the record indicates he did not appeal the Warden's unfavorable decision to the Regional Director, nor did he appeal to the BOP's general counsel"); *Lane v. Zickefoose*, 08-CV-0567, 2008 WL 5467824, at *2 (D. Conn. Dec. 30, 2008) (similar)) (finding that where the record revealed that the petitioner did not appeal the Warden's decision to the Regional Director and the petitioner did not argue otherwise, that he failed to exhaust the administrative exhaustion requirement).  Moreover, Petitioner did not raise the FSA Earned Time Credit issue in any administrative remedy.  (Dkt. No. 9, Attach. 1 at ¶ 17; Dkt. No. 9, Attach. 10 at 3-6.)

Therefore, Petitioner's claims are barred unless his failure to exhaust is excused pursuant to the "cause and prejudice" test. *Mason v. Alatary*, 23-CV-0193, 2024 WL 3950643, at *14 (N.D.N.Y. Aug. 27, 2024) (Kahn, J.); *Green v. Christensen*, 22-CV-1307, 2023 WL 436186, at *5 (N.D.N.Y. July 6, 2023 (Sannes, C.J.) (quoting *Barber*, 2012 WL 5996342, at *5) ("The Second Circuit has held that a petitioner may pursue a request for habeas corpus relief, including pursuant to 28 U.S.C. § 2241, even where he has failed to exhaust administrative remedies prior to filing the action in district court, only upon a showing of cause and prejudice.").

Petitioner alleges that he "expressed [his] concerns verbally in regards to applying [his] ETC credits under the First Step Act" after his counselor at FCI Ray Brook would not "afford [him] with a BP 8 – Informal Resolution Form or with a BP 9 to formally grieve the issue." (Dkt. No. 1 at 7.)  Notwithstanding his allegation that his counselor refused to provide him with a BP-9, Petitioner alleges that he filed a BP-9 Administrative Remedy, which was never responded to.  (Dkt. No. 1, Attach. 1 at 3.)  Petitioner alleges that his BP-9 was not responded to, so he filed a BP-10 Administrative Remedy, which was denied.  (*Id*.)  Petitioner alleges that he then filed a BP-11, which was denied because he failed to include a copy of the BP-9.  (*Id*.)

To the extent that Petitioner's argument is construed as asserting that the exhaustion requirements should be waived because his counselor at FCI Ray Book refused to afford Petitioner with a BP-8 or BP-9 form, I reject it as unpersuasive.  Petitioner has failed to present circumstances supporting waiver.  "First, [P]etitioner's unwavering conclusion that exhaustion was impossible because of his inability to procure BOP forms, either himself or via his family, is unpersuasive." *Green*, 2023 WL 4364186, at *5.  Petitioner "fails to provide any type of evidence regarding the unsuccessful attempts he and his family made to procure said forms." *Green*, 2023 WL 4364186, at *5 (citing *Zenquis v. Pullen*, 22-CV-1151, 2023 WL 2931585, at

13

*4-5 (D. Conn. Apr. 13, 2023) (emphasizing that "denial of grievance forms does not, in itself, make administrative remedies unavailable," yet finding petitioner sufficiently demonstrated, via documentation memorializing repeated requests to staff, that their actions delaying the provision of administrative grievance forms was sufficient to establish cause and prejudice to waive exhaustion). Petitioner fails to identify the time, place, and frequency with which he was unable to obtain "Administrative Remedy" forms from his counselor. (Dkt. No. 1 at 7.) Petitioner's conclusory allegations without any detail or evidence are insufficient to establish cause for his failure to exhaust administrative remedies. *But see Flores v. Derr*, 23-CV-0183, 2023 WL 4236183, at *2 (D. Haw. June 28, 2023) (citing *Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004); *Miller v. Norris*, 247 F.3d 736, 738, 740 (8th Cir. 2001); *Untalan v. Derr*, 23-CV-0091, 2023 WL 2868519, at *3 (D. Haw. Apr. 10, 2023); *Sallas v. Derr*, 23-CV-0084, 2023 WL 2794793, at *3 (D. Haw. Apr. 5, 2023)) ("Courts have waived the prudential exhaustion requirement when a prison official has refused to provide an inmate with the form necessary to file an administrative grievance, determining that the administrative process was unavailable.").

Petitioner has failed to make the requisite showing of "cause and prejudice" that would permit the Court to excuse his failure to exhaust administrative remedies.[3] As a result, I recommend that, in the alternative, Petitioner's habeas Petition be denied and dismissed for failure to exhaust his administrative remedies.

---

3    Should the assigned District Judge disagree with this conclusion, the proper mechanism for resolving issues of fact regarding whether a petitioner exhausted his administrative remedies is to "obtain additional documentation and hold an evidentiary hearing." *Rosario-Santiago v. Pliler*, 21-CV-3202, 2022 WL 2991015, at *5 (S.D.N.Y. July 7, 2022).

## V.    CERTIFICATE OF APPEALABILITY

To appeal a final order denying a request by a state prisoner for habeas relief, a petitioner

must obtain from the court a certificate of appealability ("COA").  28 U.S.C. § 2253(c)(1)(A);

*see also* Fed. R. App. P. 22(b)(1) ("[T]he applicant cannot take an appeal unless a circuit justice

or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c).").  In

the absence of a COA, a federal court of appeals lacks jurisdiction to entertain an appeal from the

denial of a habeas petition.  *Hoffler v. Bezio*, 726 F.3d 144, 152 (2d Cir. 2013).  A COA may

issue only "if the applicant has made a substantial showing of the denial of a constitutional

right."  28 U.S.C. § 2253(c)(2); *Hoffler*, 726 F.3d at 154.  A petitioner may demonstrate a

"substantial showing" if "the issues are debatable among jurists of reason; . . . a court could

resolve the issues in a different manner; or . . . the questions are adequate to deserve

encouragement to proceed further."[4]  *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)

(quotation marks omitted).

In this instance, I find that jurists of reason would not find it debatable as to whether the

petition in this matter is meritorious.  Accordingly, I recommend against the issuance of a COA.

**ACCORDINGLY**, it is

**RECOMMENDED** that the Petition (Dkt. No. 1) be **DENIED as moot** and that a

certificate of appealability not be issued to Petitioner;[5] and it is further

---

[4]    A similar standard applies when a COA is sought to challenge the denial of a habeas petition on a procedural basis.  *See Slack v. McDaniel*, 529 U.S. 473, 478 (2000) ("[A] COA should issue . . . if the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.").

[5]    In the alternative the undersigned recommends that the Petition be denied and dismissed because (1) BOP correctly calculated Petitioner's sentence, (2) Petitioner is not entitled to earned

**ORDERED** that the Clerk of the Court shall file a copy of this Report and Recommendation on the parties, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[6]  Such objections shall be filed with the Clerk of the Court.  **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**.  28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

Dated:  February 4, 2026
        Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge

---

time credit under the FSA, and (3) in the alternative, Petitioner failed to exhaust administrative remedies.

6    If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

2012 WL 5996342
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Edward BARBER, Petitioner,
v.
Russell PERDUE, Warden,[1] Respondent.

Civil Action No. 9:11–CV–0127 (NAM/DEP).
|
Nov. 9, 2012.

**Attorneys and Law Firms**

Edward Barber, Atlanta, GA, pro se.

Hon. Richard S. Hartunian, United States Attorney, N.D.N.Y., Charles E. Roberts, Esq., Assistant U.S. Attorney, Syracuse, NY, for Defendant.

*REPORT AND RECOMMENDATION*

DAVID E. PEEBLES, United States Magistrate Judge.

 **\*1** *Pro se* petitioner Edward Barber, a federal prison inmate as a result of a drug and money laundering conviction, has commenced this proceeding pursuant to 28 U.S.C. § 2241, seeking habeas relief from this court. In his petition, Barber challenges his transfer into FCI Ray Brook, a medium security prison, and seeks to be returned to a Bureau of Prisons ("BOP") prison camp similar to that in which he was confined prior to having been found guilty of possessing intoxicants, in violation of prison disciplinary rules.

In answer to the petition, respondent argues that it is procedurally defective based upon Barber's failure to properly exhaust available administrative remedies before commencing suit, and in any event fails to state a cognizable constitutional or statutory claim warranting habeas intervention. For the reasons set forth below, I recommend that Barber's petition be dismissed based upon his failure to satisfy his obligation to exhaust available administrative remedies before commencing this proceeding, and in any event, as lacking in merit.

I. *BACKGROUND*

Petitioner is serving a 120–month term of imprisonment based upon a conviction entered in the District of Maryland for conspiracy to distribute, and to possess with intent to distribute, five kilograms or more of cocaine, in violation of 21 U.S.C. § 846, and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). Petition (Dkt. No. 1) at p. 3 and Exh. A; Magnusson Decl. (Dkt. No. 4–2) ¶ 5. Petitioner's projected release date, with anticipated good conduct time credits, is August 31, 2015. Magnusson Decl. (Dkt. No. 4–2) ¶ 5.

Petitioner began serving his federal sentence in a minimum security level prison camp operated by the Bureau of Prisons ("BOP") in Schuykill, Pennsylvania, on March 20, 2007.[2] Petition (Dkt. No. 1) at p. 6. On July 20, 2007, however, he was transferred into a low security correctional institution located in Allenwood, Pennsylvania ("LSCI Allenwood"), after being convicted of possessing intoxicants, in violation of prison rules. *Id.; see also* Magnusson Decl. (Dkt. No. 4–2) ¶ 7.

In June of 2010, Barber filed an Administrative Remedy Report ("AR"), pursuant to the BOP's internal inmate grievance program, challenging his transfer into LSCI Allenwood and requesting that he be returned back into a minimum security facility.[3] Petition (Dkt. No. 1) at p. 6; Magnusson Decl. (Dkt. No. 4) ¶ 7 and Exh. C. On July 9, 2010, following the denial of that grievance, which was designated as AR No. 597261, petitioner appealed the matter to the BOP Regional Director. Petition (Dkt. No. 1) at p. 3 and Exh. E; Magnusson Decl. (Dkt. No. 4–2) ¶¶ 7–8 and Exhs. C, D. In response to that appeal, the Regional Director advised Barber on August 17, 2010, that his situation was under review and that he was being considered for a transfer into a minimum security facility. Petition (Dkt. No. 1) at p. 7 and Exh. F; Magnusson Decl. (Dkt. No. 4–2) ¶ 8 and Exh. D. Barber's appeal was therefore deemed partially granted, and he was advised of his right to appeal the determination to the Office of General Counsel within thirty days of the date of decision. *Id.* Petitioner, however, did not seek further review of that decision. Petition (Dkt. No. 1) at p. 8; Magnusson Decl. (Dkt. No. 4–2) ¶ 9.

 **\*2** In September 2010, Barber was transferred from LSCI Allenwood into FCI Ray Brook, and was assigned to the facility's Work Cadre program. Petition (Dkt. No. 1) at p. 8. That program involves inmates designated to FCI Ray Brook who are assigned to work in various maintenance positions within the institution, including in the areas of

groundskeeping, food and trust fund warehouse operations, UNICOR warehouse operations, the garage motor pool, and participating in general orderly details of the training center and institution front lobby. [4] Porter Decl. (Dkt. No. 4–3) ¶ 5. Work Cadre unit inmates perform much of their work outside of the secure perimeter of FCI Ray Brook, and a vast majority of inmates in the program are therefore assigned "OUT Custody" status, with either a minimum or low security level designation. [5] *Id.* Under BOP policies, a facility's security level designation is used

> to describe the structural variables and inmate-to-staff ratio provided at the various types of Bureau institutions (*i.e.,* Minimum, Low, Medium, High). It also identifies the institution type required to house inmates based upon their histories, institutional adjustment, and Public Safety Factors as well as the physical security of the institution to include mobile patrols, gun towers, perimeter barriers, housing, detection devices, inmate-to-ratio, and internal security.

*Id.* at 2 n. 1; *see also Johnson,* 2010 WL 3468124, at *1–2.* [6] Of the thirty-nine inmates assigned to the Work Cadre Unit at FCI Ray Brook, thirty-six of those, including Barber, are designated as minimum security/OUT custody. Porter Decl. (Dkt. No. 4–3) ¶¶ 5–6. At FCI Ray Brook, Work Cadre inmates are housed together in a single unit, although they can be interspersed with general population inmates when taking meals, shopping at the commissary, obtaining health services for mental health treatment, and in other areas and programs. Petition (Dkt. No. 1) at pp. 7–8.

Following his arrival at FCI Ray Brook, Barber challenged his transfer by filing an informal resolution, claiming that the transfer was inconsistent with his minimum security status. Petitioner's Reply (Dkt. No. 6), Exh. J. Because this informal measure did not resolve the issue, petitioner filed an AR, designated as AR No. 617842. *Id.,* Exh. K; Magnusson Decl. (Dkt. No. 4–2) ¶ 10 and Exh. E. Following the denial of that AR by the Warden at FCI Ray Brook, Barber appealed the determination to the Regional Director on February 14, 2011, reiterating his contentions and arguing that his placement in the FCI Ray Brook Work Cadre program was inappropriate. Petitioner's Reply (Dkt. No. 6), Exh. L; Magnusson Decl. (Dkt. No. 4–2) ¶ 11 and Exh. F. That appeal was denied on February 9, 2011, by BOP Regional Director J.L. Norwood, and Barber was advised of his right to appeal that denial to the BOP General Counsel within thirty days of the date of response. Magnusson Decl. (Dkt. No. 4–2) ¶ 11 and Exh. F.

**\*3** Petitioner appealed the matter to the Office of General Counsel on March 2, 2011. Petitioner's Reply (Dkt. No. 6), Exh. M; Magnusson Decl. (Dkt. No. 4–2) ¶ 12 and Exh. B. By notice dated May 10, 2011, that appeal was denied based upon a finding that Barber was appropriately designated to his current placement, consistent with the requirements of BOP Program Statement 5100.08, which is entitled "Inmate Security Designation and Custody Classification." Petitioner's Suppl. Reply (Dkt. No. 7) at pp. 2–3 and Exh. A. [7]

## II. *PROCEDURAL HISTORY*

Petitioner commenced this proceeding on February 4, 2011. Dkt. No. 1. In his petition, Barber challenges the decision to transfer him into FCI Ray Brook, claiming that it violated 18 U.S.C. § 3621(b) and BOP Program Statement No. 5100.08, and resulted in a deprivation of procedural due process and a denial of equal protection. *Id.* The respondent has since submitted various documents in opposition to the petition, asserting that petitioner's claims are procedurally barred based upon his failure to exhaust available administrative remedies before commencing this proceeding, and additionally maintaining that, in any event, the claims lack merit. [8] Dkt. Nos. 4, 5. Barber has since submitted both a reply and a supplemental reply. Dkt. Nos. 6, 7.

Barber's petition, which is now fully briefed and ripe for determination, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed.R.Civ.P. 72(b).

## III. *DISCUSSION*

### A. *Exhaustion of Remedies*

In his petition, Barber challenges his designation to FCI Ray Brook on several substantive grounds. In answer to the petition, respondent argues that Barber's challenge is procedurally barred based upon his failure to exhaust available administrative remedies.

Barber's petition challenging his prison designation is properly brought pursuant to 28 U.S.C. § 2241. *See Jiminian v. Nash,* 245 F.3d 144, 146 (2d Cir.2001) ("A motion pursuant to § 2241 generally challenges the execution of a federal prisoner's sentence, including such matters as ... prison transfers, [and] type of detention[.]") (citing *Chambers v.*

*United States,* 106 F.3d 472, 474–75 (2d Cir.1997)); *see also Carmona v. U.S. Bureau of Prisons,* 243 F.3d 629, 632 (2d Cir.2001) ("A writ of habeas corpus under § 2241 is available to a federal prisoner who does not challenge the legality of his sentence, but challenges instead its execution subsequent to his conviction."). Before instituting such a habeas proceeding, however, a prison inmate must first exhaust the remedies available through the BOP's Administrative Remedies Program. *Carmona,* 243 F.3d at 630 ("We have held that federal prisoners must exhaust their administrative remedies prior to filing a petition for habeas relief." (citing *Guida v. Nelson,* 603 F.2d 261, 262 (2d Cir.1979)); *see also Rogers v. United States,* 180 F.3d 349, 357 (1st Cir.1999).

**\*4** Available to all federal prison inmates is an internal, four-step administrative grievance procedure adopted by the BOP for the stated purpose of "allow[ing] an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10(a); *see also Macias v. Zenk,* 495 F.3d 37, 42 (2d Cir.2007). The first step of the prescribed process entails making an effort to obtain an early resolution of the matter by raising the issue informally to staff. 28 C.F.R. § 542.13(a); *see also Johnson v. Testman,* 380 F.3d 691, 693 (2d Cir.2004). In the event this avenue does not lead to a successful resolution, the inmate next may submit a formal written AR to the warden of the particular facility involved, utilizing a designated BP–9 form, within twenty days of the relevant event. 28 C.F.R. § 542.14(a). If the AR is denied, an appeal may be taken to the appropriate BOP Regional Director within twenty calendar days of the date of denial. 28 C.F.R. § 542.15(a); *see also Johnson,* 380 F.3d at 693. As a fourth and final step, an unfavorable decision from the Regional Director may be appealed to the General Counsel's office (also referred to as the "Central Office") within thirty days of the date on which the Regional Director rejects the inmate's appeal. 28 C.F.R. § 542.15(a). Only upon completion of all of the required steps in the process does a federal inmate fully exhaust available administrative remedies. *Macias,* 495 F.3d at 42; *see also Johnson v. Rowley,* 569 F.3d 40, 45 (2d Cir.2009); *Strong v. Lapin,* No. 90–CV–3522, 2010 WL 276206, at \*4 (E.D.N.Y.2010) ("Until the BOP's Central Office considers the appeal, no administrative remedy is considered to be fully exhausted.").

Two separate ARs filed by Barber are implicated in this proceeding. As was previously discussed, the first, AR No. 597261, was filed while Barber was confined in LSCI Allenwood, and challenged his transfer into that facility.

Magnusson Decl. (Dkt. No. 4–2) ¶ 7 and Exh. C. The remedy sought in that AR, *inter alia,* included a request that he be transferred into another BOP facility, commensurate with his security level designation. *See id.,* Exh. C. That AR was successful in large part, in that at the Regional Director level Barber was advised that he was, in fact, being considered for a transfer to a minimum security facility. *Id.,* Exh. D.

Plaintiff's subsequent transfer into FCI Ray Brook generated a second grievance, AR No. 617842, challenging that transfer and his placement into the facility's Work Cadre program. Magnusson Decl. (Dkt. No. 4–2) ¶ 11 and Exh. F. That grievance represents petitioner's attempt to exhaust remedies with regard to the claims now raised in this action. As discussed above, this grievance was ultimately denied by the Central Office on May 10, 2011. Petitioner's Suppl. Reply (Dkt. No. 7), Exh. A. Because petitioner filed his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in this court on February 4, 2011—more than two months prior to receiving the Central Office's final determination of his appeal—the court is confronted with whether, as respondent contends, a petitioner who has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 has failed to exhaust administrative remedies where he receives the Central Office's final decision regarding his appeal *after* filing his petition in federal court.

**\*5** Initially, the court notes that the exhaustion requirements imposed under 42 U.S.C. § 1997e(a), a provision added as part of the Prison Litigation Reform Act ("PLRA"), do not apply to petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. *See Carmona,* 243 F.3d at 634 ("[W]e note that although § 1997e(a) of the [PLRA] ... contains a statutory administrative exhaustion requirement, we have held, in the context of a § 2254 petition, that the requirements of the [PLRA] do not apply to habeas proceedings .... Doubtless the same rule should obtain in § 2241 cases as in § 2254 petitions."). [9] Instead, the exhaustion requirements applicable to 28 U.S.C. § 2241 petitions were created by case law. *See, e.g., Garza v. Davis,* 596 F.3d 1198, 1203 (10th Cir.2010) ("The exhaustion of available administrative remedies is a prerequisite for § 2241 habeas relief, although we recognize that the statute itself does not expressly contain such a requirement."); *Marti v. Nash,* 227 F. App'x 148, 150 (3d Cir.2007) ( "Although there is no statutory exhaustion requirement attached to § 2241, we have consistently applied an exhaustion requirement to claims brought under § 2241.") (internal quotation marks omitted).

The Second Circuit has held that a petitioner may pursue a request for habeas corpus relief, including pursuant to 28 U.S.C. § 2241, even where he has failed to exhaust administrative remedies prior to filing the action in district court, only upon a showing of cause and prejudice. *Carmona,* 243 F.3d at 634 ("[T]he interests of judicial economy and accuracy are served by requiring that, absent a showing of cause and prejudice, appeals proceed in the first instance through the federal agency review process."). The Second Circuit explained the reasoning behind this requirement in the following manner:

> Following the administrative procedures could potentially obviate the need for judicial review, or at a minimum, develop the factual record at the agency level at a time when the disputed events are still relatively fresh in witness' minds.... Administrative autonomy is also served by requiring that a federal prisoner justify his failure to exhaust his intra-Bureau remedies. When, however, legitimate circumstances beyond the prisoner's control preclude him from fully pursuing his administrative remedies, the standard we adopt excuses this failure to exhaust.

*Id.*

In light of the fact that neither the Second Circuit nor any court in this district has explicitly ruled on the circumstances the court faces in this case, I recommend a finding that a petitioner who receives a final administrative determination of his grievance during the pendency of a related habeas petition in federal court has not exhausted his administrative remedies, unless he demonstrates cause and prejudice for prematurely filing his petition in federal court. This recommendation is in line with the Supreme Court's decision in *Rhines v. Weber,* 544 U.S. 269, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005). In that case, the Supreme Court held that a district court may stay a mixed petition, where some of petitioner's claims were unexhausted in state court, only when it "determines there was good cause for the petitioner's failure to exhaust his claims first in state court." *Rhines,* 544 U.S. at 277, 125 S.Ct. at 1535. In addition, this recommended finding aligns with the Second

Circuit's requirement that a district court excuse a petitioner's failure to exhaust only upon a showing of cause and prejudice. *Carmona,* 243 F.3d at 634. Finally, although one district court has held that the Supreme Court's decision in *Rhines* "at least implicitly [suggests] that subsequently exhausting available remedies cures an initial lack of exhaustion in the habeas context[,]" *Mihailovich v. Berkebile,* 06–CV–1603, 2007 WL 942091, at *6 (N.D.Tex. Mar.28, 2007), I read *Rhines* to neither demand a district court to stay a petition under any circumstances, nor preclude dismissing a petition for failure to exhaust. *See e.g., Seastrong v. Berkebile,* 08–CV–1853–M, 2008 WL 4999017, at *3 n. 2 (N.D.Tex. Nov.24, 2008) ("While these [Supreme Court] cases implicitly indicate that exhausting available remedies after filing a habeas action may cure an initial lack of exhaustion, they do not preclude dismissal of [an] action even if [a] petitioner has subsequently exhausted his administrative remedies.") (internal citation omitted).

**\*6** Here, petitioner's papers demonstrate neither that he had good cause for filing his habeas petition in federal court prior to receiving the Central Office's final determination, nor, even assuming cause existed, prejudice. Rather, in his reply, petitioner admits that he "has yet to receive the Central Office response[.]" Petitioner's Reply (Dkt. No. 6) at p. 3. Accordingly, I recommend that Barber's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 be denied, without prejudice, for failing to exhaust his available administrative remedies.

**B.** *Merits of Petitioner's Claims*

In his petition, Barber argues that in transferring him into FCI Ray Brook, the BOP failed to adhere to statutory and regulatory requirements, and further that the agency violated his rights by depriving him of a vested liberty interest without procedural due process. He additionally claims that prison officials deprived him of equal protection as a result of his transfer into FCI Ray Brook. In answer to these claims, respondent asserts that Barber has no protected liberty interest in being confined to any particular BOP facility, and therefore cannot state a cognizable due process claim. Respondent also maintains that his equal protection and statutory claims are similarly deficient as a matter of law.

**1.** *Due Process*

To successfully state a claim under 42 U.S.C. § 1983 for the denial of procedural due process, a party must show that he or she (1) possessed an actual liberty interest, and

(2) was deprived of that interest without being afforded sufficient process. *See Tellier v. Fields,* 280 F.3d 69, 79–80 (2d Cir.2000); *Hynes v. Squillace,* 143 F.3d 653, 658 (2d Cir.1998); *Bedoya v. Coughlin,* 91 F.3d 349, 351–52 (2d Cir.1996). In this instance, the facts set forth in Barber's petition fail to establish the deprivation of a constitutionally significant liberty interest.

By law, the BOP is vested with wide ranging discretion to designate a facility in which a federal prison inmate is to be held. 18 U.S.C. § 3621(b); *see also Levine v. Apker,* 455 F.3d 71, 80–81 (2d Cir.2006); *Barden v. Koehane,* 921 F.2d 476, 482 (3d Cir.1990). Addressing the question of placement of a federal inmate, the governing statute provides, in relevant part, as follows:

> The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility ..., whether within or without the judicial district in which the person was convicted.... The Bureau may at any time ..., direct the transfer of a prisoner from one penal or correctional facility to another.

18 U.S.C. § 3621(b).

It is well-established that an inmate has no protectable liberty interest in being designated to a particular facility, even if the facility into which a prisoner is transferred is undesirable to the prisoner. *Olim v. Wakinekona,* 461 U.S. 238, 245–46, 103 S.Ct. 1741, 1745–46, 75 L.Ed.2d 813 (1983) (holding that a prisoner has no constitutional right to be incarcerated in any particular state); *Meachum v. Fano,* 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976) ("The Constitution does not ... guarantee that the convicted prisoner will be placed in any particular prison."). The United States Supreme Court has long held that, "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Montanye v. Haymes,* 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976). "If the prisoner can lawfully be held in the facility into which he has

been transferred, he cannot object to that transfer, even if the transfer results in his being placed in a more restrictive or less [desirable] facility." *Ali v. Gibson,* 631 F.2d 1126, 1135 (3d Cir.1980), *accord, Hookey v. Lomas,* No. 1:CV–08–022884, 2010 WL 1009946, at *6 (M.D.Pa. March 11, 2010).

 **\*7** Since Barber cannot establish that his transfer into FCI Ray Brook implicated a proteccable liberty interest under the Fourteenth Amendment, his procedural due process claim is subject to dismissal as a matter of law. *See Meachum,* 427 U.S. at 225, 96 S.Ct. at 2538 ("That life in one prison is much more disagreeable than in another does not in itself signify that Fourteenth Amendment liberty interest is implicated when a prisoner is transferred to the institution with the more severe rules.").

 2. *Equal Protection*

In his petition, Barber also contends that his transfer into FCI Ray Brook resulted in the denial of equal protection, alleging that, as a result of his transfer, he has been treated by the BOP differently than other similarly situated inmates, including those in other BOP facilities. Respondent also urges dismissal of Barber's equal protection claim on the merits.

The Equal Protection Clause directs state actors to treat similarly situated people alike. *See City of Cleburne, Texas v. Cleburne Living Ctr.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). To prove a violation of the Equal Protection Clause, the petitioner must demonstrate that he was treated differently than others similarly situated, as a result of intentional or purposeful discrimination directed at an identifiable or suspect class. *See Giano v. Senkowski,* 54 F.3d 1050, 1057 (2d Cir.1995) (citing, *inter alia, McCleskey v. Kemp,* 481 U.S. 279, 292, 107 S.Ct. 1756, 1767, 95 L.Ed.2d 262 (1987)). The petitioner must also show that the disparity in treatment "cannot survive the appropriate level of scrutiny which, in the prison setting, means that he must demonstrate that his treatment was not 'reasonably related to legitimate penological interests.' " *Phillips v. Girdich,* 408 F.3d 124, 129 (2d Cir.2005) (quoting *Shaw v. Murphy,* 532 U.S. 223, 225, 121 S.Ct. 1475, 1478, 149 L.Ed.2d 420 (2001) (alterations omitted)).

Petitioner's equal protection claim is based upon a class-of-one paradigm. Barber does not allege that he is a member of a group that received disparate treatment in comparison to other similarly situated inmates. Rather, he argues that he has been singled out for differential treatment from other similarly situated inmates, citing as one example an inmate

who was transferred from a satellite camp to LCSI Allenwood for possessing intoxicants, and then later returned back to a minimum security level institution. He also argues that, while he is similarly situated to other inmates throughout the BOP with minimum security levels, unlike him, they are not being forced to participate in a Work Cadre program at a higher level security institution.

A class-of-one equal protection claim is stated "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000). In this circuit, to succeed on such a claim, a party must establish that

> **\*8** (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake.

*Neilson v. D'Angelis,* 409 F.3d 100, 105 (2d Cir.2005), *overruled on other grounds by Appel v. Spiridon,* 531 F.3d 138 (2d Cir.2008); *see also Analytical Diagnostic Labs, Inc. v. Kusel,* 626 F.3d 135, 140 (2d Cir.2010).

The Second Circuit has noted that application of a class-of-one equal protection standard will differ depending upon whether the case involves discretionary decisionmaking, or instead flows from non-discretionary action. *Analytical Diagnostic Labs, Inc.,* 626 F.3d at 141. As the Supreme Court has observed, a class-of-one equal protection claim is readily available when governmental action can be gauged by a clear standard. *Engquist v. Oregon Dep't of Agric.,* 553 U.S. 591, 602, 128 S.Ct. 2146, 170 L.Ed.2d 975 (2008). In the case of discretionary decisionmaking, the test to be applied is significantly more relaxed, particularly in instances such as in the employment arena, for example, where decisions are often subjective and highly individualized. *Analytical Diagnostic*

*Labs, Inc.,* 626 F.3d at 141 (citing *Engquist,* 553 U.S. at 604, 128 S.Ct. 2146, 170 L.Ed.2d 975 (2008)).

In this instance, there is no objective standard at issue. Instead, this case falls in the discretionary category. Under Program Statement 5100.08, the BOP is invested with considerable latitude concerning assignment of inmates, subject only to the statutory requirement that certain factors be taken into consideration when making that significantly subjective determination. Exercising that discretion, BOP decision-makers placed Barber in a minimum security Work Cadre program, fully consistent with his security level, and assigned him a minimum security/OUT designation permitting him to work in and around the prison where higher level security inmates are not allowed in light of security concerns. Porter Decl. (Dkt. No. 4–3) ¶¶ 5 and 6; Magnusson Decl. (Dkt. No. 4–2) Exh. E at p. 34–38; Petitioner's Suppl. Reply (Dkt. No. 7), Exh. A. His designation to FCI Ray Brook, a medium-security prison, was apparently prompted by the BOP's practice of attempting to designate an inmate to a facility located within five hundred miles of his or her release residence. [10] Petitioner's Suppl. Reply (Dkt. No. 7) Exh. A.

This matter is materially distinguishable from such cases as *Village of Willowbrook,* which involved a property owner's request for permission to connect to a municipal water supply where she was required to grant a thirty-three foot easement for that purpose whereas other property owners were required to provide only fifteen foot easements. 528 U.S. at 565, 120 S.Ct. at 1075. The Supreme Court concluded that plaintiff's allegations sufficed to state a class-of-one equal protection claim since the difference in treatment alleged gave the appearance of being irrational and wholly arbitrary. *Id.*

**\*9** Applying these principles to the instant case, there is nothing in the record now before the court to suggest that Barber was intentionally treated differently from other similarly situated inmates for no rational reason or that discriminatory animus motivated his assignment to FCI Ray Brook. Accordingly, I recommend denial of his equal protection habeas claim.

### 3. *Statutory Violation*

Section 3621(b), which governs the assignment of prisoners, as well as transfers within the federal penal system, confers broad discretion upon the BOP in that regard. 18 U.S.C. § 3621(b) ("The [BOP] may at any time ... direct a transfer of a prisoner from one penal or correctional facility to another.");

*see also Levine v. Apker,* 455 F.3d 71, 80 (2d Cir.2006) (citing cases). While conferring extensive discretion, the statute goes on to list a series of factors to be considered in making that determination, including

> (1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the court that imposed the sentence ...; and (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C. § 3621(b); *see also Levine,* 455 F.3d at 81.

In this instance, there does not appear to be any dispute involving Barber's security level. Consistent with BOP Program Statement 5100.08, he has been designated as a minimum security level, resulting in a possible custody level of "Community" and "OUT." In this instance, Barber is designated as having "OUT" custody status. Designation of the petitioner to FCI Ray Brook, with a minimal security level and OUT custody designation, appears to be fully consistent with both the requirements of section 3621 and BOP program statement 5100.08. I therefore recommend a finding that no statutory violation has been established with regard to petitioner's classification or designation to FCI Ray Brook.

IV. *SUMMARY AND RECOMMENDATION*

By statute, the BOP is invested with considerable discretion in assigning federal inmates to BOP facilities, subject to consideration of various relevant factors which must inform that determination. In carrying out its responsibilities for designating inmates to federal facilities the BOP, with its expertise, is undeniably faced with many constraints and challenges. For this reason, courts typically afford considerable deference to decisions made by that agency. It is neither appropriate nor desirable for a court to micromanage

that decisionmaking process and serve as an appellate body for disgruntled inmates to challenge their facility designations, unless it can be shown that the decision made in a particular case has run afoul of the protections afforded by statute or the United States Constitution. *See Meachum,* 427 U.S. at 228–29, 96 S.Ct. 2532, 49 L.Ed.2d 451 (declining to apply procedural protections of the Due Process Clause to the daily functioning of state prisons and to "involve the judiciary and issues and discretionary decisions that are not the business of federal judges").

**\*10**  In this instance, the arguments asserted by the petitioner, including that his due process and equal protection rights were violated by his designation at FCI Ray Brook, lack merit. Moreover, his claims in this matter are procedurally barred by virtue of his failure to fully exhaust available administrative remedies before commencing this proceeding. Accordingly, it is hereby respectfully

RECOMMENDED that the petition in this matter be DENIED and DISMISSED in all respects; and it is further

RECOMMENDED, based upon my finding that Barber has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2), that a certificate of appealability not issue with respect to any of the claims set forth in this petition.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 5996342

---

## Footnotes

1 In his petition, Barber named Deborah Schult, who, at the time Barber commenced this action, served as the warden at the Ray Brook Federal Correctional Institution ("FCI Ray Brook"), as a respondent. Because publically available information discloses that Russell Perdue became the warden at FCI Ray Brook in February 2011, he is now the appropriately named respondent, and the clerk of the court is respectfully directed to adjust court records to reflect this change.

2 The BOP has five security classification levels for its correctional facilities, including minimum, low, medium, high, and administrative. BOP Program Statement 5100.08), Ch. 1 at p. 15. *See* *Johnson v. Killian,* No. 07 Civ. 6641(NRB), 2010 WL 3468124 at *1–3 (S.D.N.Y. Aug.23, 2010), *vacated and remanded on other grounds by* 680 F.3d 234 (2d Cir.2012).

3 The BOP's administrative grievance process is more fully described further below in this report. *See* pp. 10–11, *post.*

4 Standing alone, the requirement that prison inmates perform work-related functions while incarcerated does not run afoul of the Thirteenth Amendment's prohibition against involuntary servitude. *See Alexander v. Schenk,* 118 F.Supp. 298, 302 (N.D.N.Y.2000) (Kahn, J.) (holding that, even if the court was to find that the plaintiff was required to work without any compensation while incarcerated, his claim would fail because the Thirteenth Amendment "on its face, excludes 'involuntary servitude imposed as a legal punishment for a crime' ") (quoting U.S. Const. amend. XIII).

5 The BOP defines the "OUT Custody" classification as

> [t]he second lowest custody level assigned to an inmate requiring the second lowest level of security and staff supervision. An inmate who has OUT custody may be assigned to less secure housing and may be eligible for work details outside the institution's secure perimeter with a minimum of two hour intermittent staff supervision.

> BOP Program Statement 5100.08; *see* Porter Decl. (Dkt. No. 4–3) at p. 2, n. 1.

6 Copies of all unreported decisions cited in this report and recommendation have been appended for the convenience of the *pro se* petitioner. [Editor's Note: Attachments of Westlaw case copies deleted for online display.]

7 Petitioner's supplemental reply, filed on June 6, 2011, is accompanied by a motion to supplement the record in order to permit inclusion of the final denial of AR No. 617842. Dkt. No. 7. That motion is granted, and the material accompanying the motion has been considered by the court.

8 In the response to Barber's petition, respondent does not address the statutory arguments raised.

9 *See also Walker v. O'Brien,* 216 F.3d 626, 634 (7th Cir.2000) ("[W]e conclude that cases properly brought under §§ 2241 or 2254 as habeas corpus petitions are not subject to the PLRA."); *Blair–Bey v. Quick,* 151 F.3d 1036, 1040 (D.C.Cir.1998) ("[W]e see no reason to make an exception from our general rule that the PLRA does not apply to actions properly brought in habeas corpus."); *Davis v. Fechtel,* 150 F.3d 486, 490 (5th Cir.1998) ("The PLRA ... does not apply to section 2241 proceedings."); *McIntosh v. United States Parole Comm'n,* 115 F.3d 809, 811–12 (10th Cir.1997) (holding that the PLRA does not apply to habeas petitions filed pursuant to 28 U.S.C. § 2241); *Colton v. Ashcroft,* 299 F.Supp.2d 681, 687 (E.D.Ky.2004) (extending the Sixth Circuit's finding that the PLRA does not apply to 28 U.S.C. §§ 2254 and 2255 proceedings by concluding that the PLRA does also does not apply to 28 U.S.C § 2241).

10    The controlling provision of Program Statement 5100.08 provides as follows:

> The Bureau of Prisons attempts to place each inmate in an institution that is reasonably close to the anticipated release area. Ordinarily, placement within 500 miles of a release area is to be considered reasonable, regardless of whether there may be an institution closer to the inmate's release area. This MGTV may also apply to inmates who are within 36 months of release.

BOP Program Statement P5100.08, ch. 5, at p. 3.

---

**End of Document**                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

---

2012 WL 5996866
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Edward BARBER, Petitioner,

v.

Russell PERDUE, Warden, [1] Respondent.

No. 9:11–CV–0127 (NAM/DEP).
|
Nov. 30, 2012.

**Attorneys and Law Firms**

Edward Barber, Atlanta U.S. Penitentiary, Atlanta, GA, pro se.

Hon. Richard S. Hartunian, United States Attorney, N.D.N.Y., Charles E. Roberts, Esq., Assistant U.S. Attorney, of Counsel, Syracuse, NY, for Respondent.

*ORDER*

NORMAN A. MORDUE, District Judge.

**\*1** The above matter comes to me following a Report–Recommendation by Magistrate Judge David E. Peebles, duly filed on the 9th day of November 2012. Following fourteen (14) days from the service thereof, the Clerk has sent me the file, including any and all objections filed by the parties herein.

After careful review of all of the papers herein, including the Magistrate Judge's ReportRecommendation, and no objections submitted thereto, it is

ORDERED that:

1. The Report–Recommendation is hereby adopted in its entirety.

2. The petition in this matter is denied and dismissed in all respects.

3. The petitioner has failed to make a substantial showing of a denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2); accordingly, no certificate of appealability shall issue.

4. The Clerk of the Court shall serve a copy of this Order upon all parties and the Magistrate Judge assigned to this case.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 5996866

---

**Footnotes**

1    In his petition, Barber named Deborah Schult, who, at the time Barber commenced this action, served as the warden at the Ray Brook Federal Correctional Institution ("FCI Ray Brook"), as a respondent. Because publically available information discloses that Russell Perdue became the warden at FCI Ray Brook in February 2011, he is now the appropriately named respondent, and the clerk of the court is respectfully directed to adjust court records to reflect this change.

---

**End of Document**                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 4236183
Only the Westlaw citation is currently available.
United States District Court, D. Hawai'i.

Diana Estefan Rodriguez FLORES, Petitioner,
v.
Estela DERR, Warden, Respondent.

CIV. No. 23-00183 SOM-KJM
|
Signed June 28, 2023

**Attorneys and Law Firms**

Diana Estefan Rodriguez Flores, Honolulu, HI, Pro Se.

Dana A. Barbata, U.S. Attorney's Office-District of Hawaii, Honolulu, HI, for Respondent.

**ORDER DENYING DIANA ESTEFAN RODRIGUEZ FLORES'S PETITION UNDER 28 U.S.C. § 2241**

Susan Oki Mollway, United States District Judge

**I. INTRODUCTION.**

**\*1** Diana Estefan Rodriguez Flores ("Petitioner") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241, naming the warden of her facility, FDC Honolulu, as the Defendant. *See* ECF No. 1. She seeks an order directing the Bureau of Prisons ("BOP") to apply Earned Time Credits ("ETCs") under the First Step Act ("FSA") so that she is eligible for early transfer to prerelease custody. *See id.*; *see also* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. The BOP contends that Petitioner failed to exhaust administrative remedies and that, alternatively, she is ineligible for ETCs because of her fentanyl conviction. Concluding that Petitioner is ineligible for ETCs, this court denies the § 2241 petition.

**II. BACKGROUND.**

Petitioner was sentenced to 68 months of imprisonment, 5 years of supervised release, and a $300 special assessment following her guilty plea with respect to counts one, two, and three of a Southern District of California Information charging her with importing methamphetamine, heroin, and N-Phenyl-N-[1-(2-phenylethly)-4-piperidinyl] ("fentanyl"). *See* Judgment in a Criminal Case, Case Number 3: 19-CR-04144-LAB, Doc. # 39, PageID # 114.

Petitioner, 23, is incarcerated at FDC Honolulu and has a projected release date of July 27, 2024. *See* https://www.bop.gov/inmateloc/ (input Register Number 87714-298) (last visited June 27, 2023). According to the BOP, Petitioner becomes eligible for home detention on January 27, 2024. *See* ECF No. 7-3, PageID # 35. Of course, that does not mean that Petitioner will be released to home detention on that date or at some other time. Absent any credits, her full term date would be May 28, 2025. *Id.*, PageID # 36. She is subject to an immigration detainer. *See id.*, PageID # 37.

On April 20, 2023, Petitioner filed this petition, seeking an order directing the BOP to apply ETCs such that she would be eligible for early transfer to prerelease custody. *See* ECF No. 1. Petitioner concedes that she did not administratively exhaust her claim, but argues that she should be relieved of the exhaustion requirement because she attempted to obtain the proper form from the BOP but was not given it because she is subject to an immigration detainer. *See* ECF No. 9, PageID # 41.

**III. ANALYSIS.**

Section 2241 enables those in custody to "challenge the manner, location, or conditions of [their] sentence's execution." *Hernandez v. Campbell*, 204 F.3d 861, 864 (9th Cir. 2000). It is a proper vehicle for challenging the BOP's calculation of an inmate's statutory release date. *See, e.g.*, *Keegan v. Derr*, No. CV–22-00089, 2023 WL 2403941 (D. Haw. Mar. 8, 2023) (granting in part a § 2241 petitioner's request for recalculation of his statutory release date); *Walsh v. Boncher*, 2023 WL 363591, at \*2 (D. Mass. Jan. 23, 2023) ("a petitioner may challenge computation of a prisoner's sentence by prison officials via a section 2241 petition" (quotation marks omitted)).

There is no statutory exhaustion requirement in § 2241. *See Ward v. Chavez*, 678 F.3d 1042, 1045 (9th Cir. 2012). However, "[a]s a prudential matter, courts require that habeas petitioners exhaust all available judicial and administrative remedies before seeking relief under § 2241." *See id.* Exhaustion is not a jurisdictional prerequisite and courts are able to waive it. *Ward v. Chavez*, 678 F.3d 1042, 1045 (9th Cir. 2012). This court therefore has discretion to address the merits of an unexhausted § 2241 petition in the interest of justice. *See Cuevas-Diaz v. Ashcroft*, 37 F. App'x 935, 940 (9th Cir. 2002). Futility, irreparable harm, and the unavailability of administrative remedies are legitimate bases for waiving the exhaustion requirement. *See Sapp v. Kimbrell*, 623 F.3d 813,

Case 9:22-cv-01161-BKS-ML   Document 24   Filed 02/04/26   Page 28 of 144

822 (9th Cir. 2010); *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004).

**\*2**  Petitioner concedes that she failed to exhaust her administrative remedies before filing this petition. *See* ECF No. 9, PageID # 41. She argues that she should be excused from the prudential exhaustion requirement because she attempted to get the proper prison administrative remedies form, but was not provided it. According to Petitioner, she was told that her submission of such a form would have been futile because she was ineligible for the relief she wanted given her immigration detainer. *Id.* Courts have waived the prudential exhaustion requirement when a prison official has refused to provide an inmate with the form necessary to file an administrative grievance, determining that the administrative process was unavailable. *See Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004); *Miller v. Norris*, 247 F.3d 736, 738, 740 (8th Cir. 2001); *Untalan v. Derr*, 2023 WL 2868519, at \*3 (D. Haw. Apr. 10, 2023); *Sallas v. Derr*, 2023 WL 2794793, at \*3 (D. Haw. Apr. 5, 2023).

Rather than holding an evidentiary hearing to determine whether the court should waive the prudential exhaustion requirement because a prison official allegedly made the prison remedies unavailable, the court denies the matter on the merits, as the exhaustion requirement is not jurisdictional. Under 18 U.S.C. § 3632(D)(4)(lxviii), prisoners are ineligible to receive ETCs for convictions with respect to importing "a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide, or any analogue thereof." Petitioner was convicted of importing N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide, making her ineligible for the requested ETCs. Thus, Petitioner is incorrect in arguing that time credits should be applied and that she should be released early to prerelease custody on September 26, 2023. As shown in the record, she is ineligible for ETCs. *See* ECF No. 7-4, PageID # 39.

Petitioner additionally appears to be arguing that the BOP is refusing to provide her with ETCs because she is subject to an immigration detainer. The court need not rule with respect to that argument because Petitioner is ineligible for ETCs given her fentanyl conviction.

### IV. CONCLUSION.

The court denies the petition brought under 28 U.S.C. § 2241.

IT IS SO ORDERED.

### All Citations

Not Reported in Fed. Supp., 2023 WL 4236183

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 4364186
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Michael Anthony **GREEN**, Petitioner,
v.
D. **CHRISTENSEN**, Warden, Respondent.

9:

**22**

-

**CV**

-

**1307**

(BKS)

|

Signed July 5, **2023**

|

Filed July 6, **2023**

**Attorneys and Law Firms**

MICHAEL ANTHONY **GREEN**, Petitioner pro se, 47108-039, Ray Brook Federal Correctional Institution, P.O. Box 900, Ray Brook, NY 12977.

HON. CARLA B. FREEDMAN, United States Attorney for the Northern District of New York, RANSOM REYNOLDS, III, ESQ., Ass't United States Attorney, 100 South Clinton Street, P.O. Box 7198, Syracuse, New York 13261.

**DECISION and ORDER**

BRENDA K. SANNES, Chief United States District Judge

**I. INTRODUCTION**

**\*1** Petitioner Michael **Green** seeks federal habeas corpus relief pursuant to 28 U.S.C. § 2241. Dkt. No. 1, Petition ("Pet."); Dkt. No. 1-1, Memorandum of Law in Support of the Petition. Respondent opposed the petition and filed relevant records in support thereof. Dkt. No. 12, Memorandum of Law in Opposition ("Resp. Memo."); Dkt. No. 12-1, Declaration of John McEvoy ("McEvoy Decl."); Dkt. No. 12-2–12-12, Exhibits. Petitioner then filed a reply. Dkt. No. 16, Traverse. For the reasons outlined below, the petition should be denied and dismissed.

**II. RELEVANT BACKGROUND** [1]

**A. State Criminal Conviction and Sentence**
In 2011, petitioner was convicted, pursuant to a guilty plea, of one count of armed robbery, and sentenced by the Third Judicial Circuit, in Wayne County, Michigan, to an 8- to 20-year term of imprisonment. McEvoy Decl. ¶¶ 5-6; Dkt. No. 12-3 at 2 (Judgment of Sentence and Commitment to Michigan Department of Corrections ("DOCS") form).

On May 8, 2019, petitioner was paroled from the State of Michigan DOCS custody to the exclusive custody of the federal government via the United States ("US") Marshals. McEvoy ¶ 11; Dkt. No. 12-8 at 2 (Michigan Parole Board Order).

**B. Federal Criminal Conviction and Sentence**
On April 4, 2012, while serving his state sentence in the Michigan DOCS, petitioner was charged with two counts of Robbery Affecting Interstate Commerce, in violation of 18 U.S.C. § 1951, and two counts of Using or Carrying a Firearm During a Federal Crime, in violation of 18 U.S.C. § 924(c). *United States v. Green et al.*, No. 2:12-CR-20218 (E.D. Mi.) ("*Green I*"), Dkt. No. 1, Indictment; *accord* Dkt. No. 12-2 at 5 (indicating the federal charges which petitioner was charged with violating). On April 25, 2012, petitioner was released to the US Marshals, on a writ of habeas corpus ad prosequendum, for an appearance in the United States District Court for the Eastern District of Michigan. McEvoy Decl. ¶ 7; Dkt. No. 12-2 at 5 ("On April 12, 2012, a writ ... was issued."); *Green I*, Dkt. No. 2, Order with Petition. This was the first of five such writs, whereupon petitioner was placed in custody of the US Marshals, for appearances in federal court related to the criminal charges in *Green I*, and then returned to Michigan State DOCS custody. McEvoy Decl. ¶ 7; Dkt. No. 12-2 at 3, 5 (identifying that petitioner was "[o]n a writ ... from April 25, 2012, to June 1, 2012, and from July 23, 2012, to July 24, 2012," for two appearances before the magistrate judge and one before the district judge); *accord Green I*, Dkt. Nos. 28, 30, 34 & 79, Orders with Petition (dated June 21, 2012; July 12, 2012; July 24, 2012; and April 11, 2013, respectively).

On April 11, 2013, petitioner was sentenced by the United States District Court for the Eastern District of Michigan to a total term of 471 months' incarceration. McEvoy ¶ 8; Dkt. No. 12-5 at 4. Specifically, petitioner received an 87-month term of imprisonment for two counts of Robbery Affecting Interstate Commerce, to be served concurrent with each other

WESTLAW   © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:22-cv-01161-BKS-ML   Document 24   Filed 02/04/26   Page 30 of 144

Green v. Christensen, Not Reported in Fed. Supp. (2023)

and the state conviction/charges but consecutive to the other two counts; 84 months for the first count of Using or Carrying a Firearm During a Federal Crime of Violence which was to run consecutive to all other counts and the state charges/ convictions; and 300 months for the second count of Using or Carrying a Firearm During a Federal Crime of Violence to run consecutive to all other counts and state charges/convictions. McEvoy ¶ 8; Dkt. No. 12-5 at 2-4 (Judgment in a Criminal Case from the Eastern District of Michigan). [2]

**\*2** On October 3, 2014, petitioner received an amended judgment. McEvoy ¶ 9; Dkt. No. 12-6. [3] The judgment, citing Federal Rule of Criminal Procedure 35(b), was amended to accommodate a "Reduction of Sentence for Changed Circumstances[.]" McEvoy ¶ 9; Dkt. No. 12-6 at 2. Accordingly, petitioner's imprisonment now totaled "120 months to run consecutive to his undischarged term of imprisonment in [the] State of Michigan case[.]" McEvoy ¶ 9; Dkt. No. 12-6 at 4.

On October 15, 2013, petitioner received a second amended judgment. McEvoy ¶ 10; Dkt. No. 12-7. [4] The sentence was amended to "[c]orrect[ ] ... [a c]lerical [m]istake ... [and] reflect the correct term of incarceration." Dkt. No. 12-7 at 2. The total term of imprisonment was now "180 months to run consecutive to [petitioner's] undischarged term of imprisonment in [the] State of Michigan case[.]" McEvoy ¶ 10; Dkt. No. 12-7 at 4.

As previously stated, on May 8, 2019, petitioner was paroled from state custody and received into federal custody. McEvoy ¶ 11; Dkt. No. 12-8 at 2 (Michigan Parole Board Order). Accordingly, "[p]etitioner's 180-month sentence [was] ... calculated to begin on May 8, 2019, the date he was paroled from his State Sentence, and will conclude on March 15, 2032, upon reaching his BOP Good Conduct Time Release Date." McEvoy ¶ 15; see also Dkt. No. 12-11 at 2-3 (noting projected release date).

### III. THE PETITION
Petitioner challenges the Bureau of Prison's ("BOP") decision to deny him 2,228 days of credit toward his federal sentence computation for his custody in the Michigan DOCS. Pet. at 2, 5-6; Dkt. No. 1-1 at 1. Petitioner argues that he is entitled to federal habeas relief because his Due Process rights were violated. Dkt. No. 1-1 at 2. Liberally construing the Petition and Traverse, it appears that petitioner generally argues that the BOP erred in failing to credit petitioner's federal sentence

with the time he spent in state custody. Id. at 8-9. Further, petitioner specifically contends that the BOP erred by failing to grant petitioner's motion for a *nunc pro tunc* designation. Id. at 3-10. Petitioner seeks recalculation of his jail time, specifically requesting the inclusion and application of 2,228 days credit from his detention in the Michigan DOCS. Pet. at 7.

### IV. DISCUSSION
Habeas corpus relief is available if a prisoner is "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). A petition is properly brought pursuant to 28 U.S.C. § 2241 where a federal prisoner challenges the execution of his or her sentence, rather than its imposition. See Adams v. United States, 372 F.3d 132, 134-35 (2d Cir. 2004); Jiminian v. Nash, 245 F.3d 144, 146-47 (2d Cir. 2001). Execution of a sentence includes, among other things, the computation of the sentence; thus, a § 2241 petition is the proper means to challenge said computation. Adams, 372 F.3d at 135 (citing Nash, 245 F.3d at 146); see also Cook v. N.Y.S. Div. of Parole, 321 F.3d 274, 278 (2d Cir. 2003) (explaining that a petitioner can use 2241 to challenge a federal official's computation of a sentence, parole decisions, or prison disciplinary actions). Petitions filed under section 2241 must name the petitioner's warden as respondent and be filed in the district of the petitioner's confinement. 28 U.S.C. § 2241(a); Rumsfeld v. Padilla, 542 U.S. 426, 435, 447 (2004).

**\*3** Here, petitioner is incarcerated at Ray Book, in the Northern District of New York, and challenges the amount of detention credit the BOP awarded him. Accordingly, the § 2241 petition is the appropriate procedural vehicle to address petitioner's challenge to the execution of his sentence. Adams, 372 F.3d at 135. Further, petitioner is correctly making this challenge within the district in which he is confined. 28 U.S.C. § 2241(a).

#### 1. Exhaustion
A petitioner seeking relief pursuant to § 2241 must exhaust his or her administrative remedies. Carmona v. United States Bureau of Prisons, 243 F.3d 629, 634 (2d Cir. 2001); accord Lallave v. Martinez, 609 F. Supp. 3d 164, 179 (E.D.N.Y. 2022). "This requires compliance with the BOP's four-step Administrative Remedy Program." Lallave, 609 F. Supp. 3d at 179 (citing 28 C.F.R. § 542.10(a)).

This Court has previously outlined how exhaustion must occur:

Case 9:22-cv-01161-BKS-ML   Document 24   Filed 02/04/26   Page 31 of 144

Green v. Christensen, Not Reported in Fed. Supp. (2023)

Available to all federal prison inmates is an internal, four-step administrative grievance procedure adopted by the BOP for the stated purpose of "allow[ing] an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." ... The first step of the prescribed process entails making an effort to obtain an early resolution of the matter by raising the issue informally to staff.... In the event this avenue does not lead to a successful resolution, the inmate next may submit a formal written [Administrative Remedy ("AR")] to the warden of the particular facility involved, utilizing a designated BP–9 form, within twenty days of the relevant event.... If the AR is denied, an appeal may be taken to the appropriate BOP Regional Director within twenty calendar days of the date of denial.... As a fourth and final step, an unfavorable decision from the Regional Director may be appealed to the General Counsel's office (also referred to as the "Central Office" [or "CORC"]) within thirty days of the date on which the Regional Director rejects the inmate's appeal.

*Barber v. Perdue*, No. 9:11-CV-0127 (NAM/DEP), 2012 **WL** 5996342, at *4 (N.D.N.Y. Nov. 9, 2012) (citing cases and 28 C.F.R. §§ 542.10(a), 542.13(a), 542.14(a), & 542.15(a)) (internal citations omitted).[5] In sum, "[u]ntil the BOP's Central Office considers the appeal, no administrative remedy is considered to be fully exhausted." *Strong v. Lappin*, No. 1:09-CV-3522, 2010 **WL** 276206, at *4 (E.D.N.Y. Jan. 15, 2010); *accord, Barber*, 2012 **WL** 5996342, at *4.

"A prisoner who seeks review of the Bureau of Prisons' denial of his nunc pro tunc designation request must first ... exhaust his administrative remedies." *Henriquez v. United States*, No. 1:12-CV-5590, 2012 **WL** 6739422, at *3 (S.D.N.Y. July 16, 2012) (citing *inter alia Setser v. United States*, 566 U.S. 231, 244 (2012) (stating that petitioner is free to challenge BOP's time credit determination first "through the Bureau's Administrative Remedy Program ... [a]nd if that does not work, [through] ... a writ of habeas corpus.")).

Here, petitioner represents that he properly exhausted his administrative remedies. Dkt. No. 1-1 at 2. Specifically, "[p]etitioner asserts, that he has filed BP 8, BP 9, BP 10, as well as BP 11 [forms; h]owever, because he has transferred several different times, his property has inadvertently been lost and/or misplaced[.]" *Id.* Accordingly, petitioner could not include documentary proof of the exhaustion of his administrative remedies with the instant pleading. *Id.*

**\*4** Respondent states that "[w]hile [p]etitioner has utilized the BOP's Administrative Remedy Program, to include filing multiple remedy submissions at all three levels and [an] attempt to raise the issue of his sentence calculation at the Institutional level, he has failed to properly raise this issue at any level and thus failed to fully exhaust this issue with the BOP's Central Office." McEvoy ¶ 18.[6] Specifically, petitioner attempted to file two administrative remedy submissions about his sentence computation at the institutional level in 2020; however, both were rejected for being incomplete and neither was re-filed. McEvoy ¶¶ 19-20; Dkt. No. 12-12 at 3 (showing two entries, with different remedy request numbers and alphabetic designations of "F" for submission to the local facility, indicating that the first administrative remedy submission, filed on December 14, 2020, was rejected for being incomplete because it failed to include the required Response and the second, filed on December 17, 2020, was not properly dated).

Further, petitioner filed four additional administrative remedy submissions, all sharing the same identification number and related to his "DHO Appeal," while incarcerated at Ray Brook on October 28, 2021 (to the Regional Office); November 17, 2021 (to the Regional Office); February 9, 2022 (to the Office of General Counsel); and July 1, 2022 (to the Office of General Counsel), respectively. McEvoy ¶ 21; Dkt. No. 12-12 at 4-5. None of these attempts at the administrative remedy system "included an attempt to re-file on [petitioner's] sentence calculation [claim]." McEvoy ¶ 21.

Petitioner's first challenge to his "DHO Appeal," sent to the Regional Office, was rejected the same day because petitioner failed to "file in the region [in which he was] housed." Dkt. No. 12-12 at 4. Petitioner's resubmission to the Regional level was denied on December 15, 2021. *Id.* Petitioner's then filed an appeal with CORC, which was rejected on December 15, 2021. *Id.* at 5. However, petitioner was given the opportunity to resubmit the appeal if it was modified "to include no more than one continuous page (Rejection Status Reason "CPG")," *James v. Rios*, No. 1:12-CV-0008, 2012 **WL** 2912249, at *2 (E.D. Cal. July 16, 2012), and "in proper form [sent] within 15 days of the date of the rejection notice [(Rejection Status Reason "RSA")]," *Williams v. Wilcox*, No. 1:13-CV-3249, 2014 **WL** 12825230, at *3 (D. Colo. Oct. 28, 2014). Dkt. No. 12-12 at 5 (indicating the rejection status reasons were "CPG" and "RSA"). Petitioner's fourth challenge regarding his "DHO Appeal" was denied by CORC on September 12, 2022. *Id.*[7]

Case 9:22-cv-01161-BKS-ML    Document 24    Filed 02/04/26    Page 32 of 144

Green v. Christensen, Not Reported in Fed. Supp. (2023)

**\*5** Despite petitioner's assertions, he has not properly exhausted his administrative remedies because he has not utilized all four steps of the Administrative Review Process for his sentence computation/time credit claim. McEvoy ¶¶ 18-21. The Administrative Remedy Generalized Retrieval report partially supports petitioner's representations that he engaged in the Administrative Remedy program because it corroborates that he filed six different Administrative Review submissions during the eighteen-month period from December of 2020 through May of 2022, two of which challenged petitioner's sentence computation/time credit. Further, the Administrative Generalized Retrieval Report demonstrated that petitioner filed forms seeking relief at each level of the Administrate Remedy process. *See* Dkt. No. 12-12 at 3-5 (indicating that the challenges to the "Time-Sentence Calculation"/"Jail Credit" were filed at the local institutional level whereas the challenges to the "DHO Appeal" were filed at the Regional and General Counsel level). Therefore, petitioner was aware of all of the different tiers which existed to provide him with administrative relief.

However, the report does not support petitioner's conclusions that he filed all of the necessary paperwork to appeal his complaint about his time computation/jail credit from the local facility level to the BOP's Office of General Counsel. In fact, the report shows that petitioner's sentence calculation/time credit claim never advanced through, let alone past, the first level of local facility administrative review. Therefore, the BOP's official record refutes petitioner's conclusory contentions that he properly filed everything he needed to exhaust his time computation claim. Thus, the claim is unexhausted. *Strong*, 2010 **WL** 275206, at \*4.

Petitioner replied that he "made multiple attempts to resolve this matter," by conferring with various Ray Brook employees including, but not limited to, someone in the records department, his Unit Team, the Case Manager Coordinator, the Associate Warden, and the Warden. Dkt. No. 16 at 2. Further petitioner contends that both he and his family unsuccessfully attempted to acquire administrative remedy forms (i.e. BP-9s, -10s and -11s), as well as writing unanswered letters to the Sentence Computation Center, the Northeast Regional Offices, and the Office of General Counsel. *Id.* Liberally construing petitioner's Traverse, he seems to argue that the exhaustion requirement should be waived given his aforementioned efforts.

"The Second Circuit has held that a petitioner may pursue a request for habeas corpus relief, including pursuant to 28 U.S.C. § 2241, even where he has failed to exhaust administrative remedies prior to filing the action in district court, only upon a showing of cause and prejudice." *Barber*, 2012 **WL** 5996342, at \*5 (citing *Carmona*, 243 F.3d at 634) ("[T]he interests of judicial economy and accuracy are served by requiring that, absent a showing of cause and prejudice, appeals proceed in the first instance through the agency review process."). When "legitimate circumstances beyond the prisoner's control preclude him from fully pursuing his administrative remedies, the [cause and prejudice] standard ... [provides for an accepted and well-recognized] excuse [for] th[e] failure to exhaust." *Carmona*, 243 F.3d at 634.

Here, petitioner has failed to present circumstances supporting waiver. First, petitioner's unwavering conclusion that exhaustion was impossible because of his inability to procure the BOP forms, either himself or via his family, is unpersuasive. In his pleading, petitioner indicates that he has successfully filed all of the BOP forms required to exhaust his remedies, which is inconsistent with, and contrary to, the argument advanced in his Traverse. Further, petitioner fails to provide any type of evidence regarding the unsuccessful attempts he and his family made to procure said forms. *See Zenquis v. Pullen*, No. 3:22-CV-1151, **2023 WL** 2931585, at \*4-\*5 (D. Conn. Apr. 13, **2023**) (emphasizing that "denial of grievance forms does not, in itself, make administrative remedies unavailable," yet finding petitioner sufficiently demonstrated, via documentation memorializing repeated requests to staff, that their actions delaying the provision of administrative grievance forms was sufficient to establish cause and prejudice to waive exhaustion). Moreover, even if petitioner did not properly initiate the appeal process, he did successfully engage with the administrative review program multiple times as evidenced by the Administrative Remedy Generalized Retrieval report. Consequently, petitioner either lied and was previously able to receive BOP forms or proper BOP forms were not a prerequisite for having his claims pass through the administrative review process.

**\*6** Second, petitioner cannot claim that he was ignored or unaware of how the grievance process worked. This is illustrated by the two Regional challenges petitioner filed regarding his "DHO Appeal." Dkt. No. 12-12 at 4. Petitioner was informed that his first submission was rejected on a procedural ground; however, he timely remedied the deficiency, as evidenced by the resubmission to the Regional office, which was "substantially denied in full", presumably on the merits. Dkt. No. 12-12 at 4; *see also Cooley,* No. 1:14-CV-3119, 2015 **WL** 393864, at \*2 (defining

Case 9:22-cv-01161-BKS-ML    Document 24    Filed 02/04/26    Page 33 of 144

Green v. Christensen, Not Reported in Fed. Supp. (2023)

the rejection reason code "DNY"). Even though petitioner was not successful, he was able to properly file and have his challenge evaluated through part of the administrative process. Therefore, this demonstrates that petitioner was able to engage in the Administrative Remedy Program; he just appears to have chosen to do so in a manner that did not comply with the BOP's established procedure.

Finally, to the extent petitioner felt that his history of rejections or denials would inevitably lead to an unfavorable decision with respect to his time credit claim, such assertions are insufficient to waive the exhaustion requirement. *See Rosenthal v. Killian*, 667 F. Supp. 2d 364, 367 (S.D.N.Y. 2009) ("[E]ven if it is likely that [petitioner's] administrative appeals would have been denied, such a showing would not prove futility."); *accord Atkinson v. Linaweaver*, No. 1:13-CV-2790, 2013 **WL** 5477576, at *2 (S.D.N.Y. Oct. 2, 2013) (holding that where "[p]etitioner provides no basis for his futility argument beyond the fact that his prior administrative requests were denied," such arguments are "insufficient as a matter of law to establish futility.") (citing cases).

Therefore, petitioner has failed to establish cause to excuse his failure to exhaust his administrative remedies. Accordingly, the Court need not decide whether he suffered prejudice. *See Stepney v. Lopez*, 760 F.2d 40, 45 (2d Cir. 1985).

### 2. Providing Nunc Pro Tunc Designation

Even assuming petitioner's claims are not unexhausted, they would still be denied as meritless. Petitioner contends that the BOP erred when it denied his motion for *nunc pro tunc* designation and refused to apply an additional 2,228 days of credit, from his incarceration at the Michigan DOCS facility, to his active federal criminal sentence. Pet. at 5-6; Dkt. No. 1-1 at 1, 4, 6-7. Further, in petitioner's reply, he argues that the BOP's decision denying his motion was without the proper consideration and, as a result, treated him unfairly. Dkt. No. 16 at 5-6.

"*Nunc pro tunc* designation is a retroactive designation that the BOP may grant in accordance with the discretion it is given under 18 U.S.C. § 3621(b) to designate the place of a federal prisoner's confinement." *Wright v. Hudson*, No. 9:12-CV-1638 (JKS), 2015 **WL** 5971055, at *3 (N.D.N.Y. Oct. 14, 2015); *see also Abdul-Malik v. Hawk Sawyer*, 403 F.3d 72, 75 (2d Cir. 2005) (explaining that "when [a] federal [criminal] sentence is imposed before imposition of [a] state sentence," the BOP has authority under 18 U.S.C. § 3621(b) "to designate the place of the prisoner's imprisonment," whether that be

a state or federal correctional facility or institution, "as the place of federal confinement [so that] ... the prisoner's sentences would effectively run concurrently.") (citing *inter alia McCarthy v. Doe*, 146 F.3d 118, 120, 123 (2d Cir. 1998)); *Barden v. Keohane*, 921 F.2d 476, 481, 483 (3rd Cir. 1990) (internal quotation marks omitted). [8]

**\*7** Any such applications must be given "full and fair" consideration by the BOP; however, it is important to remember that "[t]he decision whether to designate a facility as a place of federal detention is plainly and unmistakably within the BOP's discretion and [the federal courts] cannot lightly second guess a deliberate and informed determination by the agency charged with administering federal prison policy." *Abdul-Malik*, 403 F.3d at 76. Accordingly, the BOP's "decision regarding *nunc pro tunc* designation is reviewed for abuse of discretion." *Jennings v. Schult*, 377 Fed. App'x 97, 98 (2d Cir. 2010) (citing *McCarthy*, 146 F.3d at 123 n.4).

Petitioner cites to inapposite cases, from this Circuit, to support his assertion that the BOP erred in denying his *nunc pro tunc* motion. Specifically, the cases analyze situations where a federal criminal sentence was imposed prior to the imposition of a state criminal sentence. *See Abdul-Malik*, 403 F.3d at 74-75 (asking for "congressional consideration of [federal] statutes," to clarify "the questions as to how to treat prisoners sentenced first in federal and then in state court, and the phenomenon ... that neither the state nor the federal court can run those sentences concurrently[,]" after independently considering how it impacted the disputed *nunc pro tunc* denial); *Wright*, 2015 **WL** 5971055, at *4-*5 (considering appropriateness of *nunc pro tunc* denial where "the state court sentencing judge indicated that [petitioner's] state imprisonment term should run concurrently with the already-imposed federal term[.]").

It is important to acknowledge that these cases illustrate the proper legal circumstance when the BOP should apply 18 U.S.C. § 3621(b), the provision under which it is authorized to evaluate and decide a motion for a *nunc pro tunc* designation. *See McCarthy*, 146 F.3d at 122 (explaining that a *nunc pro tunc* consideration is appropriate where a petitioner "received a federal sentence while in state custody awaiting trial on state charges."); *see also Jennings*, 377 Fed. App'x at 98 (concluding that a *nunc pro tunc* designation is appropriate where "a defendant held in state custody is produced for federal sentencing ... and sentenced, and the state court later imposes a sentence"). However, that particular fact pattern is inapplicable to the instant case.

Here, when the BOP reviewed petitioner's *nunc pro tunc* motion, it concluded that "[b]ecause [the] original and Amended Judgment and Commitment Order **clearly state [petitioner's] federal sentence is consecutive to the prior State of Michigan sentence**, the BOP determined that Petitioner is ineligible[.]" McEvoy ¶ 14 (emphasis added); *see also* Dkt. No. 12-7 at 4 (sentencing petitioner to a "term of ... 180 months **to run consecutive to his undischarged term of imprisonment in [the] State of Michigan case**[.]") (emphasis added). [9], [10] Contrary to petitioner's position, it would be inappropriate for the BOP to interject itself into this scenario, and rely on 18 U.S.C. § 3621(b), because a different federal statute controls.

 **\*8** 18 U.S.C. § 3584(a) applies to an individual with multiple sentences of imprisonment and provides that when a federal criminal "term of imprisonment is imposed on a[n individual] who [wa]s already subject to an undischarged [state criminal] term of imprisonment, the terms may run concurrently or consecutively." *Id.* In fact, said terms must "run consecutively unless the court orders that the terms are to run concurrently." *Id.* Here, the district court intentionally and unambiguously indicated that the federal term of imprisonment was to run consecutively to the state sentence, an option consistent with the aforementioned federal statute. As the Supreme Court has stated, "[w]hen § 3584(a) specifically addresses decisions about ... consecutive sentences, and makes no mention of the Bureau's role in the process, the implication is that no such role exists." *Setser v. United States*, 566 U.S. 231, 239 (2012). Therefore, the sentencing judge properly exercised his authority directing how the state and federal sentences would run, and that direction did not lead to a circumstance where a *nunc pro tunc* designation was warranted. [11]

Accordingly, the BOP properly provided petitioner with full and fair consideration and did not abuse its discretion in denying petitioner's request for *nunc pro tunc* designation.

### 3. Providing Credit for Prior State Service

Alternatively, petitioner argues that he should receive credit towards his federal sentence for the time he spent in Michigan DOCS custody while he was awaiting his federal criminal trial. Dkt. No. 1-1 at 6-7, 9. Again, petitioner relies on several inapposite cases where federal credit was awarded to individuals who were not otherwise under primary state custody. *See Kayfez v. Gasele*, 993 F.2d 1228, 1290 (7th Cir. 1993) (awarding credit which was formerly applied to

petitioner's concurrent state court sentence, which had since been vacated, to petitioner's federal term instead); *McClain v. Bureau of Prisons*, 9 F.3d 503, 505 (6th Cir. 1993) (providing petitioner with credit on his federal sentence for the time he remained in custody, after being awarded state parole, until his federal sentence was issued); *United States v. Harris*, 876 F.2d 1502, 1506-07 (11th Cir. 1989) ("undisputed facts are that the United States agent of the DEA originated the action taken by state and city officers ... ask[ing] the local officers to seek a warrant from the available state judge," therefore, petitioner was entitled to federal credit for his pretrial detention); *United States v. Eidum*, 474 F.3d 579, 581 (9th Cir. 1973) (clarifying that time credit toward federal custody was only appropriate where some "federal process of any sort had issued against [petitioner, resulting in] ... his release [being] prevented[.]").

 **\*9** The BOP calculates a term of imprisonment as follows:

(a) Commencement of sentence.--A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

(b) Credit for prior custody.--A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences–

(1) as a result of the offense for which the sentence was imposed; or

(2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

that has not been credited against another sentence.

18 U.S.C. § 3585. "The Attorney General, through the BOP, possesses the sole authority to make credit determinations pursuant to 18 U.S.C. § 3585(b)[.]" *United States v. Whaley*, 148 F.3d 205, 206 (2d Cir. 1998) (citing *United States v. Wilson*, 503 U.S. 329, 333 (1992)) (further citations omitted).

Thus, "[u]nder § 3585(b) ... the BOP may grant a[n inmate] credit against his federal sentence for time served in custody prior to sentencing in district court so long as that presentence custody has not been credited against another sentence." *Lopez v. Terrell*, 654 F.3d 176, 178 (2d Cir. 2011) (citing 8 U.S.C. § 3585(b); *United States v. Labeille–Soto*, 163 F.3d 93, 99 (2d Cir. 1998) ("[A] defendant has no right to credit on

his federal sentence for time that has been credited against his prior state sentence.")) (internal quotation marks omitted).

Here, "[p]etitioner's 180-month sentence has been calculated to begin on May 8, 2019, the date he was paroled from his State Sentence, and will conclude on March 15, 2032, upon reaching his BOP Good Conduct Time Release Date." McEvoy ¶ 15; Dkt. No. 12-11 at 2-3. [12] This is consistent with § 3585(b) which indicates that a federal sentence commences when the petitioner is received into federal custody, which occurred when the US Marshals took petitioner into custody upon his parole from Michigan DOCS. McEvoy ¶ 11.

It is unclear why petitioner feels that he should be entitled to any further time toward his federal sentence. Any argument that "the sentencing court intended that [p]etitioner ... be credited for his service and pre-trial detention, while housed in the Michigan Department of Corrections," Pet. at 6-7, is irrelevant. "The Bureau of Prisons, and not the courts, determines when a[n individual's] sentence starts and whether th[at individual] should receive credit for any prior time spent in custody." *United States v. Montez-Gaviria*, 163 F.3d 697, 700-01 (2d Cir. 1998) (citing cases). Similarly, petitioner's assertion that his federal sentence commenced immediately upon payment of a special assessment, Pet. at 8, is also inconsistent with the plain meaning of § 3585(b) which conditions commencement of a sentence upon waiting for transport to or arriving at the federal detention facility.

**\*10** To the extent that petitioner contends that he should receive credit for the time he was participating in his federal criminal prosecution, such claims are meritless. Petitioner's presence in federal court was achieved by a writ ad prosequendum, which may be the federal detainer that petitioner references when he argues he is entitled to credit for his presentence custody. Pet. at 9. However, despite petitioner's assertions, he was not transferred out of state custody and into federal custody when he was released on the writ to appear in federal court for his criminal prosecution. *See Clapper*, 186 F. Supp. 3d at 239 ("When a state prisoner is transferred into federal custody pursuant to this writ, the state retains primary custody over [petitioner] ... because the prisoner is 'on loan' to federal authorities."). Therefore,

"[t]ime in custody pursuant to the writ does not count toward a federal sentence because the time is credited toward the state sentence ... [and w]hen the federal prosecution is complete, ... [petitioner is] return[ed] ... to the primary custodian[, the state.]" *Id.* at 240 (internal quotation marks and citations omitted).

In sum, the time that petitioner spent in state custody, prior to his parole and transfer into the exclusive custody of the US Marshals, was time he spent serving and receiving credit against his state sentence. Because § 3585(b) prevents receiving double credit for time spent in custody that has already been applied to another sentence, the BOP correctly applied the federal statute and any request for additional credit for his federal sentence is denied.

**V. CONCLUSION**
**WHEREFORE**, it is hereby

**ORDERED** that the petition, Dkt. No. 1, is **DENIED AND DISMISSED** in its entirety; and it is further

**ORDERED** that because the petition was brought under 28 U.S.C. § 2241, a certificate of appealability is not required for petitioner to appeal the denial of his petition. *See Murphy v. United States*, 199 F.3d 599, 601 n.2 (2d Cir. 1999) (holding that the Antiterrorism and Effective Death Penalty Act's certificate of appealability requirement does not apply to § 2241 petitions). However, to the extent one is required, the Court recommends that no certificate of appealability be issued because reasonable jurists would not find it debatable that petitioner has failed to demonstrate by a substantial showing that he was denied a constitutional right. *See* 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000); and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on the parties in accordance with the Local Rules.

**All Citations**

Not Reported in Fed. Supp., 2023 WL 4364186

---

**Footnotes**

Green v. Christensen, Not Reported in Fed. Supp. (2023)

Case 9:22-cv-01161-BKS-ML    Document 24    Filed 02/04/26    Page 36 of 144

1 Citations to the filings in this case refer to the pagination generated by CM/ECF, the Court's electronic filing system.

2 *See Green I*, Dkt. No. 92, Judgment.

3 The Criminal Docket Sheet in *Green I* does not have an entry for the Amended Judgment.

4 The Criminal Docket Sheet in *Green I* does not have an entry for the Second Amended Judgment.

5 The exhaustion provisions imposed by the Prisoner Litigation Reform Act ("PLRA") do not apply to habeas corpus petitions. *Carmona*, 243 F.3d at 634 ("[W]e note that although ... the P[LRA] ... contains a statutory administrative exhaustion requirement ... the requirements of the Act do not apply to habeas proceedings[,]" regardless of whether the petition is brought pursuant to § 2254 or § 2241).

6 "The BOP maintains a database known as the SENTRY Inmate Management System ("SENTRY"). In the ordinary course of business, computerized indexes of all formal administrative remedies filed by inmates are maintained by the Institution, Regional, and Central Offices." *Navarro v. Barraza*, No. 3:23-CV-0514, **2023 WL** 3483235, at *2 (M.D. Pa. May 16, **2023**). Management Analysts, like John McEvoy, have access to SENTRY and can review the database to determine compliance with the Administrative Remedy Program. McEvoy ¶ 17.

"Administrative remedy submissions in SENTRY are identified first by a remedy request number that is followed by an alphabetic designation showing whether the remedy was received by the local correctional facility (denoted by a letter "F"), Regional Office (denoted by a letter "R"), or Office of General Counsel (denoted by the letter "A"); and then a number showing how many times a particular request had been received at that level." *McDonald v. Sage*, No. 3:20-CV-1737, 2022 **WL** 503925, at *3 n.4 (D. Conn. Feb. 18, 2022).

"SENTRY generates a report titled 'Administrative Remedy Generalized Retrieval' which allows codes to be entered to identify the reason or reasons for rejecting a request for administrative relief." *Navarro*, No. 3:23-CV-0514, **2023 WL** 3483235, at *2. The retrieval report was the attachment McEvoy relied upon while discussing the information in this section. McEvoy ¶ 18; Dkt. No. 12-12.

7 The Administrative Remedy Generalized Retrieval report indicated that two of petitioner's attempts were "DNY". Dkt. No. 12-12 at 4 & 5. The status code DNY means that the remedy requested was "substantially denied in full." *Cooley v. True*, No. 1:14-CV-3119, 2015 **WL** 393864, at *2 (D. Colo. Jan. 29, 2015).

8 In deciding any *nunc pro tunc* motions, the BOP must evaluate:

(1) the resources of the facility contemplated;

(2) the nature and circumstances of the offense;

(3) the history and characteristics of the prisoner;

(4) any statement by the court that imposed the sentence--

(A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

(B) recommending a type of penal or correctional facility as appropriate; and

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

Green v. Christensen, Not Reported in Fed. Supp. (2023)

Case 9:22-cv-01161-BKS-ML    Document 24    Filed 02/04/26    Page 37 of 144

18 U.S.C.§ 3621(b).

9       Petitioner was first sentenced, on his state criminal conviction, to a minimum of eight years of state court custody. Dkt. No. 12-3 at 2. Approximately a year and a half later, while petitioner was serving his state court sentence, he was sentenced on his federal criminal conviction, Dkt. No. 12-5 at 4; however, that initial federal judgment was twice-amended, Dkt. No. 12-6 at 3-4 & Dkt. No. 12-7 at 3-4.

To the extent petitioner's Traverse advances new arguments asserted for the first time in petitioner's reply about the lawfulness of the resentencing procedures and the amended judgments, Dkt. No. 16 at 9, such arguments will not be considered because these challenges to the imposition of petitioner's sentence appear to best be presented in a habeas petition brought pursuant to Section 2255. *See Johnson v. United States*, 623 F.3d 41, 45-46 (2d Cir. 2010) (considering whether a habeas petition filed after an amended judgment is successive and concluding that it is not "regardless of whether it challenges the conviction, the sentence, or both.") (citing *Magwood v. Patterson*, 561 U.S. 320, 330-342 (2010)).

10      The resentencing was prior to petitioner's parole from his state court sentence, which occurred on May 8, 2019. Dkt. No. 12-8 at 2.

11      18 U.S.C. § 3584(a) is also used when an individual "was in primary state custody at the time his ... federal sentence was imposed ... [but] the district court's judgment [wa]s silent on [how the federal sentence should run,]" because the statute directs that "the court's silence [be] construed as an intent to impose a consecutive sentence, and the federal sentence commences only when primary state custody ... is relinquished." *Clapper v. Langford*, 186 F. Supp. 3d 235, 238 (N.D.N.Y. 2016). In those circumstances, courts within this Circuit have held that the BOP lacks authority to issue a *nunc pro tunc* designation. *See Jennings v. Schult*, 377 Fed. App'x 97, 98 (2d Cir. 2010) ("because [petitioner] was subject to an undischarged state term of imprisonment at the time the federal court resentenced him, and because the federal court [was silent and] did not direct that its sentence should run concurrently, the statute required that the sentence run consecutively, and the B[OP] was without authority to direct otherwise."); *Ortiz v. Breckon*, No. 9:17-CV-0559 (LEK), 2018 **WL** 557879, at *3 (N.D.N.Y. Jan. 22, 2018) ("[T]he BOP lacks ... authority [to designate, nunc pro tunc, the state facility as a federal prison] when the federal sentencing court imposes sentence after the state and fails to note whether a sentence should be consecutive or concurrent.").

Accordingly, here, where the federal sentencing court was more explicit using 18 U.S.C. § 3584(a) – directing the later-imposed federal sentence run consecutively to the undischarged state sentence – than the courts in *Jennings, Clapper* and *Ortiz*, it stands to reason that the same logic and conclusion applies: the BOP is without authority to grant a *nunc pro tunc* designation.

12      To the extent petitioner's Traverse puts forth new arguments raised for the first time in his reply about additional Earned Time Credit to which he feels he is entitled as the result of the First Step Act and petitioner's classification as "NOT ... [a] disqualif[ied] individual[,]" Dkt. No. 16 at 8, such arguments will not be considered at this time because the practice is generally inappropriate unless immediate release is at stake, which is not presently the case. *See e.g. Lallave*, 609 F. Supp. 3d at 182 ("[C]ourts typically do not allow new arguments to be made in a reply brief, and this rule applies in the context of habeas petitions," unless the new argument might entitle petitioner to immediate release).

---

**End of Document**                                      © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 4534997
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Jeromee Wade GREENOUGH, Petitioner,
v.
Mr. HUFFORD, Respondent.

No. 12 Civ. 08836(JPO)(SN).
|
Aug. 27, 2013.

*ORDER ADOPTING REPORT
ANQ RECOMMENDA TION*

J. PAUL OETKEN, District Judge.

**\*1** *Pro se* petitioner Jeromee Wade Greenough brings this petition for writ of *habeas corpus,* pursuant to 28 U.S.C. § 2241, alleging that the Federal Bureau of Prisons (the "30P") erroneously calculated the presentence custody time credited to his federal sentence. After reviewing the pleadings and record, Magistrate Judge Sarah Netburn issued a Report and Recommendation, recommending that since the time Petitioner seeks to have credited toward his federal sentence has already been credited towards his state sentence, Petitioner's writ *of habeas corpus* should be denied. This Court adopts Judge Netburn's thorough Report and Recommendation in its entirety.

## I. Standard of Review

In reviewing a magistrate judge's report and recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Where, as here, a magistrate judge provides notice to the parties in a report and recommendation that any objections must be provided within a certain period of time, and no such objections are filed, the district court will review the magistrate's findings for clear error. *See Wolff v. Town of My. Pleasant,* No. 06 Civ. 3865(CS)(LMS), 2009 WL 1468620, at * 1 (S.D.N.Y. May 26, 2009) ("The district court may adopt those portions of a report and recommendation to which no objections have been made, as long as no clear error is apparent from the face of the record." (citing cases)); *accord Mott v. IBM,* No. 10 Civ. 4933(JFB)(WDW), 2011 WL 3847176, at * 1 (E.D.N.Y.

Aug. 30, 2011) ("Where clear notice has been given of the consequences of failure to object, and there are no objections, the Court may adopt the report and recommendation without *de novo* review." (citing cases)). At bottom, "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings." *Thomas v. Arn,* 474 U.S. 140, 150, 106 S.Ct. 466, 88 L.Ed.2d 435(1985).

## II. Application

Magistrate Judge Netburn first found that Greenough failed to exhaust his administrative remedies, because Greenough filed a required appeal to the Regional Director three weeks late, and then did not respond to BOP's repeated requests for an explanation. (R & R at 4–5.) He additionally presented an untimely appeal to the Office of General Counsel and again failed to respond to the BOP's request for an explanation. (*Id.* at 4.)

Judge Netburn additionally concluded that Greenough's underlying claims are without merit. (*Id.*) First, Greenough contends that his federal sentence should be calculated to begin on either the date his federal detainer was lodged or the date he was transferred to federal custody pursuant to the writ *of habeas corpus ad prosequendum.* (*Id.* at 8.) This claim is inconsistent with 18 U.S.C. § 3585(a), however, which establishes that a federal sentence begins only after that sentence is first pronounced. (*Id.*) The BOP calculated Greenough's sentence to commence on June 17, 2004–the date his federal sentence was imposed; accordingly, Judge Netburn concluded that his federal sentence "could not have commenced any earlier than June 17, 2004." (*Id.* at 9.)

**\*2** Greenough also objects to his denial of credit for numerous periods of presentence custody, "collectively seeking credit for all custody prior to the imposition of his federal sentence." (*Id.*) First, with respect to the DSCC recalculation denying Greenough credit for presentence state custody from April 24, 2002 to October 15, 2003, Judge Netburn determined that the relevant recalculation "correctly credited Greenough for the period from October 11, 2001 —the date of his arrest for the underlying federal offense —through April 23, 2002—the date before the imposition of his first sentence...." (*Id.*) Greenough also seeks credit for the time spent in state custody from October 15, 2003 until he was transferred to federal custody in the Middle District of Florida on November 13, 2003. Those dates were credited to Greenough's state sentence however, and thus,

cannot be double counted towards his federal time, as October 15, 2003 had been credited as presentence custody credit and, the following day, on October 16, 2003, Greenough had begun his Hernando County state sentences. (*Id* .) Additionally, Greenough seeks credit for the 246 days spent in federal custody in the wake of his transfer to the custody of the U.S. Marshals pursuant to a writ *of habeas corpus ad prosequendum* on November 13, 2003, until his federal sentence's imposition in June 2004. These dates were credited towards his state sentence as well. (*Id.* at 11.) Moreover, while there are certain exceptions to the general prohibition against double counting state custody time, Judge Netburn determined that they did not apply here.

Greenbough's final objection, that his federal sentence's completion date has been improperly calculated, is also without merit. (*Id.* at 13.) According to Greenough, his current release date is set for January 1, 2022, which exceeds his 235–month sentence. (*Id.*) Greenough's sentence, however, is scheduled to conclude on December 26, 2020. (*Id.*)

Judge Netburn clearly informed the parties of their right to object within. 14 days of the Report's issuance. (*Id.* at 14.) The Report was filed on July 26, 2013, and no objections followed. Judge Netburn further recommended that no certificate of appealability be issued and that the Court certify, pursuant to 28 U .S.C. § 1915(a)(3), that any appeal from its order not be taken in good faith, thus denying *in forma pauperis* status for the purpose of an appeal. (*Id.* at 29 (citing *Coppedge v. United States,* 369 U.S. 438, 444–45 (1962).)

Having found no clear error, the Court adopts Judge Netburn's Report and Recommendation in its entirety.

### III. Conclusion
In accordance with Magistrate Judge Netburn's Report and Recommendation of July 26, 2013, Petitioner's writ *of habeas corpus* is DENIED. As Petitioner has not made a substantial showing of the denial of a constitutional right, no certificate of appealability will be issued. The Court certifies, pursuant to 28 U .S.C.1915(a)(3), that any appeal from its order would not be taken in good faith and, therefore, *in forma pauperis* status is denied for the purposes of an appeal.

**\*3** The Clerk of Court is directed to close the case.

SO ORDERED.

### REPORT AND RECOMMENDATION

SARAH NETBURN, United States Magistrate Judge.

**TO THE HONORABLE J. PAUL OETKEN:**
*Pro se* petitioner Jeromee Wade Greenough brings this petition for writ *of habeas corpus,* pursuant to 28 U.S.C. § 2241, alleging that the Federal Bureau of Prisons (the "BOP") erroneously calculated the presentence custody time credited to his federal sentence. Because the days that Greenough asks to have credited toward his federal sentence already have been credited to his state sentence, he is not entitled to the relief he seeks. Accordingly, his petition for writ of *habeas corpus* should be DENIED.

### BACKGROUND

Greenough is a prisoner at the Federal Correctional Institution in Otisville, New York ("FCI Otisville"), where he is serving a 235–month sentence for armed bank robbery.

### I. Factual Background
The following facts are taken from the parties' pleadings and the record.

#### A. Presentence State Custody
On October 11, 2001, Greenough was arrested by the Sumter County, Florida Sheriff's Department for armed robbery, conspiracy to commit robbery, aggravated assault with a deadly weapon and battery. On May 14, 2002, Greenough's Sumter County charges were dismissed in favor of a federal prosecution for the same offenses. It is the sentence calculation for this conviction that Greenough challenges.

#### B. Post–Sentence State Custody
On April 24, 2002, while Greenough's Sumter County charges were still pending, he was writted from Sumter County to Polk County, Florida, where he was sentenced to five years' imprisonment for attempted robbery with a deadly weapon. Following this sentence, he was transferred to Pasco County, Florida, to face additional charges of attempted robbery. On August 26, 2003, Greenough was sentenced in Pasco County to a 21–month sentence.

On August 29, 2003, pursuant to a writ, Pasco County released Greenough to Hernando County, Florida to address additional pending charges. On October 15, 2003, Greenough was sentenced in Hernando County to two concurrent ten-year sentences for armed robbery.

The Florida Department of Corrections credited to Greenough's state sentences, as time served, the period from Greenough's arrest on October 11, 2001, until October 15, 2003, when he was sentenced by Hernando County.

### C. Federal Conviction and Sentence

On November 13, 2003, following the imposition of his sentence in Hernando County, Greenough was released to the custody of the United States Marshals pursuant to a writ of *habeas corpus ad prosequendum* to face charges in the United States District Court for the Middle District of Florida for the conduct for which he was arrested on October 11, 2001, in Sumter County. He remained in the custody of the U.S. Marshals through June 28, 2004.

On February 27, 2004, Greenough pled guilty in the Middle District of Florida to nine counts arising from his commission of armed bank robberies from June 13, 2001, through October 11, 2001. On June 17, 2004, the court imposed a 235–month sentence on Greenough. That sentence was to run concurrently with the state sentences imposed by Pasco and Hernando Counties. On June 28, 2004, based on Florida's primary jurisdiction, Greenough was returned to the custody of the Florida Department of Corrections.

**\*4** On October 11, 2011, Greenough completed his state sentences and was released to the Bureau of Prisons to serve the balance of his federal sentence.

### D. Federal *Habeas Corpus* Petition

Greenough initially filed a petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2241 seeking the same relief sought here in the Middle District of Florida, but it was dismissed for lack of jurisdiction. *See Greenough v. Rodriguez,* 12 Civ. 02609 (M.D.Fla. Nov. 20, 2012). Because Greenough is incarcerated in a facility located in Otisville, New York, on December 4, 2012, he filed this petition in the Southern District of New York. On May 3, 2013, the Honorable J. Paul Oetken referred this case to my docket for a report and recommendation. On May 22, 2013, respondent filed his answer. On July 9, 2013, Greenough filed his reply and the petition became fully briefed.

## DISCUSSION

Greenough seeks *habeas* relief on the ground that his federal sentence was erroneously calculated based on presentence custody credit.

### I. Exhaustion

The Attorney General, acting through the BOP-and not the sentencing judge-is responsible for calculating sentencing credits for a prisoner's presentence custody. *United States v. Wilson,* 503 U.S. 329, 334–35 (1992). Thus the BOP's decision to grant such presentence custody credit is subject to judicial review only after the defendant has exhausted his administrative remedies with the BOP, *United States v. Labeille–Soto,* 163 F.3d 93, 99 (2d Cir.1998), or established cause and prejudice for his procedural default, *Carmona v. United States BOP,* 243 F.3d 629, 634 (2d Cir.2001). The requirement to exhaust "protect[s] the authority of administrative agencies, limit[s] interference in agency affairs, develop[s] the factual record to make judicial review more efficient, and resolv[es] issues to render judicial review unnecessary." *Beharry v. Ashcroft,* 329 F.3d 51, 62 (2d Cir.2003).

In his petition, Greenough states that he exhausted his administrative remedies. Respondent disputes this assertion, showing that Greenough filed a required appeal to the Regional Director three weeks late and did not reply to the BOP's request to explain his untimely submission, and then presented an untimely appeal to the Office of General Counsel while again failing to respond to the BOP's request for explanation.

A petitioner fails to exhaust when his appeal is denied as untimely and he does not explain his delay. *See Carmona,* 243 F.3d at 632–35; *Gordon v. Yusuff,* 102 F. App'x 415, 415 (5th Cir.2004) (*per curiam* ) (finding that federal *habeas* petitioner failed to exhaust administrative remedies when he provided no explanation for filing untimely appeal); *Collins v. Zickefoose,* 08 Civ. 00747(WWE), 2008 WL 4980361, at \*2 (D.Conn. Nov. 20, 2008) (same). Here, Greenough failed to provide any explanation or excuse for his untimely administrative grievance. Accordingly, Greenough has failed to exhaust. *See Carmona,* 243 F.3d at 634–35 ("We are unpersuaded that [petitioner] will be able to demonstrate

'cause' by proffering an adequate excuse for his failure to request an extension of time for his administrative appeal.").

**\*5** In his reply, Greenough argues that he mistakenly presented his claim at the institutional level when he should have submitted it first to the Designation and Sentence Computation Center (the "DSCC") in Grand Prairie, Texas, and then to the General Counsel—and that it was incumbent on the BOP to inform him of the proper procedure. Thus Greenough's defense for his untimely filings with the regional office and Office of General Counsel appears to be that he was never informed that he was supposed to submit his claims to those offices. The Court is doubtful that this reasoning excuses Greenough's failure to respond to the BOP's requests. Greenough, moreover, cannot show that he was prejudiced by any BOP action: he presented his claims to the proper institutions, but ignored their requests to explain why his submissions were late. Greenough's own failures to provide an explanation caused his default.

Nevertheless, the Court will exercise its discretion to proceed with the analysis because Greenough's underlying claims are without merit. *Martinez v. United States,* 19 F.3d 97, 99 (2d Cir.1994) (*per curiam* ) (finding that petitioner's claim for sentencing credit lacked merit notwithstanding seeming failure to exhaust); *Sarro v. Billingsley,* 11 Civ. 09395(MHD), 2013 WL 120817, at \*3 (S.D.N.Y. Jan. 10, 2013) (same).

## II. Merit's Review

Federal courts are required to construe a *pro se* petitioner's *habeas* petition liberally. *Thompson v. Choinski,* 525 F.3d 205, 209 (2d Cir.2008); *see Haines v. Kerner,* 404 U.S. 519, 520–21 (1972). "A writ *of habeas corpus* under § 2241 is available to a federal prisoner who does not challenge the legality of his sentence, but challenges instead its execution subsequent to his conviction." *Carmona,* 243 F.3d at 632; *accord Poindexter v. Nash,* 333 F.3d 372, 377 (2d Cir.2003) ("Under § 2241, a prisoner may challenge the ... calculations by the [BOP] of the credit to be given for other periods of detention." (citations and internal quotation marks omitted)).

A federal sentence commences, at the earliest, when an individual is sentenced. *See Lopez v. Terrell,* 654 F.3d 176, 185, 187 n. 5 (2d Cir.2011); *Labeille–Soto,* 163 F.3d at 98. Credit for time served before the commencement of a federal sentence is computed by the Attorney General, who delegates that responsibility to the BOP. *See Wilson,* 503 U.S. at 331–34; *United States v. Montez–Gaviria,* 163 F.3d 697, 700–01 (2d Cir.1998). In turn, the BOP is bound by the Sentencing

Reform Act of 1984, 18 U.S.C. § 3551 *et seq.* (the "Act"), which provides:

(a) Commencement of sentence.—A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

(b) Credit for prior custody.—A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—

**\*6** (1) as a result of the offense for which the sentence was imposed; or

(2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

that has not been credited against another sentence.

18 U.S.C. § 3585. Thus, under § 3585(b), the BOP cannot grant presentence custody credit if the prisoner has already received credit for the same period of custody toward a state sentence. *See Lopez,* 654 F.3d at 178 (citing *Labeille–Soto,* 163 F.3d at 99 (stating that a "defendant has no right to credit on his federal sentence for time that has been credited against his prior state sentence")).

There are limited exceptions to the general bar against double-counting presentence custody proscribed in § 3585(b). The BOP will grant presentence custody credit when a prisoner is serving concurrent federal and state terms, and the state raw effective full term (or "Raw EFT") is a date equal to or *earlier* than the federal Raw EFT.[1] *See Willis v. United States,* 438 F.2d 923, 925 (5th Cir.1971). Under the *Willis* exception, a prisoner is entitled to receive credit toward his federal sentence for all presentence, non-federal custody that occurs on or after the date of the federal offence until the date that the first sentence, whether state or federal, begins. (*See* Declaration of Dawn L. Giddings, Ex. 9 (the "BOP Sentence Computation Manual") at 1–22.)

The BOP also will grant presentence custody credit if the prisoner is serving concurrent federal and state terms, the state Raw EFT is a date equal to or *later* than the federal Raw EFT, but the date for the completion of the state sentence, after application of credit for qualified state presentence time, is reduced to a date that now is *earlier* than the federal Raw EFT.

*See Kayfez v. Gasele,* 993 F.2d 1288 (7th Cir.1993). Where the *Kayfez* exception applies, the BOP will grant enough presentence custody credit to reduce the prisoner's federal term so that it is equal to the state term, in order to give the prisoner full credit for his presentence custody. (*See* BOP Sentence Computation Manual at 1–22B to 22–C.)

### A. BOP's Sentence Calculation

Greenough's federal sentence began on June 17, 2004—the date it was imposed—while he still was serving his state sentence. His sentence initially was computed by the DSCC on December 30, 2010, and certified on May 23, 2011. [2] In this computation, Greenough's federal Raw EFT was determined to be July 9, 2021. Under *Willis,* he was (erroneously, it turns out) granted 735 days of presentence custody credit, from October 11, 2001—the date of his arrest for the conduct underlying Greenough's federal sentence—through October 15, 2003—the date when Greenough's third state sentence was imposed. This resulted in a scheduled release date of July 5, 2019.

After Greenough's *habeas* petition was filed, the DSCC reexamined its sentencing calculations and determined that Greenough should have received presentence custody credit from October 11, 2001, through only April 23, 2002—the day before the commencement of his first state sentence, for the Polk County conviction, which was imposed on April 24, 2002. Consequently, Greenough's sentence was recalculated to remove the *Willis* credit for the period from April 24, 2002, through October 15, 2003. Based on that recalculation, Greenough is scheduled to be released on December 26, 2020.

### B. Greenough's Objections to BOP's Calculations

**\*7** Read liberally, Greenough makes three objections to the calculation of his sentence. To begin, he objects that the BOP incorrectly calculated the date when his federal sentence commenced. Greenough may be arguing that his federal sentence should be calculated to start on either the date his federal detainer was lodged or the date he was transferred to federal custody pursuant to the writ of *habeas corpus ad prosequendum.* But this conclusion would be inconsistent with § 3585(a), which establishes that a federal sentence commences only after the sentence is pronounced. *See Lopez,* 654 F.3d at 185, 187 n. 5; *Labeille–Soto,* 163 F.3d at 98. Here the BOP calculated Greenough's sentence to commence on June 17, 2004–the date his federal sentence was imposed. *See* 18 U.S.C. § 3585(a). Accordingly, on its face this argument

fails to persuade because his federal sentence could not have commenced any earlier than June 17, 2004.

Next, Greenough challenges the denial of credit for various periods of presentence custody, collectively seeking credit for all custody prior to the imposition of his federal sentence. First, although understandably raised only in his reply submission, Greenough challenges the DSCC's revised sentencing calculation, which denied him credit for presentence state custody from April 24, 2002—the date his first sentence (Polk County) began—to October 15, 2003—the date his third sentence (Hernando County) began. So-called *Willis* credit for presentence state custody ceases when the first sentence (state or federal) begins. (*See* BOP Sentence Computation Manual) at 1–22); *see also Jackson.* 2009 WL 1835004, at \*5 (finding that BOP correctly calculated *Willis* credit from the time petitioner was detained until the time his state sentence began). Here, the DSCC's revised *Willis* calculation correctly credited Greenough for the period from October 11, 2001—the date of his arrest for the underlying federal offense-through April 23, 2002—the date before the imposition of his first sentence (imposed by Polk County). This revision corrected the earlier error of granting Greenough credit up to the date of his third sentence (imposed by Hernando County).

Second, Greenough seeks credit for the time spent in state custody from October 15, 2003, the date he started serving time on the Hernando County convictions, until he was transferred into federal custody to face charges in the Middle District of Florida, on November 13, 2003. These dates, however, already have been credited to Greenough's state sentence and therefore cannot be double-counted toward his federal sentence. In calculating his release date on the Hernando County convictions, the Florida Department of Correction granted Greenough presentence custody credit for the days from October 11, 2001 (his arrest date) until October 15, 2003. The day of October 15, 2003 cannot now be credited toward Greenough's federal sentence because § 3585(b) bars such double-counting. *See Lopez,* 654 F.3d at 178 (finding that "[i]f a defendant's presentence custody has been credited to another sentence, no § 3585(b) credit is available"); *United States v. Fermin,* 252 F.3d 102, 108 n. 10 (2d Cir.2001) ("The [BOP] could not credit [defendant] for the time he had already served because it was credited against another sentence— the state parole violation—even though he might have been discharged earlier on his state sentence."); *Werber v. United States,* 149 F.3d 172, 173 (2d Cir.1998). [3]

**\*8** Similarly, on October 16, 2003, Greenough had begun his Hernando County sentences, and he was not released into federal custody until they were completed on October 11, 2011. Time spent serving a state sentence also is time credited against that sentence. *See Mitchell v. Killian,* 08 Civ. 02373(LAP)(DF), 2009 WL 7451705, at \*3–4 (S.D.N.Y. Apr. 13, 2009) (finding that time served on state sentence was time credited to that sentence), *adopted by* 2011 WL 710612, at \*1 (S.D.N.Y. Feb. 25, 2011); *see also United States v. Rivers,* 329 F.3d 119, 121 n. 1 (2d Cir.2003) (finding that defendant could "not be credited by the BOP for the time served under the state sentence because that time ha[d] already been credited against another sentence—specifically, the state drug and counterfeit sentences" (citations and internal quotation marks omitted)). Accordingly, § 3585(b) bars double-counting the period from October 15, 2003, through November 13, 2003 (and, as explained below, until his federal sentence was imposed on June 17, 2004).

Third, Greenough seeks credit for the 246 days ostensibly spent in federal custody following his transfer to the custody of the U.S. Marshals pursuant to a writ of *habeas corpus ad prosequendum* on November 13, 2003, until his federal sentence was imposed on June 17, 2004. The writ of *habeas corpus ad prosequendum* enables a jurisdiction "to take temporary custody of a prisoner confined within another jurisdiction, and indict, prosecute and sentence such prisoner." *Flick v. Blevins,* 887 F.2d 778, 781 (7th Cir.1989). A prisoner remains, however, the subject of the state's jurisdiction during the time spent in federal custody pursuant to the writ. *See United States v. Lockenwitz,* 376 F. App'x 147, 150 (2d Cir.2010) ("[A] defendant held at a federal detention facility is not 'in custody' for the purposes of § 3585(a) when he is produced through a writ of *habeas corpus ad prosequendum*." (quoting *Fermin,* 252 F.3d at 108 n. 10)). In any event, these dates have already been credited toward Greenough's state sentence. *See also Wilson,* 503 U.S. at 334 (under 18 U.S.C. § 3585(b), a defendant may not receive double-credit for presentence detention time).

Relatedly, Greenough suggests that the filing of the federal detainer is sufficient to constitute federal custody for purposes of calculating presentence custody credit.[4] Some circuits have suggested that a federal prisoner may be awarded credit for presentence state custody if the prisoner can demonstrate that the federal detainer was the "exclusive" cause of his state detention. *See, e.g., United States v. Blankenship,* 733 F.2d 433, 434 (6th Cir.1984) (explaining that "the evolved legal precedent also teaches that the credit against the federal

sentence attaches only when the federal detainer is the *exclusive* reason for the prisoner's failure to obtain his release on bail"); *Shaw v. Smith,* 680 F.2d 1104, 1106 (5th Cir.1982) (same). Although this exception to the general prohibition against double-counting state custody time has not been adopted by the Second Circuit, some district courts have recognized it. *See, e.g., Rosemond v. Menifee,* 137 F.Supp.2d 270, 274–75 (S.D.N.Y.2000). But even allowing for this exception does not offer Greenough any relief. Greenough already has received *Willis* credit for the dates in state custody from October 11, 2001, the date of his arrest, to April 23, 2002, the date before his first state sentence commenced. From April 24, 2002, through June 17, 2004, the date his federal sentence commenced, he was serving his state sentence. Plainly, the federal detainer was not the "exclusive" cause of his state detention at that time.

**\*9** In his challenge to the BOP's denial of presentence custody credit, he cites to two cases. In *United States v. Smith,* 318 F.Supp.2d 875 (C.D.Cal.2004), the prisoner was arrested on federal charges, released on bond and thereafter committed a state offense for which he was arrested. The district court held that the prisoner was entitled to presentence custody credit against his federal sentence for all of his presentence incarceration, whether in federal or state custody, if the state custody resulted from commission of an offense that occurred after the commission of the federal offense. *Id.* at 878. *Smith* is distinguishable because, in that case, there was no allegation or evidence that the presentence time at issue had been credited against another sentence.[5] *Id.* By contrast, all of Greenough's presentence custody from April 24, 2002, until the imposition of his federal sentence was credited to his state sentences.

Greenough also cites to *Kayfez,* 993 F.2d at 1289, but that case does not apply here. The rule set forth in *Kayfez* is designed to allow a prisoner the full credit for his presentence custody. It applies only where a prisoner's state sentence is longer than his federal sentence, but, after the application of presentence custody credit to his state term, the state term would end before the federal sentence would be completed. In such circumstances, the BOP will grant a federal prisoner credit for enough presentence custody days to render his state and federal release date the same. Here, Greenough's state Raw EFT was never greater than his federal Raw EFT and so the application of presentence custody credit to his state sentence alone does not deny him full credit for his presentence custody. Allowing for presentence custody credit, Greenough's state sentences were completed on October 11,

2011—whereas the BOP's best estimate is that Greenough will not complete his federal sentence until December 26, 2020.

Finally, Greenough seems to object that his federal sentence's completion date has been improperly calculated. Specifically, he states that his current release date is January 1, 2022, which is not the proper calculation of the "(235) months from the start of [his] jail credit" on October 11, 2001. (Greenough Petition for *Habeas Corpus* Under § 228 U.S.C. § 2241 at 5.) It is unclear how Greenough derived this January 11, 2022 date; currently, Greenough's sentence is scheduled to end on December 26, 2020.

### CONCLUSION

For these reasons, I recommend that Greenough's petition for a writ of *habeas corpus* be DENIED. Because Greenough has not made a substantial showing of the denial of a constitutional right, I recommend that no certificate of appealability be issued. *See* 28 U.S.C. § 2253(c)(2); *Lucidore v. N.Y.S. Div. of Parole,* 209 F.3d 107, 112 (2d Cir.2000).

I further recommend that the Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from its order would not be taken in good faith and, therefore, that *in forma pauperis* status be denied for the purpose of an appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45 (1962).

* * *

### NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

**\*10** The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed.R.Civ.P. 6(a), (d) (adding three additional days when service is made under Fed.R.Civ.P. 5(b)(2) (C), (D), (E), or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed.R.Civ.P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable J. Paul Oetken at the Thurgood Marshall Courthouse, 40 Foley Square, New York, New York 10007, and to any opposing parties. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Oetken. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(b), 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).

**SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 4534997

---

### Footnotes

1    The Raw EFT is the date for completion of a sentence when no presentence custody credit is applied. It is calculated by adding the length of the sentence imposed to the commencement date of the sentence.

2    "Computing a federal sentence requires two separate determinations: first, when the sentence commences; and, second, to what extent the defendant in question may receive credit for any time already in custody." *Jackson v. Killian,* 08 Civ. 04386(SAS), 2009 WL 1835004, at *5 (S.D.N.Y. June 23, 2009) (citation omitted).

3    From the language employed in Respondent's submissions, October 15, 2013, also might be considered the first day of Greenough's Hernando County sentences. But for reasons discussed, even if this is correct, the day already has been counted.

4    It is not clear when the federal detainer was lodged.

5    It appears that the *Smith* court did not count time served on the state sentence as time credited to that sentence (at the least, when the government did not allege that it should be so credited). But in this Circuit time served on a state sentence is time credited towards that sentence and, thus, time that cannot be concomitantly credited towards a federal sentence. *See Mitchell,* 2009 WL 7451705, at *3–4; *see also Rivers,* 329 F.3d at 121 n. 1.

---

**End of Document**                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 6739422
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

William HENRIQUEZ, Petitioner,
v.
UNITED STATES of America, Respondent.

No. 12 Civ. 5590(AKH).
|
Dec. 27, 2012.

### OPINION AND ORDER TO AMEND PETITION

ALVIN K. HELLERSTEIN, District Judge.

**\*1** Petitioner, William Henriquez, complains that he is being detained illegally in a New York State Corrections facility, and moves pursuant to 28 U.S.C. § 2255 to correct his sentence. Petitioner, if he wishes to pursue the relief he requests, shall file an Amended Petition within sixty days of the date of this Order as detailed below.

Henriquez' motion may also be treated as a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. A court should construe a prisoner's petition without regard to its label, but with an eye to the relief sought. *Chambers v. United States,* 106 F.3d 472, 475 (2d Cir.1997). Since Henriquez' petition challenges the execution of his sentence, his petition is more properly filed pursuant to § 2241. *Grullon v. Ashcroft,* 374 F.3d 137, 139 (2d Cir.2004) ("A § 2241 petition generally challenges the execution of a federal prisoner's sentence, whereas challenges to the underlying conviction and sentence are properly raised in a § 2255 petition"). Moreover, relief under § 2255 is time-barred by the statute's 1–year period of limitation. Clearly, Henriquez consents to such treatment, since it is the only way he can now raise the issue of his sentence for federal judicial resolution. *See Simon v. United States,* 359 F.3d 139, 144 (2d Cir.2004) (requiring notice and consent before construing a petitioner's filing as a § 2241 petition). Therefore, I proceed to the merits of Henriquez' petition for relief.

### Discussion

I sentenced Henriquez on October 26, 2007 to a term of custody of 240 months, the statutory maximum. He, with other defendants, had been charged on May 12, 2006, with a Hobbs Act robbery (18 U.S.C. § 1951), conspiracy (18 U.S.C. § 1951–52), use of a firearm while committing the robbery (18 U.S.C. § 924(c)), and murder during the commission of the robbery (18 U.S.C. § 924(j)). Henriquez pleaded guilty to committing the robbery (Count Two of the four counts). His Guidelines calculation came to a net offense behavior level of 40, a criminal history category of VI, and a range of imprisonment of 360 months to life. *See* Order Declining to Revisit Opinion on Designation, March 25, 2011, explaining the calculation.

At the time I sentenced Henriquez, he also was under indictment in New York Supreme Court for manslaughter. The state-charged crime was a different crime, committed in different circumstances, in a different place, and involving different people. I did not consider his New York State indictment as a factor in determining Henriquez' federal sentence. That remained for the New York Supreme Court Justice to consider.

Following his federal sentencing, Henriquez was remitted to the New York State Supreme Court, to answer his state charges. He pleaded guilty to manslaughter, and the New York court sentenced him to a term of 15 years, to run concurrently with his 20–year federal sentence and to be served in the federal penitentiary. Transcript of plea and sentence, *People v. Henriquez,* 44934/2007, Nov. 15, 2007. The sentencing Justice could not, however, order the federal sentence to be served concurrently with the state sentence.

**\*2** It appears that New York State officials placed Henriquez in a New York State penitentiary where he began serving his state sentence, not in a federal penitentiary. He remains in the custody of the New York State Department of Corrections. Henriquez subsequently petitioned the U.S. Bureau of Prisons to transfer him to a federal penitentiary, and the Bureau asked me for my recommendation. I declined to make a recommendation, leaving the matter to the discretion of the Bureau. *See* Order, May 24, 2010. I re-affirmed that declination by my Order of March 25, 2011. I wrote:

> [T]he insurmountable fact is that Henriquez is responsible for two different homicides, and he was punished discretely for each one.

> Though the Supreme Court Justice ordered the state sentence to be served concurrently with any pending federal sentences, the Justice only had power to influence the service of the state sentence.

Order Declining to Revisit Opinion on Designation, Mar. 25, 2011. I declined to express an opinion "whether Henriquez should or should not be transferred into federal custody at the present time in order to make possible a concurrent service of his state and federal sentence. *Id.*

In a letter dated July 9, 2012, Henriquez argues that he should have been sent immediately to the federal penitentiary when I sentenced him, for I had recommended that he be detained at Fort Dix or another facility proximate to New York City to facilitate family visitation. Letter from William Henriquez to Jessica A. Masella. Assistant U.S. Att'y (July 9, 2012). Henriquez is incorrect My recommendation as to which federal institution should house Henriquez was not intended to order that Henriquez should serve his federal sentence before, or concurrently with, a state sentence. Individuals frequently are writted from state custody to federal custody to answer a federal indictment or complaint. When the federal proceeding is concluded, the individual is returned to state custody because "that individual is only on 'loan' from the state and must be returned to the state's custody at the conclusion of the [federal] proceedings." *Delima v. United States,* 213 F.3d 625 (2d Cir.2000) (Table); *see also United States v. Sanchez–Abreu,* No. 09 Cr 657(RMB), 2011 WL 1453814, at *2 (S.D.N.Y. Apr, 14, 2011) (federal custody commences only when state authorities relinquish the prisoner on satisfaction of the state obligation). In the normal course, Henriquez will serve his federal sentence after New York State relinquishes custody of him.

The "intention of the Federal sentencing court" was not, as Henriquez puts it, that Henriquez "state sentence be served concurrently with the Federal Sentence." Letter from William Henriquez (July 9, 2012). That may have been the intention of the Justice of the New York Supreme Court; it was not my intention. In light of Henriquez' extensive criminal record, I sentenced him to 240 months, the statutory maximum, based solely on his guilt of a nasty and dangerous set of crimes that killed a victim, and without considering the New York State criminal proceeding that lay ahead for him. It was the Justice of the New York Supreme Court who sentenced

him to a concurrent term, not I, Henriquez will begin his federal punishment after he is released by the New York State Department of Corrections, and "commences to run on the date on which the person is received at the penitentiary, reformatory, or jail for service of the sentence." 28 C.F.R. § 2.10.

**\*3** Henriquez complains that the federal Bureau of Prisons should remove him from New York State detention and transfer him to federal custody. The Bureau has discretion to "direct the transfer of a prisoner from one penal or correctional facility to another," 18 U.S.C. § 3621(b), and could have exercised that discretion to transfer Henriquez from a New York State to a federal facility, or to designate the state prison as a federal place of confinement for him, but it is not required to do so, and it has not done so. Nor have I required the Bureau to do so. Orders, May 24, 2010, March 25, 2011.

If he is not removed from state detention, Henriquez argues that the Bureau of Prisons should give him credit for his time in state custody when he does enter the federal system. According to statute, he is entitled to credit only for his "custody in connection with the offense or acts for which sentence was imposed." 28 C.F.R. § 2.10. The Bureau of Prisons, however, has the authority to designate the state prison as a federal place of confinement so that Henriquez can serve his federal and state sentences concurrently-also known as a nunc pro tunc designation. 18 U.S.C. §§ 3585(b), 3621(b); *see also United States v. Luna–Reynoso,* 258 F.3d 111, 117 (2d Cir.2001); *McCarthy v. Doe,* 146 F.3d 118, 122 (2d Cir.1998). A prisoner can challenge the refusal to grant such a designation by a habeas corpus petition before he enters federal custody, and a district court may review the Bureau's denial for abuse of discretioa *See Abdul–Malik v. Hawk–Sawyer,* 403 F.3d 72, 76 (2d Cir.2005) ("The decision whether to designate a facility as a place of federal detention is plainly and unmistakably within the BOP's discretion and we cannot lightly second guess a deliberate and informed determination by the agency charged with administering federal prison policy"); *Jennings v. Schult,* 377 Fed, Appx. 97, 97–98 (2d Cir.2010) (citing *McCarthy,* 146 F.3d at 123 n. 4); *Mitchell v. Lara,* No. 11 Civ. 1540(LBS), 2012 WL 1080290, at *2 (S.D.N.Y. Apr. 2, 2012).

A prisoner who seeks review of the Bureau of Prisons' denial of his nunc pro tunc designation request must first, however, exhaust his administrative remedies. *Setser v. United States,* 132 S.Ct. 1463, 1473 (2012); *Abdul–Malik,* 403 F.3d at 73.

Henriquez says that he requested and was denied a nunc pro tunc designation of credit, but I have no record to show that. Nor does Henriquez state whether he appealed the Bureau's decision administratively. In the absence of such information, my review of the issue would be premature.

If Henriquez wishes to proceed with this action after exhausting his administrative remedies, he must file an Amended Petition that (1) states that he is filing the Amended Petition under § 2241; and (2) details what steps he has taken to exhaust his administrative remedies within the Bureau of Prisons or show that the available remedies are in some way inadequate. The Amended Petition must replace the original Petition and include the relevant facts, dates, and claims.

 **\*4** Henriquez also may have state court remedies that he must exhaust before suing for federal habeas corpus relief. Henriquez must demonstrate that he has exhausted the remedies available to him in the New York State courts, that there is an absence of available New York State corrective process, or that there are circumstances rendering a state process ineffective to protect his rights. 28 U.S .C. § 2254("(b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—(A) the applicant has exhausted the remedies available in the courts of the State;

or (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant").

### Conclusion

The Petition is denied. The Clerk shall mark document number 1 as having been terminated.

Because Petitioner has not at this time made a substantial showing of a denial of a constitutional right, a certificate of appealability will not issue, *See* 28 U.S.C. § 2253. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith and therefore in forma pauperis status is denied for the purpose of an appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45 (1962). I should add, however, that the issue presented by Hennquez is novel and complex and that (he Court of Appeals might take a different view of the matter. *See* 28 U.S.C. § 2253.

SO ORDERED.

### All Citations

Not Reported in F.Supp.2d, 2012 WL 6739422

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:22-cv-01161-BKS-ML Document 24 Filed 02/04/26 Page 49 of 144

Islam v. New York State Board of Parole, Not Reported in Fed. Supp. (2016)

2016 WL 3943668
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Qissiys ISLAM, Petitioner,
v.
NEW YORK STATE BOARD
OF PAROLE, Respondent.

9:13-CV-00854 (GTS/TWD)
|
Signed 06/02/2016

**Attorneys and Law Firms**

QISSIYS ISLAM, 07-B-2668, Gouverneur Correctional Facility, Scotch Settlement Road, P.O. Box 480, Gouverneur, New York 13642, Petitioner pro se.

HON. ERIC T. SCHNEIDERMAN, Attorney General for the State of New York, Counsel for Respondent, 120 Broadway, OF COUNSEL: ALYSON J. GILL, ESQ., LISA ELLEN FLEISCHMANN, ESQ, Assistant Attorneys General, New York, New York 10271

**ORDER and REPORT-RECOMMENDATION**

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

**\*1** This matter has been referred to the Court for Report and Recommendation, pursuant to 28 U.S.C. § 636(b) and Northern District Local Rule 72.3(c), by the Hon. Glenn T. Suddaby, United States District Judge. Presently before this Court is the July 19, 2013, Petition of Petitioner Qissiys Islam seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254 against the New York State Board of Parole. ("Parole Board") (Dkt. No. 1.) The sole ground for habeas relief identified in the Petition is the claim that Petitioner was being held beyond his maximum sentence because of an error on the part of the Parole Board in the calculation of jail time credit.[1] *Id.* at 4.[2]

**I. BACKGROUND**

According to the Petition, Petitioner was convicted of a drug charge in Onondaga County in June 2007 and sentenced to three and a half year imprisonment followed by two and a half years post-release supervision. *Id.* at 9. Petitioner was released on parole to New Jersey in or about July 2009 and, while still on parole, was arrested on drug and weapons charges in New Jersey. *Id.* Petitioner has alleged in his Petition that the Parole Board failed to properly credit his jail time in New Jersey to the remainder of his New York sentence, resulting in his being incarcerated beyond the maximum expiration of his sentence. *Id.* at 11-12. The sole relief sought by Petitioner is the immediate release from incarceration. *Id.* at 4.

The Court learned through online Department of Corrections and Community Supervision ("DOCCS") inmate locator records that the maximum expiration date on Petitioner's sentence and on his post-release supervision was set at July 30, 3015.[3] According to the DOCCS inmate locator records, Petitioner was released from incarceration on July 30, 2015, the maximum expiration date of his sentence on the Onondaga County drug conviction in 2007.[4]

The Court has also learned through online DOCCS inmate locator records that Petitioner was incarcerated in New York again on September 21, 2015, on a new conviction on a charge of criminal sale of a controlled substance, and he is presently being housed in Wyoming Correctional Facility under Department Identification Number 15-B-2846.[5]

**B. Court's April 20, 2016, Order**
On April 20, 2016, the Court issued an Order directing the Parole Board to file a written submission setting forth the facts relevant to Petitioner's release from incarceration, and the Board's position with regard to whether the Petition was rendered moot by Petitioner's release and the expiration of his maximum sentence. (Dkt. No. 10 at 3.) Petitioner was directed to file a response setting forth his position on the mootness issue within twenty-one days after the Parole Board's submission. *Id.*

**\*2** On May 9, 2016, the Parole Board filed a Supplemental Memorandum of Law in opposition to Petitioner's habeas Petition in response to the Court's Order. (Dkt. No. 13.) Petitioner has not filed a response, and the time within which to do so under the Court's Order has expired with no request for an extension having been filed by Petitioner.

**C. The Parole Board's Supplemental Memorandum**
According to the Parole Board, it recently learned from New York State inmate records officials and counsel to the Division

Case 9:22-cv-01161-BKS-ML    Document 24    Filed 02/04/26    Page 50 of 144

Islam v. New York State Board of Parole, Not Reported in Fed. Supp. (2016)

of Parole that Petitioner was released to parole supervision on or about January 9, 2014, nearly six months after he had filed his habeas Petition. *Id.* at 4. Petitioner was subsequently arrested in Onondaga County on or about December 16, 2014, based on an indictment by an Onondaga County grand jury on new criminal sale of a controlled substance sale charges. *Id.* Petitioner was released a week later, likely because he made bail, and on March 11, 2015, was taken into custody by New York parole authorities on a parole warrant. *Id.* On April 23, 2015, following a final revocation hearing, Petitioner's parole was revoked, and he was ordered to be held on his sentence on the 2007 conviction until the maximum expiration date for that sentence, July 30, 2015. *Id.* at 4-5.

According to the Parole Board Supplemental Memorandum, Petitioner pleaded guilty to one count of third-degree criminal sale of a controlled on May 20, 2015, in exchange for a determinate three-year prison sentence in satisfaction of the new 2014 charges. *Id.* at 5. Petitioner was sentenced to that term on September 8, 2015, and is presently incarcerated solely pursuant to that sentence under DIN number 15-B-2846. *Id.*

## II. ANALYSIS

Article III, Section 2 of the United States Constitution limits the subject matter of the federal courts to those cases which present a "case or controversy." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). Thus, "in order for there to be a valid exercise of subject matter jurisdiction, a federal court must have before it an actual controversy at all stages of review, not simply at the time it is filed." *In re Flanagan*, 503 F.3d 171, 178 (2d Cir. 2007) (citing *Steffel v. Thompson*, 415 U.S. 452, 459 n. 10 (1974)). "In general, if an event occurs while an [action] is pending that renders it impossible for the court to grant any form of effectual relief to plaintiff, the matter becomes moot and subject matter jurisdiction is lost." *Id.* (citing *Altman v. Bedford Cent. Sch. Dist.*, 245 F.3d 49, 69 (2d Cir. 2001)); *Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983) ("The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed.").

In the context of a habeas petition, a petitioner no longer in custody is required to demonstrate a "collateral consequence" of the detention that can be remedied by granting the writ. *Spencer,* 523 U.S. at 7. When a habeas petitioner challenges the underlying criminal conviction, there is a presumption that collateral consequences exist. *Sibron v. New York*, 392 U.S. 40, 54-55 (1968) (cited in *Spencer,* 523 U.S. at 10-12). However, where as in this case, the petitioner

is not challenging the validity of his underlying conviction and his sentence has expired, collateral consequences are not presumed, and the petitioner has the burden of identifying some ongoing collateral consequence traceable to the challenge. *See Spencer,* 523 U.S. at 14 (Supreme Court declined to extend the presumption of collateral consequences to a case involving habeas petitioner's challenge to a parole revocation where he had finished serving entire sentence and imposed burden on petitioner to affirmatively demonstrate such consequences); *U.S. v. Mercurris*, 192 F.3d 290, 293 (2d Cir. 1999) (petitioner cannot rely upon the presumption of collateral consequences arising from a criminal conviction where he does not challenge his conviction, only his sentence enhancement); *Lewis v. New York*, No. 08-CV-4978, 2012 WL 5419899, at *3 (E.D.N.Y. Nov. 6, 2012) [6] (a habeas petitioner no longer in custody is required to establish the existence of a concrete and continuing injury that is a collateral consequence of the detention and can be remedied by granting the writ).

**\*3** Where a habeas petitioner attacks only his sentence and not the conviction, his sentence has been fully served, and there are no collateral consequences that could be eliminated by a successful attack on the sentence, the case is moot. *Lane v. Williams*, 455 U.S. 624, 631 (1982); *Roache v. Connell*, No. 06 Civ. 3567 (WHP)(RLE), 2012 WL 589670, at *4 (N.D.N.Y. Feb. 22, 2012) (habeas challenge to calculation of sentence moot where sentence had expired and petitioner was no longer in custody); *Reid v. Superintendent, Altona Corr. Facility*, 9:09-CV-0820, 2010 WL 4962990, at *3 (N.D.N.Y. Dec. 1, 2010) (habeas petitioner's claim that sentence had been improperly calculated found to be moot where petitioner had been released to parole and his sentence appeared to have expired). Habeas claims involving the calculation of credits for time in custody have been found moot following the petitioner's release from incarceration. *See, e.g., Ruddy v. Bocaud*, No. 08-CV-1319 (LEK), 2009 WL 5030790, at *3 (N.D.N.Y. Dec. 14, 2009) (habeas petitioner's challenge to sentencing credit given for time he service while on probation found to be moot where sentence had expired and there was no showing of collateral consequences); *Patterson v. Smith*, No. 5:10 CV 1825, 2011 WL 2144561, at *2 (N.D. Ohio May 31, 2011) ("The calculation of jail time credit to a sentence already served is not a collateral consequence....")

In its Supplemental Memorandum, the Parole Board takes the position that Petitioner's claim that he is entitled to about two month's jail credit toward his 2007 New York sentence is moot now that his sentence has expired, he suffers no

Case 9:22-cv-01161-BKS-ML    Document 24    Filed 02/04/26    Page 51 of 144

Islam v. New York State Board of Parole, Not Reported in Fed. Supp. (2016)

continuing injury that is a collateral consequence of his detention, and there is nothing the Court can do to remedy any improper calculation because there are no days left on the sentence to credit. (Dkt. No. 13 at 5-6.) The Court's April 20, 2016, Order provided Petitioner the opportunity to assert the existence of collateral consequences in this case and argue against a finding of mootness, and he has declined that opportunity. Therefore, finding the Parole Board's reasoning on the question of mootness to be sound and in accord with judicial precedent cited herein, the Court recommends that Petitioner's habeas Petition be denied and dismissed on mootness grounds.

**ACCORDINGLY**, it is hereby

**RECOMMENDED** that Petitioner's habeas Petition (Dkt. No. 1) be **DENIED** and **DISMISSED AS MOOT**; and it is hereby

**ORDERED**, that the Clerk's Office serve a copy of this Order and Report-Recommendation on Petitioner at Wyoming Correctional Facility, 3203 Dunbar Road, P.O. Box 501, Attica, New York 14011-0501, and provide Petitioner with copies of all unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam). [7]

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 3943668

---

**Footnotes**

1    Petitioner has not challenged the two and a half years post-release supervision sentence imposed on the Onondaga County drug charge. (*See generally* Dkt. No. 1.)

2    Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.

3    *See* http://nysdoccslookup.doccs.ny.gov/GCA00P00/WIQ2/WINQ130, last visited May 31, 2016.

4    *Id.*

5    *Id.*

6    Copies of all unpublished decisions cited herein will be provided to Plaintiff in accordance with *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

7    Because Petitioner has not filed a change of address since his release from Gouverneur Correctional Facility ("Gouverneur"), the Docket maintained by the Clerk's Office continues to list his address as Gouverneur. The DOCCS inmate locator list, however, lists Petitioner's present place of confinement as Wyoming Correctional Facility.

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 6093534
Only the Westlaw citation is currently available.
NOT FOR PRINT OR ELECTRONIC PUBLICATION
United States District Court,
E.D. New York.

Erik JOHANSSON, Petitioner,
v.
Frank STRADA, Respondent.

No. 12–CV–5296 (ARR).
|
Dec. 7, 2012.

**Attorneys and Law Firms**

Erik Johansson, Hartford, CT, pro se.

Kenji Marcel Price, United States Attorney's, Brooklyn, NY, for Respondent.

*OPINION AND ORDER*

ROSS, District Judge.

**\*1** Petitioner Erik Johansson ("Petitioner") files this habeas petition pursuant to 28 U.S.C. § 2241, *see* Dkt. # 1. On November 9, 2012, the court ordered respondent to show cause why the petition should not be granted, Dkt. # 3. Respondent submitted a response on December 3, 2012, Dkt. # 7. While the response was pending, petitioner sent the court a letter asking for an immediate ruling and informing the court that he "will not be responding to the government's order to show cause," Dkt. # 8. While petitioner would ordinarily have an opportunity to reply to respondent, the court will consider the petition fully briefed in deference to petitioner's wishes and proceed to rule on the petition. Accordingly, for the reasons stated below, the petition is denied.

**BACKGROUND**

I. *Facts*
Petitioner was convicted in the District of Rhode Island of one count of manufacturing 100 or more marijuana plants in violation of 21 U.S.C. § 841, and sentenced to eighteen months in custody and four years of supervised release. Dkt. # 1, Ex. 1, at 1; Dkt. # 7, at 3. Petitioner was transferred to the Metropolitan Detention Center ("MDC") Brooklyn in June of this year. Dkt. # 1, at 1; Dkt. # 7, at 3. Petitioner claims that after his arrival at the MDC, he was informed that he would be eligible for home confinement on November 11, 2012, Dkt. # 1, at 2. He also says that on July 20, 2012, he was told by the "Unit Team" at the MDC that the Bureau of Prisons ("BOP") had determined that petitioner should spend ninety to 120 days at a halfway house and in home detention to serve out the end of his term of incarceration. *Id.* At the time of the filing of the petition, petitioner was scheduled to be released on January 4, 2013, assuming he received all of his remaining good time credit. Dkt. # 1, at 2. [1] Consequently, according to petitioner, he should have been released from the MDC to a halfway house on either September 6 or October 6, 2012. *Id.*

The declaration of Deidre Butts, a unit manager at the MDC who is part of the team that makes recommendations for placement at a Residential Reentry Center ("RRC"), tells a slightly different story. According to Butts, petitioner requested at the July 20, 2012, meeting that he be able to transfer the district of his supervised release from the district of Rhode Island to the District of Connecticut. Dkt. # 7, Ex. B, Butts Deck, at 2. The Unit Team at MDC discussed with petitioner "a *possible* RRC placement of 90–120 days ..., depending on whether the United States Probation Office approved the relocation and whether BOP had sufficient time to process this referral." *Id.* (emphasis added).

Petitioner alleges that the Unit Team then inexplicably delayed sending out his relocation packet, requiring him to meet with them three times and sign multiple relocation documents. Dkt. # 1, at 2. He filed a Request for Informal Resolution on August 26, 2012, complaining about the Unit Team's "unexplained and detrimental delays." Dkt. # 1, Ex. 3. The Unit Team subsequently submitted a relocation packet to the United States Probation Office on or about August 27, 2012. Butts Decl., at 2. On September 4, 2012, petitioner filed a Request for Administrative Remedy with the MDC Warden, who is respondent in this case, complaining that "an entire month has been squandered by relocation papers not leaving Brooklyn MDC." Dkt. # 1, Ex. 4. The Warden responded on September 17, 2012, denying petitioner's request for relief, and explaining that the prison was still waiting for a response from the United States Probation Office in the District of Connecticut. Dkt. # 1, Ex. 5. The Warden's letter also explained that petitioner could appeal this decision to the Regional Director of the Federal Bureau of Prisons. *Id.*

Johansson v. Strada, Not Reported in F.Supp.2d (2012)

**\*2** On October 1, 2012, the Probation Office in the District of Connecticut accepted supervision of petitioner at his proposed release address in Southbury, Connecticut. Butts Decl. Ex. 3. Petitioner filed the instant petition on October 3. Dkt. # 1, at 6.[2] On or about October 4, the Unit Team conducted an individualized assessment of petitioner's prospects for RRC placement. Butts. Decl. at 2. The Team recommended that petitioner be placed in home confinement on December 5, 2012. Butts Decl. at 3; *id.,* Ex. 1.

II. *Statutory Framework*

The transfer of inmates to RRCs prior to their release is governed by 18 U.S.C. § 3624(c)(1), as amended by the Second Chance Act of 2007, Pub.L. No. 110–199, 122 Stat. 657 (2008). *See generally Thomas v. Terrell.* No. 10–CV–512, 2012 WL 1745434, at \*1 (E.D.N.Y. May 15, 2012). This statute provides as follows:

> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner in the community. Such conditions may include [an RRC].

18 U.S.C. § 3624(c)(1) (emphasis added). The Second Chance Act increased the maximum period of pre-release RRC placement from six to twelve months. However, "the BOP retains discretion under the Second Chance Act to decide whether and when an inmate should be placed at an RRC." *Fournier v. Zickefoose,* 620 F.Supp.2d 313, 318 (D.Conn.2009) (internal quotation marks omitted); *OwusuSakvi v. Terrell,* No. 10–CV–507 (KAM), 2010 WL 3154833, at \*5 (E.D.N.Y. Aug.9, 2010). In exercising its discretion over inmate placements and transfers, the BOP must consider five individualized factors enumerated in 18 U.S.C. § 3621(b). *OwusuSakyi,* 2010 WL 3154833, at \*5; *see* § 3624(c)(4) ("Nothing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621."). Those factors are:

(1) the resources of the facility contemplated;

(2) the nature and circumstances of the offense;

(3) the history and characteristics of the prisoner;

(4) any statement by the court that imposed the sentence-

> (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

> (B) recommending a type of penal or correctional facility as appropriate; and

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C. § 3621(b).

On October 21, 2008, the BOP issued a regulation to ensure that its pre-release placements conform to the Second Chance Act. *See* PreRelease Community Confinement, 73 Fed.Reg. 62443 (Oct. 21, 2008) (codified at 28 C.F.R. § 570.22). The regulation provides: "Inmates will be considered for pre-release community confinement in a manner consistent with 18 U.S.C. section 3621(b), determined On an individual basis, and of sufficient duration to provide the greatest likelihood of successful reintegration into the community, within the time-frames set forth in this part." 28 C.F.R. § 570.22.

**DISCUSSION**

I. *Section 2241 and Exhaustion of Administrative Remedies*

**\*3** A petition challenging the manner of execution of an inmate's sentence is properly brought pursuant to 28 U.S.C. § 2241. *See Carmona v. U.S. Bureau of Prisons,* 243 F.3d 629, 632 (2d Cir.2001); *see also United States v. Arthur,* 367 F.3d 119, 122 (2d Cir.2004) (finding that the court had jurisdiction to review § 2241 challenge to BOP policy brought by prisoner then on bail). Challenges to the execution of a sentence typically include matters such as "prison transfers, type of detention and prison conditions." *Jiminian v. Nash,* 245 F.3d 144, 146 (2d Cir.2001).

However, federal prisoners must exhaust their administrative remedies before filing a petition for habeas corpus relief in federal court. *Carmona.* 243 F.3d at 634. The requirement of exhaustion regarding § 2241 is "prudential, not statutory." *Pimentel v. Gonzalez,* 367 F.Supp.2d 365, 371

(E.D.N.Y.2005). The purposes of the exhaustion requirement include "protecting the authority of administrative agencies, limiting interference in agency affairs, developing the factual record to make judicial review more efficient, and resolving issues to render judicial review unnecessary." *Beharry v. Ashcroft,* 329 F.3d 51, 62 (2d Cir.2003). "Failure to exhaust administrative remedies results in a procedural default, which bars judicial review unless the petitioner persuades the Court that the failure to exhaust should be excused." *Rosenthal v. Killian,* 667 F.Supp.2d 364, 366 (S.D.N.Y.2009) (citing *Carmona,* 243 F.3d at 634). A court may excuse the failure to exhaust administrative remedies when it determines that exhaustion would have been futile. *Id.*

A federal inmate challenging the conditions of his confinement must follow the Administrative Remedy Program developed by the BOP. *Id.* (citing 28 C.F.R. §§ 542.10. 19). This program has four steps, each of which must be exhausted: (1) attempt to resolve the issue informally; (2) submit a formal written Administrative Remedy Request to the institution; (3) appeal any unfavorable decision by the institution to the Regional Director of the BOP; and (4) appeal any unfavorable decision by the Regional Director to the BOP's General Counsel. *Id.*

Here, petitioner attempted to resolve the issue informally and submitted a formal written Administrative Remedy Request to the institution. However, the record indicates he did not appeal the Warden's unfavorable decision to the Regional Director, nor did he appeal to the BOP's general counsel. *See* Dkt. # 7, Ex. A, Bork Decl., at 3. Petitioner asserts that "further administrative appeals will be futile" because "the halfway house period is presently lapsing," and, if there is any additional delay, "BOP will have rendered meaningless its decision that Petitioner is entitled to 90 to 120 days for his release plan." Dkt. # 1, at 3.

Petitioner's futility argument-and his claim more generally-appears to be based on two misunderstandings: First, he interpreted the Unit Team's discussions with him about a "possible" RRC placement 90 to 120 days prior to his release date to be a guaranteed "grant" of such placement. *Id.* at 2. Second, he understood his "home confinement eligibility date" to be November 11, 2012, *id.,* when, in fact, the Unit Team recommended a date of December 5, 2012, Butts Decl. at 3. Because petitioner's Request for Administrative Remedy was denied on September 17, 2012, it was not futile at that time to appeal the decision to the Regional Director. Although petitioner likely would not have prevailed in his appeal due to

the fact that his mistook the Unit Team's representations as a guarantee of RRC placement, the unlikelihood of success of a claim "is not tantamount to stating that it would have been futile to raise it." *Beharry,* 329 F.3d at 62.

II. *Merit s of Petitioner's Claim*

**\*4** Nevertheless, even assuming that petitioner's failure to exhaust administrative remedies is excused for futility, his claim fails on the merits. "It is well-established that 'a prisoner has no constitutional right to serve a sentence in any particular institution or to be transferred (or not transferred) from one facility to another.' " *Thomas,* 2012 WL 174534, at \*3 (quoting *Bennett v. Terrell,* No. 10–CV–1029 (ENV)(LB), 2010 WL 1170134, at \*1 (E.D.N.Y. Mar. 24, 2010)). Not only does the BOP have the authority to designate the place of confinement for federal prisoners, "the BOP's discretion in making prisoner classifications is 'virtually unfettered.' " *Bennett,* 2010 WL 1170134, at \*1 (quoting *Hudson v. Lindsay,* No. 08–CV–4658 (DLI), 2008 WL 4998395, at \*1 (E.D.N.Y. Nov.19, 2008)). Because of this, "the Court 'has no authority to order that a convicted defendant be confined in a particular facility.' " *Id.* (quoting *United States v. Williams,* 65 F.3d 301, 307 (2d Cir.1995)).

Specifically, under the Second Chance Act, "the BOP may place a prisoner where it wishes, so long as it considers the factors enumerated in § 3621." *Mueses v. Terrell,* No. 10–CV–1701 (SLT), 2010 WL 4365520, at \*4 (E.D.N.Y. Oct.27, 2010) (quoting *Levine v. Apker,* 455 F.3d 71, 82 (2d Cir.2006)); *see Owusu–Sakyi,* 2010 WL 3154833, at \*5 (explaining broad discretion afforded BOP under language and legislative history of Second Chance Act). Therefore, "[a]t best, if a federal inmate can demonstrate that the BOP failed to consider the § 3621(b) factors and instead applied an invalid regulation in reaching its determination, the Court could order the agency to make a new determination in compliance with 18 U.S.C. § 3621." *Thomas,* 2012 WL 174535, at \*3 (internal quotation marks omitted). To issue such an order, the court would have to find that the BOP abused its discretion. *Mueses.* 2010 WL 4365520, at \*4 (finding no abuse of discretion where, based on statutory factors, MDC Unit Team recommended RRC placement for sixty-three to ninety-two days, rather than one year).

Here, the Unit Team considered the statutory factors and found:

(1) [ ] there are community based resources available in petitioner's releasing area; (2) Petitioner was convicted of manufacture of 100 or More Marijuana Plants. [Petitioner's residence was searched and 183 marijuana plants were recovered; (3) [Petitioner] is a 49 year old offender serving a term of 18 months with 4 years supervised release. [Petitioner] has a High School Diploma with some college. For 2 years prior to his arrest, [Petitioner] operated marijuana ministry out of the renovated church where he resided. Prior to the ministry [Petitioner] was self-employed as a construction worker. He has secured residence but will need assistance in seeking employment, (4) no statement of the court, and (5) no pertinent policy statement issued by the U.S. Sentencing Commission.

**\*5** Butts Decl. at 3 (internal quotation marks omitted) (alterations in original). Based on these findings, the Unit Team recommended RCC placement in the District of Connecticut, as petitioner requested. Id Petitioner's frustration

with what he perceives as BOP's delays in transferring him to RCC is understandable, but petitioner has not demonstrated any failure by BOP "to consider the proper factors" or application of "any invalid regulation" that would warrant habeas relief. *Bennett,* 2010 WL 1170134, at *1. Accordingly, not only can "this Court [ ]not order the BOP to transfer the petitioner to an RCC," *Thomas.* 2012 WL 174535, at *3, but this court also sees no basis for finding that BOP abused its discretion, such that a reconsideration of petitioner's placement would be warranted.

### CONCLUSION

For the foregoing reasons, the petition is denied. Because petitioner has failed to make a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the court declines to issue a certificate of appealability. In addition, this court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith. *Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). The Clerk of the Court is directed to enter judgment and to close the case.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 6093534

---

### Footnotes

1     Because of a rule infraction, petitioner's good-time release date is now January 12, 2013. Dkt. # 7, Ex. A, at 2.

2     The petition was filed with the court on October 19, 2012, but petitioner's signature indicates he submitted the petition on October 3. Dkt. # 1, at 1, 6.

---

**End of Document**                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2008 WL 5467824
Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.

Amber LANE, Petitioner,
v.
Donna ZICKEFOOSE, Respondent.

No. 3:08–CV–567RNC.
|
Dec. 30, 2008.

West KeySummary

**1**      **Habeas Corpus** 🔑 Prisons; conditions, discipline, transfer, etc

Federal inmate's petition for writ of habeas corpus was dismissed as procedurally defaulted for failure to exhaust her administrative remedies. She had submitted an administrative remedy request to the warden after the twenty day deadline and failed to request an extension. Furthermore, she failed to appeal the denial by the warden of her administrative request within the next twenty days. She could not point to any circumstances beyond her control that prevented her from appealing the warden's denial of relief. 28 U.S.C.A. § 2241; 28 C.F.R. §§ 542.14(a), 542.15(a).

1 Case that cites this headnote

**Attorneys and Law Firms**

Amber Lane, Danbury, CT, pro se.

Ndidi N. Moses, U.S. Attorney's Office, New Haven, CT, for Respondent.

*RULING AND ORDER*

ROBERT N. CHATIGNY, District Judge.

**\*1** Petitioner, a federal inmate proceeding pro se, brings this action under 28 U.S.C. § 2241 against the Warden of the

Federal Correctional Institution in Danbury ("FCI Danbury") claiming that she is entitled to early release based on her successful completion of the Bureau of Prisons' residential drug abuse treatment program. The Warden opposes the petition on various grounds, including petitioner's failure to exhaust administrative remedies. I agree that the petition must be dismissed due to petitioner's failure to exhaust administrative remedies and therefore do not reach any other issue raised by the petition.

I. *Background*
On July 6, 2007, petitioner was sentenced in the United States District Court for the Middle District of Pennsylvania to a term of imprisonment of thirty months after pleading guilty to conspiracy to distribute, and possession with intent to distribute, cocaine and cocaine base in violation of 21 U.S.C. § 846(b)(1)(B).[1] The Court adopted the Presentence Investigation Report ("PSR") without modification. The PSR states that petitioner assisted in the purchase of firearms for her coconspirators and that the firearms were kept in several locations including petitioner's grandmother's house. Because petitioner could reasonably foresee her co-conspirators' possession of firearms in connection with the conspiracy, the PSR recommended a two-level enhancement pursuant to U.S.S.G. § 2D1.1(b)(1), which provides for such an enhancement "[i]f a dangerous weapon (including a firearm) was possessed." *See* Doc. # 13, Ex. 1 at ¶¶ 5, 7.

The BOP provides residential substance abuse treatment to eligible inmates in accordance with 18 U.S.C. § 3621(b) and (e). An inmate who successfully completes all phases of the treatment program and meets all other eligibility requirements may receive early release of up to 12 months pursuant to 18 U.S.C. § 3621(e)(2)(B). Early release is not available to certain categories of inmates, including inmates whose current offense is a felony involving possession of a firearm. *See* 28 C.F.R. § 550.58(a)(1)(vi)(B); BOP Program Statement 5330.10, *Drug Abuse Program Manual, Inmate,* § 6.1. When petitioner was accepted into the program, she was notified that she would not be eligible for early release. *See* Doc. # 13, Ex. 1 at ¶ 8 & Ex. 1–C.

On September 13, 2007, petitioner submitted an Administrative Remedy form to the Warden challenging the determination that she was not eligible for early release. Her complaint was rejected as untimely because she did not submit it within twenty days of the denial of early release as required by 28 C.F.R. § 542.14(a). Petitioner

did not re-submit the Administrative Remedy Form with an explanation of the reason for the delay. *See* Doc. # 13, Ex. 1 at ¶¶ 13–15 & attached documents, Ex. 1–D & 1–E. Instead, she filed this petition seeking early release. The petition relies on a recent Ninth Circuit decision holding that the BOP regulation categorically excluding from early release prisoners convicted of offenses involving possession of firearms violates the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). *See Arrington v. Daniels,* 516 F.3d 1106 (9th Cir.2008) (invalidating 28 C.F.R. § 550.58(a)(1)(vi)(B)).

II. *Discussion*

 **\*2**  Federal inmates must exhaust administrative remedies before filing a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. *See Carmona v. United States Bureau of Prisons,* 243 F.3d 629, 634 (2d Cir.2001). The exhaustion requirement's purposes include "protecting the authority of administrative agencies, limiting interference in agency affairs, developing the factual record to make judicial review more efficient, and resolving issues to render judicial review unnecessary." *Beharry v. Ashcroft,* 329 F.3d 51, 62 (2d Cir.2003).

The administrative process provided to federal inmates by the BOP consists of four steps: informal resolution with staff, 28 C.F.R. § 542.13(a); a written administrative remedy request to the Warden submitted within twenty calendar days of the event underlying the request, 28 C.F.R. § 542.14(a); an appeal to the Regional Director of the BOP within twenty calendar days of the denial of relief by the Warden, 28 C.F.R. § 542.15(a); and an appeal to the General Counsel's Office within thirty calendar days of the denial of relief by the Regional Director. *Id.* The time limits at any level of review may be extended for a valid reason. 28 C.F.R. §§ 542.14(b), 542.15(a).

Petitioner did not comply with this process. She submitted an administrative remedy request more than twenty days after she was denied early release, failed to seek an extension of time to file the request, and failed to appeal to the Regional Director within twenty days of the denial of relief by the Warden.

Failure to timely exhaust administrative remedies results in a procedural default, which precludes judicial review of the defaulted claim unless the inmate is able to justify the failure to exhaust. *See Carmona,* 243 F.3d at 634. Petitioner contends that her failure to exhaust should be excused because her counselor incorrectly advised her that the matter would be resolved at the informal resolution phase and she was unaware that the time to file the administrative remedy request expired while she was waiting for an informal resolution to occur. Petitioner states that she abandoned the administrative process because she was advised that the Regional Director would agree with the Warden's determination that the administrative remedy request she filed was untimely. *See* Doc. # 10 at 8.

When legitimate circumstances beyond an inmate's control preclude her from fully pursuing administrative remedies, a court may be able to excuse the default. *See Carmona,* 243 F.3d at 634. That is not the situation here. Even assuming petitioner's initial failure to file a timely administrative review request could be excused if she reasonably relied on incorrect advice provided by her counselor, she points to no circumstance beyond her control that prevented her from appealing the Warden's denial of relief. Petitioner's belief that the Regional Director would agree with the Warden does not justify her procedural default. *See Murray v. Carrier,* 477 U.S. 478, 488 (1986) ("[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded ... efforts to comply with the ... procedural rule.").

III. *Conclusion*

 **\*3**  Accordingly, the petition is hereby denied. Because reasonable jurists would not find it debatable that petitioner failed to exhaust her administrative remedies, a certificate of appealability will not issue. *See Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).

So ordered

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 5467824

---

**Footnotes**

---

1      Petitioner's sentence has been reduced to twenty-four months based on retroactive application of the Crack Cocaine Sentencing Guideline Amendment. Her expected release date is April 24, 2009. *See* Doc. # 9, Ex. 1 at ¶¶ 4–5.

**End of Document**                                      © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 11350815
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Daniel LUGO, Petitioner,
v.
D. HUDSON, Respondent.

9:13-CV-0753 (GTS)
|
Signed 06/16/2014

**Attorneys and Law Firms**

DANIEL LUGO, 67190-053, FCI Ray Brook, P.O. Box 900, Ray Brook, NY 12977, Petitioner, pro se.

OFFICE OF THE UNITED STATES ATTORNEY, P.O. Box 7198, 100 S. Clinton Street, OF COUNSEL: CHARLES E. ROBERTS, AUSA, Syracuse, New York 13261-7198.

### *DECISION AND ORDER*

GLENN T. SUDDABY, United States District Judge

## I. INTRODUCTION

**\*1** Petitioner Daniel Lugo seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Dkt. No. 1, Petition ("Pet."); Dkt. No. 1–1, Memorandum of Law in Support of Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 ("Mem."). On October 29, 2002, petitioner was sentenced in the United States District Court for the Eastern District of New York to serve an aggregate term of ten years in prison and five years supervised release following his conviction for conspiracy to commit murder in violation of 18 U.S.C. § 1959(a)(5). Pet. at 1; see *United States v. Lugo*, No. 1:01–CR–0922, Dkt. No. 218, Judgment in a Criminal Case. Petitioner does not contest his conviction. Rather, he asserts that the Federal Bureau of Prisons ("BOP") incorrectly calculated his sentence. See Pet.; Dkt. No. 7, Supplement to Petition ("Supp."). [1] Respondent opposes the petition. Dkt. No. 10, Response to Petition for Writ of Habeas Corpus ("Response"); Dkt. No. 10–1, Unpublished Cases; Dkt. No. 10–2, Declaration of Bryan Erickson ("Erickson Dec."); Dkt. No. 10–3, Exhibits to Erickson Dec. ("Exhibits"). On November 18, 2013, petitioner filed a reply. Dkt. No. 11, Reply to Response to Petition for Writ of Habeas Corpus

("Reply"). For the reasons that follow, the petition is denied and dismissed.

## II. BACKGROUND

The following factual summary is derived from the petition, respondent's answer, and the records provided by both parties. On February 4, 2000, petitioner was sentenced in New York County to serve an aggregate term of six to twelve years in a New York State correctional facility for his conviction of criminal possession of a controlled substance and conspiracy charged in two separate state indictments. Dkt. No. 10–2, Erickson Dec., ¶¶ 5–6; Dkt. No. 10–3, Exhibit B, Sentence and Commitment Orders, New York County Supreme Court. On March 8, 2000, petitioner began serving his state sentence. He received 98 days of prior custody credit toward his state sentence December 1, 1999 to March 7, 2000. Dkt. No. 10–2, Erickson Dec. at ¶ 7; Dkt. No. 10–3, Exhibit A, Sentence Monitoring, Independent Sentence Computation.

On October 18, 2001, an Assistant United States Attorney applied for a federal writ of habeas corpus ad prosequendum to secure petitioner's appearance in the Eastern District of New York for arraignment on Indictment Number 1:01–CR–0922, charging him with conspiracy to commit murder. Dkt. No. 10–2, Erickson Dec. at ¶ 8; Dkt. No. 10–3, Exhibit C, Application for Writ of Habeas Corpus, Oct. 4, 2001. The writ was issued on October 4, 2001, and it specified that petitioner was to be produced for arraignment and thereafter maintained "within the jurisdiction of" the issuing federal court "pending the satisfaction of this writ or the future orders of the Court." Dkt. No. 10–3, Exhibit C at 1.

**\*2** On October 29, 2002, petitioner was sentenced in the Eastern District of New York to serve ten years in prison and five years supervised release upon his conviction for conspiracy to commit murder. Dkt. No. 10–3, Exhibit D, Judgment in a Criminal Case. The district court ordered the federal sentence to run consecutively to petitioner's New York state sentence. *Id.* at 2. On November 14, 2002, the United States Marshals Service in the Eastern District of New York returned petitioner to the custody of the New York Department of Corrections and Community Supervision ("DOCCS"), and lodged the federal judgment and commitment order as a detainer. Dkt. No. 10–2, Erickson Dec. at ¶ 10; Dkt. No. 10–3, Exhibit E, Individual Custody and Detention Report, USM 129, at 2, Status History.

On October 31, 2008, petitioner was released from DOCCS custody into the custody of the United States Marshals

WESTLAW   © 2026 Thomson Reuters. No claim to original U.S. Government Works.   1

Service in this district to begin serving his federal sentence. Dkt. No. 10–3, Exhibit E, Individual Custody and Detention Report, USM 129. The BOP calculated petitioner's sentence and determined that it commenced on October 31, 2008, with a projected release date of September 3, 2017. Dkt. No. 10–2, Erickson Dec. at ¶ 4; Dkt. No. 10–3, Exhibit G, Sentencing Computation Monitoring Data.

On January 7, 2013, petitioner filed an Informal Resolution request at FCI Ray Brook in which he argued that when his federal sentence was imposed on October 29, 2002, he was ordered committed to the custody of the BOP but instead, the United States Marshals Service took him to DOCCS. Petitioner argued that, as a result, his federal sentence expired and he was entitled to release. Dkt. No. 1 at 24, Informal Resolution. On January 14, 2013, his request for relief was denied because the facility determined petitioner "cannot get credit that was credited to another sentence," and "[t]ime spent borrowed on a writ from state custody is not credit." Dkt. No. 1 at 25, Handwritten Answer.

On January 24, 2013, petitioner filed a Request for Administrative Remedy in which he raised the same arguments. Dkt. No. 1 at 22, Request for Administrative Remedy. In a response dated February 15, 2013, Warden D. Hudson denied petitioner's request. Dkt. No. 1 at 23, Part B–Response, Feb. 15, 2013. He explained that the BOP was prohibited from commencing petitioner's federal sentence on October 29, 2002, the date it was imposed, because the district court ordered the sentence to run "consecutive with the state court sentence" imposed on February 4, 2000. *Id.* Warden Hudson further explained that on October 18, 2001, petitioner was temporarily removed from state custody "on a federal writ for [his] current 10 year term of imprisonment," that on November 14, 2002, he was returned to state custody and the "federal sentence was lodged as a detainer with N.Y. state authorities," and that on October 31, 2008, petitioner was paroled on the state sentence, and his "consecutive federal sentence commenced" on that date. *Id.* Warden Hudson also explained that under BOP Program Statement 5880.28:

> time spent in custody under a writ of habeas corpus from non-federal custody will not in and of itself be considered for the purpose of crediting presentence time. The primary reason for 'writ' custody is not the federal charge. The federal court merely

> 'borrows' the prisoner under the provisions of the writ for secondary custody.

*Id.* (quoting Program Statement 5880.28). Warden Hudson concluded that "[s]ince the period of time [petitioner was] requesting was credited to another sentence, it cannot be applied" to petitioner's federal sentence. Id. (referencing 18 U.S.C. § 3585(b) and Program Statement 5880.28).

On February 23, 2013, petitioner filed a Regional Administrative Remedy Appeal. Dkt. No. 1 at 20, Regional Administrative Remedy Appeal. Petitioner argued that the federal district court ordered that he be committed to the custody of the BOP for ten years to run consecutive with his state sentence, and remanded him to the custody of the United States Marshals Service. *Id.* He claimed that because the Marshals Service transported him to DOCCS, they did not obey the federal court's order. *Id.* According to petitioner, after he completed his federal sentence, he was then supposed to be returned to DOCCS to continue serving his state sentence. *Id.* He argued that his federal sentence was "still running" while he was in DOCCS custody, and had expired. *Id.*

**\*3** On March 28, 2013, petitioner's appeal was denied. Dkt. No. 1 at 21, Part B–Response. Regional Director J.L. Norwood explained that petitioner was in primary state custody when he was produced in federal court "via a federal Writ of Habeas Corpus ad Prosequendum." *Id.* Norwood explained that the federal court ordered his sentence to run consecutively to petitioner's state sentence; New York had primary custody over petitioner until he completed his state sentence on October 31, 2008; petitioner's federal sentence began upon his release from state custody; and petitioner's "production for federal prosecution via a federal writ did not shift primary jurisdiction from the state." *Id.* Finally, Norwood explained that the period of time for which petitioner sought credit against his federal sentence was credited to his state sentence, and could not be awarded twice. *Id.* (citing 18 U.S.C. § 3585(b)).

On April 12, 2013, petitioner filed a Central Office Administrative Remedy Appeal. Dkt. No. 1 at 18, Central Office Administrative. Remedy Appeal. He raised the same arguments he presented in his regional appeal, but also argued that because the district court did not stay his federal sentence, it began to run when the district court committed him to the

Case 9:22-cv-01161-BKS-ML   Document 24   Filed 02/04/26   Page 61 of 144

Lugo v. Hudson, Not Reported in Fed. Supp. (2014)

custody of the Marshals Service and had therefore expired. *Id.* On May 22, 2013, his appeal was denied. Dkt. No. 1 at 19, Administrative Remedy No. 721266–A1, Part B–Response.

On May 8, 2013, petitioner filed another Informal Resolution request in which he asserted that there was never a writ of habeas corpus ad prosequendum issued to take him into federal custody on October 18, 2001. He argued that his federal sentence therefore began to run on October 18, 2001, and was expired. Dkt. No. 1 at 14, Informal Resolution. Petitioner did not receive a response, and on May 28, 2013, he filed a Request for Administrative Remedy repeating this argument. Dkt. No. 1 at 11, Request for Administrative Remedy; Dkt. No. 7–1 at 6, Request for Administrative Remedy. He also claimed that he was in exclusive federal custody from October 18, 2001 to October 29, 2002, and that counting forward from either date, his federal sentence was satisfied. Dkt. No. 1 at 11; Dkt. No. 7–1 at 6.

On June 18, 2013, petitioner's request for an administrative remedy was denied. Dkt. No. 7–1 at 7, Request for Administrative Remedy, Part B–Response. Warden D. Hudson explained that the issues raised in petitioner's papers were resolved in previous administrative remedy filings, and petitioner presented "no new information that would warrant further review." *Id.* On June 25, 2013, petitioner filed a Regional Administrative Remedy Appeal. Dkt. No. 7–1 at 8, Regional Administrative Remedy Appeal. On July 31, 2013, his appeal was denied because petitioner's claims were previously addressed, and his sentence was "computed correctly [.]" Dkt. No. 7–1 at 10, Part B–Response.

Petitioner filed a Central Office Administrative Remedy Appeal on August 2, 2013. Dkt. No. 7–1 at 11, Central Office Administrative Remedy Appeal. On August 21, 2013, petitioner's appeal was rejected and returned to him because he failed to provide a copy of his Regional Administrative Remedy Appeal form or a copy of the response from the Regional Director. Dkt. No. 7–1 at 16, Rejection Notice—Administrative Remedy. Petitioner was given fifteen (15) days to resubmit his appeal. *Id.* On August 20, 2013, petitioner submitted another Central Office Administrative Remedy Appeal. Dkt. No. 7–1 at 12, Central Office Administrative Remedy Appeal. The outcome of that appeal is unclear.

Respondent does not argue that petitioner's administrative remedies have not been properly exhausted, and the records show that petitioner raised his claims in several administrative appeals. The court finds that petitioner has exhausted his claims and will therefore address them on the merits.

## III. DISCUSSION

### A. Petitioner's claims

**\*4** In his petition, memorandum of law, and reply, petitioner claims that: (1) because the federal district court did not stay his ten-year sentence, it commenced on the day it was imposed, and the United States Marshals Service violated the commitment order by returning him to state custody rather than committing him to the custody of the BOP; and (2) there was no valid writ of habeas corpus ad prosequendum issued, and he was therefore in exclusive federal custody beginning October 18, 2001, when he was transported to the district court. Pet.; Mem. at 2–11; Reply at 2–4. Petitioner argues that his federal sentence has therefore expired, and he is entitled to release. Pet.; Mem. at 11.

### B. Relevant Statute and Controlling Precedent

Habeas corpus relief is available if a prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A section 2241 petition is generally the appropriate vehicle to raise claims arising from a prison official's computation of a prisoner's sentence. *Poindexter v. Nash,* 333 F.3d 372, 377 (2d Cir.2003) (explaining that section 2241 is the proper way for a federal inmate to challenge the BOP's calculation of credit to be given for other periods of detention). Petitioner is challenging the BOP's calculation of his federal sentence, and his claims are properly brought pursuant to section 2241. Petitioner is not, however, entitled to relief.

The United States Attorney General has delegated the authority to calculate federal sentences to the Bureau of Prisons. *United States v. Wilson,* 503 U.S. 329, 331–34 (1992); *United States v. Labeille–Soto,* 163 F.3d 93, 98 (2d Cir.1998). Pursuant to 18 U.S.C. § 3585(a), a federal sentence "commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a); *Labeille–Soto,* 163 F.3d at 98. If a defendant was in primary federal custody at the time of sentencing, the federal sentence commences upon imposition. 18 U.S.C. § 3585(a); *Dutton v. U.S. Atty. Gen.,* 713 F.Supp.2d 194, 199 (W.D.N.Y.2010).

When a defendant is borrowed from the primary custody of a state by writ of habeas corpus ad prosequendum, however, the state retains primary jurisdiction over the prisoner. *See United States v. Lockenwitz,* 376 Fed.Appx. 147, 150 (2d Cir.2010) ("[A] defendant held at a federal detention facility is not 'in custody' for the purposes of § 3585(a) when he is produced through a writ of habeas corpus ad prosequendum.") (quoting *United States v. Fermin,* 252 F.3d 102, 108 n. 10 (2d Cir.2001)). The writ simply "enables a jurisdiction 'to take temporary custody of a prisoner confined within another jurisdiction, and indict, prosecute and sentence' " the prisoner. *Greenough v. Hufford,* No. 1:12–CV–8836, 2013 WL 4534997 at *8 (S.D.N.Y. Aug. 27, 2013) (citation omitted). When the federal prosecution is complete, "principles of comity require the return of the defendant to the primary custodian." *Dutton,* 713 F.Supp.2d at 201; *see also Ortiz v. Lara,* No. 1:11–CV–2092, 2013 WL 6083409 at *1 (S.D.N.Y. Nov. 19, 2013) ("Generally, producing a state prisoner under a writ of habeas corpus ad prosequendum to answer federal charges does not relinquish state custody."); *United States v. Wusebio,* No. 1:04–CR–0607, 2007 WL 582745 at *2 (S.D.N.Y. Feb. 21, 2007) (same). Federal custody does not commence until "the state custodian relinquishes the prisoner upon satisfaction of the prisoner's state obligation." *Dutton,* 713 F.Supp.2d at 200–201. A prisoner is "relinquished" by the state when he or she "is released on bail, the state charges are dismissed, the prisoner is released to parole, or the state sentence expires." *Wusebio,* 2007 WL 582745 at *2 (citations omitted).

**\*5** Pursuant to 18 U.S.C. § 3585(b), federal defendants may receive credit for time spent in official detention before the date the federal sentence commences if: (1) the detention was the result of the offense for which the federal sentence is ultimately imposed; or (2) the detention was the result of other charges for which the defendant was arrested after the commission of the offense for which the sentence was imposed, as long as that time has not been credited against another sentence. 18 U.S.C. § 3585(b)(1), (2). Section 3585(b) prohibits defendants from receiving "double credit for [their] detention time." *Wilson,* 503 U.S. at 337; *Lopez v. Terrell,* 654 F.3d 176, 184–85 (2d Cir.2011) (explaining that the BOP is prohibited from crediting time against a federal sentence that was already credited against a state sentence).

### C. Application

Petitioner was in the primary custody of New York State by virtue of his arrest by New York state authorities on drug charges in 1999. New York State did not relinquish primary custody over petitioner during any time between December 1, 1999 and October 31, 2008, the date of his release to the custody of the United States Marshals Service upon completion of his state sentence. Petitioner was merely borrowed from New York State by writ of habeas corpus ad prosequendum, issued on October 4, 2001, in order to effectuate his appearance in the United States District Court in connection with his arrest and conviction for Indictment Number 1:01–CR–922. Dkt. No. 10–3, Exhibit C, Application for Writ of Habeas Corpus. Petitioner's federal prosecution did not terminate New York State's primary custody over him. *Lockenwitz,* 376 F. App'x at 150; *Dutton,* 713 F.Supp.2d at 201; *Ortiz,* 2013 WL 6083409 at *1; *Wusebio,* 2007 WL 582745 at *2.

The record contradicts petitioner's arguments that there was no writ of habeas corpus ad prosequendum issued, or that the writ was invalid. *See* Pet.; Mem. at 8–10; Reply at 2–4. The writ is captioned "Application for Writ of Habeas Corpus," but in the body of the document, the Assistant United States Attorney specified that the application was for the issuance of a writ of habeas corpus ad prosequendum. *See* Dkt. No. 10–3, Exhibit C. The writ also directed the United States Marshal to produce petitioner "on the date, at the time, and in the place recited above, and thereafter to maintain" petitioner "within the jurisdiction of this Court pending the satisfaction of this writ or the further orders of the Court." *Id.* To the extent petitioner argues that the writ is somehow invalid because it specifies that he was charged by indictment with violating only one criminal statute, 18 U.S.C. § 1959(a)(5), and not the other statutes charged in the indictment, that argument is meritless. The writ was issued in connection with Indictment Number 1:01–CR–0922, the same indictment upon which he was ultimately convicted. Dkt. No. 10–3, Exhibit C.

Moreover, the district court ordered petitioner's federal sentence to run consecutively to his New York State sentence. Dkt. No. 10–3, Exhibit D, Judgment in a Criminal Case, at 2 ("The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of 10 years TO RUN CONSECUTIVE WITH THE STATE COURT SENTENCE.") (emphasis in original). Therefore, pursuant to 18 U.S.C. § 3585(a), petitioner's federal sentence could not commence until October 31, 2008, when he completed his New York sentence and was released to the United States Marshal. *Dutton,* 713 F.Supp.2d at 200–201. Petitioner was properly returned to DOCCS upon completion of his federal prosecution. *Dutton,* 713 F.Supp.2d at 201.

Finally, the 98–day period from December 1, 1999, through March 7, 2000, was credited to petitioner's New York state sentence. Dkt. No. 10–2, Erickson Dec. ¶ 7. Pursuant to 18 U.S.C. § 3585(b), petitioner cannot receive credit against his federal sentence for that 98–day period. He also cannot receive credit toward his federal sentence for the rest of the time he spent serving his state sentence. That time was credited to his state sentence and cannot be credited twice. 18 U.S.C. § 3585(b); *Wilson,* 503 U.S. at 337; Dkt. No. 10–2, Erickson Dec. at ¶ 12.

**\*6** In sum, the record shows that the BOP properly calculated petitioner's sentence, and his petition is therefore denied and dismissed.

**IV. CONCLUSION**

**WHEREFORE**, it is hereby

**ORDERED** that the petition for a writ of habeas corpus, Dkt. No. 1, is **DENIED AND DISMISSED;** and it is further

**ORDERED** that the Clerk serve copies of this Decision and Order upon the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2014 WL 11350815

---

**Footnotes**

1    For the sake of clarity, the cited page numbers for the petition, the supplement and the records attached to each of those documents refer to the electronically generated numbers at the top right-hand corner of each page.

---

**End of Document**                                              © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 3950643
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Jamell MASON, Petitioner,
v.
David ALATARY, Respondent.

9:23-CV-193 (LEK)
|
Signed August 27, 2024

**Attorneys and Law Firms**

Jamell Mason, Brooklyn, NY, Pro Se.

Emer M. Stack, DOJ-USAO, Syracuse, NY, for Respondent.

### MEMORANDUM-DECISION AND ORDER

LAWRENCE E. KAHN, United States District Judge

### I. INTRODUCTION

 **\*1** Petitioner Jamell Mason seeks federal habeas corpus relief pursuant to 28 U.S.C. § 2241 following his remand from home confinement to a secure facility. Dkt. No. 1-1 ("Petition"). Respondent David Alatary filed a response in opposition to the Petition with relevant supporting records. Dkt. No. 17 ("Response"). Petitioner filed a reply. Dkt. No. 20 ("Traverse").

For the reasons outlined below, the Petition is granted in part and denied in part.

### II. BACKGROUND

#### A. Conviction
In 2011, the United States District Court for the Northern District of West Virginia sentenced Petitioner to a 210-month term of imprisonment with six years of supervised release for violation of various drug laws. See Resp. at 5 [1] (citing United States v. Mason, No. 09-CR-87 (N.D.W. Va. May 11, 2013), Dkt. No. 319 at 1–2, 4). Petitioner's projected release date is September 23, 2024. See id.

#### B. Home Confinement

On December 15, 2020, the Bureau of Prisons ("BOP") redesignated Petitioner to home confinement pursuant to its authority under the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"). See id.; Dkt. No. 17-1 ¶ 3 ("Magnusson Declaration"). Upon his redesignation, Petitioner moved home to Brooklyn, New York under the supervision of the Brooklyn House Residential Reentry Center ("RRC"). See Pet. at 3; Resp. at 5. The terms of his home confinement required Petitioner to remain "at [his] place of residence, except for employment, unless ... given permission to do otherwise." Dkt. No. 17-11 at 2 ("Community Based Program Agreement" or "Agreement").

While home, Petitioner alleges he took OSHA and SST training courses, worked in construction, and cared for his partially paralyzed brother. See Pet. at 2–3. Prior to the incident underlying the Petition, Petitioner twice ran afoul of RRC rules by straying outside of his permitted locations without permission. See Resp. at 6–7; Dkt. No. 17-3 at 2–3; Dkt. No. 17-5 at 2–3. For both offenses, the BOP, acting on the RRC's recommendations, stripped Petitioner of good conduct time ("GCT") but did not remand Petitioner back to secure confinement. See Dkt. No 17-3 at 3; Dkt. No. 17-5 at 3.

#### C. The Underlying Incident
On the night of July 8, 2022, while performing routine monitoring, RRC staff could not reach Petitioner on either his home or cell phone. See Resp. at 7. When Petitioner did not answer his phones, RRC staff performed a "spot check" to verify Petitioner's location. See Magnusson Decl. at ¶ 8. The spot check revealed that Petitioner left his house without permission at 9:03 PM and remained at an unauthorized location in Brooklyn, NY—the Stillwell Avenue Train Station—at 11:49 PM. See Resp. at 7. RRC staff notified the BOP duty officer, and Petitioner was placed on escape status. See id.

On the morning of July 9, 2022, RRC staff successfully contacted Petitioner and instructed him to report to the RRC facility. See Magnusson Decl. ¶ 8. Petitioner reported to the facility at approximately 10:18 AM and was immediately placed on building restriction. See Dkt. No. 1-2 at 2 ("Initial Incident Report"). RRC staff issued and delivered an incident report to Petitioner that afternoon, charging Petitioner with violating BOP Code 200 (Escape with Subsequent Voluntary Return within 4 Hours) and Code 316 (Being in an Unauthorized Location). See Magnusson Decl. ¶ 8.

Case 9:22-cv-01161-BKS-ML    Document 24    Filed 02/04/26    Page 65 of 144

Mason v. Alatary, Not Reported in Fed. Supp. (2024)

**\*2** On July 11, 2022, RRC staff issued a revised incident report, upgrading Petitioner's Code 200 violation to Code 102 (Escape from Non-Secure Institution Including Community Confinement). See Dkt. No. 17-6 at 2 ("Revised Incident Report"); compare Initial Incident Report with Dkt. No. 1-2 at 4. [2] On the afternoon of July 11, 2022, RRC staff attempted to deliver the Revised Incident Report to Petitioner but, due to a communication break down between RRC staff and Petitioner, it appears Petitioner never received the Revised Incident Report. See Pet. at 9.

Later that day, despite being on building restriction, Petitioner walked out of the RRC facility without permission. See Magnusson Decl. ¶ 10. Petitioner eventually returned voluntarily, but RRC staff issued another incident report charging Petitioner with escape. See id.

On July 12, 2022, RRC staff and the BOP coordinated with the U.S. Marshals to remand Petitioner to a secure facility. See Dkt. No. 17-10 at 2. Petitioner remained in secure confinement until his release back to community confinement at the RRC on March 14, 2024. See Dkt. No. 31 at 1 ("Letter").

On July 27, 2022, RRC staff conducted a Center Discipline Committee ("CDC") hearing to adjudicate the Revised Incident Report ("CDC Hearing"). See Magnusson Decl. ¶ 9; Dkt. No. 17-7 at 2–4 ("CDC Report"). At the CDC Hearing, Petitioner admitted to straying out of bounds on July 8, 2022. See CDC Report at 2–3. As such, RRC staff found Petitioner violated Code 102 and 316 and recommended a loss of thirty-one days of GCT and imprisonment at a secure facility. See id. at 3–4. On August 5, 2022, as required by BOP policy, a BOP disciplinary hearing officer ("DHO") reviewed and adopted the CDC's recommendations in full. See Magnusson Decl. ¶ 9; CDC Report at 4. A copy of the CDC report, certified by the DHO, was given to Petitioner on August 8, 2022. See Pet. at 7–8. Petitioner first learned of the Code 102 violation when reviewing the CDC report. Id.

Petitioner unsuccessfully appealed the CDC's decision via the BOP's administrative remedy program. Magnusson Decl. ¶ 16; Dkt. No. 17-12 at 3–6. Once he exhausted his administrative remedies, Petitioner filed the instant Petition on February 10, 2023. See Pet.

### III. PETITION

Petitioner seeks federal habeas corpus relief, stating five claims that allege the BOP violated the Fifth Amendment

Due Process Clause and other statutory rights. See id. In his first three claims relating to the adjudication of the Revised Incident Report, Petitioner contends that the BOP violated his due process rights when: (1) the DHO review was held in his absence; (2) the CDC Hearing was held eighteen days after the Initial Incident Report was issued; and (3) the BOP did not grant Petitioner the requisite 24-hour notice of the change in charge from Code 200 to Code 102. See id. at 5–10. Petitioner next argues that (4) his procedural due process rights were violated when the BOP remanded him to a secure facility without any process. [3] See id. at 10–11. Lastly, Petitioner contends (5) that the BOP failed to accurately apply Petitioner's First Step Act ("FSA") credits to his sentence. See id. at 11–13. Petitioner also requests the Court to appoint counsel pursuant to 18 U.S.C. § 3006A(a)(2)(B). See id. at 16. Respondent opposes all five counts and seeks to dismiss the Petition. See Resp. at 4–5.

### IV. DISCUSSION

#### A. Jurisdiction

**\*3** Habeas corpus relief is available if an individual is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A petition is properly brought pursuant to 28 U.S.C. § 2241 where a federal prisoner challenges the execution of their sentence, rather than its imposition. See Adams v. United States, 372 F.3d 132, 134–35 (2d Cir. 2004); Jiminian v. Nash, 245 F.3d 144, 146–47 (2d Cir. 2001). Execution of a sentence includes prison disciplinary hearings, so a Section 2241 petition is the proper means to challenge a petitioner's disciplinary hearings. See Adams, 372 F.3d at 135. Petitions filed under Section 2241 must name the petitioner's warden as the respondent and be filed in the district of the petitioner's confinement. 28 U.S.C. § 2241(a); Rumsfeld v. Padilla, 542 U.S. 426, 435, 447 (2004).

Here, Petitioner challenges the impact of an allegedly unlawful disciplinary hearing and was incarcerated at FCI-Ray Brook in the Northern District of New York when he commenced the instant action. Accordingly, the Section 2241 Petition is the appropriate procedural vehicle to address Petitioner's grievances, see Adams, 372 F.3d at 135, and Petitioner filed suit in the proper court, see Padilla, 542 U.S. at 447.

#### B. Petitioner's Claims

Case 9:22-cv-01161-BKS-ML   Document 24   Filed 02/04/26   Page 66 of 144

Mason v. Alatary, Not Reported in Fed. Supp. (2024)

### 1. Claim I: DHO Review

Petitioner argues the BOP violated his due process rights when it did not afford him the opportunity to attend and present documentary evidence and witnesses at the DHO review. See Pet. at 5–6.

In Wolff v. McDonnell, the Supreme Court held that prisoners have the right to attend their disciplinary hearing, including the right to "call witnesses and present documentary evidence in [their] defense." 418 U.S. 539, 566 (1974); see also Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 454 (1985). If the disciplinary hearing takes the form of a CDC hearing, BOP policy requires that a DHO review and certify the CDC's findings. See Mansa v. United States, No. 16-CV-644, 2019 WL 121681, at *13 n.4 (D. Conn. Jan. 7, 2019). In such scenarios, Wolff does not mandate that a prisoner receive two disciplinary hearings, one before the CDC and another before a DHO. See id. ("[Petitioner] received an in-person hearing with the CDC and made a statement. The CDC hearing paperwork was forwarded to the DHO for review and certification pursuant to [BOP] policy. The DHO completed his review and certified the CDC hearing.... [Petitioner is] not entitled to an in-person DHO hearing or a separate DHO report."); Colon v. Tellez, No. 20-CV-5252, 2022 WL 521524, at *4 n.8 (E.D.N.Y. Feb. 22, 2022) (finding that the petitioner was not entitled to a DHO hearing after receiving a CDC hearing).

Here, Petitioner received the CDC Hearing. Petitioner attended the CDC Hearing and had an opportunity to call witnesses and present documentary evidence, satisfying Wolff's constitutional requirements. See CDC Report at 2. As such, Petitioner possessed no constitutional right to attend the DHO review or participate in a separate DHO hearing. Since the Court finds that Petitioner's absence at the DHO review did not violate due process, Claim I is denied.

### 2. Claim II: Timing of the CDC Hearing

Petitioner next argues that the timing of the CDC Hearing violates 28 C.F.R. § 541.7(c) and, consequently, violates his due process rights. See Pet. at 6–7. Section 541.7(c) states that a unit disciplinary committee ("UDC") "will ordinarily review [an] incident report within five work days after it is issued." 28 C.F.R. § 541.7(c). Petitioner states that the CDC Hearing, held on July 27, 2022, occurred eighteen days after

the publication of the Initial Incident Report, violating Section 541.7(c). See Pet. at 7.

**\*4** Assuming Section 541.7(c) applies, a plain reading of the regulation belies Petitioner's contention that RRC staff violated Section 541.7(c) by waiting eighteen days to hold the CDC Hearing. District courts both inside and outside the Second Circuit have found the five-day period is not a compulsory rule because of the inclusion of the word "ordinarily." See Epps v. Beard, No. 20-CV-44, 2022 WL 1462762, at *5 (E.D. Ky. May 9, 2022) ("Through its inclusion of the qualifying term 'ordinarily,' the rule intrinsically contemplates the possibility that prison staff might need additional time to provide an inmate a [hearing].") (internal quotation marks omitted); Linares v. Terris, No. 17-CV-11085, 2018 WL 1709027, at *4 (E.D. Mich. Apr. 9, 2018) (finding that the use of "ordinarily" makes clear that the five-day period in Section 541.7(c) is "an aspirational, not a mandatory, requirement"); Berkun v. Terrell, No. 11-CV-3237, 2011 WL 4753459, at *3 (E.D.N.Y. Oct. 7, 2011) ("[T]he inclusion of the word 'ordinarily' in the regulation suggests flexibility; it does not prohibit holding the hearing after [five] days."). [4] With this guidance, the Court rejects Petitioner's contention that the delay in holding the CDC Hearing violated Section 541.7(c). Absent a violation of the regulation, the Court finds Petitioner's due process rights have not been violated. Claim II is denied.

### 3. Claim III: Notice Requirement

Petitioner contends that his due process rights were violated when the CDC failed to provide him with advance written notice of the Code 102 disciplinary charge, and, consequently, prohibited him from mounting an effective defense at his CDC Hearing. See Pet. at 7–10.

Prior to a disciplinary hearing, a prisoner must have 24-hour written notice of the charges brought against him. See Wolff, 418 U.S. at 564; Hill, 472 U.S. at 454. The purpose of the notice requirement is "to inform [the prisoner] of the charges and to enable him to marshal the facts and prepare a defense." Wolff, 418 U.S. at 564. If a charge is amended after notice is already given, the BOP need not give new notice if the discrepancy does not impair the petitioner's ability to prepare a defense. See Northern v. Hanks, 326 F.3d 909, 911 (7th Cir. 2003) ("Because the factual basis of the investigation report gave [petitioner] all the information he needed to defend against the trafficking charge, the reviewing

authority's modification [of the charges] did not deprive [petitioner] of his due process rights."); Holt v. Caspari, 961 F.2d 1370, 1373 (8th Cir. 1992) (finding no due process violation when a charge was upgraded without new notice because the incident report "gave [the prisoner] all of the information he needed to make his defense"); Rogers v. Buss, No. 07-CV-569, 2008 WL 2151431, at *2 (N.D. Ind. May 21, 2008) ("Changing the rule with which [petitioner] was accused of violating did not deny him due process because the conduct report stated facts that supported the corrected charge and provided the facts he needed to prepare his defense against that charge.").

Respondent argues Petitioner received the Revised Incident Report and, consequently, had adequate notice of the Code 102 charge. See Resp. at 7. Petitioner contests this assertion, see Pet. at 9, but both parties agree that on July 11, 2022, RRC staff at least attempted to give Petitioner the Revised Incident Report with the Code 102 charge. See Resp. at 7; Pet. at 9. Petitioner states that RRC staff never explained to him that the Initial Incident Report had been updated, and, therefore, he refused RRC staff's attempt to give him the Revised Incident Report on July 11, 2022, as he believed he already possessed the correct incident report. See Pet. at 9. Respondent does not directly dispute Petitioner's version of the events, but simply states Petitioner refused the Revised Incident Report. See Resp. at 7. Given these allegations, the Court finds that Petitioner was not aware he was charged with Code 102 before the CDC Hearing.

 **\*5** Respondent also argues that Petitioner received the Initial Incident Report, and, therefore, notice of the Code 102 charge. See Resp. at 24. Specifically, Respondent argues Petitioner "failed to submit the version of the [Initial] Incident Report he allegedly received, and instead has submitted the very same incident report as Respondent [which showed the Code 102 charge]." Resp. at 24. Respondent concludes that this proves Petitioner received notice of the Code 102 charge. See id. Respondent is factually incorrect. Petitioner submitted two incident reports. The first submission shows an incident report delivered on July 9, 2022, with a Code 200 violation. See Initial Incident Report. The second shows the Incident Report with a Code 102 violation, delivered on July 11, 2022, which Petitioner states he did not receive until August 8, 2022—well after the CDC Hearing. See Dkt. No. 1-2 at 4; Pet. at 9. As such, the Court rejects this argument.

Respondent next argues that, even if Petitioner was not aware of the Code 102 charge, the differences between a Code 200

Escape and a Code 102 Escape did not impair Petitioner's ability to prepare an adequate defense. See Resp. at 24–25. Therefore, Respondent concludes, the lack of awareness did not violate Petitioner's due process. See id.

As support, Respondent cites to a district court ruling from the Eastern District of California. See Reed v. Babcock, No. 13-CV-2450, 2015 WL 1932526, at *2 (E.D. Cal. Apr. 15, 2015). In Reed, a petitioner who was initially charged with a Code 102 violation was instead found guilty of a downgraded Code 200 violation; the petitioner argued that, since he had not received notice of the Code 200 violation until after the disciplinary hearing, the guilty finding violated his due process rights. See id. at *2. The court in Reed found that the revision to the charges without new notice did not violate the petitioner's due process rights as the petitioner's defense did not "implicate the distinction between [C]ode 200 escape and [C]ode 102 escape[,]" and that the petitioner had all the information he needed to defend against the Code 200 charge from the initial notice. Id. at 3.

Unlike in Reed, Petitioner did not receive notice of the different charge that was more severe than the one initially charged. See id. (finding "notice of the *most severe* such charge that might be supported by those facts[ ] provided [the] petitioner with exactly what Wolff requires.") (emphasis added). Moreover, Petitioner argues he would have presented evidence, including witness testimony, that he returned to confinement within four hours of his initial escape in an effort to have the Code 102 charge downgraded to a Code 200 charge. See Trav. at 12–13; cf. Reed, 2015 WL 1932526, at *3 ("Nothing in the record suggests that petitioner's defense at the hearing would have differed" depending on how the escape was charged). Therefore, the Court concludes that, as Petitioner's ability to present a mitigation defense was impaired by the lack of notice, the lack of notice violated his due process rights.

However, even if a due process violation occurs, "it is entirely inappropriate to overturn the outcome of a prison disciplinary proceeding because of a procedural error without making the normal [ ] assessment as to whether the error was harmless or prejudicial." Powell v. Coughlin, 953 F.2d 744, 750 (2d Cir. 1991); see also Green v. Christensen, No. 23-CV-127, 2024 WL 1619392, at *3 (N.D.N.Y. Apr. 15, 2024) ("[P]rior to receiving judicial relief for a due process violation in a disciplinary hearing, a prisoner must demonstrate that the violation harmed them in some way."); Mendez v. Bell, No. 16-CV-2123, 2018 WL 4039321, at *5 (D. Conn. Aug. 23,

Case 9:22-cv-01161-BKS-ML    Document 24    Filed 02/04/26    Page 68 of 144

Mason v. Alatary, Not Reported in Fed. Supp. (2024)

2018) (finding an absence of prejudice "cannot make out a due process violation"). "[T]he proof of prejudice must be definite and not speculative." United States v. Birney, 686 F.2d 102, 105–06 (2d Cir. 1982); see also Green, 2024 WL 1619392, at *3 (same). The burden of proving prejudice rests with the petitioner. See Green, 2024 WL 1619392, at *3.

**\*6** While Petitioner has established a violation of due process, Petitioner does not demonstrate prejudice. For example, Petitioner does not argue that he would not have been remanded from home confinement to secure confinement with the Code 200 violation. As such, Petitioner's argument that he suffered harm is at most speculative, and speculative prejudice is not enough to "make out a due process violation." Mendez, 2018 WL 4039321, at *5; see also Powell, 953 F.2d at 750 (finding that when prejudice is only speculative, a technical violation of due process does not require judicial intervention). The Court concludes that, as Petitioner failed to make the requisite showing of prejudice, judicial relief is not warranted. Claim III is denied.

### 4. Claim IV: Revocation of Home Confinement

Petitioner argues the BOP violated his constitutional rights when it revoked his home confinement without the requisite due process. See Pet. at 10–11. Respondent contends that Petitioner lacks a liberty interest in home confinement and, therefore, was not entitled to process prior to its revocation. See Resp. at 14.

#### a. Liberty Interest Jurisprudence

To state a procedural due process claim, a prisoner must show that they have a protected liberty interest. See Kerry v. Din, 576 U.S. 86, 90 (2015) (noting that no process is due when no liberty interest is at stake). A prisoner has no liberty interest in being placed outside of a traditional prison setting or being "conditionally released before the expiration of a valid sentence." Greenholtz v. Inmates of Neb. Penal Corr. Complex, 442 U.S. 1, 7 (1979). However, government action in the carceral environment can create a liberty interest. See Wolff, 418 U.S. at 557–58 (holding that a state statute granting GCT created a liberty interest in a "shortened prison sentence").

District courts are far from uniform on what, if any, liberty interest is provided to an individual placed on continued home confinement pursuant to the CARES Act. Compare Aurecchione v. Falco, No. 22-CV-4538, 2023 WL 6255529, at *12 (S.D.N.Y. Sep. 25, 2023) (explaining that "[e]volving caselaw in the Second Circuit reinforces the existence of [a] right to process" in home confinement cases and recognizing a liberty interest in maintaining continued home confinement); Freeman v. Pullen, 658 F. Supp. 3d 53, 66–67 (D. Conn. 2023) (concluding that a habeas petitioner had a liberty interest in continued home confinement) with Triplett v. FCI Herlong Warden, No. 22-CV-83, 2023 WL 2760829, at *3 (E.D. Cal. Apr. 3, 2023) (finding the petitioner had no liberty interest in remaining on home confinement); Touizer v. Attorney General of the United States, No. 20-CV-5169, 2021 WL 371593, at *4 (S.D. Fla. Feb. 3, 2021) (same). Although the Court finds the precedent within the Second Circuit persuasive, the Court will engage in its own independent analysis to determine whether Respondent created a liberty interest in the CARES Act home confinement program. The Court first turns to the liberty interest jurisprudence involving other community confinement programs.

District courts assess potential liberty interests using the guidance established by Morrissey v. Brewer, 408 U.S. 471 (1972). In Morrissey, two prisoners filed habeas petitions after their parole was revoked without a hearing. See 408 U.S. at 472–74. Each petitioner claimed that they retained a liberty interest in remaining on parole and that the arbitrary revocation violated their due process rights. See id. at 474. To determine if a liberty interest existed in remaining on parole, the Supreme Court examined the nature and conditions of parole. See id. at 477–82. The Supreme Court explained that the nature of parole "is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence." Id. at 477. Since parolees, while subject to certain limitations, could still "be gainfully employed and [are] free to be with family and friends and to form the other enduring attachments of normal life," the Supreme Court concluded that the parolees' "condition is very different from that of confinement in a prison." Id. at 482.

**\*7** The Morrissey Court also noted that the nature of the parole program included "an implicit promise that parole will be revoked only if [parolees] fail[ ] to live up to the parole conditions." Morrissey, 408 U.S. at 482.; see also id. at 479 ("Implicit in the system's concern with parole violations is the

Mason v. Alatary, Not Reported in Fed. Supp. (2024)

Case 9:22-cv-01161-BKS-ML    Document 24    Filed 02/04/26    Page 69 of 144

notion that the parolee is entitled to retain his liberty as long as he substantially abides by the conditions of his parole.").

Applying the then-governing "grievous loss" standard, the Supreme Court concluded that the parole program created a liberty interest as it possessed "many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee." Id. at 482. Thus, termination of parole required "some orderly process, however informal." Id.

The Supreme Court applied the reasoning in Morrissey when it reviewed a preparole program in Oklahoma's state prisons. See Young v. Harper, 520 U.S. 143 (1997). In Young, a prisoner spent five "uneventful" months in community confinement pursuant to the preparole program after which State authorities denied him parole and returned him to state prison without process. See id. at 145–46. The prisoner filed a habeas petition, claiming the revocation of his preparole deprived him of liberty without due process. See id. at 146. The Supreme Court agreed, extending Morrissey to the preparole program. See id. at 147. In coming to its decision, the Supreme Court compared the preparole program to the parole program in Morrissey with respect to the conditions of liberty conferred. See id. at 148–152. The Supreme Court noted that, though the preparole program restricted the prisoner from certain activities, a participant could still live at home, work, and "live[ ] a life generally free of the incidents of imprisonment," just as the parolees in Morrissey could. Id. at 148. Additionally, as in Morrissey, the preparole program included an implicit promise that a preparole would remain free absent a violation of the program. See id. at 150–51. The Supreme Court concluded that, as the preparole program was "equivalent to parole," the preparole held a liberty interest in his freedom entitling him to the procedural protections of Morrissey. Id. at 147.

Following Morrissey and Young, the Second Circuit has applied Morrissey to analyze whether the Due Process Clause creates a liberty interest in various community confinement programs by comparing the community confinement program to the liberty interest found in parole and preparole programs. See Holcomb v. Lykens, 337 F.3d 217, 222–25 (2d Cir. 2003) (applying Morrissey to Vermont's temporary furlough program and finding petitioner received the procedural protections outlined in Morrissey); Anderson v. Recore, 317 F.3d 194, 200 (2d Cir. 2003) (finding Morrissey held that once community confinement similar to parole is granted, "it cannot [be] take[n] ... away without according the inmate procedural due process"); Kim v. Hurston, 182 F.3d 113, 118–

119 (2d Cir. 1999) (applying Morrissey to a New York work release program and holding the prisoner had a liberty interest in remaining in the program).

Against this backdrop, the Court turns to its examination of the present facts.

### b. Respondent's Preliminary Arguments

As a preliminary matter, Respondent argues that the Court should dismiss Claim IV as the Court "has no authority to grant Petitioner's request for immediate ... placement in home confinement because those decisions are within the BOP's sole discretion." Resp. at 10. The Court recognizes that the BOP generally has sole discretion in the placement and transfer of prisoners. See 18 U.S.C. § 3621(b) (establishing that the "[BOP] shall designate the place of the prisoner's imprisonment" and "may at any time[ ] ... direct the transfer of a prisoner from one penal or correctional facility to another," and that "a designation of a place of imprisonment ... is not reviewable by any court"); see also Touizer, 2021 WL 371593, at *3 (finding that the BOP has "exclusive authority ... to designate the place of an inmate's confinement").

**\*8** However, the Court finds the comparison to Touizer unpersuasive. Despite the BOP's broad authority under Section 3621(b), judicial review is appropriate where the BOP's actions allegedly violate the Constitution. See Freeman, 658 F. Supp. 3d at 63 (citing cases). As Claim IV turns on constitutional questions, the Court rejects Respondent's argument that the BOP's authority prevents judicial review.

Respondent next argues that the Morrissey and Young line of cases do not apply. See Resp. at 15–17. Instead, Respondent asserts that Meachum v. Fano, 427 U.S. 215 (1976) controls. See id. In Meachum, the Supreme Court ruled that a prisoner had no liberty interest in his prison setting and that a prison administration could transfer a prisoner to another prison with no process without running afoul of the Due Process Clause. Meachum, 427 U.S. at 228–29. Respondent argues that Meachum applies because, despite being on home confinement, Petitioner remains in BOP custody as "a federal inmate, serving an ongoing federal sentence," and, thus "[is] less like the parolees and preparolees ... in Morrissey and Young, and more like the inmate[ ] in Meachum." Resp. at 17.

The Court finds Respondent's argument unpersuasive. In Young, Oklahoma made a similar argument, claiming that because the preparole remained in custody like the petitioner in Meachum, Meachum should control. See Young, 520 U.S. at 148. The Supreme Court rejected the argument, noting the preparolees' actual conditions more closely resembled Morrissey despite Oklahoma's technical characterization of the preparolees' custody. See id. at 148–49; see also Recore, 317 F.3d at 200 ("Because [the petitioner], like the petitioner[ ] in Morrissey ... lived outside the prison, a comparison to the ordinary conditions of prison life is inappropriate.").

Here, as in Young and Morrissey, Petitioner's home confinement allowed Petitioner to live at home "free of the incidents of imprisonment." Young, 520 U.S. at 148. Given the conditions of Petitioner's home confinement, the Court will apply Morrissey to decide Claim IV.

### c. Morrissey Test

No controlling authority has yet answered whether revocation of home confinement granted pursuant to the CARES Act requires the procedural protections granted to parolees by Morrissey.[5] The Court is also unaware of any binding precedent that addresses the constitutional rights of prisoners on home confinement pursuant solely to 18 U.S.C. § 3624(c)(2). Accordingly, the Court will use Morrissey to undertake an independent examination of Petitioner's constitutional rights on home confinement.

**\*9** To successfully prove the existence of a liberty interest in home confinement, Petitioner must plausibly allege (1): that the conditions of the home confinement program are sufficiently similar to the conditions of the parole program in Morrissey with respect to the extent and conditions of liberty conferred; and (2) that the home confinement program implicitly promised that Petitioner's home confinement status would continue absent misconduct. Morrissey, 408 U.S. at 481–82; Young, 520 U.S. at 147–48; see also Holcomb, 337 F.3d at 222–23; Cardoza, 2022 WL 3212408, at \*8.

### i. Liberty Conferred

Petitioner contends that the first prong is met because the liberty conferred by his home confinement "bears such [a] strong resemblance to the [p]arole [p]rogram in Morrissey."

Pet. at 10. Petitioner explains that his home confinement allowed him to live at home, take care of his brother, work, and "form certain attachments common to normal life," and concludes that, as in Morrissey, his living conditions are distinct from normal "confinement in a prison." Id. at 10–11.

With respect to the extent of the liberty conferred, some factual differences do exist between the home confinement program and the parole program in Morrissey. For example, the parolee in Morrissey was free to travel within his "community," Morrissey 408 U.S. at 478, while Petitioner required permission to travel anywhere but home and work. See Agreement at 2. Despite these stricter rules, "the privileges available in [home confinement] are worlds apart [ ] from eating prisoner food in a cell." See Ortega v. U.S. Immigration and Customs Enforcement, 737 F.3d 435, 439 (6th Cir. 2013). Thus, the Court is unconvinced that the differences are so stark as to prevent a finding that home confinement "include[s] many of the core values of unqualified liberty" found in Morrissey. 408 U.S. at 482. As such, the Court holds that Petitioner satisfies the first step of the Morrissey analysis.

### ii. Implicit Promise

Turning to the implicit promise analysis, Respondent argues no implicit promise arises from "any statutory, regulatory, or other governing authority," and, as such, no "reasonable inmate [could] conclude that he is entitled to remain in home confinement" absent misconduct. Resp. at 19.

"The Morrissey line of cases does not specify where such an implicit promise must originate." Cardoza, 2022 WL 3212408, at \*12. An implicit promise of continuing liberty need not be communicated via a statutory or regulatory authority. See Morrissey, 408 U.S. at 492–93 (Douglas, J., dissenting) (stating that the majority found an indication of an implicit promise despite the statute governing the parole program providing the warden complete discretion to revoke parole at any time). "Imposing such a requirement would be more akin to requiring an explicit promise, as opposed to an implicit one." Cardoza, 2022 WL 3212408, at \*12.

Historically, courts have found an implicit promise in various sources. See Morrissey, 408 U.S. at 479, 482 (finding an implicit promise in the nature of parole and the "system's concern with parole violations"); Holcomb, 337 F.3d at 223 (examining the community confinement statute to determine

if an implicit promise exists); Pugliese v. Nelson, 617 F.2d 916, 922 (2d Cir. 1980) ("To qualify as constitutionally protectible 'liberty,' the prisoner's interest must be ... one that he would normally expect to have as a matter of custom and practice or of fundamental decency and fairness."); Ortega, 737 F.3d at 439 ("What process is due ... may well turn on the notice given to the individual before he was allowed to serve a prison sentence at home."). Thus, the Court rejects Respondent's contention.

 **\*10** Petitioner argues that the Community Based Program Agreement governing Petitioner's home confinement implicitly promises that his home confinement would not be revoked without misconduct. See Trav. at 9. Specifically, the Agreement states that "failure to remain at the required locations [or heed other rules in the Agreement] may result in disciplinary action and/or prosecution for escape." Agreement at 2. The Agreement also explains that if Petitioner "decline[s] to participate in the recommended Home Detention program [he] may face administrative reassignment out of the residential reentry program." Id. Petitioner argues that one could reasonably infer based on such language that reincarceration could only stem from misconduct. See Trav. at 9. Further, the Agreement does not state that home confinement could be arbitrarily terminated. Petitioner contends that the lack of such language, coupled with the disciplinary warnings described above, give "no hint" that he may be removed from home confinement without cause, thus creating a reasonable expectation that he would remain on home confinement "except by committing [a] major infraction." Trav. at 10.

Petitioner also notes that the then-Director of the BOP, Michael Carvajal "indicated in a 2020 address to the Senate Committee on the Judiciary that he expected those removed to home confinement pursuant to the CARES Act would remain on home confinement" barring misconduct. Id. Furthermore, BOP General Counsel Ken Hyle wrote in a report that those on home confinement pursuant to the CARES Act would only be "transferred back to secure correctional facilities if there are any significant disciplinary infractions or violations of the home confinement agreement." Id. Petitioner argues that the statements from BOP leadership make clear that the BOP "does not employ a widespread practice of reincarcerating individuals" released on home confinement. Id. This, Petitioner argues, could "reasonably [ ] instill an expectation that one would be permitted to continue on home confinement absent good cause for revocation." Id. The Court agrees with Petitioner, finding an implicit promise

that Petitioner would remain on home confinement absent misconduct.

Accordingly, the Court concludes that Petitioner possesses a liberty interest in home confinement that required some process prior to its permanent revocation.

#### d. Procedure Due

The Court must next examine the process due. No controlling authority dictates what process a prisoner on home confinement should receive prior to its revocation; nor does either party brief the issue. Considering the similarities between home confinement and the parole program in Morrissey, the Court concludes that Morrissey protections apply here. See Young, 520 U.S. at 152–53 (establishing that, since preparole was sufficiently like parole, a preparole was entitled to the procedural protections set forth in Morrissey); Tompkins, 2022 WL 3212368, at \*11–12 (holding that Morrissey protections applied to a prisoner whose home confinement was revoked without due process). As such, prior to permanently revoking home confinement, the BOP must provide the Morrissey procedural protections described below.

In Morrissey, the Supreme Court laid out a two-hearing process to satisfy a parolee's due process. Morrissey, 408 U.S. at 485–90. Following the detention of a parolee for an alleged violation of parole conditions, "some minimal inquiry [must] be conducted ... near the place of the alleged parole violation or arrest and as promptly as convenient after arrest while information is fresh and sources are available." Id. at 485. This preliminary hearing requires only a showing of "probable cause" to justify the parolee's continued detention. Id. The adjudicator of the preliminary hearing must "not [be] directly involved in the case" but "need not be a judicial officer." Id. at 485–86. The parolee must also receive notice of the hearing which "should state what ... violations have been alleged." Id. at 487; see Tompkins, 2022 WL 3212368, at \*12. At the hearing, the parolee may testify on his own behalf, present documentary evidence, call witnesses, and cross examine adverse witnesses. See Morrissey, 408 U.S. at 487. Upon returning a decision, the adjudicator must provide some type of summary of the evidence presented and their conclusions. See id. If a determination of probable cause is made in the preliminary hearing, a parolee may be constitutionally detained pending the second Morrissey hearing. See id.

Case 9:22-cv-01161-BKS-ML    Document 24    Filed 02/04/26    Page 72 of 144

Mason v. Alatary, Not Reported in Fed. Supp. (2024)

**\*11** Following a probable cause finding in the preliminary hearing, a revocation hearing is still required to permanently revoke parole. See Morrissey, 408 U.S. at 487–88; Williams v. Ward, 556 F.2d 1143, 1156 (2d Cir. 1977) ("A later revocation hearing was required, prior to the final decision on revocation."). The revocation hearing must "be tendered within a reasonable time after the parolee is taken into custody." Morrissey, 408 U.S. at 488; see also id. (finding a delay of two months to be reasonable). To satisfy the "minimum requirements of due process," the parolee must receive:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

Id. at 489.

In detailing the requirements of the revocation hearing, the Supreme Court did not specify the burden of proof required to permanently remand a parolee to secure custody. However, the Supreme Court stressed that the revocation hearing does not "equate ... to a criminal prosecution in any sense." Id. at 489. Thus, the Court concludes that the high standard of a criminal prosecution is inappropriate. Yet, the Supreme Court also noted that the revocation hearing "must be the basis for more than determining probable cause." Id. at 488. Therefore, an evidentiary standard between "beyond a reasonable doubt" and "probable cause" is appropriate. Since the preponderance standard is used in revocation hearings for similar programs like probation and supervised release, see 18 U.S.C. § 3583(e)(3); United States v. Bujak, 347 F.3d 607, 609 (6th Cir. 2003); United States v. Teran, 98 F.3d 831, 836 (5th Cir. 1996), the

Court concludes that a "preponderance of the evidence" is the appropriate evidentiary burden.

#### e. Process Received

The Court next examines whether the process Petitioner received met these requirements. Following numerous alleged violations of the home confinement program, RRC staff, BOP staff, and the United States Marshals coordinated to remand Petitioner to secure confinement on July 12, 2022. See Magnusson Decl. ¶ 12. On July 27, 2022, Petitioner faced a neutral CDC board that afforded Petitioner all the procedural protections required by a Morrissey preliminary hearing. Petitioner (1) had the opportunity to testify, call and confront witnesses, and present evidence, see CDC Report at 2; (2) received a brief written summary of the evidence and the CDC board's conclusions, including a recommendation to keep Petitioner in secure custody, see id. at 3; and (3) faced no significant delay between his remand to secure custody on July 12, 2022, and the CDC Hearing on July 27, 2022. Considering the process Petitioner received, the Court concludes Petitioner's secure confinement immediately following his CDC Hearing did not violate Petitioner's due process rights.

However, Petitioner never received a revocation hearing as required by step two of Morrissey. Petitioner received a DHO review after his CDC Hearing, see Magnusson Decl. ¶ 9; CDC Report at 4, but Petitioner was not notified of, present for, or given the opportunity "to present witnesses and documentary evidence" at a DHO review or any associated hearing. Morrissey, 408 U.S. at 489. Therefore, any DHO review or hearing did not satisfy the "minimum requirements of due process" guaranteed to Petitioner by Morrissey. Id. Accordingly, the Court finds that Respondent violated Petitioner's due process rights in revoking his home confinement without a proper revocation hearing as required by Morrissey. With respect to Claim IV, the Petition is granted.

#### f. Remedy

**\*12** In relation to the unconstitutional revocation of his home confinement, Petitioner seeks "immediate release (while awaiting [a] revocation hearing that complies with [d]ue [p]rocess), [a] declaration that Respondents have insufficient basis under the Due Process [C]lause to detain

Mason v. Alatary, Not Reported in Fed. Supp. (2024)

Case 9:22-cv-01161-BKS-ML    Document 24    Filed 02/04/26    Page 73 of 144

him ..., [and] an injunction against Petitioner's continued imprisonment until his due process rights have been restored." Dkt. No. 1 at 7 ("Petition Application"). [6]

"[T]he proper remedy for a due process violation is the process itself." Tompkins, 2022 WL 3212368, at *14; see United States ex rel. Bey v. Conn. State Bd. of Parole, 443 F.2d 1079, 1089–90 (2d Cir. 1971) (concluding that the proper remedy for an improper parole revocation hearing was a new revocation hearing), vacated on other grounds sub nom. Conn. State Bd. of Pardons v. Bey, 404 U.S. 879 (1971). Thus, the Court holds that the proper remedy for Petitioner is not immediate release to home confinement but a Morrissey revocation hearing. To the extent Petitioner argues that his continued detention while awaiting the revocation hearing is unconstitutional, the Court disagrees. Petitioner received a preliminary hearing in accordance with Morrissey, making his detention lawful for a "reasonable" period of time while awaiting the revocation hearing. Petitioner was also transferred back to community confinement at the RRC on March 14, 2024. See Letter at 1. Now that Respondent is on notice that a revocation hearing is required, the Court finds that Petitioner's continued detention remains lawful for a "reasonable" period. If needed, Petitioner's continued detention can be revisited if the Respondent fails to provide a timely revocation hearing following the publication of this order. See Billiteri v. United States Bd. of Parole, 541 F.2d 938, 946 (2d Cir. 1976) ("If the case was before the court on a petition for habeas corpus, it may order compliance within a reasonable period, failing which it may order the petitioner discharged from custody."). Accordingly, Petitioner's request for immediate release is denied without prejudice, subject to renewal should the BOP neglect to provide a Morrissey revocation hearing within a reasonable time frame.

Petitioner also seeks declaratory relief. See Pet. at 1. The Declaratory Judgment Act ("DJA") permits a federal court to declare the rights of a party "whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The DJA "confers a discretion on the courts rather than an absolute right upon the litigant." Public Service Comm'n of Utah v. Wycoff Co., 344 U.S. 237, 241 (1952). Here, the Court has found a constitutional violation in relation to the revocation of home confinement and declaratory relief would prove duplicative. Accordingly, the Court declines to exercise its discretion under the DJA.

As for Petitioner's request for an injunction against continued imprisonment, see Pet. Application at 7, the Court dismisses

the request as moot as Petitioner is no longer in secure confinement.

### 5. Count V: First Step Act

**\*13** Petitioner's last claim accuses the BOP of failing to accurately apply Petitioner's First Step Act ("FSA") credits to his sentence. See Pet. at 11–13.

A petitioner seeking relief pursuant to Section 2241 must exhaust their administrative remedies. See Carmona v. United States Bureau of Prisons, 243 F.3d 629, 634 (2d Cir. 2001). "This requires compliance with the BOP's four-step Administrative Remedy Program." Lallave v. Martinez, 609 F. Supp. 3d 164, 179 (E.D.N.Y. 2022) (citing 28 C.F.R. § 542.10(a)).

To exhaust the BOP's four-step Administrative Remedy Program a prisoner must complete the following steps:

> The first step of the prescribed process entails making an effort to obtain an early resolution of the matter by raising the issue informally to staff. In the event this avenue does not lead to a successful resolution, the inmate next may submit a formal written [Administrative Remedy ("AR")] to the warden of the particular facility involved, utilizing a designated BP–9 form, within twenty days of the relevant event. If the AR is denied, an appeal may be taken to the appropriate BOP Regional Director within twenty calendar days of the date of denial. As a fourth and final step, an unfavorable decision from the Regional Director may be appealed to the General Counsel's office (also referred to as the "Central Office" [or "CORC"]) within thirty days of the date on which the Regional Director rejects the inmate's appeal.

Case 9:22-cv-01161-BKS-ML  Document 24  Filed 02/04/26  Page 74 of 144

Mason v. Alatary, Not Reported in Fed. Supp. (2024)

Barber v. Perdue, No. 11-CV-127, 2012 WL 5996342, at *4 (N.D.N.Y. Nov. 9, 2012) (internal citations omitted). [7] In sum, "[n]o administrative appeal is fully exhausted until the BOP's Central Office reviews it." Reynolds v. Warden of FCI Ray Brook, No. 16-CV-1264, 2019 WL 8064012, at *3 (N.D.N.Y. Aug. 5, 2019). The burden of demonstrating exhaustion rests with the petitioner. See Spring v. Schult, No. 08-CV-531, 2009 WL 3232183, at *1 (N.D.N.Y. Oct. 1, 2009) (Kahn, J.).

A federal inmate's failure to exhaust the administrative remedies available to him prior to commencing a Section 2241 action may "only be excused upon a showing of cause and prejudice." Carmona, 243 F.3d at 634. To demonstrate legal "cause," a petitioner must establish that "something external to the petitioner, something that cannot be fairly attributed to him," prevented the petitioner from fully exhausting his administrative remedies. Tineo v. United States, 977 F. Supp. 245, 253 (S.D.N.Y. 1996) (quoting Coleman v. Thompson, 501 U.S. 722, 753 (1991)). Factors that constitute "cause" include "interference by officials that makes compliance with procedural rules impractical." Hinebaugh v. Wiley, 137 F. Supp. 2d 69, 75 (N.D.N.Y. 2001) (cleaned up) (quoting Tineo, 977 F. Supp. at 253.) General and conclusory allegations will not be enough to establish cause; rather, a petitioner must plead specific facts. See Rosario v. Quay, No. 15-CV-523, 2017 WL 337977, at *3 (D. Conn. Jan. 23, 2017). To establish prejudice, a petitioner must show "actual harm resulting from the alleged [interference]." Hinebaugh, 137 F. Supp. 2d at 75.

 **\*14** Petitioner and Respondent both agree that Petitioner failed to fully exhaust his administrative remedies concerning his FSA credits. See Pet. Application at 8; Resp. at 27. Therefore, Count V will be procedurally barred unless the Court excuses Petitioner's failure to exhaust under the "cause and prejudice" test.

The Court first considers whether the BOP's failure to respond to his BP-9 appeal establishes "cause." See Trav. at 13–14. The exhaustion rules instruct inmates to treat non-responses to an administrative appeal as a denial. See 28 C.F.R. § 542.18; Zenquis v. Pullen, No. 22-CV-1151, 2023 WL 2931585, at *2 (D. Conn. Apr. 13, 2023). Thus, the lack of response to the BP-9 cannot constitute "cause" as the non-response did not prevent him from pursuing the remaining administrative remedies. See Tineo, 977 F. Supp. at 253.

The Court next considers whether Petitioner's transfer from FCI Ray Brook, where he filed the BP-9, constitutes "cause" that should excuse his failure to exhaust. See Trav. at 13–14. However, Petitioner provides no details as to how his transfer from FCI Ray Brook made "compliance with procedural rules impractical." Hinebaugh, 137 F. Supp. 2d at 75 (cleaned up). Without such detail, Petitioner's allegations are too general and conclusory to adequately show that "he was prevented from fully pursuing his administrative remedies due to circumstances beyond his control." Rosario, 2017 WL 337977, at *3. Conclusory allegations are not enough to establish "cause." See id. Without the requisite demonstration of "cause," the Court cannot excuse Petitioner's failure to exhaust. Therefore, the Court dismisses Count V without prejudice.

### 6. Right to Counsel

Petitioner also requests the Court to appoint counsel pursuant to 18 U.S.C. § 3006A(a)(2)(B) "to supplement and/or perfect his filing." Pet. at 16.

"Where, as here, an evidentiary hearing is unnecessary, the appointment of counsel to represent a pro se habeas Petitioner rests in the court's discretion." United States ex rel. Cadogan v. LaVallee, 502 F.2d 824, 826 (2d Cir. 1974). A district court "should not [exercise its discretion to appoint counsel] where the petitioner has raised the relevant issues with sufficient detail that the district court can thoroughly consider them." Florez v. Walker, No. 00-CV-1576, 2005 WL 1669826, at *1 (N.D.N.Y. July 16, 2005).

Here, Petitioner has raised his claims with clarity and, as no evidentiary hearing is required, the Court finds no reason to appoint counsel. Accordingly, Petitioner's request for counsel is denied.

Lastly, the Court notes that a certificate of appealability is not required for Petitioner to appeal the denial of his Petition because the Petition was brought under 28 U.S.C. § 2241. See Murphy v. United States, 199 F.3d 599, 601 n.2 (2d Cir. 1999) (holding that the Antiterrorism and Effective Death Penalty Act's certificate of appealability requirement does not apply to Section 2241 petitions).

### V. CONCLUSION
Accordingly, it is hereby:

Mason v. Alatary, Not Reported in Fed. Supp. (2024)

Case 9:22-cv-01161-BKS-ML   Document 24   Filed 02/04/26   Page 75 of 144

ORDERED, that that the Petition, Dkt. No. 1-1, is **DENIED AND DISMISSED** with respect to Counts I, II, III, and V; and the Petition, Dkt. No. 1-1, is **GRANTED** with respect to Count IV; and it is further

ORDERED, that the BOP conduct a Morrissey revocation hearing, within a reasonable amount of time, in accordance with the requirements discussed in Section IV.B.4.d.; and it is further

 **\*15** ORDERED, that the Clerk enter judgment and close this case; and it is further

ORDERED, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2024 WL 3950643

---

## Footnotes

1      Page citations refer to the pagination generated by CM/ECF, the Court's electronic filing system.

2      As Petitioner notes, the Revised Incident Report also changed a few other details from the Initial Incident Report. See Pet. at 8. However, none of these changes are of consequence here.

3      Petitioner also alleges that Respondent violated his substantive due process rights. See Pet. at 1. However, outside of raising the issue in the introductory paragraph of his Petition, Petitioner does not again discuss his substantive due process claim. "The first step in substantive due process analysis is to identify the constitutional right at stake." Kaluczky v. City of White Plains, 57 F.3d 202, 211 (2d Cir. 1995). Without identifying the constitutional right at issue, the Court cannot adjudicate the claim. Therefore, insofar as Petitioner asserts a substantive due process claim, this is dismissed without prejudice.

4      Berkun reviewed the regulation when the allotted review time was three days. Compare 28 C.F.R. § 541.15(b) (2010), with 28 C.F.R. § 541.7(c) (2024).

5      Although the Second Circuit has not yet addressed the issue of whether procedural protections are required when CARES Act home confinement is revoked, district courts in the Second Circuit have examined the issue. See Freeman, 658 F. Supp. 3d at 60–68 (applying Morrissey and finding the petitioner was entitled to due process protections prior to revocation of home confinement granted by the CARES Act); Cardoza v. Pullen, No. 22-CV-591, 2022 WL 3212408, at *6–14 (D. Conn. Aug. 9, 2022) (applying Morrissey but rejecting the petitioner's due process claim as no implicit promise was made to the prisoner); Tompkins v. Pullen, No. 22-CV-339, 2022 WL 3212368, at *4–15 (D. Conn. Aug. 9, 2022) (applying Morrissey and finding the petitioner was entitled to due process protections prior to revocation of home confinement granted by the CARES Act). Respondent agrees that no controlling authority exists but points the Court to several circuit and district court cases outside of the Second Circuit that have touched on the issue. See Resp. at 19–20. However, none of the cases cited by Respondent deal with the issue directly; therefore, the Court does not discuss them here.

6      The Court notes that Petitioner was released from secure custody to a halfway house in Brooklyn, New York on March 14, 2024. Dkt. No. 31 at 1. If a federal court can no longer grant the relief sought to resolve a controversy, subject matter jurisdiction is lost, and the matter becomes moot. See Martin-Trigona v. Shiff, 702 F.2d. 380, 386 (2d. Cir. 1983) ("The hallmark of a moot case or controversy is that the relief sought can no

Mason v. Alatary, Not Reported in Fed. Supp. (2024)

Case 9:22-cv-01161-BKS-ML    Document 24    Filed 02/04/26    Page 76 of 144

longer be given or is no longer needed."). As Petitioner specifically requested release to home confinement, see Pet. at 1, the Court finds the issue is not moot.

7       The exhaustion provisions imposed by the Prisoner Litigation Reform Act ("PLRA") do not apply to habeas corpus Petitions. See Carmona, 243 F.3d at 634 ("[W]e note that although ... the P[LRA] ... contains a statutory administrative exhaustion requirement, ... the requirements of the [PLRA] do not apply to habeas proceedings.").

---

**End of Document**                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

---

2024 WL 3950643
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Jamell MASON, Petitioner,
v.
David ALATARY, Respondent.

9:23-CV-193 (LEK)
|
Signed August 27, 2024

**Attorneys and Law Firms**

Jamell Mason, Brooklyn, NY, Pro Se.

Emer M. Stack, DOJ-USAO, Syracuse, NY, for Respondent.

### MEMORANDUM-DECISION AND ORDER

LAWRENCE E. KAHN, United States District Judge

## I. INTRODUCTION

 **\*1**  Petitioner Jamell Mason seeks federal habeas corpus relief pursuant to 28 U.S.C. § 2241 following his remand from home confinement to a secure facility. Dkt. No. 1-1 ("Petition"). Respondent David Alatary filed a response in opposition to the Petition with relevant supporting records. Dkt. No. 17 ("Response"). Petitioner filed a reply. Dkt. No. 20 ("Traverse").

For the reasons outlined below, the Petition is granted in part and denied in part.

## II. BACKGROUND

### A. Conviction
In 2011, the United States District Court for the Northern District of West Virginia sentenced Petitioner to a 210-month term of imprisonment with six years of supervised release for violation of various drug laws. See Resp. at 5 [1] (citing United States v. Mason, No. 09-CR-87 (N.D.W. Va. May 11, 2013), Dkt. No. 319 at 1–2, 4). Petitioner's projected release date is September 23, 2024. See id.

### B. Home Confinement

On December 15, 2020, the Bureau of Prisons ("BOP") redesignated Petitioner to home confinement pursuant to its authority under the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"). See id.; Dkt. No. 17-1 ¶ 3 ("Magnusson Declaration"). Upon his redesignation, Petitioner moved home to Brooklyn, New York under the supervision of the Brooklyn House Residential Reentry Center ("RRC"). See Pet. at 3; Resp. at 5. The terms of his home confinement required Petitioner to remain "at [his] place of residence, except for employment, unless ... given permission to do otherwise." Dkt. No. 17-11 at 2 ("Community Based Program Agreement" or "Agreement").

While home, Petitioner alleges he took OSHA and SST training courses, worked in construction, and cared for his partially paralyzed brother. See Pet. at 2–3. Prior to the incident underlying the Petition, Petitioner twice ran afoul of RRC rules by straying outside of his permitted locations without permission. See Resp. at 6–7; Dkt. No. 17-3 at 2–3; Dkt. No. 17-5 at 2–3. For both offenses, the BOP, acting on the RRC's recommendations, stripped Petitioner of good conduct time ("GCT") but did not remand Petitioner back to secure confinement. See Dkt. No 17-3 at 3; Dkt. No. 17-5 at 3.

### C. The Underlying Incident
On the night of July 8, 2022, while performing routine monitoring, RRC staff could not reach Petitioner on either his home or cell phone. See Resp. at 7. When Petitioner did not answer his phones, RRC staff performed a "spot check" to verify Petitioner's location. See Magnusson Decl. at ¶ 8. The spot check revealed that Petitioner left his house without permission at 9:03 PM and remained at an unauthorized location in Brooklyn, NY—the Stillwell Avenue Train Station —at 11:49 PM. See Resp. at 7. RRC staff notified the BOP duty officer, and Petitioner was placed on escape status. See id.

On the morning of July 9, 2022, RRC staff successfully contacted Petitioner and instructed him to report to the RRC facility. See Magnusson Decl. ¶ 8. Petitioner reported to the facility at approximately 10:18 AM and was immediately placed on building restriction. See Dkt. No. 1-2 at 2 ("Initial Incident Report"). RRC staff issued and delivered an incident report to Petitioner that afternoon, charging Petitioner with violating BOP Code 200 (Escape with Subsequent Voluntary Return within 4 Hours) and Code 316 (Being in an Unauthorized Location). See Magnusson Decl. ¶ 8.

**\*2** On July 11, 2022, RRC staff issued a revised incident report, upgrading Petitioner's Code 200 violation to Code 102 (Escape from Non-Secure Institution Including Community Confinement). See Dkt. No. 17-6 at 2 ("Revised Incident Report"); compare Initial Incident Report with Dkt. No. 1-2 at 4. [2] On the afternoon of July 11, 2022, RRC staff attempted to deliver the Revised Incident Report to Petitioner but, due to a communication break down between RRC staff and Petitioner, it appears Petitioner never received the Revised Incident Report. See Pet. at 9.

Later that day, despite being on building restriction, Petitioner walked out of the RRC facility without permission. See Magnusson Decl. ¶ 10. Petitioner eventually returned voluntarily, but RRC staff issued another incident report charging Petitioner with escape. See id.

On July 12, 2022, RRC staff and the BOP coordinated with the U.S. Marshals to remand Petitioner to a secure facility. See Dkt. No. 17-10 at 2. Petitioner remained in secure confinement until his release back to community confinement at the RRC on March 14, 2024. See Dkt. No. 31 at 1 ("Letter").

On July 27, 2022, RRC staff conducted a Center Discipline Committee ("CDC") hearing to adjudicate the Revised Incident Report ("CDC Hearing"). See Magnusson Decl. ¶ 9; Dkt. No. 17-7 at 2–4 ("CDC Report"). At the CDC Hearing, Petitioner admitted to straying out of bounds on July 8, 2022. See CDC Report at 2–3. As such, RRC staff found Petitioner violated Code 102 and 316 and recommended a loss of thirty-one days of GCT and imprisonment at a secure facility. See id. at 3–4. On August 5, 2022, as required by BOP policy, a BOP disciplinary hearing officer ("DHO") reviewed and adopted the CDC's recommendations in full. See Magnusson Decl. ¶ 9; CDC Report at 4. A copy of the CDC report, certified by the DHO, was given to Petitioner on August 8, 2022. See Pet. at 7–8. Petitioner first learned of the Code 102 violation when reviewing the CDC report. Id.

Petitioner unsuccessfully appealed the CDC's decision via the BOP's administrative remedy program. Magnusson Decl. ¶ 16; Dkt. No. 17-12 at 3–6. Once he exhausted his administrative remedies, Petitioner filed the instant Petition on February 10, 2023. See Pet.

### III. PETITION

Petitioner seeks federal habeas corpus relief, stating five claims that allege the BOP violated the Fifth Amendment Due Process Clause and other statutory rights. See id. In his first three claims relating to the adjudication of the Revised Incident Report, Petitioner contends that the BOP violated his due process rights when: (1) the DHO review was held in his absence; (2) the CDC Hearing was held eighteen days after the Initial Incident Report was issued; and (3) the BOP did not grant Petitioner the requisite 24-hour notice of the change in charge from Code 200 to Code 102. See id. at 5–10. Petitioner next argues that (4) his procedural due process rights were violated when the BOP remanded him to a secure facility without any process. [3] See id. at 10–11. Lastly, Petitioner contends (5) that the BOP failed to accurately apply Petitioner's First Step Act ("FSA") credits to his sentence. See id. at 11–13. Petitioner also requests the Court to appoint counsel pursuant to 18 U.S.C. § 3006A(a)(2)(B). See id. at 16. Respondent opposes all five counts and seeks to dismiss the Petition. See Resp. at 4–5.

### IV. DISCUSSION

#### A. Jurisdiction

**\*3** Habeas corpus relief is available if an individual is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A petition is properly brought pursuant to 28 U.S.C. § 2241 where a federal prisoner challenges the execution of their sentence, rather than its imposition. See Adams v. United States, 372 F.3d 132, 134–35 (2d Cir. 2004); Jiminian v. Nash, 245 F.3d 144, 146–47 (2d Cir. 2001). Execution of a sentence includes prison disciplinary hearings, so a Section 2241 petition is the proper means to challenge a petitioner's disciplinary hearings. See Adams, 372 F.3d at 135. Petitions filed under Section 2241 must name the petitioner's warden as the respondent and be filed in the district of the petitioner's confinement. 28 U.S.C. § 2241(a); Rumsfeld v. Padilla, 542 U.S. 426, 435, 447 (2004).

Here, Petitioner challenges the impact of an allegedly unlawful disciplinary hearing and was incarcerated at FCI-Ray Brook in the Northern District of New York when he commenced the instant action. Accordingly, the Section 2241 Petition is the appropriate procedural vehicle to address Petitioner's grievances, see Adams, 372 F.3d at 135, and Petitioner filed suit in the proper court, see Padilla, 542 U.S. at 447.

#### B. Petitioner's Claims

### 1. Claim I: DHO Review

Petitioner argues the BOP violated his due process rights when it did not afford him the opportunity to attend and present documentary evidence and witnesses at the DHO review. See Pet. at 5–6.

In Wolff v. McDonnell, the Supreme Court held that prisoners have the right to attend their disciplinary hearing, including the right to "call witnesses and present documentary evidence in [their] defense." 418 U.S. 539, 566 (1974); see also Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 454 (1985). If the disciplinary hearing takes the form of a CDC hearing, BOP policy requires that a DHO review and certify the CDC's findings. See Mansa v. United States, No. 16-CV-644, 2019 WL 121681, at *13 n.4 (D. Conn. Jan. 7, 2019). In such scenarios, Wolff does not mandate that a prisoner receive two disciplinary hearings, one before the CDC and another before a DHO. See id. ("[Petitioner] received an in-person hearing with the CDC and made a statement. The CDC hearing paperwork was forwarded to the DHO for review and certification pursuant to [BOP] policy. The DHO completed his review and certified the CDC hearing.... [Petitioner is] not entitled to an in-person DHO hearing or a separate DHO report."); Colon v. Tellez, No. 20-CV-5252, 2022 WL 521524, at *4 n.8 (E.D.N.Y. Feb. 22, 2022) (finding that the petitioner was not entitled to a DHO hearing after receiving a CDC hearing).

Here, Petitioner received the CDC Hearing. Petitioner attended the CDC Hearing and had an opportunity to call witnesses and present documentary evidence, satisfying Wolff's constitutional requirements. See CDC Report at 2. As such, Petitioner possessed no constitutional right to attend the DHO review or participate in a separate DHO hearing. Since the Court finds that Petitioner's absence at the DHO review did not violate due process, Claim I is denied.

### 2. Claim II: Timing of the CDC Hearing

Petitioner next argues that the timing of the CDC Hearing violates 28 C.F.R. § 541.7(c) and, consequently, violates his due process rights. See Pet. at 6–7. Section 541.7(c) states that a unit disciplinary committee ("UDC") "will ordinarily review [an] incident report within five work days after it is issued." 28 C.F.R. § 541.7(c). Petitioner states that the CDC Hearing, held on July 27, 2022, occurred eighteen days after

the publication of the Initial Incident Report, violating Section 541.7(c). See Pet. at 7.

**\*4** Assuming Section 541.7(c) applies, a plain reading of the regulation belies Petitioner's contention that RRC staff violated Section 541.7(c) by waiting eighteen days to hold the CDC Hearing. District courts both inside and outside the Second Circuit have found the five-day period is not a compulsory rule because of the inclusion of the word "ordinarily." See Epps v. Beard, No. 20-CV-44, 2022 WL 1462762, at *5 (E.D. Ky. May 9, 2022) ("Through its inclusion of the qualifying term 'ordinarily,' the rule intrinsically contemplates the possibility that prison staff might need additional time to provide an inmate a [hearing].") (internal quotation marks omitted); Linares v. Terris, No. 17-CV-11085, 2018 WL 1709027, at *4 (E.D. Mich. Apr. 9, 2018) (finding that the use of "ordinarily" makes clear that the five-day period in Section 541.7(c) is "an aspirational, not a mandatory, requirement"); Berkun v. Terrell, No. 11-CV-3237, 2011 WL 4753459, at *3 (E.D.N.Y. Oct. 7, 2011) ("[T]he inclusion of the word 'ordinarily' in the regulation suggests flexibility; it does not prohibit holding the hearing after [five] days."). [4] With this guidance, the Court rejects Petitioner's contention that the delay in holding the CDC Hearing violated Section 541.7(c). Absent a violation of the regulation, the Court finds Petitioner's due process rights have not been violated. Claim II is denied.

### 3. Claim III: Notice Requirement

Petitioner contends that his due process rights were violated when the CDC failed to provide him with advance written notice of the Code 102 disciplinary charge, and, consequently, prohibited him from mounting an effective defense at his CDC Hearing. See Pet. at 7–10.

Prior to a disciplinary hearing, a prisoner must have 24-hour written notice of the charges brought against him. See Wolff, 418 U.S. at 564; Hill, 472 U.S. at 454. The purpose of the notice requirement is "to inform [the prisoner] of the charges and to enable him to marshal the facts and prepare a defense." Wolff, 418 U.S. at 564. If a charge is amended after notice is already given, the BOP need not give new notice if the discrepancy does not impair the petitioner's ability to prepare a defense. See Northern v. Hanks, 326 F.3d 909, 911 (7th Cir. 2003) ("Because the factual basis of the investigation report gave [petitioner] all the information he needed to defend against the trafficking charge, the reviewing

authority's modification [of the charges] did not deprive [petitioner] of his due process rights."); Holt v. Caspari, 961 F.2d 1370, 1373 (8th Cir. 1992) (finding no due process violation when a charge was upgraded without new notice because the incident report "gave [the prisoner] all of the information he needed to make his defense"); Rogers v. Buss, No. 07-CV-569, 2008 WL 2151431, at *2 (N.D. Ind. May 21, 2008) ("Changing the rule with which [petitioner] was accused of violating did not deny him due process because the conduct report stated facts that supported the corrected charge and provided the facts he needed to prepare his defense against that charge.").

Respondent argues Petitioner received the Revised Incident Report and, consequently, had adequate notice of the Code 102 charge. See Resp. at 7. Petitioner contests this assertion, see Pet. at 9, but both parties agree that on July 11, 2022, RRC staff at least attempted to give Petitioner the Revised Incident Report with the Code 102 charge. See Resp. at 7; Pet. at 9. Petitioner states that RRC staff never explained to him that the Initial Incident Report had been updated, and, therefore, he refused RRC staff's attempt to give him the Revised Incident Report on July 11, 2022, as he believed he already possessed the correct incident report. See Pet. at 9. Respondent does not directly dispute Petitioner's version of the events, but simply states Petitioner refused the Revised Incident Report. See Resp. at 7. Given these allegations, the Court finds that Petitioner was not aware he was charged with Code 102 before the CDC Hearing.

 **\*5** Respondent also argues that Petitioner received the Initial Incident Report, and, therefore, notice of the Code 102 charge. See Resp. at 24. Specifically, Respondent argues Petitioner "failed to submit the version of the [Initial] Incident Report he allegedly received, and instead has submitted the very same incident report as Respondent [which showed the Code 102 charge]." Resp. at 24. Respondent concludes that this proves Petitioner received notice of the Code 102 charge. See id. Respondent is factually incorrect. Petitioner submitted two incident reports. The first submission shows an incident report delivered on July 9, 2022, with a Code 200 violation. See Initial Incident Report. The second shows the Incident Report with a Code 102 violation, delivered on July 11, 2022, which Petitioner states he did not receive until August 8, 2022—well after the CDC Hearing. See Dkt. No. 1-2 at 4; Pet. at 9. As such, the Court rejects this argument.

Respondent next argues that, even if Petitioner was not aware of the Code 102 charge, the differences between a Code 200

Escape and a Code 102 Escape did not impair Petitioner's ability to prepare an adequate defense. See Resp. at 24–25. Therefore, Respondent concludes, the lack of awareness did not violate Petitioner's due process. See id.

As support, Respondent cites to a district court ruling from the Eastern District of California. See Reed v. Babcock, No. 13-CV-2450, 2015 WL 1932526, at *2 (E.D. Cal. Apr. 15, 2015). In Reed, a petitioner who was initially charged with a Code 102 violation was instead found guilty of a downgraded Code 200 violation; the petitioner argued that, since he had not received notice of the Code 200 violation until after the disciplinary hearing, the guilty finding violated his due process rights. See id. at *2. The court in Reed found that the revision to the charges without new notice did not violate the petitioner's due process rights as the petitioner's defense did not "implicate the distinction between [C]ode 200 escape and [C]ode 102 escape[,]" and that the petitioner had all the information he needed to defend against the Code 200 charge from the initial notice. Id. at 3.

Unlike in Reed, Petitioner did not receive notice of the different charge that was more severe than the one initially charged. See id. (finding "notice of the *most severe* such charge that might be supported by those facts[ ] provided [the] petitioner with exactly what Wolff requires.") (emphasis added). Moreover, Petitioner argues he would have presented evidence, including witness testimony, that he returned to confinement within four hours of his initial escape in an effort to have the Code 102 charge downgraded to a Code 200 charge. See Trav. at 12–13; cf. Reed, 2015 WL 1932526, at *3 ("Nothing in the record suggests that petitioner's defense at the hearing would have differed" depending on how the escape was charged). Therefore, the Court concludes that, as Petitioner's ability to present a mitigation defense was impaired by the lack of notice, the lack of notice violated his due process rights.

However, even if a due process violation occurs, "it is entirely inappropriate to overturn the outcome of a prison disciplinary proceeding because of a procedural error without making the normal [ ] assessment as to whether the error was harmless or prejudicial." Powell v. Coughlin, 953 F.2d 744, 750 (2d Cir. 1991); see also Green v. Christensen, No. 23-CV-127, 2024 WL 1619392, at *3 (N.D.N.Y. Apr. 15, 2024) ("[P]rior to receiving judicial relief for a due process violation in a disciplinary hearing, a prisoner must demonstrate that the violation harmed them in some way."); Mendez v. Bell, No. 16-CV-2123, 2018 WL 4039321, at *5 (D. Conn. Aug. 23,

Mason v. Alatary, Not Reported in Fed. Supp. (2024)

Case 9:22-cv-01161-BKS-ML    Document 24    Filed 02/04/26    Page 81 of 144

2018) (finding an absence of prejudice "cannot make out a due process violation"). "[T]he proof of prejudice must be definite and not speculative." United States v. Birney, 686 F.2d 102, 105–06 (2d Cir. 1982); see also Green, 2024 WL 1619392, at *3 (same). The burden of proving prejudice rests with the petitioner. See Green, 2024 WL 1619392, at *3.

**\*6** While Petitioner has established a violation of due process, Petitioner does not demonstrate prejudice. For example, Petitioner does not argue that he would not have been remanded from home confinement to secure confinement with the Code 200 violation. As such, Petitioner's argument that he suffered harm is at most speculative, and speculative prejudice is not enough to "make out a due process violation." Mendez, 2018 WL 4039321, at *5; see also Powell, 953 F.2d at 750 (finding that when prejudice is only speculative, a technical violation of due process does not require judicial intervention). The Court concludes that, as Petitioner failed to make the requisite showing of prejudice, judicial relief is not warranted. Claim III is denied.

### 4. Claim IV: Revocation of Home Confinement

Petitioner argues the BOP violated his constitutional rights when it revoked his home confinement without the requisite due process. See Pet. at 10–11. Respondent contends that Petitioner lacks a liberty interest in home confinement and, therefore, was not entitled to process prior to its revocation. See Resp. at 14.

#### a. Liberty Interest Jurisprudence

To state a procedural due process claim, a prisoner must show that they have a protected liberty interest. See Kerry v. Din, 576 U.S. 86, 90 (2015) (noting that no process is due when no liberty interest is at stake). A prisoner has no liberty interest in being placed outside of a traditional prison setting or being "conditionally released before the expiration of a valid sentence." Greenholtz v. Inmates of Neb. Penal Corr. Complex, 442 U.S. 1, 7 (1979). However, government action in the carceral environment can create a liberty interest. See Wolff, 418 U.S. at 557–58 (holding that a state statute granting GCT created a liberty interest in a "shortened prison sentence").

District courts are far from uniform on what, if any, liberty interest is provided to an individual placed on continued home confinement pursuant to the CARES Act. Compare Aurecchione v. Falco, No. 22-CV-4538, 2023 WL 6255529, at *12 (S.D.N.Y. Sep. 25, 2023) (explaining that "[e]volving caselaw in the Second Circuit reinforces the existence of [a] right to process" in home confinement cases and recognizing a liberty interest in maintaining continued home confinement); Freeman v. Pullen, 658 F. Supp. 3d 53, 66–67 (D. Conn. 2023) (concluding that a habeas petitioner had a liberty interest in continued home confinement) with Triplett v. FCI Herlong Warden, No. 22-CV-83, 2023 WL 2760829, at *3 (E.D. Cal. Apr. 3, 2023) (finding the petitioner had no liberty interest in remaining on home confinement); Touizer v. Attorney General of the United States, No. 20-CV-5169, 2021 WL 371593, at *4 (S.D. Fla. Feb. 3, 2021) (same). Although the Court finds the precedent within the Second Circuit persuasive, the Court will engage in its own independent analysis to determine whether Respondent created a liberty interest in the CARES Act home confinement program. The Court first turns to the liberty interest jurisprudence involving other community confinement programs.

District courts assess potential liberty interests using the guidance established by Morrissey v. Brewer, 408 U.S. 471 (1972). In Morrissey, two prisoners filed habeas petitions after their parole was revoked without a hearing. See 408 U.S. at 472–74. Each petitioner claimed that they retained a liberty interest in remaining on parole and that the arbitrary revocation violated their due process rights. See id. at 474. To determine if a liberty interest existed in remaining on parole, the Supreme Court examined the nature and conditions of parole. See id. at 477–82. The Supreme Court explained that the nature of parole "is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence." Id. at 477. Since parolees, while subject to certain limitations, could still "be gainfully employed and [are] free to be with family and friends and to form the other enduring attachments of normal life," the Supreme Court concluded that the parolees' "condition is very different from that of confinement in a prison." Id. at 482.

**\*7** The Morrissey Court also noted that the nature of the parole program included "an implicit promise that parole will be revoked only if [parolees] fail[ ] to live up to the parole conditions." Morrissey, 408 U.S. at 482.; see also id. at 479 ("Implicit in the system's concern with parole violations is the

notion that the parolee is entitled to retain his liberty as long as he substantially abides by the conditions of his parole.”).

Applying the then-governing “grievous loss” standard, the Supreme Court concluded that the parole program created a liberty interest as it possessed “many of the core values of unqualified liberty and its termination inflicts a ‘grievous loss’ on the parolee.” Id. at 482. Thus, termination of parole required “some orderly process, however informal.” Id.

The Supreme Court applied the reasoning in Morrissey when it reviewed a preparole program in Oklahoma's state prisons. See Young v. Harper, 520 U.S. 143 (1997). In Young, a prisoner spent five “uneventful” months in community confinement pursuant to the preparole program after which State authorities denied him parole and returned him to state prison without process. See id. at 145–46. The prisoner filed a habeas petition, claiming the revocation of his preparole deprived him of liberty without due process. See id. at 146. The Supreme Court agreed, extending Morrissey to the preparole program. See id. at 147. In coming to its decision, the Supreme Court compared the preparole program to the parole program in Morrissey with respect to the conditions of liberty conferred. See id. at 148–152. The Supreme Court noted that, though the preparole program restricted the prisoner from certain activities, a participant could still live at home, work, and “live[ ] a life generally free of the incidents of imprisonment,” just as the parolees in Morrissey could. Id. at 148. Additionally, as in Morrissey, the preparole program included an implicit promise that a preparole would remain free absent a violation of the program. See id. at 150–51. The Supreme Court concluded that, as the preparole program was “equivalent to parole,” the preparole held a liberty interest in his freedom entitling him to the procedural protections of Morrissey. Id. at 147.

Following Morrissey and Young, the Second Circuit has applied Morrissey to analyze whether the Due Process Clause creates a liberty interest in various community confinement programs by comparing the community confinement program to the liberty interest found in parole and preparole programs. See Holcomb v. Lykens, 337 F.3d 217, 222–25 (2d Cir. 2003) (applying Morrissey to Vermont's temporary furlough program and finding petitioner received the procedural protections outlined in Morrissey); Anderson v. Recore, 317 F.3d 194, 200 (2d Cir. 2003) (finding Morrissey held that once community confinement similar to parole is granted, “it cannot [be] take[n] ... away without according the inmate procedural due process”); Kim v. Hurston, 182 F.3d 113, 118–

119 (2d Cir. 1999) (applying Morrissey to a New York work release program and holding the prisoner had a liberty interest in remaining in the program).

Against this backdrop, the Court turns to its examination of the present facts.

### b. Respondent's Preliminary Arguments

As a preliminary matter, Respondent argues that the Court should dismiss Claim IV as the Court “has no authority to grant Petitioner's request for immediate ... placement in home confinement because those decisions are within the BOP's sole discretion.” Resp. at 10. The Court recognizes that the BOP generally has sole discretion in the placement and transfer of prisoners. See 18 U.S.C. § 3621(b) (establishing that the “[BOP] shall designate the place of the prisoner's imprisonment” and “may at any time[ ] ... direct the transfer of a prisoner from one penal or correctional facility to another,” and that “a designation of a place of imprisonment ... is not reviewable by any court”); see also Touizer, 2021 WL 371593, at *3 (finding that the BOP has “exclusive authority ... to designate the place of an inmate's confinement”).

**\*8** However, the Court finds the comparison to Touizer unpersuasive. Despite the BOP's broad authority under Section 3621(b), judicial review is appropriate where the BOP's actions allegedly violate the Constitution. See Freeman, 658 F. Supp. 3d at 63 (citing cases). As Claim IV turns on constitutional questions, the Court rejects Respondent's argument that the BOP's authority prevents judicial review.

Respondent next argues that the Morrissey and Young line of cases do not apply. See Resp. at 15–17. Instead, Respondent asserts that Meachum v. Fano, 427 U.S. 215 (1976) controls. See id. In Meachum, the Supreme Court ruled that a prisoner had no liberty interest in his prison setting and that a prison administration could transfer a prisoner to another prison with no process without running afoul of the Due Process Clause. Meachum, 427 U.S. at 228–29. Respondent argues that Meachum applies because, despite being on home confinement, Petitioner remains in BOP custody as “a federal inmate, serving an ongoing federal sentence,” and, thus “[is] less like the parolees and preparolees ... in Morrissey and Young, and more like the inmate[ ] in Meachum.” Resp. at 17.

Mason v. Alatary, Not Reported in Fed. Supp. (2024)

Case 9:22-cv-01161-BKS-ML    Document 24    Filed 02/04/26    Page 83 of 144

The Court finds Respondent's argument unpersuasive. In Young, Oklahoma made a similar argument, claiming that because the preparole remained in custody like the petitioner in Meachum, Meachum should control. See Young, 520 U.S. at 148. The Supreme Court rejected the argument, noting the preparolees' actual conditions more closely resembled Morrissey despite Oklahoma's technical characterization of the preparolees' custody. See id. at 148–49; see also Recore, 317 F.3d at 200 ("Because [the petitioner], like the petitioner[ ] in Morrissey ... lived outside the prison, a comparison to the ordinary conditions of prison life is inappropriate.").

Here, as in Young and Morrissey, Petitioner's home confinement allowed Petitioner to live at home "free of the incidents of imprisonment." Young, 520 U.S. at 148. Given the conditions of Petitioner's home confinement, the Court will apply Morrissey to decide Claim IV.

### c. Morrissey Test

No controlling authority has yet answered whether revocation of home confinement granted pursuant to the CARES Act requires the procedural protections granted to parolees by Morrissey.[5] The Court is also unaware of any binding precedent that addresses the constitutional rights of prisoners on home confinement pursuant solely to 18 U.S.C. § 3624(c)(2). Accordingly, the Court will use Morrissey to undertake an independent examination of Petitioner's constitutional rights on home confinement.

**\*9** To successfully prove the existence of a liberty interest in home confinement, Petitioner must plausibly allege (1): that the conditions of the home confinement program are sufficiently similar to the conditions of the parole program in Morrissey with respect to the extent and conditions of liberty conferred; and (2) that the home confinement program implicitly promised that Petitioner's home confinement status would continue absent misconduct. Morrissey, 408 U.S. at 481–82; Young, 520 U.S. at 147–48; see also Holcomb, 337 F.3d at 222–23; Cardoza, 2022 WL 3212408, at \*8.

### i. Liberty Conferred

Petitioner contends that the first prong is met because the liberty conferred by his home confinement "bears such [a] strong resemblance to the [p]arole [p]rogram in Morrissey."

Pet. at 10. Petitioner explains that his home confinement allowed him to live at home, take care of his brother, work, and "form certain attachments common to normal life," and concludes that, as in Morrissey, his living conditions are distinct from normal "confinement in a prison." Id. at 10–11.

With respect to the extent of the liberty conferred, some factual differences do exist between the home confinement program and the parole program in Morrissey. For example, the parolee in Morrissey was free to travel within his "community," Morrissey 408 U.S. at 478, while Petitioner required permission to travel anywhere but home and work. See Agreement at 2. Despite these stricter rules, "the privileges available in [home confinement] are worlds apart [ ] from eating prisoner food in a cell." See Ortega v. U.S. Immigration and Customs Enforcement, 737 F.3d 435, 439 (6th Cir. 2013). Thus, the Court is unconvinced that the differences are so stark as to prevent a finding that home confinement "include[s] many of the core values of unqualified liberty" found in Morrissey. 408 U.S. at 482. As such, the Court holds that Petitioner satisfies the first step of the Morrissey analysis.

### ii. Implicit Promise

Turning to the implicit promise analysis, Respondent argues no implicit promise arises from "any statutory, regulatory, or other governing authority," and, as such, no "reasonable inmate [could] conclude that he is entitled to remain in home confinement" absent misconduct. Resp. at 19.

"The Morrissey line of cases does not specify where such an implicit promise must originate." Cardoza, 2022 WL 3212408, at \*12. An implicit promise of continuing liberty need not be communicated via a statutory or regulatory authority. See Morrissey, 408 U.S. at 492–93 (Douglas, J., dissenting) (stating that the majority found an indication of an implicit promise despite the statute governing the parole program providing the warden complete discretion to revoke parole at any time). "Imposing such a requirement would be more akin to requiring an explicit promise, as opposed to an implicit one." Cardoza, 2022 WL 3212408, at \*12.

Historically, courts have found an implicit promise in various sources. See Morrissey, 408 U.S. at 479, 482 (finding an implicit promise in the nature of parole and the "system's concern with parole violations"); Holcomb, 337 F.3d at 223 (examining the community confinement statute to determine

Mason v. Alatary, Not Reported in Fed. Supp. (2024)

if an implicit promise exists); Pugliese v. Nelson, 617 F.2d 916, 922 (2d Cir. 1980) ("To qualify as constitutionally protectible 'liberty,' the prisoner's interest must be ... one that he would normally expect to have as a matter of custom and practice or of fundamental decency and fairness."); Ortega, 737 F.3d at 439 ("What process is due ... may well turn on the notice given to the individual before he was allowed to serve a prison sentence at home."). Thus, the Court rejects Respondent's contention.

**\*10** Petitioner argues that the Community Based Program Agreement governing Petitioner's home confinement implicitly promises that his home confinement would not be revoked without misconduct. See Trav. at 9. Specifically, the Agreement states that "failure to remain at the required locations [or heed other rules in the Agreement] may result in disciplinary action and/or prosecution for escape." Agreement at 2. The Agreement also explains that if Petitioner "decline[s] to participate in the recommended Home Detention program [he] may face administrative reassignment out of the residential reentry program." Id. Petitioner argues that one could reasonably infer based on such language that reincarceration could only stem from misconduct. See Trav. at 9. Further, the Agreement does not state that home confinement could be arbitrarily terminated. Petitioner contends that the lack of such language, coupled with the disciplinary warnings described above, give "no hint" that he may be removed from home confinement without cause, thus creating a reasonable expectation that he would remain on home confinement "except by committing [a] major infraction." Trav. at 10.

Petitioner also notes that the then-Director of the BOP, Michael Carvajal "indicated in a 2020 address to the Senate Committee on the Judiciary that he expected those removed to home confinement pursuant to the CARES Act would remain on home confinement" barring misconduct. Id. Furthermore, BOP General Counsel Ken Hyle wrote in a report that those on home confinement pursuant to the CARES Act would only be "transferred back to secure correctional facilities if there are any significant disciplinary infractions or violations of the home confinement agreement." Id. Petitioner argues that the statements from BOP leadership make clear that the BOP "does not employ a widespread practice of reincarcerating individuals" released on home confinement. Id. This, Petitioner argues, could "reasonably [ ] instill an expectation that one would be permitted to continue on home confinement absent good cause for revocation." Id. The Court agrees with Petitioner, finding an implicit promise

that Petitioner would remain on home confinement absent misconduct.

Accordingly, the Court concludes that Petitioner possesses a liberty interest in home confinement that required some process prior to its permanent revocation.

### d. Procedure Due

The Court must next examine the process due. No controlling authority dictates what process a prisoner on home confinement should receive prior to its revocation; nor does either party brief the issue. Considering the similarities between home confinement and the parole program in Morrissey, the Court concludes that Morrissey protections apply here. See Young, 520 U.S. at 152–53 (establishing that, since preparole was sufficiently like parole, a preparole was entitled to the procedural protections set forth in Morrissey); Tompkins, 2022 WL 3212368, at \*11–12 (holding that Morrissey protections applied to a prisoner whose home confinement was revoked without due process). As such, prior to permanently revoking home confinement, the BOP must provide the Morrissey procedural protections described below.

In Morrissey, the Supreme Court laid out a two-hearing process to satisfy a parolee's due process. Morrissey, 408 U.S. at 485–90. Following the detention of a parolee for an alleged violation of parole conditions, "some minimal inquiry [must] be conducted ... near the place of the alleged parole violation or arrest and as promptly as convenient after arrest while information is fresh and sources are available." Id. at 485. This preliminary hearing requires only a showing of "probable cause" to justify the parolee's continued detention. Id. The adjudicator of the preliminary hearing must "not [be] directly involved in the case" but "need not be a judicial officer." Id. at 485–86. The parolee must also receive notice of the hearing which "should state what ... violations have been alleged." Id. at 487; see Tompkins, 2022 WL 3212368, at \*12. At the hearing, the parolee may testify on his own behalf, present documentary evidence, call witnesses, and cross examine adverse witnesses. See Morrissey, 408 U.S. at 487. Upon returning a decision, the adjudicator must provide some type of summary of the evidence presented and their conclusions. See id. If a determination of probable cause is made in the preliminary hearing, a parolee may be constitutionally detained pending the second Morrissey hearing. See id.

Mason v. Alatary, Not Reported in Fed. Supp. (2024)

Case 9:22-cv-01161-BKS-ML    Document 24    Filed 02/04/26    Page 85 of 144

**\*11** Following a probable cause finding in the preliminary hearing, a revocation hearing is still required to permanently revoke parole. See Morrissey, 408 U.S. at 487–88; Williams v. Ward, 556 F.2d 1143, 1156 (2d Cir. 1977) ("A later revocation hearing was required, prior to the final decision on revocation."). The revocation hearing must "be tendered within a reasonable time after the parolee is taken into custody." Morrissey, 408 U.S. at 488; see also id. (finding a delay of two months to be reasonable). To satisfy the "minimum requirements of due process," the parolee must receive:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

Id. at 489.

In detailing the requirements of the revocation hearing, the Supreme Court did not specify the burden of proof required to permanently remand a parolee to secure custody. However, the Supreme Court stressed that the revocation hearing does not "equate ... to a criminal prosecution in any sense." Id. at 489. Thus, the Court concludes that the high standard of a criminal prosecution is inappropriate. Yet, the Supreme Court also noted that the revocation hearing "must be the basis for more than determining probable cause." Id. at 488. Therefore, an evidentiary standard between "beyond a reasonable doubt" and "probable cause" is appropriate. Since the preponderance standard is used in revocation hearings for similar programs like probation and supervised release, see 18 U.S.C. § 3583(e)(3); United States v. Bujak, 347 F.3d 607, 609 (6th Cir. 2003); United States v. Teran, 98 F.3d 831, 836 (5th Cir. 1996), the

Court concludes that a "preponderance of the evidence" is the appropriate evidentiary burden.

### e. Process Received

The Court next examines whether the process Petitioner received met these requirements. Following numerous alleged violations of the home confinement program, RRC staff, BOP staff, and the United States Marshals coordinated to remand Petitioner to secure confinement on July 12, 2022. See Magnusson Decl. ¶ 12. On July 27, 2022, Petitioner faced a neutral CDC board that afforded Petitioner all the procedural protections required by a Morrissey preliminary hearing. Petitioner (1) had the opportunity to testify, call and confront witnesses, and present evidence, see CDC Report at 2; (2) received a brief written summary of the evidence and the CDC board's conclusions, including a recommendation to keep Petitioner in secure custody, see id. at 3; and (3) faced no significant delay between his remand to secure custody on July 12, 2022, and the CDC Hearing on July 27, 2022. Considering the process Petitioner received, the Court concludes Petitioner's secure confinement immediately following his CDC Hearing did not violate Petitioner's due process rights.

However, Petitioner never received a revocation hearing as required by step two of Morrissey. Petitioner received a DHO review after his CDC Hearing, see Magnusson Decl. ¶ 9; CDC Report at 4, but Petitioner was not notified of, present for, or given the opportunity "to present witnesses and documentary evidence" at a DHO review or any associated hearing. Morrissey, 408 U.S. at 489. Therefore, any DHO review or hearing did not satisfy the "minimum requirements of due process" guaranteed to Petitioner by Morrissey. Id. Accordingly, the Court finds that Respondent violated Petitioner's due process rights in revoking his home confinement without a proper revocation hearing as required by Morrissey. With respect to Claim IV, the Petition is granted.

### f. Remedy

**\*12** In relation to the unconstitutional revocation of his home confinement, Petitioner seeks "immediate release (while awaiting [a] revocation hearing that complies with [d]ue [p]rocess), [a] declaration that Respondents have insufficient basis under the Due Process [C]lause to detain

Mason v. Alatary, Not Reported in Fed. Supp. (2024)

Case 9:22-cv-01161-BKS-ML   Document 24   Filed 02/04/26   Page 86 of 144

him ..., [and] an injunction against Petitioner's continued imprisonment until his due process rights have been restored." Dkt. No. 1 at 7 ("Petition Application"). [6]

"[T]he proper remedy for a due process violation is the process itself." Tompkins, 2022 WL 3212368, at *14; see United States ex rel. Bey v. Conn. State Bd. of Parole, 443 F.2d 1079, 1089–90 (2d Cir. 1971) (concluding that the proper remedy for an improper parole revocation hearing was a new revocation hearing), vacated on other grounds sub nom. Conn. State Bd. of Pardons v. Bey, 404 U.S. 879 (1971). Thus, the Court holds that the proper remedy for Petitioner is not immediate release to home confinement but a Morrissey revocation hearing. To the extent Petitioner argues that his continued detention while awaiting the revocation hearing is unconstitutional, the Court disagrees. Petitioner received a preliminary hearing in accordance with Morrissey, making his detention lawful for a "reasonable" period of time while awaiting the revocation hearing. Petitioner was also transferred back to community confinement at the RRC on March 14, 2024. See Letter at 1. Now that Respondent is on notice that a revocation hearing is required, the Court finds that Petitioner's continued detention remains lawful for a "reasonable" period. If needed, Petitioner's continued detention can be revisited if the Respondent fails to provide a timely revocation hearing following the publication of this order. See Billiteri v. United States Bd. of Parole, 541 F.2d 938, 946 (2d Cir. 1976) ("If the case was before the court on a petition for habeas corpus, it may order compliance within a reasonable period, failing which it may order the petitioner discharged from custody."). Accordingly, Petitioner's request for immediate release is denied without prejudice, subject to renewal should the BOP neglect to provide a Morrissey revocation hearing within a reasonable time frame.

Petitioner also seeks declaratory relief. See Pet. at 1. The Declaratory Judgment Act ("DJA") permits a federal court to declare the rights of a party "whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The DJA "confers a discretion on the courts rather than an absolute right upon the litigant." Public Service Comm'n of Utah v. Wycoff Co., 344 U.S. 237, 241 (1952). Here, the Court has found a constitutional violation in relation to the revocation of home confinement and declaratory relief would prove duplicative. Accordingly, the Court declines to exercise its discretion under the DJA.

As for Petitioner's request for an injunction against continued imprisonment, see Pet. Application at 7, the Court dismisses

the request as moot as Petitioner is no longer in secure confinement.

#### 5. Count V: First Step Act

**\*13** Petitioner's last claim accuses the BOP of failing to accurately apply Petitioner's First Step Act ("FSA") credits to his sentence. See Pet. at 11–13.

A petitioner seeking relief pursuant to Section 2241 must exhaust their administrative remedies. See Carmona v. United States Bureau of Prisons, 243 F.3d 629, 634 (2d Cir. 2001). "This requires compliance with the BOP's four-step Administrative Remedy Program." Lallave v. Martinez, 609 F. Supp. 3d 164, 179 (E.D.N.Y. 2022) (citing 28 C.F.R. § 542.10(a)).

To exhaust the BOP's four-step Administrative Remedy Program a prisoner must complete the following steps:

> The first step of the prescribed process entails making an effort to obtain an early resolution of the matter by raising the issue informally to staff. In the event this avenue does not lead to a successful resolution, the inmate next may submit a formal written [Administrative Remedy ("AR")] to the warden of the particular facility involved, utilizing a designated BP–9 form, within twenty days of the relevant event. If the AR is denied, an appeal may be taken to the appropriate BOP Regional Director within twenty calendar days of the date of denial. As a fourth and final step, an unfavorable decision from the Regional Director may be appealed to the General Counsel's office (also referred to as the "Central Office" [or "CORC"]) within thirty days of the date on which the Regional Director rejects the inmate's appeal.

Case 9:22-cv-01161-BKS-ML    Document 24    Filed 02/04/26    Page 87 of 144

Mason v. Alatary, Not Reported in Fed. Supp. (2024)

Barber v. Perdue, No. 11-CV-127, 2012 WL 5996342, at *4 (N.D.N.Y. Nov. 9, 2012) (internal citations omitted). [7] In sum, "[n]o administrative appeal is fully exhausted until the BOP's Central Office reviews it." Reynolds v. Warden of FCI Ray Brook, No. 16-CV-1264, 2019 WL 8064012, at *3 (N.D.N.Y. Aug. 5, 2019). The burden of demonstrating exhaustion rests with the petitioner. See Spring v. Schult, No. 08-CV-531, 2009 WL 3232183, at *1 (N.D.N.Y. Oct. 1, 2009) (Kahn, J.).

A federal inmate's failure to exhaust the administrative remedies available to him prior to commencing a Section 2241 action may "only be excused upon a showing of cause and prejudice." Carmona, 243 F.3d at 634. To demonstrate legal "cause," a petitioner must establish that "something external to the petitioner, something that cannot be fairly attributed to him," prevented the petitioner from fully exhausting his administrative remedies. Tineo v. United States, 977 F. Supp. 245, 253 (S.D.N.Y. 1996) (quoting Coleman v. Thompson, 501 U.S. 722, 753 (1991)). Factors that constitute "cause" include "interference by officials that makes compliance with procedural rules impractical." Hinebaugh v. Wiley, 137 F. Supp. 2d 69, 75 (N.D.N.Y. 2001) (cleaned up) (quoting Tineo, 977 F. Supp. at 253.) General and conclusory allegations will not be enough to establish cause; rather, a petitioner must plead specific facts. See Rosario v. Quay, No. 15-CV-523, 2017 WL 337977, at *3 (D. Conn. Jan. 23, 2017). To establish prejudice, a petitioner must show "actual harm resulting from the alleged [interference]." Hinebaugh, 137 F. Supp. 2d at 75.

**\*14** Petitioner and Respondent both agree that Petitioner failed to fully exhaust his administrative remedies concerning his FSA credits. See Pet. Application at 8; Resp. at 27. Therefore, Count V will be procedurally barred unless the Court excuses Petitioner's failure to exhaust under the "cause and prejudice" test.

The Court first considers whether the BOP's failure to respond to his BP-9 appeal establishes "cause." See Trav. at 13–14. The exhaustion rules instruct inmates to treat non-responses to an administrative appeal as a denial. See 28 C.F.R. § 542.18; Zenquis v. Pullen, No. 22-CV-1151, 2023 WL 2931585, at *2 (D. Conn. Apr. 13, 2023). Thus, the lack of response to the BP-9 cannot constitute "cause" as the non-response did not prevent him from pursuing the remaining administrative remedies. See Tineo, 977 F. Supp. at 253.

The Court next considers whether Petitioner's transfer from FCI Ray Brook, where he filed the BP-9, constitutes "cause" that should excuse his failure to exhaust. See Trav. at 13–14. However, Petitioner provides no details as to how his transfer from FCI Ray Brook made "compliance with procedural rules impractical." Hinebaugh, 137 F. Supp. 2d at 75 (cleaned up). Without such detail, Petitioner's allegations are too general and conclusory to adequately show that "he was prevented from fully pursuing his administrative remedies due to circumstances beyond his control." Rosario, 2017 WL 337977, at *3. Conclusory allegations are not enough to establish "cause." See id. Without the requisite demonstration of "cause," the Court cannot excuse Petitioner's failure to exhaust. Therefore, the Court dismisses Count V without prejudice.

*6. Right to Counsel*

Petitioner also requests the Court to appoint counsel pursuant to 18 U.S.C. § 3006A(a)(2)(B) "to supplement and/or perfect his filing." Pet. at 16.

"Where, as here, an evidentiary hearing is unnecessary, the appointment of counsel to represent a pro se habeas Petitioner rests in the court's discretion." United States ex rel. Cadogan v. LaVallee, 502 F.2d 824, 826 (2d Cir. 1974). A district court "should not [exercise its discretion to appoint counsel] where the petitioner has raised the relevant issues with sufficient detail that the district court can thoroughly consider them." Florez v. Walker, No. 00-CV-1576, 2005 WL 1669826, at *1 (N.D.N.Y. July 16, 2005).

Here, Petitioner has raised his claims with clarity and, as no evidentiary hearing is required, the Court finds no reason to appoint counsel. Accordingly, Petitioner's request for counsel is denied.

Lastly, the Court notes that a certificate of appealability is not required for Petitioner to appeal the denial of his Petition because the Petition was brought under 28 U.S.C. § 2241. See Murphy v. United States, 199 F.3d 599, 601 n.2 (2d Cir. 1999) (holding that the Antiterrorism and Effective Death Penalty Act's certificate of appealability requirement does not apply to Section 2241 petitions).

**V. CONCLUSION**
Accordingly, it is hereby:

Mason v. Alatary, Not Reported in Fed. Supp. (2024)

Case 9:22-cv-01161-BKS-ML   Document 24   Filed 02/04/26   Page 88 of 144

ORDERED, that that the Petition, Dkt. No. 1-1, is **DENIED AND DISMISSED** with respect to Counts I, II, III, and V; and the Petition, Dkt. No. 1-1, is **GRANTED** with respect to Count IV; and it is further

ORDERED, that the BOP conduct a Morrissey revocation hearing, within a reasonable amount of time, in accordance with the requirements discussed in Section IV.B.4.d.; and it is further

**\*15** ORDERED, that the Clerk enter judgment and close this case; and it is further

ORDERED, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2024 WL 3950643

---

## Footnotes

1   Page citations refer to the pagination generated by CM/ECF, the Court's electronic filing system.

2   As Petitioner notes, the Revised Incident Report also changed a few other details from the Initial Incident Report. See Pet. at 8. However, none of these changes are of consequence here.

3   Petitioner also alleges that Respondent violated his substantive due process rights. See Pet. at 1. However, outside of raising the issue in the introductory paragraph of his Petition, Petitioner does not again discuss his substantive due process claim. "The first step in substantive due process analysis is to identify the constitutional right at stake." Kaluczky v. City of White Plains, 57 F.3d 202, 211 (2d Cir. 1995). Without identifying the constitutional right at issue, the Court cannot adjudicate the claim. Therefore, insofar as Petitioner asserts a substantive due process claim, this is dismissed without prejudice.

4   Berkun reviewed the regulation when the allotted review time was three days. Compare 28 C.F.R. § 541.15(b) (2010), with 28 C.F.R. § 541.7(c) (2024).

5   Although the Second Circuit has not yet addressed the issue of whether procedural protections are required when CARES Act home confinement is revoked, district courts in the Second Circuit have examined the issue. See Freeman, 658 F. Supp. 3d at 60–68 (applying Morrissey and finding the petitioner was entitled to due process protections prior to revocation of home confinement granted by the CARES Act); Cardoza v. Pullen, No. 22-CV-591, 2022 WL 3212408, at *6–14 (D. Conn. Aug. 9, 2022) (applying Morrissey but rejecting the petitioner's due process claim as no implicit promise was made to the prisoner); Tompkins v. Pullen, No. 22-CV-339, 2022 WL 3212368, at *4–15 (D. Conn. Aug. 9, 2022) (applying Morrissey and finding the petitioner was entitled to due process protections prior to revocation of home confinement granted by the CARES Act). Respondent agrees that no controlling authority exists but points the Court to several circuit and district court cases outside of the Second Circuit that have touched on the issue. See Resp. at 19–20. However, none of the cases cited by Respondent deal with the issue directly; therefore, the Court does not discuss them here.

6   The Court notes that Petitioner was released from secure custody to a halfway house in Brooklyn, New York on March 14, 2024. Dkt. No. 31 at 1. If a federal court can no longer grant the relief sought to resolve a controversy, subject matter jurisdiction is lost, and the matter becomes moot. See Martin-Trigona v. Shiff, 702 F.2d. 380, 386 (2d. Cir. 1983) ("The hallmark of a moot case or controversy is that the relief sought can no

**Mason v. Alatary, Not Reported in Fed. Supp. (2024)**

longer be given or is no longer needed."). As Petitioner specifically requested release to home confinement, see Pet. at 1, the Court finds the issue is not moot.

7    The exhaustion provisions imposed by the Prisoner Litigation Reform Act ("PLRA") do not apply to habeas corpus Petitions. See Carmona, 243 F.3d at 634 ("[W]e note that although ... the P[LRA] ... contains a statutory administrative exhaustion requirement, ... the requirements of the [PLRA] do not apply to habeas proceedings.").

---

**End of Document**                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

---

2025 WL 2781320
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Dewell POINDEXTER, Petitioner,
v.
UNITED STATES of America, Respondent.

Case No. 1:24-cv-01258 (JLR)
|
Signed September 30, 2025

**Attorneys and Law Firms**

Dewell Poindexter, Otisville, NY, Pro Se.

Leslie A. Ramirez-Fisher, Joseph Anthony Pantoja, DOJ-United States Attorney's Office, New York, NY, for Respondent.

**MEMORANDUM OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

**\*1** Dewell Poindexter ("Petitioner") brings this petition for a writ of habeas corpus (the "Petition") challenging the execution of his sentence pursuant to 28 U.S.C. § 2241. Petitioner, who was incarcerated in a federal facility in New York at the time of filing, alleges that the Federal Bureau of Prisons (the "BOP") miscalculated his federal sentence by failing to award him credit for a period of time he was incarcerated while serving a state sentence. *See generally* Dkt. 1 ("Pet."). The Government opposes the Petition. *See* Dkt. 10 ("Opp."); Dkt. 11 ("BOP Decl."). For the reasons that follow, the Petition is DENIED.

**BACKGROUND**

On September 11, 2000, Petitioner pleaded guilty to two federal counts of possession with the intent to distribute controlled substances in violation of 21 U.S.C. § 841(a)(1). *See United States v. Poindexter*, 550 F. Supp. 2d 578, 579 (E.D. Pa. 2008); Dkt. 11-1 at 1. On January 19, 2001, Petitioner was sentenced in the United States District Court for the Eastern District of Pennsylvania to a 144-month term of federal incarceration followed by eight years of supervised release. *See* BOP Decl. ¶ 3; Dkt. 11-1 at 6. On May 2, 2008,

Petitioner's term of incarceration was reduced to 122 months pursuant to 18 U.S.C. § 3582(c)(2). *See Poindexter*, 550 F. Supp. 2d at 583; BOP Decl. ¶ 3; Dkt. 11-1 at 6.

On July 1, 2015, while on supervised release, Petitioner was arrested for state controlled-substance and weapons offenses, and on February 22, 2016, after Petitioner pleaded guilty as to all charges, a state court sentenced Petitioner to a term of incarceration in a state institution for five and a half to eleven years. *See* BOP Decl. ¶ 4; Dkt. 11-2 at 1; Dkt. 11-6 at 1. Petitioner remained in continuous state custody from the date of the arrest to his federal sentencing, and this time was ultimately credited toward his state sentence. BOP Decl. ¶ 8; Dkt. 11-4 at 2-3; Dkt. 11-1 at 2; Pet. at 14-15.

Petitioner was subsequently brought into the temporary custody of the United States Marshall Service ("USMS") to attend a supervised release violation hearing in the Eastern District of Pennsylvania on June 22, 2017. *See* BOP Decl. ¶¶ 4-6. The court found that Petitioner was in violation of his federal supervised release, revoked its prior order of supervised release, "and sentenced Petitioner to thirty-months imprisonment to run consecutive to his state sentence." *Id.* ¶ 6; *see* Dkt. 11-3. On July 18, 2017, USMS returned Petitioner to state custody with a federal detainer. *See* BOP Decl. ¶ 7. On August 16, 2023, Petitioner completed his state sentence and was returned to exclusive federal custody, pursuant to the detainer, to serve his consecutive federal sentence. *Id*. ¶ 8; *see* Dkt. 11-1 at 2; Dkt. 11-4 at 2-3. The BOP determined that "there was no applicable jail credit to award to the federal sentence" and "calculated Petitioner's full-term [release] date as February 15, 2026, *i.e.*, 30 months from August 16, 2023." BOP Decl. ¶ 9; *see* Dkt. 11-1 at 2; Dkt. 11-4 at 3.

**\*2** On November 29, 2023, Petitioner initiated a challenge to the execution of his sentence by filing an informal-resolution form to a correctional counselor pursuant to the BOP's Administrative Remedy Program (the "ARP"), *see* Pet. at 10, which allows certain federally incarcerated individuals "to seek formal review of an issue relating to any aspect of his/her own confinement," 28 C.F.R. § 542.10(a); *see id.* § 542.13(a) ("[A]n inmate shall first present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy."). Petitioner stated on his informal-resolution form that he was being deprived of credit toward his federal sentence for the period he was incarcerated following his arrest on state charges in July 2015. *See* Pet. at 10-11. A case manager reviewed Petitioner's

informal submission and informed Petitioner that he was ineligible to receive the requested credit toward his federal sentence. *See id.* at 12.

Petitioner was dissatisfied with the case manager's response and, on December 28, 2023, submitted a formal written administrative-remedy request to the Warden of his facility on the appropriate BP-9 form, in accordance with the ARP. *See id.* at 14; 28 C.F.R. § 542.14(a) (providing that formal requests shall be made on a BP-9 form). The Warden denied the request, explaining that the time Petitioner was incarcerated on state charges prior to his 2017 federal sentencing had been credited toward his state sentence and thus could not be credited toward his federal sentence. *See* Pet. at 14-15. Neither the Petition nor Petitioner's administrative-remedy record indicates that he pursued an appeal of the Warden's denial pursuant to the ARP. *See* Pet. at 15-21; BOP Decl. ¶ 19; Dkt. 11-5 at 10; 28 C.F.R. § 542.15(a) (providing that "[a]n inmate who is not satisfied with the Warden's response may submit an Appeal on the appropriate form (BP-10) to the appropriate Regional Director," after which "[a]n inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP-11) to the General Counsel," which "is the final administrative appeal").

**LEGAL STANDARD**

"Submissions by a *pro se* petitioner are held to less stringent standards than formal pleadings drafted by lawyers," and "[c]ourts must liberally construe a *pro se* petition to raise the strongest arguments it suggests." *Licausi v. Griffin*, 460 F. Supp. 3d 242, 260 (E.D.N.Y. 2020) (citing *Inoa v. Smith*, No. 16-cv-02708 (VEC) (JLC), 2018 WL 4110908, at *12 (S.D.N.Y. Aug. 29, 2018), *report and recommendation adopted*, 2019 WL 549019 (S.D.N.Y. Feb. 9, 2019)). Still, *pro se* petitioners are "not exempt from compliance with relevant rules of procedural and substantive law." *Banner v. Royce*, 525 F. Supp. 3d 417, 418 (E.D.N.Y. 2021) (quoting *Gutierrez v. Capra*, No. 14-cv-06887 (KAM), 2019 WL 1508454, at *7 (E.D.N.Y. Apr. 5, 2019)).

"A writ of habeas corpus under § 2241 is available to a federal prisoner who does not challenge the legality of his sentence, but challenges instead its execution subsequent to his conviction." *Rivera-Perez v. Stover*, 757 F. Supp. 3d 204, 207 (D. Conn. 2024) (quoting *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001)). "Thus, section 2241 petitions are appropriately used to challenge ... sentence

calculations." *Id.*; *see id.* at 206 (reviewing § 2241 petition based on BOP's alleged "miscalculation of [petitioner's] time credits under the First Step Act"); *United States v. Borland*, No. 18-cr-00487 (KPF), 2024 WL 4026068, at *6 (S.D.N.Y. Sept. 3, 2024) (observing that "the proper vehicle" for challenging the "BOP's computations of [a] sentence, including credits against that sentence, ... is a habeas petition in the district of [the petitioner's] confinement, pursuant to 28 U.S.C. § 2241").

"[T]he Second Circuit has made clear that a federal prisoner asserting claims for habeas corpus relief under Section 2241 challenging the execution of his sentence must exhaust his available administrative remedies before filing his petition," *Rinaldi v. Warden FCI Otisville*, No. 24-cv-02449 (LTS), 2024 WL 3797078, at *3 (S.D.N.Y. Aug. 13, 2024) (citing *Carmona*, 243 F.3d at 634), which "requires compliance with the BOP's four-step Administrative Remedy Program," *Lallave v. Martinez*, 609 F. Supp. 3d 164, 179 (E.D.N.Y. 2022) (citing 28 C.F.R. § 542.10(a)); *see also United States v. Labeille-Soto*, 163 F.3d 93, 99 (2d Cir. 1998) ("[C]redit determinations are to be made in the first instance by the [BOP] ...."). However, the "exhaustion requirement is 'prudential, not statutory.'" *Lallave*, 609 F. Supp. 3d at 179 (quoting *Snyder v. Angelini*, No. 07-cv-03073 (NGG), 2008 WL 4773142, at *2 (E.D.N.Y. Oct. 27, 2008)). A court may thus waive the exhaustion requirement "upon a showing of cause and prejudice." *Rinaldi*, 2024 WL 3797078, at *3 (citing *Carmona*, 243 F.3d at 630, 633-34). "Specifically, exhaustion of administrative remedies may not be required when '(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question.'" *Ahmed v. Otisville*, No. 23-cv-00454 (PGG) (RWL), 2023 WL 9113089, at *6 (S.D.N.Y. Dec. 13, 2023) (quoting *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003)).

**DISCUSSION**

**\*3** Petitioner argues that the BOP miscalculated his sentence by failing to provide him credit for the time he spent incarcerated between July 1, 2015, when he was arrested on state charges, and June 22, 2017, when the federal district court revoked his supervised release and imposed a thirty-month federal sentence.[1] The Government's position is that Petitioner failed to exhaust his administrative remedies and

is not entitled to a waiver of the exhaustion requirement, and that even if Petitioner were entitled to a waiver, the BOP properly computed Petitioner's sentence. The Court agrees that Petitioner has not satisfied the administrative-exhaustion requirement and that there is no basis for excusing that requirement. Alternatively, the Court finds, based on the current record, that the BOP did not miscalculate Petitioner's sentence.

While Petitioner contends he has exhausted his administrative remedies, *see* Pet. at 1, the exhibits attached to Petition and the Government's declaration do not support his assertion, *see id.* at 10-22; Dkts. 11-1 to 11-6. Petitioner did not appeal the Warden's denial of his formal request to the Regional Director as required by the ARP, *see* 28 C.F.R. § 542.15(a), and Petitioner does not suggest that he was denied the opportunity to do so. *See* BOP Decl. ¶ 19; Dkt. 11-5 at 10; Pet. at 15 (denial letter from Warden explaining that petitioner could appeal to regional director at provided address). Because the administrative record shows that Petitioner did not appeal the Warden's decision to the Regional Director, and Petitioner does not argue otherwise, the Court finds that he has failed to satisfy the administrative-exhaustion requirement. *See, e.g., Johansson v. Strada*, No. 12-cv-05296 (ARR), 2012 WL 6093534, at *3 (E.D.N.Y. Dec. 7, 2012) (finding that Petitioner failed to exhaust administrative remedies where "the record indicates he did not appeal the Warden's unfavorable decision to the Regional Director, nor did he appeal to the BOP's general counsel"); *Lane v. Zickefoose*, No. 08-cv-00567 (RNC), 2008 WL 5467824, at *2 (D. Conn. Dec. 30, 2008) (similar).[2]

Although Petitioner has not "proffered any excuse for his failure" to exhaust his administrative remedies, the Court has "construe[d] his submission liberally to determine whether the circumstances excuse his failure." *Rosenthal v. Killian*, 667 F. Supp. 2d 364, 366 (S.D.N.Y. 2009). Having reviewed the Petition and supporting exhibits, in addition to the exhibits attached to the Government's declaration, the Court finds that none of the exhaustion exceptions are applicable here, and none of the circumstances found in other cases to warrant excusing exhaustion are present here. *Cf. United States v. Perez*, 451 F. Supp. 3d 288, 292 (S.D.N.Y. 2020) (excusing exhaustion requirement where administrative delay posed serious risks to petitioner's health); *Cardoza v. Pullen*, No. 22-cv-00591 (SVN), 2022 WL 3212408, at *6 (D. Conn. Aug. 9, 2022) (excusing exhaustion where "BOP staff's hindrance of Petitioner's appeal efforts" supported "the conclusion that any further appeals to the BOP would be 'an effort made in

vain' " (quoting *Napolitano v. Zenk*, No. 04-cv-05109 (NGG), 2005 WL 1263784, at *2 (E.D.N.Y. May 27, 2005))); *Goren v. Apker*, No. 05-cv-09006 (PKC), 2006 WL 1062904, at *5 (S.D.N.Y. Apr. 20, 2006) (excusing exhaustion requirement where petitioner attempted to appeal decision of Regional Director three times but never received decision from BOP General Counsel due to "various procedural defects"); *see also Gadson v. Hou. House*, No. 23-cv-08518 (LGS) (GWG), 2023 WL 8263036 at * 2 (S.D.N.Y. Nov. 30, 2023) (noting that "mere predictions of failure" if petitioner were to pursue administrative remedies is insufficient to excuse exhaustion (quoting *Goren*, 2006 WL 1062904, at *4-5)).[3]

**\*4** Even if Petitioner had exhausted his administrative remedies or exhaustion were excused, the Court finds that the BOP did not err in refusing to apply credit toward Petitioner's federal sentence for his period of incarceration between July 1, 2015 (the date Petitioner was arrested on state charges) and June 22, 2017 (the date Petitioner's thirty-month federal sentence was imposed following his violation of supervised release), because the record indicates that this time was credited toward Petitioner's state sentence. *See* BOP Decl. ¶ 8; Dkt. 11-4 at 3; Dkt. 11-1 at 2; Pet. at 14-15; *see, e.g., Cintron v. Warden, F.C.I. Otisville*, 52 F. Supp. 3d 654, 656 (S.D.N.Y. 2014) ("[B]ecause the time between [petitioner's arrest on state charges] and [his federal sentencing] was credited to the petitioner's state sentence ..., the BOP was correct not to credit it towards his federal sentence.").

Pursuant to 18 U.S.C. § 3585(b), "[a] defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences ... *that has not been credited against another sentence*." 18 U.S.C. § 3585(b) (emphasis added). This provision "does not authorize giving a credit on a federal sentence for any prison time that has already been credited to another sentence, whether state or federal." *Sarro v. Billingsley*, No. 11-cv-09395 (MHD), 2013 WL 120817, at *4 (S.D.N.Y. Jan. 10, 2013). "Indeed, the Supreme Court and the Second Circuit have repeatedly read this statutory language as precluding such double-counting." *Id.* (collecting cases); *see United States v. Wilson*, 503 U.S. 329, 337 (1992) ("Congress made clear [in § 3585(b)] that a defendant could not receive a double credit for his detention time."); *Labeille-Soto*, 163 F.3d at 99 ("Under [§ 3585(b)], a defendant has no right to credit on his federal sentence for time that has been credited against his prior state sentence."); *accord Lugo v. Hudson*, 785 F.3d 852, 856 (2d Cir. 2015) (per curiam); *Cintron*, 52 F. Supp. 3d at 656; *Berrios v. Pliler*, No. 22-

cv-05426 (JGK), 2023 WL 4364865, at *2 (S.D.N.Y. July 6, 2023); *Ramos v. United States*, No. 15-cv-01342 (RNC), 2017 WL 384024, at *2 (D. Conn. Jan. 26, 2017).

Accordingly, the Court finds that Petitioner has failed to exhaust his available administrative remedies, that waiver is not warranted, and that, in any event, Petitioner's underlying claim is deficient on the merits.

**CONCLUSION**

For the foregoing reasons, the Petition is DENIED. The Clerk of Court is respectfully directed to close the case.

**All Citations**

Slip Copy, 2025 WL 2781320

---

**Footnotes**

1   Where any dates set forth in the Petition conflict with those set forth in the documents attached to the Government's supporting declaration, the Court adopts the latter.

2   To the extent that the Petition could be construed as claiming that the BOP improperly calculated Petitioner's good-time credit ("GTC"), the Court's analysis of the administrative-exhaustion requirement would remain the same. *See also Reyes v. United States*, No. 22-cv-06064 (NSR), 2022 WL 4240821, at *2 (S.D.N.Y. Aug. 26, 2022) ("[T]here are no allegations in the petition suggesting that the Court should excuse Petitioner's failure to exhaust his administrative remedies. The BOP is in the best position to assess whether there was an error in calculating Petitioner's entitlement to GTC under the [First Step Act], and should be given an opportunity to correct any such error.").

3   While Petitioner makes passing reference to purported violations of his Fifth and Sixth Amendment rights, the Court does not find that the allegations set forth in the Petition raise a "substantial constitutional question" that would warrant waiver of the exhaustion requirement, *Beharry*, 329 F.3d at 62, let alone an "unavoidable" constitutional issue, *Guzman v. Joyce*, ––– F. Supp. 3d –––, 2025 WL 1696891, at *3 (S.D.N.Y. June 17, 2025) (" '[T]he risk of prolonged detention' — as opposed to actual prolonged detention — 'does not constitute an irreparable injury that excuses the prudential exhaustion requirement.' Indeed, if the possibility of 'continued detention were sufficient to excuse exhaustion, exhaustion would always be excused.' ") (citation omitted) (quoting *Roman v. Decker*, No. 20-cv-03752 (JGK), 2020 WL 4273823, at *8 (S.D.N.Y. July 24, 2020)).

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:22-cv-01161-BKS-ML    Document 24    Filed 02/04/26    Page 94 of 144

Reynolds v. Warden of FCI Raybrook, Not Reported in Fed. Supp. (2019)

2019 WL 8064012
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Thomas REYNOLDS, Petitioner,
v.
WARDEN OF FCI RAYBROOK, Respondent.

9:16-CV-1264 (TJM/TWD)
|
Signed 08/05/2019

**Attorneys and Law Firms**

OF COUNSEL: BERNARD V. KLEINMAN, ESQ., LAW OFFICES OF BERNARD V. KLEINMAN, PLLC, Attorney for Petitioner, 108 Village Square, Suite 313, Somers, New York 10589-2305.

GRANT C. JAQUITH, United States Attorney Northern District of New York, OF COUNSEL: WILLIAM F. LARKIN, ESQ., Assistant United States Attorney, Attorney for Respondent, 100 South Clinton Street, Syracuse, New York 13261.

**REPORT-RECOMMENDATION**

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

**\*1** Currently before the Court for a Report-Recommendation is Thomas Reynolds' ("Reynolds") amended petition for a writ of habeas corpus, under 28 U.S.C. § 2241 (hereinafter "Section 2241"). (Dkt. No. 16.) Reynolds claims that he is entitled to a thirty-three-month credit on his forty-two-year federal prison sentence under 18 U.S.C. § 3585 (hereinafter "Section 3585") and the United States Sentencing Guidelines ("U.S.S.G.") § 5G1.3(b) (hereinafter "Section 5G1.3(b)"). As discussed below, the undersigned recommends that the District Court deny Reynolds' amended petition.

**I. BACKGROUND**

On January 7, 2004, the Honorable Edward R. Korman, U.S. District Judge in the Eastern District of New York, re-sentenced Reynolds who had pled guilty to racketeering conspiracy (18 U.S.C. § 1962) and bank larceny (18 U.S.C. § 2113) in *United States v. Reynolds*, Nos. 99-520, 00-824

(E.D.N.Y.). [1] (Dkt. Nos. 16-12; 24-2 at 20.) Reynolds was sentenced pursuant to a plea agreement under Fed. R. Crim. P. 11(c), that contemplated a sentence range between thirty-six and forty-two years. (Dkt. No. 24-2 at 4); *see also United States v. Reynolds*, No. 99-CR-520 (E.D.N.Y.), (Dkt. No. 692.) Ultimately, Reynolds received a forty-two-year prison sentence.

On October 7, 2016, Reynolds' prior counsel, Bernard V. Klienman, requested that the Court extend his Criminal Justice Act appointment to address a potential basis for a habeas corpus petition and to grant him permission to visit Reynolds. (Dkt. No. 1-1 at 2.) According to Mr. Klienman, Judge Korman and the United States Probation Office failed to address whether Reynolds merited credit under Section 5G1.3(b) and Section 3585(b) for nine months—between June 1999 and February 2000—he spent in federal custody while serving a state sentence. (Dkt. No. 1-1 at 1-2.) Judge Korman treated the October 7, 2016, letter as a petition for a writ of habeas corpus under Section 2241, and ordered the case transferred to this court because Reynolds is incarcerated in the Northern District of New York at F.C.I. Ray Brook in Ray Brook, New York. (Dkt. No. 2.)

Thereafter, on November 28, 2016, Reynolds filed an amended petition for a writ of habeas corpus under Section 2241. (Dkt. No. 16.) In his amended petition, Reynolds claims that he is entitled to a thirty-three-month credit on his federal prison sentence under Section 3585(b) and Section 5G1.3(b) because he was incarcerated on a state charge that was related to his ultimate federal sentence. (*Id.*) Respondent filed a response challenging whether: (1) this Court is the proper venue to hear Reynolds' petition, (2) Reynolds exhausted his administrative remedies; and (3) Section 5G1.3(b) can provide relief where Reynolds was sentenced under a Fed. R. Crim. P. 11(c) plea agreement. (Dkt. No. 24.) Reynolds replied (Dkt. No. 28) and the parties each submitted supplementary letters describing their positions (Dkt. Nos. 29, 31, 33).

**II. PROCEDURAL ISSUES**

**\*2** As stated above, Respondent raised two procedural issues that must be addressed before considering the amended petition's merits. The first is whether Reynolds' amended petition is, in substance, a motion under 28 U.S.C. § 2255 (hereinafter "Section 2255"). If so, Reynolds' amended petition belongs in "the court [that] imposed the sentence," 28 U.S.C. § 2255(a), *i.e.*, with Judge Korman

Case 9:22-cv-01161-BKS-ML    Document 24    Filed 02/04/26    Page 95 of 144

Reynolds v. Warden of FCI Raybrook, Not Reported in Fed. Supp. (2019)

in the Eastern District of New York. The second issue is whether—regardless of its form—the Court should dismiss Reynolds' amended petition because he failed to exhaust his administrative remedies.

### A. The Nature of Reynolds' Petition

A challenge to the *imposition* of a sentence is properly brought as a petition pursuant to Section 2255, while a challenge to the *execution* of a sentence is properly brought as a habeas corpus petition pursuant to Section 2241. *Levine v. Apker*, 455 F.3d 71, 77-78 (2d Cir. 2006); *Poindexter v. Nash*, 333 F.3d 372, 377-78 (2d Cir. 2003). Given that each legal vehicle prescribes a different remedy, each statute dictates a specific venue to commence each challenge. To wit, a petition pursuant to Section 2255 must be filed in the district court "which imposed the sentence" being challenged, 28 U.S.C. § 2255(a), and a petition pursuant to Section 2241 must be filed in the district court embracing the location where the prisoner is currently in custody, 28 U.S.C. § 2241(d).

Here, a fair reading of the amended petition reveals it is properly in this Court as a petition for habeas corpus relief under Section 2241. Though Respondent attempts to classify the amended petition as seeking relief pursuant to Section 5G1.3(b) in the form of a downward departure in Reynolds' sentence, that is not the basis for which Reynolds seeks relief. (Dkt. No. 24 at 4-6.) Rather, Reynolds discusses Section 5G1.3(b) by analogy and not to literally seek that this Court re-sentence him. (Dkt. No. 28 at 6 (stating that Section 5G1.3(b) is the " 'functional equivalent' of Section 3585(b)") (quoting *Lopez v. Terrell*, 634 F.3d 136, 178 (2d Cir. 2011)).) Functionally, Reynolds seeks an Order from this Court instructing the Bureau of Prisons ("BOP") to credit time he served in state custody against his federal sentence pursuant to Section 3585(b). [2] (*Id.* at 6-7.)

As such, Reynolds' petition challenges the execution of his sentence, *i.e.*, the BOP's calculation of the credit to be given for other periods of detention, not its imposition. *See Simmons v. Fed., Prison Employees, of the Fed. Bureau of Prisons*, 639 F. Supp. 2d 402, 405 (S.D.N.Y. 2009) (stating that "[c]redit time under 18 U.S.C. § 3585 'is granted by the Attorney General through the Bureau of Prisons after a defendant is sentenced, not by a district court at the time of sentencing' ") (quoting *United States v. Keller*, 58 F.3d 884, 894 (2d Cir. 1995)); *see also Chambers v. United States*, 106 F.3d 472, 474 (2d Cir. 1997) (noting that "[a] challenge to the execution of a sentence, ... is properly filed pursuant to Section 2241");

*United States v. Werber*, 51 F.3d 342, 349 n.17 (2d Cir. 1995) (stating that a challenge to the BOP's application of 18 U.S.C. § 3585 should be filed pursuant to Section 2241 petition). Accordingly, the Court finds that Reynolds' amended petition was brought under Section 2241 and is properly venued in the Northern District of New York.

### B. Exhaustion of Remedies

**\*3** The Second Circuit has established an administrative exhaustion requirement on habeas corpus petitions inmates bring under Section 2241. *See United States ex rel. Scranton v. State of New York*, 532 F.2d 292, 294 (2d Cir. 1976); *Washington v. United States,* No. 05-cr-558, 2016 WL 11448326, at *1 (E.D.N.Y. Dec. 23, 2016) (petitioner claiming sentence improperly calculated by the BOP must exhaust administrative remedies under the Administrative Remedy Program ("ARP"), 28 C.F.R. § 542.10-542.16, before bringing a habeas petition under Section 2241). Specifically, federal inmates must exhaust each of the following steps in the ARP before obtaining relief in federal court: (1) attempting to resolve the issue informally, *see* 28 C.F.R. § 542.13; (2) submitting a formal written Administrative Remedy Request to the warden of the facility in which the inmate is confined, *see id.* § 542.14(3); (3) appealing to the BOP Regional Director, *see id.* § 542.15; and (4) appealing to the BOP Office of General Counsel, *see id.* No administrative appeal is fully exhausted until the BOP's Central Office reviews it. *See Spring v. Shult*, No. 9:08-CV-0531, 2009 WL 3232183, at *1 (N.D.N.Y. Oct. 1, 2009). The burden of demonstrating exhaustion rests with the Section 2241 petitioner. *Id.*

The main dispute relative to exhaustion in this case involves the timing for when Reynolds filed his amended petition. As recounted above, this action was commenced by letter dated October 7, 2016 (Dkt. No. 1), and Reynolds filed his amended petition on November 28, 2016. (Dkt. No. 16.) Respondent accurately notes Reynolds had not yet completely exhausted his administrative remedies prior to filing his amended petition. (Dkt. No. 24 at 6-8.) However, as Respondent also acknowledges, Reynolds did exhaust his administrative remedies at the latest on April 24, 2017, when the BOP's Central Office formally denied his appeal. (Dkt. No. 33.) Thus, the precise issue is not whether Reynolds exhausted his remedies, but rather whether Reynolds' petition —which was filed *before* the BOP issued its final decision— should be dismissed for being filed *early*.

Case 9:22-cv-01161-BKS-ML    Document 24    Filed 02/04/26    Page 96 of 144

Reynolds v. Warden of FCI Raybrook, Not Reported in Fed. Supp. (2019)

In support of its position, Respondent points to several cases where courts have stated that a party must exhaust remedies *before* the commencement of the action. (Dkt. No. 24 at 7 (citing cases); Dkt. No. 29.) None of these cases, however, consider whether the court must dismiss a petition where petitioner exhausted his administrative remedies during the pendency of the Court's review. As stated above, Reynolds exhausted his remedies as of April 24, 2017, at the latest, and the BOP denied his application for relief. (Dkt. No 33.) Thus, the issues in Reynolds' petition are not moot, are fully briefed, and are now ripe for review.

In *Uziel v. Hadden*, 779 F.2d 4 (2d Cir. 1985) (per curiam), the Second Circuit held that a district court should have allowed the petitioner's pending administrative remedies to conclude rather than dismissing the petition for failure to exhaust. *Id.* at 5. In *Uziel*, the petitioner filed his petition on May 31, 1984, and the parole office re-opened the challenged decision on July 26, 1984. *See id.* at 4-5. The district court dismissed the petition because the re-opening of the challenged decision created new administrative avenues to challenge the parole office's subsequent decision. *Id.* at 5. The Second Circuit reversed, holding that the district court "should rather have held the petition in abeyance pending an exhaustion of these new administrative remedies, at which time the court presumably would address the merits of the petition or any amended petition that might be filed." *Id.* (citation omitted). Here, through the passage of time, Reynolds' administrative remedies have been fully exhausted such that it is now appropriate to consider the amended petition's merits. Forcing Reynolds to re-file his petition would only cause unnecessary delay and waste judicial resources. [3]

**\*4** Accordingly, the Court finds that dismissing Reynolds' petition on the ground that he failed to exhaust his administrative remedies is not warranted.

## III. REYNOLDS' AMENDED PETITION

Turning to Reynolds' amended petition, the principle issue is whether the BOP appropriately applied Section 3585 when

it denied Reynolds' request to credit time he spent in state custody to his federal sentence. A straightforward application of Section 3585(b) confirms that the BOP correctly denied Reynolds' application. Accordingly, for the reasons discussed below, the Court recommends that the amended petition be dismissed.

18 U.S.C. § 3585, titled, "Calculation of a term of imprisonment," provides in full:

> (a) Commencement of sentence.—A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.
>
> (b) Credit for prior custody.—A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—
>
> (1) as a result of the offense for which the sentence was imposed; or
>
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; that has not been credited against another sentence.

*Id.*

Under Section 3585(b), therefore, the BOP will grant a defendant "credit" against his or her federal sentence for time served in custody prior to sentencing in district court so long as that presentence custody "has not been credited against another sentence." 18 U.S.C. § 3585(b); *see United States v. Labeille–Soto*, 163 F.3d 93, 99 (2d Cir. 1998) ("[A] defendant has no right to credit on his federal sentence for time that has been credited against his prior state sentence.").

According to Reynolds, he deserves credit for the following periods of time he spent in custody on his state sentence:

| | |
|---|---|
| April 7, 1995 – February 1996 | 7 months |
| March 17, 1996 – August 7, 1997 | 15 months |
| December 1997 – January 4, 1999 | 3 months |
| June 1, 1999 – June 10, 1999 | 10 days |
| June 10, 1999 – February 11, 2000 | 8 months |

Case 9:22-cv-01161-BKS-ML    Document 24    Filed 02/04/26    Page 97 of 144

Reynolds v. Warden of FCI Raybrook, Not Reported in Fed. Supp. (2019)

(Dkt. No. 16-1 at 18.) These thirty-three-months for which Reynolds seeks credit were spent in custody because of an arrest in 1994 related to a weapons charge and subsequent parole violations. (*Id.* at 17.) According to Reynolds, the time he spent in state custody on the 1994 weapons charge was for conduct that was "relevant conduct," as that term is defined in Section 5G1.3(b). (*Id.*)

Section 5G1.3(b) applies where a "defendant faces punishment for the same criminal conduct in two prosecutions[,] ... [and] ensures that the defendant receives 'credit' for time already served to eliminate double punishment." *United States v. Fermin*, 252 F.3d 102, 109 (2d Cir. 2001) (citing *Witte v. United States*, 515 U.S. 389, 404–05 (1995)). Reynolds asserts Section 3585(b) and Section 5G1.3(b) are "functional equivalents" and that Section 3585 and Section 5G1.3(b) operate together so that a person does not face separate terms of imprisonment for the same conduct. (Dkt. No. 28 at 5 (citation omitted).)

As Reynolds points out, Section 5G1.3(b) and Section 3585 often complement one another. *See United States v. Gonzalez*, 192 F.3d 350, 354 (2d Cir. 1999) (holding that because the defendant's presentence custody was credited to his state sentence, no Section 3585(b) credit was available; thus, U.S.S.G. § 5G1.3(b) applied). For example, in *United States v. Knight*, 562 F.3d 1314 (11th Cir. 2009), the Eleventh Circuit held that the sentencing court erred in failing to apply a downward departure for time the defendant spent in custody under Section 5G1.3(b) because the BOP would not give credit for that same time under Section 3585. *Id.* at 1329. Reynolds asserts that his case is the mirror image of *Knight*, *i.e.*, because he should be entitled to sentence credit for the thirty-three-months he was in custody on a related state charge under Section 5G1.3(b) but was not granted such credit, the Court should order the BOP to credit him for the same time under Section 3585(b). (Dkt. No. 16-1 at 22 (arguing that "[w]hile § 3585(b) grants the Bureau of Prisons ("BOP") the power to award credit for time spent in custody prior to the imposition of a sentence, Section 5G1.3(b), however, is applicable where the BOP would not otherwise award this credit. In these situations, it is necessary for the reviewing court to apply the credit itself in order to prevent the defendant from serving a sentence that is longer than is appropriate under the Guidelines.").)

**\*5** Reynolds has not cited any authority that has applied Section 3585(b) in the novel manner he proposes. Rather, the Court finds the interplay between Section 5G1.3(b) Section 3585 is a red herring and legally unrelated to whether the BOP properly applied Section 3585(b) in his case.

To that end, Reynolds superimposes a false equivalence between Section 5G1.3(b) and Section 3585. Section 3585, by its terms, is merely an administrative statute that ensures pre-sentence custody does not go uncounted towards a person's ultimate sentence. As stated above, Section 3585(a) provides that: "[a] sentence to a term of imprisonment *commences* on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, *the official detention facility at which the sentence is to be served.*" 18 U.S.C. § 3585(a). Thus, a defendant's sentence does not *commence* until after it has been *imposed* and the defendant is traveling to or arrives at the designated detention facility. Accordingly, if a defendant had spent time in custody prior to a court imposing his or her sentence, that time would not technically count towards that sentence pursuant to Subsection (a). *See id.* Subsection (b), however, ensures time spent in pre-sentence custody (even if on an unrelated arrest) is credited against a defendant's sentence so long as it has not been credited against another sentence. *Id.* at 3585(b). Together, Section 3585's purpose is to ensure a defendant earns credit for each day he or she is in custody against at least one sentence. Section 3585 is not equivalent to Section 5G1.3(b) which seeks to prevent double punishment for the same or related criminal act through an adjustment of the defendant's ultimate sentence.

Accordingly, the Court finds that it is irrelevant whether Reynolds' time in state custody might satisfy Section 5G1.3(b)'s requirements because this petition seeks the Court's review of the BOP's decision under Section 3585. When properly confined to the salient issue, Reynolds' petition lacks merit. To wit, Reynolds seeks credit for thirty-three-months he spent in state custody while he was admittedly serving his state sentence and receiving credit against his *state* sentence. Under Section 3585(b), a defendant may only receive credit for time in custody "that has not been credited against another sentence." 18 U.S.C. § 3585(b). Accordingly, the Court finds Reynolds is not entitled to credit against a federal sentence for time he spent incarcerated that counted towards the term of his state sentence. *See United States v. Wilson*, 503 U.S. 329, 337 (1992); *United States v. Labeille–Soto*, 163 F.3d 93, 99 (2d Cir. 1998); *Werber v. United States*, 149 F.3d 172, 173 (2d Cir. 1998). [4]

## IV. CONCLUSION

**\*6** The Court finds that the BOP correctly applied Section 3585(b) in denying Reynolds' request for credit. (Dkt. No. 33.)

**ACCORDINGLY**, it is hereby

**RECOMMENDED** that Reynolds' amended petition for a writ of habeas corpus (Dkt. No. 16) be **DENIED** and **DISMISSED** in its entirety.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 8064012

---

### Footnotes

1    Reynolds filed a petition under 28 U.S.C. § 2255 to vacate his original guilty plea and sentence. (Dkt. No. 16-10.) Judge Korman granted the petition on July 25, 2003, and vacated Reynolds' original guilty plea and sentence. (*Id.*; *see also Reynolds v. United States of America*, No. 1:02-cv-01622-ERK (E.D.N.Y.), Dkt. Nos. 1, 15.)

2    To the extent that Reynolds is arguing for relief under Section 5G1.3(b), this issue is more appropriately resolved by the sentencing court pursuant to a motion under Section 2255 rather than this court pursuant to a petition under Section 2241. *See Dixon v. Terrell*, No. 10-CV-5262, 2011 WL 4543712, at \*11 (E.D.N.Y. Sept. 29, 2011); *Jackson v. Killian*, No. 08–CV–4386, 2009 WL 1835004, at \*3 (S.D.N.Y. June 23, 2004) ("Challenging the sentencing court's section 5G1.3 calculation is 'more appropriately brought as an issue for the sentencing court pursuant to a motion under section 2255, rather than the district court in a section 2241 habeas petition where petitioner is held in custody.' " (quoting *Saunders v. Unnamed Warden*, No. 07–CV–4293, 2008 WL 2775763, at \*7 (D.N.J. July 14, 2008) (denying habeas petition pursuant to Section 2241 where petitioner argued that he was entitled to a downward departure or sentence reduction under Section 5G1.3))).

3    Moreover, this action was originally commenced *sua sponte* through the Court's conversion of a letter request filed in the Eastern District of New York under the original criminal case (99-CR-520 at Dkt. No. 757) to a petition pursuant to 28 U.S.C. § 2241. (Dkt. No. 2.) After that conversion, this Court set a deadline requiring Reynolds to file an amended petition before he could have exhausted his remedies. (Dkt. Nos. 5, 13.) Thus, Reynolds' counsel was left with the difficult decision of complying with the Court's order or seeking a delay in the proceedings until the BOP issued a final decision.

4    It is of no moment that Reynolds was transferred from state to federal custody by writ of habeas corpus *ad prosequendum* while he was still serving his state sentences, because he was still legally in state custody pursuant to those sentences at that time. *See, e.g., United States v. Smith*, 812 F. Supp. 368, 371 (E.D.N.Y. 1993) ("A federal writ of habeas corpus *ad prosequendum* merely loans the prisoner to federal authorities."); *id.* at 371 ("A federal sentence does not begin to run ... when the defendant is produced for prosecution in federal court pursuant to a federal writ of habeas corpus *ad prosequendum.* Rather, the state retains primary

jurisdiction over the prisoner, and federal custody commences only when the state authorities relinquish the prisoner on satisfaction of the state obligations.").

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

Rosario v. Quay, Not Reported in Fed. Supp. (2017)

Case 9:22-cv-01161-BKS-ML    Document 24    Filed 02/04/26    Page 100 of 144

2017 WL 337977
Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.

Charlie ROSARIO, Petitioner,
v.
Herman QUAY, Respondent.

CASE NO. 3:15cv523(RNC)
|
Signed 01/21/2017
|
Filed 01/23/2017

**Attorneys and Law Firms**

Charlie Rosario, Danbury, CT, pro se.

Alan M. Soloway, U.S. Attorney's Office, New Haven, CT, for Respondent.

RULING AND ORDER

Robert N. Chatigny, United States District Judge

 **\*1**  Charlie Rosario, an inmate at FCI Danbury, brings this action pro se pursuant to 28 U.S.C. § 2241 claiming that he was denied due process in connection with a prison disciplinary proceeding that resulted in his confinement in disciplinary segregation and loss of good conduct time. Respondent argues that the petition should be denied because the record establishes that petitioner has failed to exhaust administrative remedies and was afforded all the process he was due. I agree and therefore dismiss the petition.

I. Background
The record shows the following. On November 15, 2014, petitioner was charged with the prohibited act of Threatening Another With Bodily Harm, which is classified as a High Severity offense. See 28 C.F.R. Part 541, Subpart A, "Table 1—Prohibited Acts and Available Sanctions." The charge was based on an incident at FCI Danbury earlier that day involving a correctional officer and petitioner. According to the officer's written report of the incident, the officer spoke with petitioner while conducting rounds in petitioner's housing unit. Petitioner told the officer he was working too hard and needed to relax because some inmates did not like to be "mess[ed] with." Petitioner stated that the officer could

be jumped. When the officer told petitioner that he was just doing his job, petitioner again stated that the officer could be jumped.

On November 16, the officer's report of the incident was issued to petitioner. Lieutenant North interviewed petitioner concerning the report. Petitioner admitted making the statements attributed to him in the report but claimed "We were just joking around." Lieutenant North concluded that the incident report was accurate and referred the matter to the Unit Disciplinary Committee.

On November 24, Correctional Counselor Rivera conducted a Unit Disciplinary Committee Review, forwarded the matter to a Disciplinary Hearing Officer ("DHO"), provided petitioner with notice of a disciplinary hearing, and advised him of his rights.

On November 25, a disciplinary hearing was held. Petitioner acknowledged the incident report was correct but claimed he did not intend to threaten the officer. The DHO concluded that petitioner had threatened the officer with bodily harm and imposed the following sanctions: 27 days loss of good conduct time, 20 days confinement in disciplinary segregation, 90 days loss of email privileges, and 90 days loss of commissary privileges.

In this action, petitioner challenges the disciplinary finding on the ground that he was denied due process. He also contends that he was unable to appeal the disciplinary finding because documents were not delivered to him in a timely manner.

II. Discussion
A petition pursuant to 28 U.S.C. § 2241 may be used by a federal prisoner to expunge disciplinary sanctions, including loss of good time credit. Carmona v. United States Bureau of Prisons, 243 F.3d 629, 632 (2d Cir. 2001). Before commencing an action under § 2241, a prisoner must exhaust administrative remedies. Id. at 634. The purposes of the exhaustion requirement include "protecting the authority of administrative agencies, limiting interference in agency affairs, developing the factual record to make judicial review more efficient, and resolving issues to render judicial review unnecessary." Beharry v. Ashcroft, 329 F.3d 51, 62 (2d Cir. 2003). Respondent has shown that petitioner failed to comply with applicable regulations of the Bureau of Prisons and thus failed to exhaust his administrative remedies.

Case 9:22-cv-01161-BKS-ML    Document 24    Filed 02/04/26    Page 101 of 144

Rosario v. Quay, Not Reported in Fed. Supp. (2017)

**\*2** BOP regulations provide that disciplinary findings may be appealed to the Regional Director within 20 calendar days of the date of decision. 28 C.F.R. §§ 542.14(d)(2), 542.15(a). A final appeal may be submitted to the General Counsel's Office within 30 calendar days of denial of relief by the Regional Director. Id. The filing date of an appeal is the date it is received. 28 C.F.R. § 542.18; see also Marra v. Baird, No. 3:14-CV-1011 (AVC), slip op. 9 (D. Conn. Apr. 9, 2015). The time limits at any level of review may be extended for a valid reason. 28 C.F.R. §§ 542.14(b), 542.15(a).

The administrative record establishes that petitioner did not comply with the regulations. He received a copy of the DHO report on November 25, 2014. In order to satisfy the 20-day period for a timely appeal, he had to submit documents to the Regional Director by December 15. He missed the deadline by approximately 9 days and his appeal was rejected as untimely. He was promptly notified that he could resubmit the appeal within 10 days supported by staff verification that the untimely filing was not his fault. Petitioner resubmitted the appeal beyond the 10-day period and it too was rejected as untimely. At that time, he was given another opportunity to resubmit the appeal supported by staff verification regarding the delay in filing but he took no further action.

Failure to exhaust administrative remedies results in a procedural default, which bars judicial review of the defaulted claim unless the prisoner shows that the failure to exhaust should be excused. See Carmona, 243 F.3d at 634. Non-exhaustion may be excused if the prisoner shows cause and prejudice, such as "legitimate circumstances beyond the prisoner's control [that] preclude[d] him from fully pursuing his administrative remedies." Id.

Based on the administrative record, it is apparent that petitioner filed his appeal after the 20-day deadline expired, failed to resubmit the appeal in a timely manner despite being given notice and an opportunity to do so, and ultimately abandoned the appeal. This constitutes a failure to exhaust. See Champley v. Baird, No. 3:11CV635 VLB, 2012 WL 2872833, at \*3 (D. Conn. July 11, 2012). Accordingly, petitioner has the burden of showing that circumstances beyond his control prevented him from fully pursuing his remedies. Carmona, 243 F.3d at 634. In the absence of a showing of good cause for non-exhaustion, the petition must be dismissed. See Atkinson v. Willingham, No. 305-CV-673 RNC, 2007 WL 685168, at \*4 (D. Conn. Mar. 3, 2007).

Petitioner has not made the required showing. He alleges that prison officials failed to provide him with documents in a timely manner. But the record establishes that he got a copy of the incident report on November 16, the day after the incident occurred, see Pet. (ECF No. 1) at 32, 65, and a copy of the DHO report on November 25, the same day as the hearing. See Pet. (ECF No. 1) at 34. After receiving these documents in a timely manner, petitioner apparently took no action until December 15, the appeal deadline. On that date, he requested a complete copy of the incident report, one that included a completed section "Part II—Committee Action." See Pet. (ECF No. 1) at 63-65. He was given a copy of the completed report within 24 hours. Petitioner has not shown that he needed the "Committee Action" section in order to prepare and file a timely appeal and, even assuming he did, he provides no explanation for his failure to seek a complete copy of the report until the day the appeal was due.

**\*3** In addition to alleging that documents were not given to him in a timely manner, petitioner makes generalized allegations regarding prison officials' interference with the administrative process. He alleges that he was "hampered" from timely appealing the disciplinary sanctions; that prison staff "continuously" discourage inmates from using the Administrative Remedy Process by "with[h]olding the remedies until requested deadlines have lapse[d]" and then refusing to sign documentation as to why service was untimely; that inmates become "frustrated" and "abandon[ ]" their claims; and that prison staff have "continuously erected illegitimate barrie[r]s retarding the [administrative] process." Pet. (ECF No. 1) at 3-5.

Petitioner's allegations are too general and conclusory to sustain his burden of showing that he was prevented from fully pursuing his administrative remedies due to circumstances beyond his control. To satisfy his burden, petitioner has to allege facts showing that prison staff prevented him from pursuing an appeal. See Whalen v. Fed. Bureau of Prisons, No. 09-CV-1572 ENV, 2011 WL 2669112, at \*3 (E.D.N.Y. June 30, 2011) (stating that "interference by officials" can excuse non-exhaustion only if it "makes compliance with procedural rules impracticable")(quotations and citations omitted); Dunbar v. Sabol, 649 F. Supp. 2d 1, 4 (D. Mass. 2009) (stating that "merely conclusory statements" are not sufficient to excuse failure to exhaust administrative remedies); cf. Hinebaugh v. Wiley, 137 F. Supp. 2d 69, 75 (N.D.N.Y. 2001) (finding that the failure to exhaust should be excused when petitioner submits evidence that his legal files were confiscated and not returned for fourteen months).

**Rosario v. Quay, Not Reported in Fed. Supp. (2017)**

Case 9:22-cv-01161-BKS-ML   Document 24   Filed 02/04/26   Page 102 of 144

Because petitioner has not made this showing, his failure to exhaust cannot be excused.

In addition to relying on petitioner's failure to exhaust, respondent argues that petitioner's due process claim is unavailing on the merits. To satisfy due process requirements, petitioner was entitled to advance written notice of the charge, an opportunity to call witnesses and present documentary evidence, and a written statement by the DHO of the evidence relied on and the reasons for the disciplinary action. See Superintendent Mass. Corr. Inst. v. Hill, 472 U.S. 445, 453 (1985). In addition, a DHO's decision must be supported by "some evidence." Id. at 455-56. This standard is satisfied if the record evidence could support the decision. Id.

The record establishes that petitioner did receive the process required by the Constitution. He was given advance written notice of the charge, declined an opportunity to call witnesses and present other evidence, and received a copy of the DHO's decision the day of the hearing. The DHO's decision states the evidence relied on and provides reasons for the disciplinary action. The decision is adequately supported by the officer's report and statements.

Petitioner's due process complaint may be based on the timing of the review conducted by the Unit Discipline Committee.

BOP regulations provide that a UDC will ordinarily review an incident report within 5 work days. 28 C.F.R. § 541.7(c). In this case, there was a delay of 8 days. But the Warden approved an extension of time for the review as permitted by BOP policy. See Resp., Ex. B (ECF No. 5-2), at 7; Resp., Ex. C (ECF No. 5-2), at 1. In any event, a violation of the regulation concerning the time for UDC does not itself constitute a violation of due process. See Agramonte v. Bragg, 2013 WL 5530518, *3-4 (D.S.C. Oct. 7, 2013); Anderrson v. Bledsoe, 2012 WL 1414848, *6 (M.D. Pa. Apr. 24, 2012). And there is no indication petitioner was prejudiced by the brief delay.

III. Conclusion

Accordingly, the petition is hereby denied. Because I do not think reasonable jurists would find it debatable whether the petitioner failed to exhaust or whether the petition states a valid due process claim, a certificate of appealability will not issue. The Clerk may enter judgment and close the case.

**\*4** So ordered this 21st day of January 2017.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 337977

---

**End of Document**© 2026 Thomson Reuters. No claim to original U.S. Government Works.

**2022 WL 2991015**
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Luis J. ROSARIO-SANTIAGO, Plaintiff,
v.
Mr. W. S. PLILER, Warden, Defendant.

21-CV-3202 (JPC) (RWL)
|
Signed July 7, 2022

**Attorneys and Law Firms**

Luis J. Rosario-Santiago, Otisville, NY, Pro Se.

Joshua Evan Kahane, Brandon Herbert Cowart, U.S. Attorney Office SDNY, New York, NY, for Defendant.

**REPORT AND RECOMMENDATION
TO HON. JOHN P. CRONAN:
PETITION FOR HABEAS CORPUS**

ROBERT W. LEHRBURGER, United States Magistrate Judge.

**\*1** Petitioner Luis Rosario-Santiago ("Rosario-Santiago" or "Petitioner"), proceeding pro se, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 against W.S. Pliler, Warden, FCI-Otisville ("Warden" or "Respondent"), challenging the revocation of 27-days Good Conduct Time as penalty for a disciplinary offense related to his violation of telephone monitoring procedures. Petitioner contends that he exhausted all administrative remedies and that his petition should be granted because the Disciplinary Hearing Officer ("DHO") violated his due process rights, and because he did not commit the prohibited act with which he was charged. Petitioner also requests an evidentiary hearing to have the opportunity to present evidence that would prove his due process rights were violated. For the reasons set forth below, I recommend that the petition be DENIED.

**Background**

**A. Petitioner's Conviction**
On June 20, 2012, a grand jury indicted Petitioner with conspiracy to possess and intent to distribute a controlled substance in the District of Puerto Rico. Dkt. 196, *United States v. Ramos-Pineiro et al.*, No. 12-CR-200 (D.P.R. June 20, 2012). On February 5, 2013, Petitioner pled guilty to conspiracy to commit racketeering in violation of 18 U.S.C. § 1962(d). Dkt. 73, *United States v. Ramos-Pineiro et al.*, No. 12-CR-200 (D.P.R. Feb. 5, 2013). On May 7, 2013, Petitioner was sentenced to a 348-month term of imprisonment. Dkt. 994, *United States v. Ramos-Pineiro et al.*, No. 12-CR-200 (D.P.R. May 13, 2013).

**B. The Prohibited Conduct Violation**
On October 5, 2020, Petitioner was observed via camera surveillance and telephone monitoring using another inmate's PIN number to place a telephone call that lasted eleven minutes. (Peakes Decl., Ex. A at 1 ("Incident Report"). [1] ) Several hours later, Petitioner was issued the Incident Report charging him with violating Prohibited Act 297 for using a telephone in a way that circumvents telephone monitoring procedure. [2] (*See* Incident Report at 1.) As an explanation for his conduct, Petitioner stated that "I used the phone because [I] needed money and needed to call." (Incident Report at 1.) Petitioner was advised of his rights, and the charge was referred to a DHO for a hearing. (Incident Report at 1-2.)

**C. The Disciplinary Hearing**
On October 6, 2020, Petitioner declined to have a staff representative or witnesses at his disciplinary hearing. (Peakes Decl., Ex. B ("Notice of Disciplinary Hearing Before the DHO") at 2.) On October 14, 2020, Petitioner received advanced written notice of the charge in the form of a copy of the Incident Report. (*See* Incident Report at 4, Peakes Decl., Ex. C at 1 ("DHO Report").) On October 20, 2020, Petitioner was further advised of his rights before the DHO and again declined to have a staff representative or witnesses for the upcoming disciplinary hearing. (DHO Report at 4-5.)

**\*2** On November 24, 2020, the DHO conducted a hearing at which Petitioner stated that he understood his rights and had no documentary evidence to present. (*Id.* at 1-2.) Petitioner admitted, through a staff translator, that the DHO incident report was true and stated: "I admit it. I used [another inmate's telephone PIN] for an emergency." (*Id.* at 2.) Based upon the Incident Report and Petitioner's admission that the report was true, the DHO found sufficient evidence that Petitioner committed telephone abuse and violated Prohibited Act 297. (*See* DHO Report.)

Case 9:22-cv-01161-BKS-ML   Document 24   Filed 02/04/26   Page 104 of 144

Rosario-Santiago v. Pfiler, Not Reported in Fed. Supp. (2022)

Having found Petitioner to have violated Prohibited Act 297, the DHO disallowed Petitioner 27 days of Good Conduct Time ("GCT"), 30 days suspended pending 180 days clear conduct, and 90 days of phone privileges lost. (*Id.* at 2.) The DHO Report was signed and dated by the DHO on November 25, 2020, and was delivered to Petitioner on December 2, 2020. (*Id.* at 3.)

### D. The Attempted Appeal

On December 22, 2020, Petitioner appealed the DHO report, using a Bureau Of Prisons ("BOP") form, known as a BP-10 Form, to request an administrative remedy. (Peakes Decl. ¶ 14.) According to Respondent, on January 27, 2021, the BOP rejected Petitioner's administrative appeal on the basis that his BP-10 submission was illegible. (*Id.* ¶ 15.) Rather than resubmitting a legible request as required by the regulations, Petitioner filed a BP-11 Form on March 16, 2021, appealing the decision to the BOP General Counsel's office. (*Id.* ¶ 16); *see* 28 C.F.R. § 542.17(b) ("If the defect on which the rejection is based is correctable, the notice shall inform the inmate of a reasonable time extension within which to correct the defect and resubmit the Request or Appeal.") The General Counsel's office concurred with the Regional Director's rejection of Petitioner's appeal. (*Id.* ¶ 17.) Petitioner never resubmitted a legible BP-10 submission. (*Id.* ¶ 18.)

### Procedural History

On April 9, 2021, Petitioner filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241. (Dkt. 1 ("Petition").) Petitioner claimed that the 27 days of GCT were improperly withheld, and that he was "[d]enied Constitutionally provided rights as well as those under policy, regulation, and statute." (*Id.*) On August 31, 2021, Respondent filed a memorandum opposing the petition. (Dkt. 8 ("Opp. Mem.").) Petitioner replied on September 27, 2021. (Dkt. 11 ("Reply").) Respondent filed a supplemental brief on March 4, 2022 (Dkt. 15 ("Supp. Br.").), and Petitioner replied on April 21, 2022. (Dkt. 23 ("Supp. Reply").)

### Legal Standards

### A. 28 U.S.C. § 2241 Writ of Habeas Corpus

"The ordinary vehicle for a federal prisoner to seek habeas relief is 28 U.S.C. § 2255, under which such a prisoner may have his sentence vacated or set aside." *Carmona v. U.S.*

*Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001). But when a federal prisoner challenges a disciplinary sanction rather than the legality of his sentence, he may do so by petitioning for a writ of habeas corpus under 28 U.S.C. § 2241. *Carmona*, 243 F.3d at 632; *see also Chambers v. United States*, 106 F.3d 472, 474-75 (2d Cir. 1997); *Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30 n. 5 (2d Cir.1991). An inmate thus appropriately files a § 2241 petition when challenging the constitutionality of disciplinary proceedings or sanctions, including the loss of good time credits. *See Carmona*, 243 F.3d. at 632 (appellant's petition to expunge the Bureau's disciplinary sanctions from his record, including the loss of good time credits ... is properly brought via an application for a writ under § 2241); *Grossman v. Federal Bureau of Prisons*, 19-CV-5625, 2019 WL 6114881, at *4 (S.D.N.Y. Nov. 18, 2019) ("the Court concludes that Petitioner's constitutional rights were not violated by his disciplinary hearing or by the revocation of good time conduct."); *Agosto v. Hufford*, 13-CV-4082, 2014 WL 2217908, at *4-5 (S.D.N.Y. May 8, 2014) (holding that Petitioner had not made a substantial showing that his constitutional right to due process was denied at his disciplinary hearing).

### B. Exhaustion Requirement For Habeas Relief

**\*3** Before filing a petition for habeas relief, federal prisoners must exhaust all administrative remedies or justify their failure to do so. *Carmona*, 243 F.3d at 634. Appeals thus must first proceed through the federal agency review process absent a showing of cause for failing to do so and prejudice. *Id.*; *see generally Edwards v. Carpenter*, 529 U.S. 446, 451, 120 S. Ct. 1587, 1591 (2000); *Davis v. United States*, 411 U.S. 233, 93 S. Ct. 1577 (1973). That requirement applies no less to § 2241 petitions than to other habeas statutes. *Carmona*, 243 F.3d at 633. As explained by the Third Circuit Court of Appeals, "[b]y applying the cause and prejudice rule to habeas review of administrative proceedings, we insure that prisoners do not circumvent the appropriate agencies and needlessly swamp the courts with petitions for relief." *Moscato v. Federal Bureau of Prisons*, 98 F.3d 757, 761 (3d Cir. 1996); *accord Carmona*, 243 F.3d at 630 (recognizing four principles underlying the exhaustion requirement: comity, finality, accuracy, and trial integrity).

### C. Due Process Protections Afforded To Federal Inmates

The Fourteenth Amendment of the Constitution entitles federal prisoners to certain limited due process rights "when disciplinary actions subject them to further liberty deprivations such as loss of good-time credit or special

Case 9:22-cv-01161-BKS-ML    Document 24    Filed 02/04/26    Page 105 of 144

Rosario-Santiago v. Pfiler, Not Reported in Fed. Supp. (2022)

confinement that imposes an atypical hardship." *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004). Due process requires that a prison inmate receive "advanced written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken." *Id.*

For the prison disciplinary board to comply with due process, its conclusion must be supported by "some evidence." *See Superintendent, Massachusetts Correctional Institution, Walpole v. Hill*, 472 U.S. 445, 455, 105 S. Ct. 2768, 2774 (1985) ("The requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits"). If the evidence is reliable, the disciplinary board's conclusion is deemed supported. *See Sira*, 380 F.3d at 69; *Luna v. Pico*, 356 F.3d 481, 488 (2d Cir. 2004) (emphasizing the importance of assessing the reliability of available evidence); *Taylor v. Rodriguez*, 238 F.3d 188, 194 (2d Cir. 2001) (finding that without determining the reliability of evidence, the court is left to speculate whether a decision is supported by "some evidence"); *Gaston v. Coughlin*, 249 F.3d 156, 163 (2d Cir. 2001) ("this Court has ruled that the 'some evidence' standard may be met even where the only evidence was supplied by a [non-testifying] confidential informant" who provided incriminating information *and* there was evidence presented to the hearing officer that the information was reliable).

## Discussion

There is a factual dispute as to whether Plaintiff properly exhausted his administrative remedies that cannot be resolved on the present record. Nonetheless, Plaintiff's claim fails on the merits as he was not deprived of due process. The Petition therefore should be dismissed.

## A. The Court Cannot Determine On The Present Record Whether Plaintiff Failed To Exhaust Administrative Remedies

Respondent argues that Petitioner failed to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA") because, after submitting an illegible BP-10 Form, he failed to resubmit a legible BP-10 Form before filing a BP-11 Appeal. Petitioner argues that he did exhaust all administrative remedies because he did not receive a rejection of his BP-10 Form and waited the required amount of time before assuming rejection and filing a BP-11 Form. This issue turns on a factual dispute that cannot be resolved on the present record.

### 1. PLRA Exhaustion Requirements

**\*4** Exhaustion of administrative remedies is mandated not only under principles governing habeas corpus, but also by statute. "The PLRA requires that a prisoner seeking to bring a lawsuit under any Federal Law must first exhaust all of his administrative remedies." *Williams v. United States*, 2004 WL 906221 at \*5 (S.D.N.Y. Apr. 28, 2004) (internal quotation marks omitted). The PLRA serves to provide corrections officials the opportunity to address prisoner complaints internally before being faced with the burden of federal litigation. *See Abney v. McGinnis*, 380 F.3d 663, 667 (2d Cir. 2004). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Johnson v. Rowley*, 569 F.3d 40, 45 (2d Cir. 2009) (internal quotation marks omitted). To exhaust a claim and be in accordance with applicable procedure, a prisoner must complete the administrative review process. *See id.*

### 2. BOP's Administrative Remedy Process

The BOP has established the Administrative Remedy Program (the "ARP") to give federal prisoners the opportunity to seek review of an issue relating to his or her confinement. (Peakes Decl. ¶ 6.) The ARP provides a four-step process through which a federal prisoner may exhaust their administrative remedies. *See generally* 28 C.F.R. § 542. In accordance with the ARP, an inmate must first present his issue informally to staff by filing a BP-8 form. (Peakes Decl. ¶ 7); 28 C.F.R. § 542.13. If the issue cannot be informally resolved, an inmate may submit a formal Administrative Remedy Request to the Warden by filing a BP-9 within twenty calendar days of the date on which the basis for the request occurred. *See id.*; 28 C.F.R. § 542.14. An inmate who wishes to appeal the Warden's response to his formal request may submit a BP-10 Form to the appropriate Regional Director within twenty calendar days of the date of the Warden's response. 28 C.F.R. § 542.15. An inmate who wishes to appeal the Regional Director's denial may submit a BP-11 Form to the General Counsel's Office within thirty calendar days of the Regional Director's response. 28 C.F.R. § 542.15. If an inmate has not received a response to his request or appeal within the allotted time, the inmate may consider the appeal denied. *See* 28 C.F.R. § 542.18. For a BP-10, the allotted time is 30 days. *Id.*

Case 9:22-cv-01161-BKS-ML   Document 24   Filed 02/04/26   Page 106 of 144

Rosario-Santiago v. Pliler, Not Reported in Fed. Supp. (2022)

"When an inmate appeals a DHO report, that appeal properly begins with the BP-10 Process." (Peakes Decl. ¶ 12); 28 C.F.R. § 542.15. The BOP may reject an inmate's appeal for failing to meet procedural requirements, including failure to submit legible documents. 28 C.F.R. § 542.17(a); *Crawford v. Fisher*, No. CV 11-0641, 2012 WL 465767, at *3 (D. Minn. Jan. 5, 2012) (finding that a habeas petitioner who failed to resubmit a legible BP-11 Form had failed to exhaust his administrative remedies and was therefore barred from seeking federal habeas relief), *R. & R. adopted*, 2012 WL 446247 (Feb. 13, 2012) (affirming that petitioner had failed to exhaust his administrative remedies and therefore his habeas claim was procedurally defaulted). "When a submission is rejected, the inmate must be provided written notice ... explaining the reason for rejection." 28 C.F.R. § 542.17(b) ("If the defect on which the rejection is based is correctable, the notice shall inform the inmate of a reasonable time extension within which to correct the defect and resubmit the Request or Appeal.").

### 3. Application

The parties' submissions give rise to at least two disputed fact issues for which both parties have provided inadequate support. First, Respondent contends that Petitioner's BP-10 was rejected as illegible. The support for that contention is a brief one-sentence statement of a BOP legal assistant. (Peakes Decl. ¶ 14.) That assertion, however, is not supported with any documentation. According to Petitioner, having learned about the alleged illegibility only from the Warden's opposition to the instant Petition, the BP-10 is a carbon-copy form with one original page and three copy pages, and the only possible illegibility was on the fourth copy page, leaving three duplicate legible pages. (Reply at 2-3.) Like Respondent, Petitioner does not support his assertion with documentary support. There thus is an unresolved fact issue as to whether or to what extent the BP-10 was illegible.

**\*5** There also is a fact dispute as to whether Petitioner ever received the BOP response rejecting his BP-10 as illegible. That issue is material to determining whether Petitioner had cause for not properly exhausting his administrative remedies. In order to correctly comply with the ARP, Petitioner was required to resubmit a legible BP-10 Form upon rejection of his initial submission. (Peakes Decl. ¶ 13-15); 28 C.F.R. §§ 542.15, 542.17(b). Instead, Plaintiff filed a BP-11 to the BOP's General Counsel. (Peakes Decl. ¶ 16); *cf. Carmona*, 243 F.3d at 634-35 (denying prisoner's petition as procedurally defaulted for failure to properly appeal his

dispute to general counsel); *Crawford*, 2012 WL 465767, at *3 (denying prisoner's petition because "Petitioner did not resubmit his appeal, but filed his habeas petition instead").

Affording his petition a liberal reading, as the Court must for a pro se litigant, [3] Petitioner asserts that any procedural default should be excused for cause and prejudice. Petitioner argues that he never received a rejection of his BP-10, and only filed the BP-11 Form because sixty days had passed with no response to the BP-10 he submitted. (Reply at 2); *see* 28 C.F.R. § 542.18 (inmate may deem BP-10 rejected after 60 days without a response). Indeed, Petitioner asserts that his BP-11 submission expressly invoked the regulatory provision permitting him to appeal after 60 days without a response to his BP-10. (Reply at 2.) Again, however, Petitioner's assertion is not accompanied by documentary support. The Court thus is left with an unresolved issue of whether Petitioner ever received the denial of his BP-10. If he did not, then his filing of a BP-11 after sixty days may satisfy the requirement to exhaust his remedies.

To resolve the above issues, the Court would need to obtain additional documentation and hold an evidentiary hearing. But there is no need to do so because, even if Petitioner had properly exhausted his remedies, his claim fails on the merits.

### B. The BOP Did Not Violate Petitioner's Due Process Rights

The BOP provided Petitioner with sufficient due process protections and satisfied the relatively modest requirement that the disciplinary board's decision was supported by some evidence that is reliable. Petitioner's arguments to the contrary have no merit.

### 1. The BOP Afforded Petitioner The Requisite Procedures

The BOP granted Petitioner the limited due process protections afforded to a prison inmate, namely "advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken." *Sira*, 380 F.3d at 69.

After the incident, the BOP provided Petitioner with advanced written notice of the charges against him. (Incident Report at 1). On October 14, 2020, and again on October 20, 2020, the

BOP notified Petitioner of his rights to present evidence and witnesses, which he declined. (Incident Report at 5; Notice of Disciplinary Hearing Before the DHO at 1-2; DHO Report at 1.) Petitioner's hearing was conducted by a hearing officer, and there is no evidence or suggestion in the record that the hearing officer was not fair and impartial. Petitioner also received a report detailing the DHO's decision, including the evidence on which the DHO relied and its reasoning for imposing the sanctions. (*See* DHO Report.) Taken together, the Incident Report and DHO Report indicate that BOP afforded Petitioner all necessary due process rights. *See Houston v. Linaweaver*, No. 14-CV-2980, 2014 WL 3160908 at *4 (S.D.N.Y. July 15, 2014) ("The record thus disposes of [petitioner]'s claim that his good-time credits were taken from him without the procedural safeguards guaranteed by the Constitution and by federal regulations.")

**\*6** The BOP's decision also meets the evidentiary standards that "some evidence supports the decision by the prison disciplinary board to revoke good time credits," *Hill*, 472 U.S. at 455, 105 S. Ct. at 2774, and that such evidence is reliable. *See Luna*, 356 F.3d at 488; *Taylor* 238 F.3d at 194. The results of the DHO hearing were based on some reliable evidence; specifically, recordings of Petitioner placing a call using another inmate's telephone PIN, video footage of Petitioner on the telephone, as well as Petitioner's admissions. (*See* DHO Report at 2.) The BOP thus complied with the necessary due process requirements, having afforded Petitioner the requisite procedural safeguards and satisfied the evidentiary standard on review.

**2. Petitioner's Due Process Arguments Are Unfounded**
Petitioner advances three arguments as to how the BOP violated his due process rights: first, the interpreter at his disciplinary hearing was biased against him and provided a meaningless admission of guilt; second, the disciplinary process demonstrated a deliberate pattern of misconduct; and third, there was insufficient evidence that his actions circumvented BOP's telephone monitoring procedures in violation of Prohibited Act 297. (Reply at 3-6; Supplemental Brief at 2.) None of those arguments stand up to scrutiny.

First, Petitioner asserts, and Respondent disputes, that Petitioner's alleged admission was the product of a biased interpreter. (Reply at 4-5.) The Court need not determine whether that assertion is true. Petitioner has readily admitted multiple times that he used the PIN code of another prisoner. (*See* Incident Report at 1; Reply at 6; Supp. Reply at 2.) Moreover, even absent any such admission, the video and

telephone recordings of Petitioner using another prisoner's PIN are reliable evidence satisfying the requirements for a valid DHO determination. *See Hill*, 472 U.S. at 455, 105 S. Ct. at 2774-75; *Luna*, 356 F.3d 488.

Second, Petitioner points to three instances of "suspicious documentation" that are trivial matters that had no impact on the process he was afforded. (Reply at 3-5.) All three instances relate to documentation issued by the Unit Discipline Committee ("UDC"), the internal prison unit that handles disciplinary issues and decides whether to refer incident reports to the DHO for further review. 28 C.F.R. § 541.7. According to Petitioner, the documentary discrepancies evince UDC "misconduct." (Reply at 4.)

The first example concerns the Incident Report, which initially contained the wrong date of the incident but was amended just days later to correct the date. Petitioner asserts that he did not receive the "corrected" Incident Report until after his UDC hearing. But Petitioner does not suggest that he did not have full notice of the incident at issue when the hearing occurred. The typographical error and correction thus did not prejudice Petitioner in any way. (*See* Reply at 4.) *See Agosto*, 2014 WL 2217908 at *4 ("[petitioner's] claim that [ ] the incident report was unconstitutionally deficient because it was amended twice should be denied" because petitioner's due process rights would only have been implicated if the amendments had undermined the purpose of the advanced written notice requirement). The second and third example derive from a single alleged flaw – that, according to dates and times in the documentation, Petitioner received and signed the UDC's Notice Of DHO Hearing and Notice Of Rights before he received and signed the initial Incident Report. While the timing is unclear, even accepting Petitioner's sequence of events, there was no prejudice, and he does not claim any. (*See* Reply at 4.)

**\*7** In any event, even if such minor errors could be construed as UDC "misconduct," as Petitioner claims, they still would not give rise to a due process violation. *See Grossman*, 2019 WL 6114881, at *2 ("Petitioner received all the process to which he was constitutionally entitled and any noncompliance with internal prison regulations regarding Petitioner's UDC hearing did not violate due process."); *Agosto*, 2014 WL 2217908, at *3 ("[T]o the extent internal prison regulations grant protections beyond the constitutional minimum, noncompliance with those regulations do not typically offend due process.").

Petitioner's last argument is that the evidence of his violation of Prohibited Act 297 was insufficient. Prohibited Act 297 prohibits "[u]se of the telephone for abuses other than illegal activity which circumvent the ability of staff to monitor frequency of telephone use...." 28 C.F.R. § 541.3. Petitioner argues that he did not circumvent monitoring because BOP was watching him commit the violation in real time via security footage and had the ability to listen to the call that Petitioner knew was being recorded. (Reply at 5-6.) Petitioner's argument is essentially that he could not have circumvented anything because he knew calls were recorded and was caught in the act of making a call. But Petitioner misses the point. PIN usage contributes to the ability of BOP staff to monitor inmate telephone use, and abuse of another inmate's PIN interferes with that monitoring ability. Based on the plain language of the rule, the DHO correctly found Petitioner in violation of Prohibited Act 297.

### Conclusion

For the foregoing reasons, the petition for writ of habeas corpus is without merit. Petitioner's arguments, to the extent not addressed above, have been considered by the Court and found to be without merit. Accordingly, I recommend that the Petition be DENIED and the action dismissed.

### Procedure For Filing Objections And Preserving Right To Appeal

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Criminal Procedure, the parties shall have fourteen (14) days to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the Chambers of the Honorable John P. Cronan, 500 Pearl Street, New York, New York 10007, and to Chambers of the undersigned, 500 Pearl Street, New York, New York 10007. **FAILURE TO FILE TIMELY OBJECTIONS WILL RESULT IN WAIVER OF OBJECTIONS AND PRECLUDE APPELLATE REVIEW.**

### All Citations

Not Reported in Fed. Supp., 2022 WL 2991015

---

### Footnotes

1    "Peakes Decl." refers to the Declaration of Marc Peakes, Legal Assistant at the Metropolitan Correctional Center in New York, NY at Dkt. 9.

2    Prohibited Act 297 is a "High Severity Level Prohibited Act" that bars "[u]se of the telephone for abuses other than illegal activity which circumvent the ability of staff to monitor frequency of telephone use, content of the call, or the number called; or to commit or further a High category prohibited act." 28 C.F.R. § 541.3(b).

3    *See Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (district courts must read pro se litigants' pleadings "liberally and interpret them to raise the strongest arguments that they suggest."); *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010) ("a court is ordinarily obligated to afford a special solicitude to pro se litigants.").

---

**End of Document**                              © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 2794793
Only the Westlaw citation is currently available.
United States District Court, D. Hawai'i.

Cookie SALLAS, #12244-122, Petitioner,

v.

Warden Estela DERR, Respondent.

CIVIL NO. 23-00084 JMS-RT
|
Signed April 5, 2023

**Attorneys and Law Firms**

Cookie Sallas, Honolulu, HI, Pro Se.

**ORDER DISMISSING PETITION FOR
WRIT OF HABEAS CORPUS PURSUANT
TO 28 U.S.C. SECTION 2241, ECF NO. 1**

J. Michael Seabright, United States District Judge

 **\*1** Before the court is pro se Petitioner Cookie
Sallas' ("Sallas") "Petition for Writ of Habeas Corpus
Pursuant to 28 U.S.C. Section 2241 Seeking an Order
Directing the Bureau of Prisons to Apply First Step Act
Earned Time Credits" ("Petition"). ECF No. 1. The court
has reviewed the Petition pursuant to Habeas Rule 4 of the
Rules Governing Section 2254 Cases in the United States
District Courts ("Habeas Rules"). Because Sallas admits
that she failed to exhaust administrative remedies, and the
court concludes that waiving the exhaustion requirement is
not appropriate here, the Petition is DISMISSED without
prejudice, but without leave to amend.

### I. BACKGROUND

On October 13, 2022, Sallas pleaded guilty to bank fraud,
in violation of 18 U.S.C. § 1344, and aggravated identify
theft, in violation of 18 U.S.C. § 1028A. *See* Memorandum
of Plea Agreement, *United States v. Sallas*, Cr. No. 22-00090
JMS (D. Haw. Oct. 13, 2022), ECF No. 69. On January
26, 2023, the court sentenced Sallas to a total term of ninth
months' imprisonment and four years' supervised release. *See*
Judgment in a Criminal Case, *Sallas*, Cr. No. 22-00090 JMS
(D. Haw. Jan. 26, 2023), ECF No. 78.[1]

Sallas is now incarcerated at the Federal Detention Center
in Honolulu, Hawaii ("FDC Honolulu"). *See* Federal Bureau
of Prisons, https://www.bop.gov/inmateloc/ (select "Find By
Number"; enter "12244-122"; and select "Search") (last
visited Apr. 5, 2023). The Federal Bureau of Prisons' ("BOP")
inmate locator currently states that Sallas' projected release
date is September 6, 2023. *Id.*

On February 14, 2023, the court received the Petition. ECF
No. 1. In the Petition, Sallas seeks an order "directing
the BOP to apply [her] FSA Earned Time Credits."[2] *Id.*
at PageID.1. If these credits were properly applied, Sallas
contends, she would be released sometime in June 2023. *Id.* In
the Petition, Sallas "admit[s] that [she] did not exhaust [her]
administrative remedies before seeking relief under 28 U.S.C.
Section 2241." *Id.*

On March 3, 2023, the court issued an Order to Show Cause
Why the Petition, ECF No. 1, Should Not Be Dismissed. ECF
No. 4. The court ordered Sallas to show cause in writing why
the Petition should not be dismissed without prejudice for
failure to exhaust administrative remedies. *Id.* at PageID.12.
The court received Sallas' Response on March 10, 2023.
ECF No. 5. Although the court provided Respondent with the
opportunity to file an optional response on or before March
31, 2023, *see* ECF No. 4 at PageID.13, she has opted not to
respond. Pursuant to Local Rule 7.1(c), the court elects to
decide the Petition without a hearing.

### II. SCREENING

 **\*2** Habeas Rule 4 states that a district court must "promptly
examine" each petition and dismiss a petition "if it plainly
appears from the petition and any attached exhibits that the
petitioner is not entitled to relief in the district court." *See*
*Mayle v. Felix*, 545 U.S. 644, 656 (2005); *Hung Viet Vu v.
Kirkland*, 363 F. App'x 439, 441–42 (9th Cir. 2010). This rule
also applies to a habeas petition brought under 28 U.S.C. §
2241. *See* Habeas Rule 1(b) (providing that district courts
may apply the Habeas Rules to habeas petitions that are not
brought under 28 U.S.C. § 2254); *Lane v. Feather*, 584 F.
App'x 843, 843 (9th Cir. 2014) ("[T]he district court did not
err by applying Rule 4 of the Rules Governing Section 2254
Cases to the instant petition [under 28 U.S.C. § 2241].").

### III. DISCUSSION

## A. Habeas Petitions Under 28 U.S.C. § 2241

Section 2241 allows a district court to consider an application for a writ of habeas corpus from a prisoner claiming to be "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(a), (c)(3). "Generally, motions to contest the legality of a sentence must be filed under § 2255 in the sentencing court, while petitions that challenge the manner, location, or conditions of a sentence's execution must be brought pursuant to § 2241 in the custodial court." *Hernandez v. Campbell*, 204 F.3d 861, 864 (9th Cir. 2000).

## B. Exhaustion of Administrative Remedies

"As a prudential matter, courts require that habeas petitioners exhaust all available judicial and administrative remedies before seeking relief under § 2241." *Ward v. Chavez*, 678 F.3d 1042, 1045 (9th Cir. 2012) (citations omitted); *see also Martinez v. Roberts*, 804 F.2d 570, 571 (9th Cir. 1986) (per curiam) ("Federal prisoners are required to exhaust their federal administrative remedies prior to bringing a petition for a writ of habeas corpus in federal court.").

Requiring a petitioner to exhaust her administrative remedies aids "judicial review by allowing the appropriate development of a factual record in an expert forum," conserves "the court's time because of the possibility that the relief applied for may be granted at the administrative level," and allows "the administrative agency an opportunity to correct errors occurring in the course of administrative proceedings." *Ruviwat v. Smith*, 701 F.2d 844, 845 (9th Cir. 1983) (per curiam).

In general, proper exhaustion requires compliance with an agency's deadlines and other critical procedural rules. *See Woodford v. Ngo*, 548 U.S. 81, 88–93 (2006) (addressing exhaustion in the context of administrative law, habeas petitions filed pursuant to 28 U.S.C. § 2254, and the Prison Litigation Reform Act); *see also Kelly v. Dir., Fed. Bureau of Prisons*, 2014 WL 1270530, at *4 (E.D. Cal. Mar. 26, 2014) (applying *Woodford* to a habeas petition brought pursuant to 28 U.S.C. § 2241).

**\*3** Federal inmates may "seek formal review of an issue relating to any aspect of his/her confinement" through the administrative remedy program. 28 C.F.R. § 542.10(a). The administrative remedy program consists of the following four steps: (1) presenting an issue of concern informally to staff, *see* 28 C.F.R. § 542.13(a); (2) submitting a formal request for administrative remedies to a facility's warden, *see* 28 C.F.R. § 542.14(a); (3) appealing to the appropriate Regional Director, *see* 28 C.F.R. § 542.15(a); and (4) appealing to the BOP's General Counsel, *see id.*; *see also Seina v. Fed. Det. Ctr.-Honolulu*, 2016 WL 6775633, at *5 (D. Haw. Nov. 15, 2016) (describing the BOP's four-step administrative remedy procedure). "Inmates may seek review of the loss of earned FSA Time Credits through the [BOP's] Administrative Remedy Program." 28 C.F.R. § 523.43(b) (citation omitted).

Courts have discretion to waive the exhaustion requirement in various situations, including "where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (internal quotation marks and citation omitted). This discretion, however, "is not unfettered." *Id.* at 998; *see also Murillo v. Mathews*, 588 F.2d 759, 762 n.8 (9th Cir. 1978) ("Although the '(a)pplication of the rule requiring exhaustion is not jurisdictional, but calls for the sound exercise of judicial discretion,' it is not lightly to be disregarded.") (citation omitted). A "key consideration" in exercising such discretion is whether " 'relaxation of the requirement would encourage the deliberate bypass of the administrative scheme.' " *Laing*, 370 F.3d at 1000 (citation omitted).

District courts may *sua sponte* dismiss a petition filed pursuant to 28 U.S.C. § 2241 for failure to exhaust administrative remedies. *See Kunsman v. Carlson*, 934 F.2d 324 (9th Cir. 1991) (unpublished) (affirming *sua sponte* dismissal of habeas petition); *Warren v. Floyd*, 35 F.3d 573 (9th Cir. 1994) (unpublished) (same); *see also Feldman v. U.S. Parole Comm'n*, 841 F.2d 1129 (9th Cir. 1988) (unpublished) (stating that a district court may *sua sponte* dismiss for failure to exhaust administrative remedies after providing notice to the petitioner and an opportunity to oppose the dismissal).

Here, Sallas admits in the Petition that she has not exhausted her administrative remedies. *See* ECF No. 1 at PageID.1 ("I did not exhaust my administrative remedies."). Thus, the Petition must be dismissed unless the court concludes, as a matter of discretion, that the exhaustion requirement should be waived.

In her Response, Sallas asserts that the exhaustion requirement should be waived because administrative remedies were effectively unavailable to her. ECF No. 5 at PageID.14. According to Sallas, she attempted to pursue

Sallas v. Derr, Not Reported in Fed. Supp. (2023)

Case 9:22-cv-01161-BKS-ML Document 24 Filed 02/04/26 Page 111 of 144

administrative remedies but an unnamed prison official at FDC Honolulu refused to provide her with a grievance form. *Id.* In some situations, courts have waived an exhaustion requirement where prison officials failed to provide grievance forms to inmates. *See Sapp v. Kimbrell*, 623 F.3d 813, 822 (9th Cir. 2010) (citing decisions in other circuits holding that exhaustion is not required where prison officials refuse to give a prisoner the forms necessary to file an administrative grievance).

The court declines to waive the exhaustion requirement here, however, for several reasons. First, to the extent Sallas asserts that earned time credits should be applied, "[t]he computation of a prisoner's length of confinement is exactly the type of case in which the exhaustion of administrative remedies is appropriate." *Jones v. Reese*, 1998 WL 827504, at *1 (N.D. Cal. Nov. 24, 1998) (citing *Chua Han Mow v. United States*, 730 F.2d 1308, 1313–14 (9th Cir. 1984)). Indeed, the BOP is particularly well suited to consider such claims. *See Hanson v. Hendrix*, 2022 WL 4182535, at *2 (D. Or. Sept. 13, 2022) ("[T]he exhaustion requirement is particularly well-suited to address issues involving eligibility for earned time credits, as BOP has the authority to calculate prison sentences."). Thus, the BOP is well suited to address Sallas' claims.

 **\*4** Second, Sallas still has time to pursue her claims administratively. According to Sallas, even if her earned time credits were properly applied, she would not be released from FDC Honolulu until sometime in June 2023. As a result, Sallas has at least this month and next to exhaust her administrative remedies. Thus, this is not a situation where irreparable injury will result from requiring exhaustion.

Finally, requiring Sallas to exhaust her administrative remedies aids "judicial review by allowing the appropriate development of a factual record in an expert forum," conserves "the court's time because of the possibility that the relief applied for may be granted at the administrative

level," and allows "the administrative agency an opportunity to correct errors occurring in the course of administrative proceedings." *Ruviwat*, 701 F.2d at 845; *see also Yanagihara v. Derr*, 2023 WL 2163685, at *5 (D. Haw. Feb. 22, 2023) (dismissing habeas petition challenging calculation of First Step Act earned time credits because petitioner failed to exhaust administrative remedies). Waiving the exhaustion requirement in this case would only encourage other inmates to skirt the BOP's administrative remedy program.

The best method for Sallas to have her claims considered at this time, therefore, is through the BOP's administrative remedy program. *See Mohammad v. Thompson*, 2022 WL 4484545, at *3 (E.D. Cal. Sept. 27, 2022) ("The BOP should be given the first opportunity to address petitioner's argument that he is entitled to ... earned time credits."), *report and recommendation adopted*, 2022 WL 17721472 (E.D. Cal. Dec. 15, 2022).

### IV. CONCLUSION

1. The Petition is DISMISSED without prejudice, but without leave to amend, because Sallas failed to exhaust administrative remedies and waiver of the exhaustion requirement is not appropriate in this case.

2. Upon request by Sallas, Respondent is DIRECTED to ensure that Sallas receives any forms required to exhaust administratively the claims raised in the Petition.

3. The Clerk is DIRECTED to close this case.

IT IS SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2023 WL 2794793

---

### Footnotes

1    Unless otherwise specified, all other references to filings in this Order are to the docket in Civ. No. 23-00084 JMS-RT.

2      Section 3632(d)(4)(A) provides that those eligible federal inmates who successfully complete evidence-based recidivism reduction programming or productive activities may earn time credits that are applied toward time in prerelease custody or supervised release. *See* 18 U.S.C. § 3632(d)(4)(A)–(D).

---

**End of Document**                                       © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 120817
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Michael SARRO, Petitioner,
v.
T. BILLINGSLEY, Warden, FCI Otisville, Respondent.

No. 11 Civ. 9395(MHD).
|
Jan. 10, 2013.

*MEMORANDUM & ORDER*

MICHAEL H. DOLINGER, United States Magistrate Judge.

**\*1** Petitioner Michael Sarro seeks a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, to challenge the calculation by the United States Bureau of Prisons of his five-year federal prison sentence. That sentence was imposed on the basis of Sarro's 2009 conviction in the United States District Court for the District of Massachusetts on separate counts of bank robbery and attempted bank robbery. Sarro asserts that the decision of the Bureau of Prisons violated his rights to due process and equal protection. Respondent opposes, contending that the petition is meritless and, alternatively, that relief is barred based on Sarro's failure to exhaust his administrative remedies.

For the reasons that follow, we deny the writ and dismiss the petition.

*The Pertinent History*
The issues raised by petitioner turn on the intersection of two criminal justice systems and their respective handling of sentencing and custodial arrangements for petitioner. We provide a brief summary of his pertinent history.

On April 23, 2007, Sarro was charged in Peabody District Court in Massachusetts with (1) daytime breaking and entering, (2) larceny of more than $250.00 from a victim over 60 years old or disabled, and (3) receipt of stolen property. (Boyd Decl. Ex D1). On June 11, 2007, he pled guilty to the first two charges. [1] The court sentenced him to eighteen months imprisonment, but suspended all but the 53 days already served. The court placed Sarro under probation

supervision (*id.* at 2), requiring that he undergo treatment at the Salvation Army Rehabilitation Program in Saugus, Massachusetts. (*Id.* Ex. C ¶ 56). He was also ordered to pay restitution. (*Id.; see also id.* Ex. D at 2).

On December 28, 2007, the Probation Department sought and obtained a warrant for Sarro's arrest for violation of release conditions—specifically, for his leaving the rehabilitation program early and failing to pay restitution. (*Id.* Ex. C ¶ 56). [2] On January 18, 2008, before the state warrant could be executed, Sarro and another man robbed a bank in Saugus. On January 23, 2008, Sarro attempted to rob another bank in Lynn, Massachusetts. (*Id.* Ex. C ¶¶ 2, 9, 17). The next day, state authorities arrested Sarro on the probation-violation warrant (*id.* Ex. D at 6–7), and he subsequently admitted to his participation in the two bank robbery incidents. (*Id.* Ex. C ¶¶ 16–17).

The Massachusetts Probation Department obtained an order to detain Sarro without bail. His detention continued until March 12, 2008. (*Id.* Ex. D at 3). On March 12, 2008, Sarro conceded having violated the terms of his probation and was remanded to the Suffolk County House of Correction for a period of eighteen months. (*Id.* at 4).

In the meantime, on February 25, 2008, federal authorities filed a criminal complaint charging Sarro with bank robbery and attempted bank robbery. (*United States v. Milano,* 08 Cr. 10108, Dkt. # 1 (D.Mass.)). By way of a writ of habeas corpus *ad prosequendum,* Sarro was presented on the federal complaint on March 18, 2008, at which time he was ordered detained pending trial, and was promptly returned to state custody. (Boyd Decl. Ex. C ¶ 3). A federal grand jury returned a two-count indictment on May 6, 2008, charging Sarro with bank robbery and attempted bank robbery. (*Id.* at ¶ 1). Once again, Sarro was ordered to appear in federal court pursuant to a writ of habeas corpus *ad prosequendum* (*id.* Ex. E at 4), and, on June 11, 2008, Sarro waived indictment and pled guilty to both counts before the United States District Judge Joseph L. Tauro. (*Id.* Ex. C ¶ 4). Sarro continued to serve his state sentence pending sentencing in the federal matter. [3]

**\*2** On February 26, 2009, Sarro appeared in federal court under a third writ of habeas corpus *ad prosequendum.* (*See United States v. Milano,* 08 Cr. 10108, Dkt. # 27 (D.Mass.)). He was sentenced to sixty months on each of the two counts against him, the sentences to run concurrently. The District Judge stated that the federal sentence should run concurrently with the state sentence "effective on the date of sentencing:

February 26, 2009." (Boyd Decl. Ex. B at 2). On April 2, 2009, Sarro was released from state custody into federal custody in order to serve the balance of his federal sentence. (*Id.* Ex. E at 4–5; *id.* Ex. F).

In April 2010, Sarro filed an administrative request seeking a recalculation of his sentence by the Bureau of Prisons. In his Initial Request for Administrative Remedy, Sarro noted that he had received jail credit on his federal sentence for the period from January 24, 2008 (the date of his state arrest) to March 13, 2008 (the day he began his state probation-violation sentence), and he asked that he be credited as well, *nunc pro tunc,* with the additional time he spent in state custody before he was sentenced by the federal court, that is, from March 14, 2008 to February 26, 2009. In doing so he acknowledged the discretion of the Bureau whether to designate his service of a state sentence as counting toward his federal term. (*Id.* Ex. A at 7–8). The Warden responded that the time period for which Sarro sought credit had been spent serving his state sentence, and that accordingly he could not be credited with the same incarcerative time for federal-sentence purposes. (*Id.* at 6).

Sarro administratively appealed, citing *Barden v. Keohane,* 921 F.2d 476 (3d Cir.1990) (recognizing Bureau's authority to designate state prison as a place of federal confinement), and reiterated his contention that the Bureau should *nunc pro tunc* credit him with the 349–day period in question. (Boyd Decl. Ex. A at 4–5). On June 16, 2010, the Bureau's Regional Director affirmed the Warden's decision. (*Id.* at 3). Sarro pursued the final level of administrative appeal, noting that Judge Tauro had specified that his federal sentence was to run concurrently with his state sentence (*id.* at 2); however, by decision dated November 9, 2010, the Bureau's Administrator for National Inmate of Appeals denied the appeal, citing 18 U.S.C. §§ 3585(a) and (b) and BOP Program Statement 5880.28. He observed that section 3585(a) and the Program Statement both bar the commencement of a sentence before it is imposed. The Administrator noted that, under *Willis v. United States,* 438 F.2d 923 (5th Cir.1971), Sarro had nonetheless received sentencing credit for the period from his re-arrest by state authorities, on January 24, 2008, to the date of his sentencing, on March 11, 2008, for violating state probation. As for the succeeding period, for which Sarro also sought credit, the Administrator noted that § 3585(b) precluded granting Sarro federal-sentence credit, since, from March 12, 2008 forward, he had been serving his state sentence. (Boyd Decl. Ex. A at 1).

*The Current Proceeding*

**\*3** In Sarro's petition to this court, he does not make the same request as he did on his administrative application and appeal. Rather, he pursues a somewhat different argument in pursuit of a somewhat different form of relief. Sarro previously urged the Bureau to adopt a discretionary *nunc pro tunc* designation crediting his federal sentence for the period between the date of his sentencing for state parole violations and the date of his federal sentencing. In contrast, he now argues that, because of a federal detainer issued while he was in state prison, he was denied a state parole hearing that would have led to his release from state prison as early as August 27, 2008, and, accordingly, his federal sentence should be credited for the time from August 27, 2008 through February 25, 2009—that is, up until the day of his federal sentencing. In support of this application Sarro cites *Rosemond v.. Menifee,* 137 F.Supp.2d 270 (S.D.N.Y.2000), and *Ballard v. Blackwell,* 449 F.2d 868 (5th Cir.1971), arguing that the denial of this credit would violate his rights to due process and equal protection. (Pet. ¶¶ 12–13; Petr's Reply at 2–6).

*ANALYSIS*

As noted, respondent opposes the current petition on two basic grounds—first, that it is meritless and, second, that Sarro failed to exhaust his administrative remedies with respect to the arguments raised in his current petition. Although much of respondent's merits argument is modestly off-point, we conclude that the writ should be denied on both grounds. We first address exhaustion.

Federal prisoners are required to exhaust their administrative remedies before pursuing court intervention. *See, e.g., Beharry v.. Ashcroft,* 329 F.3d 51, 62 (2d Cir.2003); *Carmona v. U.S. Bureau of Prisons,* 243 F.3d 629, 634 (2d Cir.2001). This requirement "protect[s] the authority of administrative agencies, limit[s] interference in agency affairs, develop[s] the factual record to make judicial review more efficient, and resolv[es] issues to render judicial review unnecessary." *Beharry,* 329 F.3d at 62 (brackets inserted). The court has discretion to waive the exhaustion requirement if "(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question." *Id.*

In this case Sarro pursued his administrative route, but failed either to present his current argument or to request the specific

relief for which he now asks. This surely represents a failure on his part to exhaust his remedies since the Bureau never had to consider his current theory or to require him to flesh out the factual grounding that underlies it—that is, that the federal detainer was responsible for his not being released from state prison custody as early as August 2010. That failing alone is a sufficient basis to deny the current petition absent any showing of a persuasive basis for relieving petitioner of his exhaustion obligation. [4] *See Ortiz v. McBride,* 380 F.3d 649, 663 (2d Cir.2004) (noting that when a prisoner has both exhausted and unexhausted claims, only the exhausted claims should be permitted to proceed in federal court). That said, since we find petitioner's underlying claim to be meritless, we choose to address it here rather than remit him to whatever agency remedies may still be available to him.

**\*4** Determinations of sentence credits and related calculations are to be made by the Bureau after imposition of sentence, and not by the sentencing judge at the time of sentence. *See, e.g., United States v. Wilson,* 503 U.S. 329, 335–36 (1992). Sentence calculation is governed by 18 U.S.C. § 3585, which provides:

(a) Commencement of Sentence.—A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at the official detention facility at which sentence is to be served.

(b) Credit for Prior Custody.—A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—

(1) as a result of the offense for which the sentence was imposed; or

(2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

that has not been credited against another sentence.

As § 3585(b) makes apparent, the time that Sarro spent in state custody from his arrest on state probation-violation charges —an event that post-dated Sarro's commission of the federal crimes—up to the time when he began to serve his state sentence must be credited to his federal sentence, since it has not been credited toward his state sentence. Thus, the time from January 24, 2008 (when he was arrested by state authorities) through March 11, 2008 (the day before he was sentenced for probation violations and began to serve that sentence) is to be credited to his federal sentence. It is not disputed that the Bureau has given Sarro that credit.

What Sarro seeks now is a different, additional credit. He contends that, under Massachusetts law, absent any federal charges or detainer, he was eligible for parole consideration on his state prison sentence as of August 27, 2008; however, he insists that the existence of the federal detainer precluded such potential release (Pet'r's Reply at 2), and he implies that, but for the detainer, he would in fact have been released at that time. (*Id.* at 5). Under this assumption, Sarro contends that he spent an additional 305 days in state prison (that is, until February 26, 2009, when he was federally sentenced), which he asserts should be credited toward his federal sentence. [5]

The immediate problem with Sarro's argument is that § 3585(b) does not authorize giving a credit on a federal sentence for any prison time that has already been credited to another sentence, whether state or federal. Indeed, the Supreme Court and the Second Circuit have repeatedly read this statutory language as precluding such double-counting. *See, e.g., Wilson,* 503 U.S. at 333; *Lopez v. Terrell,* 654 F.3d 176, 178 (2d Cir.2011); *Villanueva v. United States,* 346 F.3d 55, n. 3 (2d Cir.2003); *United States v. Labeille–Soto,* 163 F.3d 93, 99 (2d Cir.1998); *Werber v. United States,* 149 F.3d 172, 173 (2d Cir.1998). The time for which Sarro seeks a credit is time he spent in state custody serving his probation-violation sentence, and thus was credited to that state sentence. It may not also be credited toward his federal sentence. Moreover, as noted, § 3585(a) specifies that a federal sentence commences only *after* sentence is pronounced, *see, e.g ., Lopez,* 654 F.3d at 185; *Lebeille–Soto,* 163 F.3d at 98; *Gomes v. Billingsley,* 2012 WL 546744, *2 (S.D.N.Y. Feb. 21, 2012)*, and the period for which Sarro seeks federal credit preceded his federal sentencing.

**\*5** In seeking to avoid these analytical difficulties, Sarro invokes a limited exception, recognized by a number of courts, under which—notwithstanding the wording of § 3585—a federal prisoner seeking credit for incarcerative time in state custody may prevail if he can demonstrate that a federal detainer or other action by federal authorities was the "exclusive" cause of his remaining in state custody during the period for which he seeks federal credit. *See, e.g., Shaw v. Smith,* 680 F.2d 1104, 1106 (5th Cir.1982); *Ballard,* 449 F.2d at 869; *Rosemond,* 137 F.Supp.2d at 275. That exception has not, as yet, been adopted by the Second Circuit, and

other courts here and in other circuits have held that it cannot apply to time periods that have already been credited to a state sentence—that is, they have held that the prohibition on double-counting trumps any such exception. *See, e.g., Rivera v. Killian,* 2008 WL 1990093, *3 (S.D.N.Y. May 8, 2008); *Tisdale v. Menifee,* 166 F.Supp.2d 789, 791–92 (S.D.N.Y.2001); *accord Mathison v. Morrison,* 2007 WL 3224671, n. 11 (D.Minn. Nov. 1, 2007). If we were to apply such reasoning to this case, Sarro's claim would fail, since, in effect, he is seeking a double-counting.

In any event, even under the reasoning set forth in *Rosemond* and *Ballard,* Sarro's argument is unsustainable because he cannot demonstrate that the time that he spent in state prison after August 27, 2008 was attributable exclusively to the federal detainer. When sentenced on February 26, 2008 to eighteen months in prison for a state probation violation, he faced a sentence that, by its terms, would not expire until August 2009. Even if we assume the accuracy of his assertion that by August 27, 2008 he was potentially eligible for parole release, he faces the daunting task of establishing that, absent the detainer, he would have been released to parole supervision as of that time. He clearly cannot make that showing, and indeed, in his papers, he does not even attempt to do so.

As Sarro notes, the pertinent Massachusetts statute specifies that parole may not be granted "merely as a reward for good behavior" and rather is to based solely on the Parole Board's conclusion "that there is a reasonable probability that, if such a prisoner is released, he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society." Mass. Gen. Laws ch. 127 § 130; *see also* 120 Mass.Code Regs. § 300.04. This language plainly grants the Parole Board discretion and directs its attention to the question of potential recidivism. In this case, Sarro cannot show that if the Board had been free to consider his case in the absence of a federal detainer, it would have granted parole in August 2008— only six months after his sentencing for parole violation— or anytime thereafter. Indeed, he was not merely serving a sentence for conviction on his underlying crime, but rather was serving a prison term predicated on his having violated two separate conditions of his probation mere months after having been sentenced by the State for larceny and breaking

and entering. Still more damaging to his case for parole would have been the fact that he was, at the time, facing federal charges for carrying out one bank robbery and attempting a second, both during the period that he was on state probation. Given Sarro's record, it cannot seriously be contended—other than as a matter of sheer speculation verging on wishful thinking—that the Parole Board would have released him at any time between August 27, 2008 and March 11, 2009, even if the federal authorities had not filed a detainer. *See Gomes,* 2012 WL 546744, at *2, n. 1 (rejecting petitioner's "exclusive reason" argument since he had already been in state custody for ten months before detainer was lodged); *Mitchell v. Killian,* 2011 WL 710612, *2 (S.D.N.Y. Feb. 25, 2011) (conclusory assertion that petitioner would have been released on bail absent detainer reflects failure of proof); *Rivera,* 2008 WL 1990093, at *4 (petitioner in state custody for four months before detainer lodged); *Saunders v. Unnamed Warden,* 2008 WL 2775763, *7 (D.N.J. July 14, 2008) (petitioner had no scheduled parole release date or even parole grant decision). *Compare Rosemond,* 137 F.Supp.2d at 275 (petitioner removed from state custody only two days before scheduled conditional release, and after return to state custody he was released within two days). [6]

**\*6** Ultimately, Sarro's argument reduces to the assertion that the federal detainer prevented the Parole Board from exercising whatever discretion it had under Massachusetts law to consider him for parole. That assertion, which we take to be accurate, does not save his case since, even under the exception to § 3585(b) that he is invoking, he has the burden to show that the federal action was "the *exclusive* reason for the prisoner's failure to obtain his release", *United States v. Blankenship,* 733 F.2d 433, 434 (6th Cir.1984) (emphasis in original), and he plainly cannot do so.

## CONCLUSION

For the reasons stated, the writ is denied and the petition is dismissed with prejudice. A certificate of appeal is denied as petitioner fails to present any issue justifying appeal.

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 120817

**Footnotes**

1    The third charge was dismissed with the agreement of the State.

2    The record reflects an inconsistency as to when Probation obtained the warrant. The state records reflect the December 28 date, while the federal pre-sentence report mentions December 10. (*Id.* Ex. D at 3; *id.* Ex. C f 56). We assume the accuracy of the State's documentation as to its own court records, particularly in light of the fact that the pre-sentence report relies solely on word of mouth.

3    It bears mention that the physical transfer of a state prisoner to federal authorities under a writ of habeas corpus *ad prosequendum* does not give way to federal "custody" of that prisoner for purposes of crediting service of his or her federal sentence. *See, e.g., United States v. Fermin,* 252 F.3d 102, 108 n. 10 (2d Cir.2001) (citing *inter alia Roche v. Sizer,* 675 F.2d 507, 510 (2d Cir.1982)).

4    Sarro attempts to explain his failure to assert his present argument during the time of his administrative appeal by asserting that he was unaware at the time of caselaw authority that potentially supports his current position. (Pet'r's Reply at 7). That hardly constitutes justification for waiving the exhaustion requirement. *See Johnson v. Sullivan,* 2006 WL 37037, *3 (C.D.Cal. Jan. 4, 2006) ("Petitioner's lack of legal knowledge is not 'cause' [for failure to exhaust administrative remedies] because it is not an objective factor external to petitioner which prevented compliance with the exhaustion requirement.")

5    In apparent response to respondent's due-process analysis, which concerns only whether Sarro had a sufficient expectation of parole to trigger due-process protection (*see* Resp's Memo at 5–7), petitioner also argues that the denial of a parole hearing by Massachusetts authorities is itself a due-process violation irrespective of whether parole would have been granted. (Pet'r's Reply at 3–5). The implication of this theory —in effect, that as a matter of due process he should have received a hearing despite the detainer—is groundless. *See Menechino v. Oswald,* 430 F.2d 403, 409 (2d Cir.1970) (prisoner does not have a procedural due process right in seeking parole release and "[i]t is questionable whether a Board of Parole is even required to hold a hearing on the question of whether a prisoner should be released on parole."). In any event, petitioner's theory does not translate into a viable claim for federal sentence credit. As we discuss below, even the caselaw that Sarro cites makes clear that, in accordance with § 3585(b), relief is available, if at all, only upon a showing by the inmate that but for a federal detainer or other federal action he would have been released earlier from state confinement.

6    We note as well that the state authorities did not relinquish custody of Sarro until April 2, 2009—some time after his federal sentencing—further undercutting the assumption that he was held only because of the detainer. *See Gomes,* 2012 WL 546744, at *2, n. 1.

---

**End of Document**                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2009 WL 3232183
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Bruce Derek SPRING, Petitioner,
v.
Deborah SCHULT, Respondent.

No. 9:08–CV–0531 (LEK).
|
Oct. 1, 2009.

**Attorneys and Law Firms**

Bruce Derek Spring, pro se.

Hon. Andrew T. Baxter, United States Attorney, Charles E. Roberts, Esq., Assistant United States Attorney, of Counsel, Syracuse, NY, for the Respondent.

*MEMORANDUM–DECISION AND ORDER*

LAWRENCE E. KAHN, District Judge.

### I. BACKGROUND

**\*1** On May 20, 2008, Petitioner *pro se* Bruce Derek Spring ("Spring" or "Petitioner") filed a Petition seeking a writ of habeas corpus in this District pursuant to 28 U.S.C. § 2241. Petition (Dkt. No. 1). In that pleading, he claims that: I) the Inmate Financial Responsibility Program ("IFRP") created by the Bureau of Prisons ("BOP") is unconstitutional; ii) the sentencing court improperly delegated the restitution portion of Spring's sentence to the BOP; and iii) as a result of Spring's failure to participate in the IFRP, he has been wrongfully deprived of numerous privileges available to other inmates at his facility, his life has been threatened and he has been continually harassed. *See* Petition, Grounds One through Three. On October 22, 2008, the Office of the United States Attorney for the Northern District of New York filed a response in opposition to Spring's petition. Response (Dkt. No. 19). On November 14, 2008, Spring filed a reply memorandum of law in further support of his request for federal habeas intervention. Reply (Dkt. No. 20).

In a Memorandum–Decision and Order issued on July 21, 2009, this Court denied all grounds for relief in Spring's Petition with the exception of his claims which allege that

he has been harassed, deprived of various privileges and that both his safety and life have been threatened by employees of the Federal Correctional Institution at Ray Brook ("Ray Brook"). *See* Memorandum–Decision and Order (Dkt. No. 26). As to those remaining claims, Respondent was directed to file a supplemental memorandum of law which addressed the substance of those remaining aspects of Spring's Petition. *Id.* at 6.

Respondent filed her supplemental brief on August 19, 2009. *See* Supp. Br. (Dkt. No. 28). In that supplemental memorandum, Respondent claims that Spring's remaining claims must be dismissed because Petitioner failed to fully exhaust his administrative remedies relating to such claims prior to commencing this federal habeas corpus action. *Id.* at 2–13.

### II. DISCUSSION

The Second Circuit has engrafted an exhaustion requirement on habeas petitions brought by inmates pursuant to 28 U.S.C. § 2241. *See United States ex rel. Scranton v. State of New York,* 532 F.2d 292, 294 (2d Cir.1976); *Hinebaugh v. Wiley,* 137 F.Supp.2d 69, 75 (N.D.N.Y.2001) (Kahn, J.); *Franceski v. Bureau of Prisons,* No. 04 CIV. 8667, 2005 WL 821703, at \*4 (S.D.N.Y. Apr. 8, 2005).

Federal inmates who wish to legally challenge the conditions of their confinement must utilize the Administrative Remedy Program developed by the BOP, which is set forth at 28 C.F.R. § 542.10 et seq. Under this process, inmates must first attempt to resolve their complaints informally by discussing the matter with a member of the institution's staff. *See* 28 C.F.R. § 542.13(a). If that informal procedure does not successfully resolve the matter, the inmate's next step is to file an Administrative Remedy Request with the facility's Warden within twenty days of the date on which the conduct that forms the basis of the complaint occurred. *See* 28 C.F.R. § 542.14(a). If the inmate is not satisfied with the Warden's response, the inmate may then pursue his complaint by filing an appeal with the Regional Director of the BOP. *See* 28 C.F.R. § 542.15(a). If the inmate is dissatisfied with the Regional Director's determination, the inmate can exhaust his administrative remedies by filing a national appeal with the BOP's Central Office in Washington, D.C. within 30 calendar days of the date the Regional Director's response. *See* 28 C.F.R. § 542.15(a). [1] No administrative appeal is considered to be fully exhausted until it has been reviewed by the BOP's Central Office. *See Crumby v. Martinez,* No. CV–08–1900,

2009 WL 2877034, at \*4 (M.D.Pa. Sept. 2, 2009) (citation omitted). Moreover, the burden of demonstrating exhaustion of available remedies rests with the § 2241 petitioner. *See e.g., Coady v. Vaughn,* 251 F.3d 480, 488 (3d Cir.2001).

**\*2** Respondent claims that Spring has not fully exhausted the allegations he has asserted in this habeas action and that therefore his remaining claims must be dismissed by the Court on this procedural basis. *See* Supp. Br. at 5. In support of this assertion, Respondent has supplied the Court with the August 13, 2009 affidavit of BOP Legal Assistant C. Magnusson, in which she has provided detailed testimony concerning her search of the BOP's records regarding grievances filed by Spring. Magnusson Aff. (Dkt. No. 28, Attach.2).

After having reviewed of the administrative record supplied to the Court, as well as the Magnusson affidavit, this Court agrees with the Respondent that Spring failed to fully exhaust his administrative remedies with respect to the remaining claims asserted by him in this action. In fact, it appears to this Court as though Spring may have only fully exhausted one of the numerous grievances he has filed while an inmate at Ray Brook. [2] However, that grievance, which was submitted by him more than two months after he commenced this action, alleged that a corrections officer at Ray Brook grabbed Spring's arm through a slot on the door of his cell, causing "sever damage" to his shoulder. *See* Dkt. No. 28, Attach. 6 at 8. That exhausted grievance, which was filed subsequent to the commencement of this action, did not refer, in any way, to any of the issues about which Spring complains in the petition before this Court. Thus, it is of no moment that Spring has apparently exhausted his administrative remedies with respect to that claim.

In *Carmona v. United States Bureau of Prisons,* the Second Circuit opined that a federal inmate's failure to fully utilize the administrative remedies available to a him prior to commencing an action under 28 U.S.C. § 2241 constitutes a procedural default relating to such claims that may "only be excused upon a showing of cause and prejudice." 243 F.3d 629, 634–35 (2d Cir.2001); *see also Hinebaugh,* 137 F.Supp.2d at 75.

To establish legal "cause" in this context, Spring must demonstrate that " 'something external to the petitioner, something that cannot be fairly attributed to him' " prevented him from fully exhausting his administrative remedies. *Tineo v. United States,* 977 F.Supp. 245, 253 (S.D.N.Y.1996) (quoting *Coleman v. Thompson,* 501 U.S. 722, 753 (1991)).

Objective factors constituting cause in this context includes interference by officials which made compliance with the relevant procedural rules impractical. *See Hinebaugh,* 137 F.Supp.2d at 75 (citing *Tineo,* 977 F.Supp. at 253). Legal cause has also been found where the petitioner demonstrates that "the factual or legal basis for a claim was not reasonably available" to him at the relevant time. *Tineo,* 977 F.Supp. at 253 (citing *McCleskey v. Zant,* 499 U.S. 467, 494 (1991)). A prisoner's desire to promptly commence a habeas petition rather than fully exhausting his administrative remedies, however, does not constitute cause that would excuse a petitioner from the consequences of his failure to exhaust his administrative remedies. *Bauer v. Henman,* 731 F.Supp. 903, 906 (S.D.Ill.1990).

**\*3** In the present action, Petitioner has not alleged—must less established—cause for his failure to fully exhaust the administrative remedies relating to the grievances that form the basis of the claims that remain in this action. [3]

Since Petitioner has not demonstrated any cause for his default, this Court need not decide whether he suffered prejudice, because federal habeas relief is unavailable as to procedurally barred claims unless both cause and prejudice are demonstrated. *See Stepney v. Lopes,* 760 F.2d 40, 45 (2d Cir.1985). In light of the foregoing, this Court denies, as procedurally forfeited, the remaining claims in this action.

### III. CONCLUSION
Accordingly, it is hereby

**ORDERED,** that Spring's claims which allege, *inter alia,* that he has been harassed, deprived of various privileges, and that his safety and life have been threatened as discussed more fully by Spring in his habeas petition are **DENIED and DISMISSED;** and it is further

**ORDERED,** that Spring's Petition (Dkt. No. 1) is **DENIED** and the above-captioned action is **DISMISSED;** and it is further

**ORDERED** that the Clerk of the Court serve a copy of this Order on the parties.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2009 WL 3232183

---

## Footnotes

| 1 | An inmate may bypass the institutional level if he "reasonably believes the issue is sensitive and [his] safety or well being would be placed in danger if the Request became known at the institution." 28 C.F.R. § 542.14(d)(1). The inmate may then submit his Administrative Remedy Request directly to the appropriate Regional Director as a "sensitive" request. *Id.* |
|---|---|
| 2 | As of the date of Magnusson's Affidavit, Petitioner had submitted approximately seventy eight separate submissions which sought some sort of administrative relief regarding his incarceration at Ray Brook. Magnusson Aff. at ¶ 31. |
| 3 | Spring did not seek permission from this Court to file any reply to Respondent's supplemental brief. |

---

**End of Document**     © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:22-cv-01161-BKS-ML    Document 24    Filed 02/04/26    Page 121 of 144

Thomas v. Warden FCI Ray Brook, Not Reported in Fed. Supp. (2021)

2021 WL 4086139
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Gregory THOMAS, Petitioner,
v.
WARDEN FCI RAY BROOK, Respondent.

9:18-cv-00430 (MAD/TWD)
|
Signed 06/28/2021

**Attorneys and Law Firms**

Gregory Thomas, 13366-052, Petitioner, pro se, Ray Brook, Federal Correctional Institution, PO Box 900, Ray Brook, NY 12977

ANTOINETTE T. BACON, Acting United States Attorney, OF COUNSEL: EMER M. STACK, ESQ., Assistant United States Attorney, Northern District of New York, Attorney for Respondent, 100 S. Clinton St., Syracuse, NY 13261.

**REPORT-RECOMMENDATION AND ORDER**

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

**I. INTRODUCTION**

**\*1** This matter has been referred for a Report-Recommendation by the Honorable Mae A. D'Agostino, United States District Judge, pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. Local Rule 72.3(c). Petitioner Gregory Thomas, an inmate at the Federal Correctional Institution ("FCI") in Ray Brook, New York, brings this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Dkt. No. 1.) Petitioner does not challenge his conviction, but rather alleges that the Federal Bureau of Prisons ("BOP") improperly denied him credit toward his federal sentence for time spent in state custody. Respondent Warden FCI Ray Brook has filed a response, together with the Declaration of Alan Ray, a Correctional Program Specialist employed by the BOP at the Designation and Sentence Computation Center in Grand Prairie, Texas. (Dkt. No. 5.) Petitioner filed a reply. (Dkt. No. 8.) For the reasons discussed below, the Court recommends denying and dismissing the petition.

**II. BACKGROUND**

On April 14, 2005, Petitioner was arrested by the Syracuse Police Department and charged with resisting arrest, loitering, and criminal possession of a controlled substance in the third and seventh degree in Onondaga County Court in case number I-2005-1205-1. (Dkt. No. 5-1 at ¶ 5; *see also* Dkt. No. 5-2 at 2-3. [1] ) On April 19, 2005, a parole violator warrant (#436748) was lodged by the State of New York in Onondaga County Court in case number I-2001-0184-1. (Dkt. No. 5-1 at ¶ 6.)

On July 20, 2005, while in state custody, Petitioner was indicted on federal charges in this Court in case number 5:05-CR-0322-13 (NAM). (Dkt. No. 5-2 at 3.) Petitioner was temporarily transferred to federal custody after the issuance of a writ of habeas corpus ad prosequendum on August 2, 2005. (Dkt. No. 5-1 at ¶ 7.) Although it appears the state charges filed in case number I-2005-1205-1 were dismissed on March 9, 2006, Petitioner remained in state custody related to the state parole violation in case number I-2001-0184-1. (*See* Dkt. No. 1-1 at 36; Dkt. No. 5-10 at 8.)

On May 23, 2007, following a jury trial, the Honorable Norman A. Mordue, Senior United States District Judge, sentenced Petitioner in case number 5:05-CR-0322-13 (NAM) to a term of imprisonment of 360 months for conspiracy to engage in a pattern of racketeering activity. (Dkt. No. 5-1 at ¶ 8. [2] )

On June 14, 2007, after sentencing, Petitioner was returned to state custody. (Dkt. No. 5-1 at ¶ 9.) It thus appears Petitioner remained in temporary federal confinement through his federal trial and sentencing.

**\*2** On July 31, 2007, Petitioner's state parole was revoked, and he was re-paroled and taken into federal custody. *Id.* at ¶ 10. The BOP calculated Petitioner's federal sentence beginning on July 31, 2007, the same date he was released on parole from the State of New York. *Id.* at ¶ 15. He received five days of jail credit from April 14, 2005, through April 18, 2005. *Id.*

On October 10, 2014, Petitioner filed an administrative grievance with the BOP seeking federal credit for time served in state custody from August 2, 2005, through May 23, 2007. (Dkt. No. 5-15 at 10.) On November 12, 2014, the BOP denied Petitioner's request:

Originally, you were re-paroled from your New York Sentence on May 20, 2004. On April 19, 2005 you

Case 9:22-cv-01161-BKS-ML    Document 24    Filed 02/04/26    Page 122 of 144

Thomas v. Warden FCI Ray Brook, Not Reported in Fed. Supp. (2021)

were remanded back to New York State custody for violating your Parole. According to your Presentence Investigation Report, you remained in "Primary" state custody related to the state parole violation. Additionally, your Jail Credit memorandum dated August 28, 2007 states in part "04-19-2005 Parole Warrant issued, and inmate held on New York State Parole warrant. On 07-31-2007 parole revoked, and re-paroled same day. Total credit given to parole revocation 843 days from 04-19-2005 to 07-31-2007. Information verified with New York State Parole."

On August 2, 2005, while you were in service of your New York State parole sentence, you were produced on a Federal Writ to answer charges for your instant federal offense. On May 23, 2007, while on Federal Writ from New York State, you were sentenced to three hundred sixty (360) months for Conspiracy to Engage in a Pattern of Racketeering Activity. Subsequently, on September 13, 2011, your sentence was amended to a term of two hundred ninety-two (292) months. Jail credit awarded to your federal sentence was from April 14, 2005 to April 18, 2005....

With regard to the period you spent in Federal custody, documentation provided by New York State Division of Parole reflected the period of credit you are seeking has already been credited to the service of the state sentence. To double-credit this period to your federal sentence would be contrary to the law, Title 18 U.S.C. § 3585(b), and Bureau of Prisons policy.

Therefore, based on the foregoing, we have accurately computed your sentence computation as starting on July 31, 2007, the date you were re-paroled from New York State.

*Id.* at 8-9. Petitioner exhausted his administrative remedies by appealing the denial to the Regional Office and Central Office. *See id.* at 2-7.

During the administrative grievance process Petitioner also argued that he should receive a nunc pro tunc retroactive designation, and that the BOP should exercise its discretion to designate a state prison as the place for service of a federal sentence. *Id.* On May 6, 2015, the BOP sent a letter to Judge Mordue to obtain the Court's position regarding the granting of a retroactive designation allowing Petitioner's federal sentence to be served concurrent to his state sentence, explaining, in part, that:

On May 23, 2007, Gregory Thomas was sentenced by the Court to a 360-month (later reduced to 292-month)

term of confinement for Conspiracy to Engage in a Pattern of Racketeering Activity. At the time the federal sentence was imposed, Mr. Thomas was under the primary jurisdiction of state authorities in New York, and in federal custody pursuant to a Writ. The respective Judgment in Criminal Case was silent regarding any relationship with the forthcoming action in state court. Following sentencing, Mr. Thomas was appropriately returned to state authorities and the U.S. District Court Judgment was filed as a detainer.

**\*3** On July 31, 2007, Mr. Thomas' state parole was revoked for the offense Criminal Possession of a Controlled Substance and he was re-paroled.

Mr. Thomas satisfied his state obligation on July 31, 2007, and was released to the federal detainer to commence the service of his federal sentence as provided by Title 18 U.S.C. § 3585(a).

Mr. Thomas has requested that his federal sentence be served concurrently with the state term, which would be accomplished by the Bureau of Prisons (Bureau) designating the state institution for service of his federal sentence. Such action would thereby reduce the total amount of time spent in custody. In Setser v. United States, —— U.S. ——, 132 S.Ct. 1463, 192 [ ] (2012) the United States Supreme Court held that the authority to order a federal sentence concurrent or consecutive with any other sentence rests with the federal sentencing court.

Such a retroactive designation is made if the federal sentencing Court indicates the federal term is to be concurrent to the state term, or if the federal sentencing Court does not state its intention, such designation may be completed after the review of all factors under Title 18 U.S.C. § 3621(b).

(Dkt No. 5-10 at 2-3.)

On or about August 10, 2015, Judge Mordue responded both by telephone, and email, as follows:

> The Judge reviewed your letter dated May 6, 2015, including consideration of the Court's authority to impose a consecutive or concurrent sentence in this case, and after reviewing the case material, he notes it was his intention

to have the federal sentence run consecutively with the undischarged state term of imprisonment and therefore, he finds no reason to deviate now from that decision.

(Dkt. No. 5-11 at 2.) On August 11, 2015, the BOP denied Petitioner's request for a retroactive designation. (Dkt. No. 5-12 at 2.) The BOP specifically considered and applied Judge Mordue's direction in computing Petitioner's sentence. (Dkt. No. 5-1 at ¶¶ 13,14; *see* Dkt. No. 5-12 at 2.)

At the time of briefing, Petitioner's projected release date was October 29, 2024. *Id.* According to the publicly available website maintained by the BOP, Petitioner's projected release date is now June 26, 2024. [3]

As noted, Petitioner argues that he is entitled to 21 months and 23 days of credit toward his federal sentence, representing time that he spent in state custody between August 2, 2005, and May 23, 2007. (Dkt. No. 1 at 3.) According to Petitioner, his state charges were dismissed in case number I-2005-1205-1 and because he "wasn't found guilty of a crime" in that case, his time in "county jail" should be credited towards his federal sentence pursuant to 18 U.S.C. § 3585(b). *Id.*; *see also* Dkt. No. 1-1 at 36.

Respondent argues for denial of the petition, asserting that the BOP's sentence calculation is correct. (Dkt. No. 5.) Specifically, Respondent argues that (1) Judge Mordue has already denied Petitioner's request for his federal sentence to run concurrently with his state sentence, and Petitioner's request would effectively nullify the direction of the sentencing court; (2) when a state inmate spends time on a federal writ, the federal court merely "borrows" the inmate and he continues serving his state term of imprisonment, which is not credited toward any subsequent federal sentence; and (3) Petitioner is seeking credit for time that has already been credited toward his state term.

**\*4** In his reply, Petitioner maintains that he was improperly denied credit against his federal sentence from August 2, 2005, through May 23, 2007, because, on March 9, 2006, Onondaga County State Court Judge John J. Brunetti dismissed the state charges in case number I-2005-1205-1, which "was never credited to [his] state or federal sentence." (Dkt. No. 8.) He claims the BOP "committed an error, as well as abuse of discretion by acting contrary to

law" "by failing to include Petitioner's credit from August 2, 2005 to May 23, 2007 against his federal sentence, in which facts shows was never credited to Thomas' state or federal sentence." *Id.* at 4. Lastly, Petitioner argues that had he "pleaded guilty to those pending state charges and had been sentenced to a period of incarceration, it would have been incumbent upon the district court to sentence [him] to concurrent time to that sentence, pursuant to U.S.S.G. § 5G1.3(b)(2)." *Id.* at 3 (alteration in original).

### III. DISCUSSION

Habeas corpus relief is available if a prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A § 2241 petition is generally the appropriate vehicle to raise claims arising from a prison official's computation of a prisoner's sentence. *Poindexter v. Nash*, 333 F.3d 372, 377 (2d Cir. 2003).

Although a prisoner may later seek judicial review, it is the responsibility of the BOP, and not the courts, to determine the commencement of a federal sentence and calculate any credit toward that sentence for time already served. *Tisdale v. Menifee*, 166 F. Supp. 2d 789, 791 (S.D.N.Y. 2001) (citing *United States v. Montez–Gaviria*, 163 F.3d 697, 700-01 (2d Cir. 1998)). Thus, with respect to a § 2241 petition challenging the computation of credit on a federal sentence, a district court has the power only to review a decision by the BOP, not to make credit determinations in the first instance. *Wright v. Hudson*, No. 9:12-CV-01638-JKS, 2015 WL 5971055, at \*1 (N.D.N.Y. Oct. 14, 2015).

The earliest that a federal sentence may begin to run is on the date that it was imposed. *United States v. Labeille-Soto*, 163 F.3d 93, 98 (2d Cir. 1998). The sentence commences when the defendant is received into custody at the detention facility designated by the BOP. 18 U.S.C. § 3585(a); *Labeille-Soto*, 163 F.3d at 98. When a defendant was in primary state custody at the time his or her federal sentence was imposed, the BOP must determine whether the district court intended the federal sentence to run concurrently with, or consecutively to, the state sentence. 18 U.S.C. § 3584(a); *Dutton v. U.S. Attorney Gen.*, 713 F. Supp. 2d 194, 199 (W.D.N.Y. 2010).

If the district court's judgment is silent on this issue, the court's silence is construed as an intent to impose a consecutive sentence, and the federal sentence commences only when primary state custody over the defendant is relinquished. *Clapper v. Langrod*, 186 F. Supp. 3d 235, 238 (N.D.N.Y. 2016) (citing 18 U.S.C. § 3584(a)). An inmate in this situation

Case 9:22-cv-01161-BKS-ML   Document 24   Filed 02/04/26   Page 124 of 144

Thomas v. Warden FCI Ray Brook, Not Reported in Fed. Supp. (2021)

may ask the BOP for a retroactive designation of the non-federal prison as the institution for service of the federal sentence. *Id.* (citing 18 U.S.C. § 3621(b)). The BOP then considers the inmate's personal circumstances in relation to the factors set forth at 18 U.S.C. § 3621(b) to determine if a nunc pro tunc designation is consistent with the intent of the federal sentencing court or the criminal justice system. *Id.* "The [BOP's] decision regarding nunc pro tunc designation is reviewed for abuse of discretion." *Jennings v. Schult*, 377 F. App'x 97, 98 (2d Cir. 2010) (summary order).

If, however, the district court explicitly stated the federal sentence should run concurrently with the state sentence, the BOP will "designate the State correctional facility as the place for the defendant to serve his Federal sentence," and the federal sentence "will be deemed to commence upon imposition." *Clapper*, 186 F. Supp. 3d at 238 (quoting *Dutton*, 713 F. Supp. 2d at 199 (citing 18 U.S.C. §§ 3585(a), 3621(b))).

 **\*5**  When the BOP calculates any credit toward a federal sentence from time served before the sentence was imposed, 18 U.S.C. § 3585(b) requires that the defendant "receive credit only for detention time 'that has not been credited against another sentence.' " *United States v. Wilson*, 503 U.S. 329, 333 (1992) (quoting 18 U.S.C. § 3585(b)). Therefore, under 18 U.S.C. § 3585(b), the BOP cannot grant an inmate credit toward the federal sentence for the same period of time in custody that has also been credited toward a state sentence. *Id.* at 337 ("Congress made clear that a defendant could not receive a double credit for his detention time."); *see Lopez v. Terrell*, 654 F.3d 176, 184-85 (2d Cir. 2011) (explaining that the BOP is prohibited from crediting time against a federal sentence that was already credited against a state sentence); *see also Ortiz v. Breckon*, No. 9:17-CV-559 (LEK), 2018 WL 557879, at *3 (N.D.N.Y. Jan. 22, 2018) ("Time that has been credited to a state sentence may not also be credited toward a federal sentence because [18 U.S.C.] § 3585(b) prohibits defendants from receiving 'double credit for [their] detention time.' ") (alteration in original) (quoting *Wilson*, 503 U.S. at 337 (other citations omitted)).

In this case, the BOP calculated Petitioner's federal sentence beginning on July 31, 2007, the same date he was released on parole from the State of New York. (Dkt. No. 5-1 at ¶ 15.) He received five days of jail credit from April 14, 2005, through April 18, 2005. *Id.* Because the time between August 2, 2005, and May 27, 2007, was credited to Petitioner's state sentence for the parole violation, the BOP was correct not to credit it

towards his federal sentence. [4] *See Labeille-Soto*, 163 F.3d at 99 ("[A] defendant has no right to credit on his federal sentence for time that has been credited against his prior state sentence."); *Reynolds v. Warden of FCI Ray Brook*, No. 9:16-CV-1264 (TJM/TWD), 2020 WL 918766, at *1 (N.D.N.Y. Feb. 26, 2020) (petitioner is not entitled to credit against a federal sentence for time he spent incarcerated that counted towards the term of his state sentence), *aff'd*, ____ F. App'x ____, 2021 WL 2550413 (2d Cir. June 22, 2021); *see also United States v. Fermin*, 252 F.3d 102, 108 n.10 (2d Cir. 2001) ("The Bureau of Prisons could not credit Fermin for the time he had already served because it was credited against another sentence -- the state parole violation....").

To the extent Petitioner argues that his federal sentence should be deemed to have commenced as of August 5, 2005, when he first entered federal custody pursuant to the writ of habeas corpus ad prosequendum, this argument fails. As Respondent correctly notes, "[w]hen a state prisoner is transferred into federal custody pursuant to the writ, the state retains primary custody over him or her because the prisoner is 'on loan' to federal authorities." (Dkt. No. 5 at 4, quoting *Clapper*, 186 F. Supp. 3d at 239.); *see also United States v. Smith*, 812 F. Supp. 368, 371 (E.D.N.Y. 1993) ("A federal writ of habeas corpus ad prosequendum merely loans the prisoner to federal authorities."); *id.* at 371 ("A federal sentence does not begin to run ... when the defendant is produced for prosecution in federal court pursuant to a federal writ of habeas corpus ad prosequendum. Rather, the state retains primary jurisdiction over the prisoner, and federal custody commences only when the state authorities relinquish the prisoner on satisfaction of the state obligations."). Additionally, the date of August 5, 2005, precedes his May 23, 2007, sentencing by almost two years and, as noted above, "under 18 U.S.C. § 3585(a), a federal sentence cannot commence prior to the date on which it is imposed." *Lopez v. Terrell*, 654 F.3d 176, 185 (2d Cir. 2011).

 **\*6**  Moreover, to the extent Petitioner arued during the administrative grievance process that he should receive a nunc pro tunc retroactive designation, the Court concludes that the BOP did not abuse its discretion in denying Petitioner's request to designate his state facility as his place of federal confinement, either for the duration of his state custody or for the period that he was temporarily transferred to federal custody. As discussed above, the BOP contacted Judge Mordue for the Court's position on a concurrent designation and, thereafter, considered the 18 U.S.C. § 3621(b) factors, including "any statement by the court that imposed the

sentence," and ultimately denied Petitioner's request. (Dkt. No. 5-1 at ¶¶ 13,14; *see* Dkt. Nos. 5-10 through 5-12, 5-15.) *See, e.g.*, *Wright*, 2015 WL 5971055, at *1 (dismissing § 2241 petition where the record showed that the BOP considered the 18 U.S.C. § 3621(b) factors). As pointed out by Respondent, the BOP calculated Petitioner's sentence exactly as directed by the sentencing judge. (Dkt. No. 5 at 3-4.) *See also Ortiz*, 2018 WL 557879, at *3 ("Because the BOP lacked authority to designate the state facility as Petitioner's place of federal confinement—thereby causing his sentences to run concurrently, defying the federal sentencing court's intent—it did not abuse its discretion by denying Petitioner's request for a nunc pro tunc designation.").

Lastly, Petitioner suggests in his reply memorandum that had he "pleaded guilty to those pending state charges and had been sentenced to a period of incarceration, it would have been incumbent upon the district court to sentence [him] to concurrent time to that sentence, pursuant to U.S.S.G. § 5G1.3(b)(2)." (Dkt. No. 8 at 3, alteration in original.) "But arguments raised for the first time in a reply memorandum are waived and need not be considered." *Cotona v. Fed. Bureau of Prisons*, No. 13 CIV. 609 JMF, 2013 WL 5526238, at *2 (S.D.N.Y. Oct. 7, 2013) (citing *Connecticut Bar Ass'n v. United States*, 620 F.3d 81, 91 n.13 (2d Cir. 2010); *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 169 (2d Cir. 2006)). [5]

Based on the foregoing, all of Petitioner's jail time has been credited to either his federal or state sentence, and the BOP's calculations are correct. Any remaining arguments are without merit.

**WHEREFORE**, based on the findings above, it is hereby

**RECOMMENDED** that the petition (Dkt. No. 1) be **DENIED** and **DISMISSED**; and it and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Report-Recommendation and Order on Petitioner, along with copies of unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of HHS*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**All Citations**

Not Reported in Fed. Supp., 2021 WL 4086139

---

**Footnotes**

1     Page citations refer to the pagination CM/ECF automatically generates. Excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected unless indicated.

2     On September 13, 2011, Petitioner's sentence was reduced from 360 months to 292 months. (Dkt. No. 5-1 at ¶ 11.) A review of the docket reveals that on March 30, 2018, Petitioner's sentence was reduced from 292 months to 235 months. *See United States v. Thomas*, No. 5:05-CR-0322-13 (NAM), Dkt. No. 1107.

3     *See* https://www.bop.gov/inmateloc/ (BOP Register Number 13366-052) (last visited June 28, 2021).

4     Although Petitioner claims that the time he spent in state custody from August 2, 2005, to May 23, 2007, was "never credited to [his] state or federal sentence," (Dkt. No. 8 at 4), the record demonstrates the 21 months and 23 days for which he seeks credit on his federal sentence were credited against his state sentence. (*See* Dkt. No. 5-15 at 8, indicating "total credit given to parole revocation 843 days from 04-19-2005 to 07-31-2007".)

Case 9:22-cv-01161-BKS-ML    Document 24    Filed 02/04/26    Page 126 of 144

Thomas v. Warden FCI Ray Brook, Not Reported in Fed. Supp. (2021)

5    In any event, to the extent Petitioner "is arguing for relief under Section 5G1.3(b), this issue is more appropriately resolved by the sentencing court pursuant to a motion under Section 2255 rather than this Court pursuant to a petition under Section 2241." *Reynolds*, 2019 WL 8064012, at *2 n.2 (citing *Dixon v. Terrell*, No. 10-CV-5262, 2011 WL 4543712, at *11 (E.D.N.Y. Sept. 29, 2011); *Jackson v. Killian*, No. 08–CV–4386, 2009 WL 1835004, at *3 (S.D.N.Y. June 23, 2004) ("Challenging the sentencing court's section 5G1.3 calculation is 'more appropriately brought as an issue for the sentencing court pursuant to a motion under [S]ection 2255, rather than the district court in a [S]ection 2241 habeas petition where petitioner is held in custody.' " (quoting *Saunders v. Unnamed Warden*, No. 07-CV-4293, 2008 WL 2775763, at *7 (D.N.J. July 14, 2008) (denying habeas petition pursuant to Section 2241 where petitioner argued that he was entitled to a downward departure or sentence reduction under Section 5G1.3)))). The Court expresses no opinion on the success of any such motion.

---

**End of Document**                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

---

WESTLAW    © 2026 Thomson Reuters. No claim to original U.S. Government Works.    6

Case 9:22-cv-01161-BKS-ML    Document 24    Filed 02/04/26    Page 127 of 144

Thomas v. Warden FCI Ray Brook, Not Reported in Fed. Supp. (2021)

2021 WL 4084306
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Gregory THOMAS, Petitioner,
v.
WARDEN FCI RAY BROOK, Respondent.

9:18-cv-00430 (MAD/TWD)
|
Signed 09/08/2021

**Attorneys and Law Firms**

GREGORY THOMAS, 13366-052, Ray Brook, Federal Correctional Institution, P.O. Box 900, Ray Brook, New York 12977, Petitioner, pro se.

OF COUNSEL: EMER M. STACK, AUSA, OFFICE OF THE UNITED STATES, ATTORNEY - SYRACUSE, 100 South Clinton Street, Suite 900, Syracuse, New York 13261, Attorneys for Respondent.

**ORDER**

Mae A. D'Agostino, United States District Judge:

**\*1** Petitioner Gregory Thomas, an inmate at the Federal Correctional Institution ("FCI") in Ray Brook, New York, filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on April 9, 2018. *See* Dkt. No. 1. Plaintiff alleges that the Federal Bureau of Prisons ("BOP") improperly denied him credit toward his federal sentence for time spent in state custody. *See* Dkt. No. 1 at 3. On June 28, 2021, Magistrate Judge Dancks issued a Report-Recommendation and Order, recommending that Plaintiff's petition be denied and dismissed. *See* Dkt. No. 15.

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (*quoting Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted). The Second Circuit has held that the court is obligated to " 'make reasonable allowances to protect *pro se* litigants' " from inadvertently forfeiting legal rights merely because they lack a legal education. *Govan*, 289 F. Supp. 2d at 295 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

Plaintiff has not filed an objection to the Report-Recommendation and Order. When a party declines to file an objection, the court reviews a recommendation for clear error. *See McAllan v. Von Essen*, 517 F. Supp. 2d 672, 679 (S.D.N.Y. 2007). After the appropriate review, "the court may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate [judge]." 28 U.S.C. § 636(b)(1). Because the Plaintiff has not filed an objection, the Court will review the recommendation for clear error.

In the present matter, the Court finds that Magistrate Judge Dancks correctly determined that the petition must be denied and dismissed. Petitioner cannot receive credit toward his federal sentence for the same period of time that was credited toward a state sentence. *United States v. Wilson*, 503 U.S. 329, 333, 337 (1992). Magistrate Judge Dancks correctly noted that the period of time between August 2, 2005 and May 27, 2007 was credited to Petitioner's state sentence, and therefore could not be credited to his federal sentence. Dkt. No. 15 at 8-10.

To the extent Petitioner also seeks review of the denial of a nunc pro tunc designation for the state prison as a place of federal confinement, Magistrate Judge Dancks correctly ruled that the BOP did not abuse its discretion in its denial. The BOP may grant the request for the retroactive designation of the non-federal prison as the institution for service of the federal sentence, pursuant to 18 U.S.C. § 3621(b). "The [BOP's] decision regarding nunc pro tunc designation is reviewed for abuse of discretion." *Jennings v. Schult*, 377 Fed. Appx. 97, 98 (2d Cir. 2010).

The Court agrees with Magistrate Judge Dancks that the BOP did not abuse its discretion in denying the nunc pro tunc designation. The BOP contacted the federal sentencing judge, Judge Mordue, and adequately considered the factors in 18 U.S.C. § 3621(b) before issuing its denial. *See* Dkt. No. 5-1 at ¶ 12; Dkt. No. 5-12.

**\*2** After carefully reviewing the Report-Recommendation and Order, the entire record in this matter, and the applicable law, the Court hereby

**ORDERS** that Magistrate Judge Dancks' Report-Recommendation and Order is **ADOPTED** in its entirety for the reasons set forth herein; and the Court further

**ORDERS** that the petition (Dkt. No. 1) be **DENIED** and **DISMISSED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2021 WL 4084306

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 2868519
Only the Westlaw citation is currently available.
United States District Court, D. Hawai'i.

Maria E. UNTALAN, #02702-093, Petitioner,
v.
Warden Estela DERR, Respondent.

CIVIL NO. 23-00091 JMS-RT
|
Signed April 10, 2023

**Attorneys and Law Firms**

Maria E. Untalan, Honolulu, HI, Pro Se.

### ORDER DISMISSING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. SECTION 2241, ECF NO. 1

J. Michael Seabright, United States District Judge

**\*1** Before the court is pro se Petitioner Maria E. Untalan's ("Untalan") "Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. Section 2241, Seeking An Order Directing the Bureau of Prisons ('BOP') to Apply First Step Act ('FSA') Earned Time Credits & 1/3 Elderly Credits" ("Petition"). ECF No. 1. The court has reviewed the Petition pursuant to Habeas Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts ("Habeas Rules"). Because Untalan admits that she failed to exhaust administrative remedies, and the court concludes that waiving the exhaustion requirement is not appropriate here, the Petition is DISMISSED without prejudice, but without leave to amend.

### I. BACKGROUND

On June 25, 2019, Untalan pleaded guilty to conspiracy to distribute methamphetamine hydrochloride, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A)(viii). *See* Criminal Minutes, *United States v. Untalan*, Cr. No. 19-00023 (D. Guam June 25, 2019), ECF No. 13. On August 24, 2022, the court sentenced Untalan to 65 months' imprisonment and three years' supervised release. *See* Judgment in a Criminal Case, *Untalan*, Cr. No. 19-00023 (D. Guam Aug. 31, 2022), ECF No. 200. [1]

Untalan is now incarcerated at the Federal Detention Center in Honolulu, Hawaii ("FDC Honolulu"). *See* Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (select "Find By Number"; enter "02702-093"; and select "Search") (last visited Apr. 10, 2023). The Federal Bureau of Prisons' ("BOP") inmate locator currently states that Untalan's projected release date is February 17, 2026. *Id.*

On February 15, 2023, the court received the Petition. ECF No. 1. In the Petition, Untalan seeks an order "directing the BOP to apply [her] FSA Earned Time Credits and 1/3 Elderly Credits." [2] *Id.* at PageID.1. If these credits were properly applied, Untalan contends, she should have been released on February 12, 2023. *Id.* In the Petition, however, Untalan "admit[s] that [she] did not exhaust [her] administrative remedies before seeking relief under 28 U.S.C. Section 2241." *Id.*

On March 14, 2023, the court received Untalan's Supplement to the Petition. ECF No. 5. In the Supplement, Untalan asserts that she actually should have been released on February 15, 2023—not February 12, 2023—after subtracting from her February 15, 2025 "Elderly Offender Two Thirds Date" both twelve months pursuant to the First Step Act and twelve months pursuant to the Second Chance Act. *Id.* at PageID.14.

**\*2** The court issued an Order to Show Cause Why the Petition, ECF No. 1, Should Not Be Dismissed. ECF No. 4. The court ordered Untalan to show cause in writing why the Petition should not be dismissed without prejudice for failure to exhaust administrative remedies. *Id.* at PageID.7. The court received Untalan's Response on March 16, 2023, ECF No. 6, and Respondent's Optional Response on April 6, 2023, ECF No. 7. Pursuant to Local Rule 7.1(c), the court elects to decide the Petition without a hearing.

### II. SCREENING

Habeas Rule 4 states that a district court must "promptly examine" each petition and dismiss a petition "if it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." *See Mayle v. Felix*, 545 U.S. 644, 656 (2005); *Hung Viet Vu v. Kirkland*, 363 F. App'x 439, 441–42 (9th Cir. 2010). This rule also applies to a habeas petition brought under 28 U.S.C. § 2241. *See* Habeas Rule 1(b) (providing that district courts may apply the Habeas Rules to habeas petitions that are not

Case 9:22-cv-01161-BKS-ML   Document 24   Filed 02/04/26   Page 130 of 144

Untalan v. Derr, Not Reported in Fed. Supp. (2023)

brought under 28 U.S.C. § 2254); *Lane v. Feather*, 584 F. App'x 843, 843 (9th Cir. 2014) ("[T]he district court did not err by applying Rule 4 of the Rules Governing Section 2254 Cases to the instant petition [under 28 U.S.C. § 2241].").

## III. DISCUSSION

### A. Habeas Petitions Under 28 U.S.C. § 2241

Section 2241 allows a district court to consider an application for a writ of habeas corpus from a prisoner claiming to be "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(a), (c)(3). "Generally, motions to contest the legality of a sentence must be filed under § 2255 in the sentencing court, while petitions that challenge the manner, location, or conditions of a sentence's execution must be brought pursuant to § 2241 in the custodial court." *Hernandez v. Campbell*, 204 F.3d 861, 864 (9th Cir. 2000).

### B. Exhaustion of Administrative Remedies

"As a prudential matter, courts require that habeas petitioners exhaust all available judicial and administrative remedies before seeking relief under § 2241." *Ward v. Chavez*, 678 F.3d 1042, 1045 (9th Cir. 2012) (citations omitted); *see also Martinez v. Roberts*, 804 F.2d 570, 571 (9th Cir. 1986) (per curiam) ("Federal prisoners are required to exhaust their federal administrative remedies prior to bringing a petition for a writ of habeas corpus in federal court.").

Requiring a petitioner to exhaust her administrative remedies aids "judicial review by allowing the appropriate development of a factual record in an expert forum," conserves "the court's time because of the possibility that the relief applied for may be granted at the administrative level," and allows "the administrative agency an opportunity to correct errors occurring in the course of administrative proceedings." *Ruviwat v. Smith*, 701 F.2d 844, 845 (9th Cir. 1983) (per curiam).

In general, proper exhaustion requires compliance with an agency's deadlines and other critical procedural rules. *See Woodford v. Ngo*, 548 U.S. 81, 88–93 (2006) (addressing exhaustion in the context of administrative law, habeas petitions filed pursuant to 28 U.S.C. § 2254, and the Prison Litigation Reform Act); *see also Kelly v. Dir., Fed. Bureau of Prisons*, 2014 WL 1270530, at *4 (E.D. Cal. Mar. 26, 2014)

(applying *Woodford* to a habeas petition brought pursuant to 28 U.S.C. § 2241).

Federal inmates may "seek formal review of an issue relating to any aspect of his/her confinement" through the administrative remedy program. 28 C.F.R. § 542.10(a). The administrative remedy program consists of the following four steps: (1) presenting an issue of concern informally to staff, *see* 28 C.F.R. § 542.13(a); (2) submitting a formal request for administrative remedies to a facility's warden, *see* 28 C.F.R. § 542.14(a); (3) appealing to the appropriate Regional Director, *see* 28 C.F.R. § 542.15(a); and (4) appealing to the BOP's General Counsel, *see id.*; *see also Seina v. Fed. Det. Ctr.-Honolulu*, 2016 WL 6775633, at *5 (D. Haw. Nov. 15, 2016) (describing the BOP's four-step administrative remedy procedure).

**\*3** Courts have discretion to waive the exhaustion requirement in various situations, including "where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (internal quotation marks and citation omitted). This discretion, however, "is not unfettered." *Id.* at 998; *see also Murillo v. Mathews*, 588 F.2d 759, 762 n.8 (9th Cir. 1978) ("Although the '(a)pplication of the rule requiring exhaustion is not jurisdictional, but calls for the sound exercise of judicial discretion,' it is not lightly to be disregarded.") (citation omitted). A "key consideration" in exercising such discretion is whether " 'relaxation of the requirement would encourage the deliberate bypass of the administrative scheme.' " *Laing*, 370 F.3d at 1000 (citation omitted).

District courts may *sua sponte* dismiss a petition filed pursuant to 28 U.S.C. § 2241 for failure to exhaust administrative remedies. *See Kunsman v. Carlson*, 934 F.2d 324 (9th Cir. 1991) (unpublished) (affirming *sua sponte* dismissal of habeas petition); *Warren v. Floyd*, 35 F.3d 573 (9th Cir. 1994) (unpublished) (same); *see also Feldman v. U.S. Parole Comm'n*, 841 F.2d 1129 (9th Cir. 1988) (unpublished) (stating that a district court may *sua sponte* dismiss for failure to exhaust administrative remedies after providing notice to the petitioner and an opportunity to oppose the dismissal).

Here, Untalan admits in the Petition that she has not exhausted her administrative remedies. *See* ECF No. 1 at PageID.1 ("I did not exhaust my administrative remedies."). Thus, the

Case 9:22-cv-01161-BKS-ML   Document 24   Filed 02/04/26   Page 131 of 144

Untalan v. Derr, Not Reported in Fed. Supp. (2023)

Petition must be dismissed unless the court concludes, as a matter of discretion, that the exhaustion requirement should be waived.

In her Response, Untalan asserts that the exhaustion requirement should be waived because administrative remedies were "unavailable" to her. ECF No. 6 at PageID.21. According to Untalan, she attempted to pursue administrative remedies but an unnamed prison official at FDC Honolulu refused to provide her with a grievance form. *Id.* In some situations, courts have waived an exhaustion requirement where prison officials failed to provide grievance forms to inmates. *See Sapp v. Kimbrell*, 623 F.3d 813, 822 (9th Cir. 2010) (citing decisions in other circuits holding that exhaustion is not required where prison officials refuse to give a prisoner the forms necessary to file an administrative grievance).

The court declines to waive the exhaustion requirement here, however, for several reasons. First, to the extent Untalan seeks to challenge the duration of her period of incarceration, "[t]he computation of a prisoner's length of confinement is exactly the type of case in which the exhaustion of administrative remedies is appropriate." *Jones v. Reese*, 1998 WL 827504, at *1 (N.D. Cal. Nov. 24, 1998) (citing *Chua Han Mow v. United States*, 730 F.2d 1308, 1313–14 (9th Cir. 1984)). Indeed, the BOP is particularly well suited to consider such claims. *See Hanson v. Hendrix*, 2022 WL 4182535, at *2 (D. Or. Sept. 13, 2022) ("[T]he exhaustion requirement is particularly well-suited to address issues involving eligibility for earned time credits, as BOP has the authority to calculate prison sentences."). Thus, the BOP is well suited to address Untalan' claims.

Second, Untalan still has ample time to pursue her claims administratively. According to Untalan, her statutory projected release date is February 17, 2026, and her "elderly offender two thirds date" is February 15, 2025. *See* ECF No. 5-1 at PageID.16.

Any First Step Act time credits earned by Untalan are statutorily limited to twelve months.[3] *See* 18 U.S.C. § 3624(c)(1) ("The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community."). Thus, as Respondent explains, even assuming Untalan earns

the maximum number of earned time credits, her release date would move up only from February 17, 2026, to February 17, 2025. *See* ECF No. 7 at PageID.32.

**\*4** To the extent Untalan asserts that her elderly offender release date and earned time credits are cumulative, *see* ECF No. 5 at PageID.14, she is mistaken. An inmate's elderly offender release is calculated separate and apart from any time credits earned by Untalan. *See Salazar-Valenzuela v. Derr*, 2023 WL 2691461, at *3 (D. Haw. Mar. 29, 2023) ("The elderly offense release date is based on an inmate's entire term of imprisonment—not the projected amount of time the prisoner will actually serve with credits.").

Untalan's reliance on the Second Chance Act, ECF No. 5 at PageID.14, is also misplaced. The Second Chance Act states that the BOP must, "to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." 18 U.S.C. § 3624(c)(1). The Second Chance Act is not an additional source of time "credits." *See Suggs v. Saad*, 2017 WL 1862468, at *5 (N.D.W. Va. May 9, 2017) ("[T]he Second Chance Act does not require that an inmate receive a full twelve months of halfway house placement, only that an inmate be considered for placement up to twelve months to the extent practicable."). Thus, this is not a situation where irreparable injury will result from requiring exhaustion.

Finally, requiring Untalan to exhaust her administrative remedies aids "judicial review by allowing the appropriate development of a factual record in an expert forum," conserves "the court's time because of the possibility that the relief applied for may be granted at the administrative level," and allows "the administrative agency an opportunity to correct errors occurring in the course of administrative proceedings." *Ruviwat*, 701 F.2d at 845; *see also Yanagihara v. Derr*, 2023 WL 2163685, at *5 (D. Haw. Feb. 22, 2023) (dismissing habeas petition challenging calculation of First Step Act earned time credits because petitioner failed to exhaust administrative remedies).

The best method for Untalan to have her claims considered, therefore, is through the BOP's administrative remedy program. *See Mohammad v. Thompson*, 2022 WL 4484545, at *3 (E.D. Cal. Sept. 27, 2022) ("The BOP should be given the first opportunity to address petitioner's argument

that he is entitled to ... earned time credits."), *report and recommendation adopted*, 2022 WL 17721472 (E.D. Cal. Dec. 15, 2022).

### IV. CONCLUSION

1. The Petition is DISMISSED without prejudice, but without leave to amend, because Untalan failed to exhaust administrative remedies and waiver of the exhaustion requirement is not appropriate in this case. This dismissal does not preclude Untalan from filing a new habeas petition, if necessary, after exhausting her administrative remedies.

2. Upon request by Untalan, Respondent is DIRECTED to ensure that Untalan receives any forms required to exhaust administratively the claims raised in the Petition.

3. The Clerk is DIRECTED to close this case.

IT IS SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2023 WL 2868519

---

### Footnotes

1    Unless otherwise specified, all other references to filings in this Order are to the docket in Civ. No. 23-00091 JMS-RT.

2    Under 18 U.S.C. § 3632(d)(4)(A), eligible federal inmates who successfully complete evidence-based recidivism reduction programming or productive activities may earn time credits that are applied toward time in prerelease custody or supervised release. *See* 18 U.S.C. § 3632(d)(4)(A)–(D). Under 34 U.S.C. § 60541(g), the Attorney General may place eligible elderly offenders on home detention until the expiration of the prison term to which the offender was sentenced. *See* 34 U.S.C. § 60541(g).

3    According to Respondent, Untalan has not earned any time credits because she is a "holdover" inmate awaiting designation by the BOP. *See* ECF No. 7 at PageID.31; ECF No. 7-1 at PageID.38; *see also* 28 C.F.R. § 523.42(a) ("An eligible inmate begins earning FSA Time Credits after the inmate's term of imprisonment commences (the date the inmate arrives or voluntarily surrenders at the designated Bureau facility where the sentence will be served).").

---

**End of Document**    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag

Distinguished by  Green v. Christensen,  N.D.N.Y.,  July 6, 2023

2015 WL 5971055

Only the Westlaw citation is currently available.

United States District Court,

N.D. New York.

Dysha WRIGHT, Petitioner,

v.

HUDSON, Warden, Respondent.

No. 9:12–cv–01638–JKS.

|

Signed Oct. 14, 2015.

**Attorneys and Law Firms**

Dysha Wright, Pollock, LA, pro se.

Charles E. Roberts, Office of the United States Attorney, Syracuse, NY, for Respondent.

MEMORANDUM DECISION

JAMES K. SINGLETON, JR., Senior District Judge.

**\*1** Dysha Wright, a federal prisoner proceeding *pro se,* filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2241. Wright is in the custody of the Federal Bureau of Prisons ("BOP") and incarcerated at USP Pollock. Respondent has answered, and Wright has replied. Wright does not challenge his conviction, but rather alleges that the BOP improperly denied him credit toward his federal sentence for time spent in state custody. For the reasons discussed below, the Court rejects this claim.

I. BACKGROUND/PRIOR PROCEEDINGS

On March 24, 2007, Wright, who was then on state parole, was arrested by the Philadelphia Police Department and charged in case number CP–51–CR–0004044–2007 with aggravated assault, criminal conspiracy engaging in murder, firearms not to be carried without a license, and intentionally and knowingly failing to relinquish a firearm. Although that case was later dismissed, Wright remained in state custody

on pending parole violations in case numbers CP–51–CR–0810791–2004 and CP–51–CR–1005761–2005.

While in state custody, Wright was indicted on federal charges and temporarily transferred to federal custody after the issuance of a writ of habeas corpus ad prosequendum [1] on August 17, 2007. On March 30, 2009, the United States District Court for the Eastern District of Pennsylvania sentenced Wright in case number Cr 07–433–01 to an imprisonment term of 120 months for possession with intent to distribute cocaine base, possession of a firearm in furtherance of a drug trafficking crime, and possession of a firearm by a convicted felon. [2] Wright was returned to the state of Pennsylvania on April 7, 2009. It thus appears that Wright remained in federal confinement through his federal trial and sentencing.

On October 9, 2009, the Commonwealth of Pennsylvania sentenced Wright in case number MC–51–CR–0026670–2009, which appears to have involved new weapons-related charges, to a term of imprisonment of 6 to 12 months. This term of imprisonment expired on November 7, 2010.

On March 1, 2010, Wright was sentenced on his parole violation in case number CP–51–CR–0810791–2004 to a term of imprisonment of 9 to 18 months. He was awarded credit for time served from March 24, 2007, to March 1, 2010; his sentence thus expired the same day it was issued.

On April 6, 2010, Wright was sentenced on his parole violation in case number CP–51–CR–1005761–2006 to a term of imprisonment of 6 to 12 months to be served consecutively to the term imposed in case number CP–51–CR–0810791–2004. This term of imprisonment also expired on November 7, 2010.

While serving his state sentences, Wright committed additional offenses of aggravated assault, simple assault, and recklessly endangering another person. He was sentenced in case number MC–51–CR–0038219–2010 to a term of imprisonment of 8 to 12 months. This term of imprisonment expired on May 10, 2011. On that date, he was released to the custody of the United States Marshals to begin service of his federal sentence.

**\*2** In August 2011, Wright sought a retroactive *nunc pro tunc* designation requesting that his state institution be designated as his official place of imprisonment for his federal sentence since his return to state custody on April 7, 2009,

and that he receive credit for the time he spent in federal imprisonment during his federal prosecution from August 17, 2007, to April 7, 2009. The BOP denied Wright's retroactive designation request as follows on August 4, 2011:

> According to the Designation & Sentence Computation Center (DSCC), you served a state parole violation until 11–07–2010 and remained in custody on assault charges. You received another sentence of 6 to 12 months and paroled off this charge on 05–10–2011. Your federal sentence begins on 05–10–2011.

Wright administratively appealed the denial to the Regional Office. The BOP then sent a letter dated January 31, 2012, to the sentencing judge on the Eastern District of Pennsylvania to obtain the court's position regarding Wright's request. The Court indicated in response that it "d[id] not feel strongly about whether a retroactive designation would be appropriate" but "would probably give [Wright] the benefit of the doubt and do a retroactive designation" if he had served his state sentences without incident. The BOP nonetheless denied Wright's administrative appeal on May 8, 2012:

> As a result of the decision in *Barden v. Keohane,* the Bureau of Prisons (Bureau) considers an inmate's request for prior custody credit for time spent in state custody as a request for a *nunc pro tunc* concurrent designation. In accordance with Program Statement 5160.05, *Designation of State Institution for Federal Sentence,* a designation effecting concurrent service of state and federal sentences is made only when it is consistent with the goals of the criminal justice system.
>
> We have reviewed your appeal in accordance with the factors provided in 18 U.S.C. § 3621(b). [ 3 ] In your case, we have determined the relevant factors under 18 U.S.C. § 3621(b) are (2), (3), (4) and (5). Under factor (2), your federal offenses are Possession with Intent to Distribute Cocaine, Possession of a Firearm by a Convicted Felon, and Possession of a Firearm in Furtherance of a Drug Trafficking Crime. Under factor (3), you have prior arrests and/ or convictions for Parole Violation, Possession of an Instrument of Crime, Simple Assault, Criminal

Trespass, Theft Unlawful Taking, Unauthorized Use of an Auto, Possessing an Instrument of Crime, Simple Assault, Terroristic Threats, Carrying Firearms without a License, and Intentionally Possessing a Controlled Substance. Under factor (4), the Court was silent concerning the relationship of its sentence with any state sentence. Under factor (5), one count of your federal sentence was in violation of 18 U.S.C. § 924(c), which mandates a consecutive term.

> Pursuant to 18 U.S.C. § 3584(a) "multiple terms of imprisonment imposed at different times run consecutively unless the Court orders that the terms are to run concurrently." Therefore, the federal Court was contacted for its input concerning its position on a concurrent designation for you. The Court based its recommendation on your disciplinary conduct while serving your previous state sentences, however, your disciplinary record for the relevant state sentence revealed several incidents of serious misconduct.

> **\*3** Based on the foregoing, we have determined that a concurrent *nunc pro tunc* designation is not appropriate. Your sentence has been computed in accordance with the applicable statutes, Bureau police, and the sentencing Court's intent.

> Your appeal is denied.

Wright timely filed a Petition for a Writ of Habeas Corpus to this Court on October 31, 2012.

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, Wright challenges the denial of his *nunc pro tunc* request. According to Wright, he is entitled to credit against his federal sentence since August 17, 2007, the date he was indicted in federal court and transferred from state to federal custody via issuance of a writ of habeas corpus ad prosequendum, and including the period he spent in state custody from April 7, 2009, to May 10, 2011.

## III. STANDARD OF REVIEW

Wright brings the instant Petition pursuant to 28 U.S.C. § 2241. As the Second Circuit has explained:

Section 2241 ... is the proper means to challenge the execution of a sentence. In a § 2241 petition a prisoner may seek relief from such things as, for example, the administration of his parole, computation of his sentence by parole officials, disciplinary actions taken against him, the type of detention, and prison conditions in the facility where he is incarcerated.

*Adams v. United States,* 372 F.3d 132, 135 (2d Cir.2004); *see also Carmona v. U.S. Bureau of Prisons,* 243 F.3d 629, 632 (2d Cir.2001); *Chambers v. United States,* 106 F.3d 472, 474–75 (2d Cir.1997).

Although a prisoner can challenge determination of credit on the federal sentence, "[t]he Attorney General, through the BOP, possesses the sole authority to make credit determinations pursuant to 18 U.S.C. § 3585(b); the district courts do not have authority to order the BOP to either grant or deny credit or to disregard the BOP's calculations." *United States v. Whaley,* 138 F.3d 205, 206–07 (2d Cir.1998) (citing *United States v. Wilson,* 502 U.S. 329, 333, 335 (1992); *see also United States v. Pineyro,* 112 F.3d 43, 45 (2d Cir.1997) ("After a defendant is sentenced, it falls to BOP, not the district judge to determine when a sentence is deemed to 'commence'; and whether the defendant should be awarded credit for 'good time.' " (citations omitted)). It is well established that the "Bureau of Prisons, and not the courts, determines when a defendant's sentence starts and whether the defendant should receive any credit for any prior time spent in custody." *United States v. Montez–Gaviria,* 163 F.3d 697, 700–01 (2d Cir.1998); *see also* 18 U.S.C. § 3585(a). Thus, with respect to a § 2241 petition challenging the computation of credit on a federal sentence, a district court has the power only to review a decision by the BOP, not to make credit determinations in the first instance.

*Nunc pro tunc* designation is a retroactive designation that the BOP may grant in accordance with the discretion it is given under 18 U.S.C. § 3621(b) to designate the place of a federal prisoner's confinement. That provision allows the BOP to designate a place of imprisonment "maintained by the Federal Government or otherwise." 18 U.S.C. § 3621(b). In the event the BOP denies a nunc pro tunc designation, "any

further court review of the Bureau's action will be limited to abuse of discretion." *Barden v. Keohane,* 921 F.2d 476, 478 (3d Cir.1990). "[S]uch a designation by the BOP is plainly and unmistakenly within the BOP's discretion and [the court] cannot lightly second guess a deliberate and informed determination by the agency charged with administering federal prison policy." *Taylor v. Sawyer,* 284 F.3d 1143, 1149 (9th Cir.2002) (citing *McCarthy v. Doe,* 146 F.3d 118, 123 (2d Cir.1988); *Barden,* 921 F.2d at 478).

## IV. DISCUSSION

**\*4** Wright's first argument is addressed to the BOP's calculation of his sentence. Wright asserts that it is "crystal clear" that he should be given credit against his federal sentence from at least August 17, 2007, the date he was transferred to federal custody pursuant to a federal writ of habeas corpus ad prosequendum, to April 7, 2009, the date he was returned to state custody after federal sentencing. Wright contends that this is particularly true given that he was in federal custody and had not, as of that time, been sentenced in state court.

But Wright does not allege that the writ ad prosequendum was invalid. Wright was thus transferred to federal custody pursuant to a valid writ ad prosequendum, which operates to allow a governmental entity "borrow" a prisoner from his primary custodian. *Lugo,* 785 F.3d at 855 (citing *Thomas v. Whalen,* 962 F.2d 358, 360–61 & n. 3 (4th Cir.1992)). The record is clear that the Commonwealth of Pennsylvania treated Wright as remaining within state custody during his federal prosecution and credited that period of time towards his state sentence. *See id.* (citing *United States v. Fermin,* 252 F.3d 102, 108 n. 10 (2d Cir.2001) ("a defendant held at a federal detention facility is not 'in custody' for the purposes of [commencement of a federal sentence] when he is produced through a writ of habeas corpus ad prosequendum")). When Wright was released from state custody on May 10, 2011, and delivered to federal officials, he began serving his federal sentence. The BOP thus did not incorrectly calculate his sentence with respect to the period he was under federal prosecution. *Id.* at 855–56 (citing *United States v. Labeille–Soto,* 163 F.3d 93, 99 (2d Cir.1998) (a "defendant has not right to credit on his federal sentence for time that has been credited against his prior state sentence")); *see also Tisdale v. Menifee,* 166 F.Supp.2d 789, 791–92 (S.D.N.Y.2001) (even if petitioner was in federal custody when a federal detainer was lodged against him, his claim for credit must be dismissed

because he received state credit for the time served under the federal detainer).

Wright further alleges that the BOP erred in denying his *nunc pro tunc* designation request. Under 18 U.S.C. § 3621(b), the BOP has the authority to designate a non-federal facility as a place of federal confinement. *Abdul Malik v. Hawk Sawyer,* 403 F.3d 72, 73 (2d Cir.2005). The practical effect in such a case is that the federal and state sentences would run concurrently. *Id.* (citing *McCarthy,* 146 F.3d at 122–23); *see also Barden,* 921 F.2d at 480 (state incarceration may be credited to federal sentence if the BOP *nunc pro tunc* designates state facility as the facility where petitioner served part of his federal sentence). The BOP is under no obligation to grant a *nunc pro tunc* designation, but the BOP must give full and fair consideration to the language of the federal and state judgments, the state sentencing records, and any other pertinent information relating to the federal and state sentences in accordance with the factors enumerated in 18 U.S.C. § 3621(b), as noted in note 3, *supra.* [4] BOP Program Policy Statement 5160.05(9)(b)(4)(b) (governing inmate requests for *nunc pro tunc* designations) (Docket No. 14–6 at 5–8).

**\*5** The record here shows that the BOP considered the § 3621(b) factors, as required by *Barden.* Specifically, in its administrative appeal denial, the BOP gave a brief explanation of why the *nunc pro tunc* designation was inappropriate to each of the factors it deemed relevant. [5] With regard to the second factor, the BOP listed Wright's federal offenses. While that cursory treatment might give the Court pause that the BOP did not take into account "the nature and circumstances of the offense[s]" as required, it appears that the BOP was indicating that the federal offenses were quite serious and unrelated to the parole violations and assault convictions under which Wright was in state custody. Under the third factor, "the history and characteristics of the prison, the BOP provided a list of Wright's prior arrests and/or convictions. Under the fourth factor, the BOP noted that the federal sentencing court "was silent concerning the relationship of its sentence with any state sentence." The BOP further found that the fifth factor, "any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28," weighed against Wright's request as one count of his federal sentence was in violation of 18 U.S.C. § 924(c), which mandates a consecutive term. Finally, the BOP noted that it had contacted the federal sentencing court for its position on a concurrent designation, and that court had based its recommendation on Wright's

disciplinary conduct while in jail, which the BOP indicated "revealed several incidents of serious misconduct." Thus, because the BOP took into account all five factors under § 3621(b), it provided full and fair consideration to Wright's *nunc pro tunc* request. Accordingly, the BOP did not abuse its discretion in denying Wright's request.

Wright nonetheless argues that concurrent designation is appropriate because the state court sentencing judge indicated that his state imprisonment term should run concurrently with the already-imposed federal term. According to Wright, "The state judge had the authority to impose his sentence consecutive to the federal sentence that was already imposed, but given all the facts chose not to do so." There does not appear to be evidence in the record that the state court believed Wright's state sentence would run concurrent to his federal sentence. But even assuming that Wright's assertion is true, that fact does not warrant relief because the state court's determination is not binding on federal authorities. *Abdul–Malik,* 403 F.3d at 75; *Barden,* 921 F.2d at 478 n. 4. In *Johnson v. Langford,* the petitioner appealed the BOP's denial of his *nunc pro tunc* request, arguing that the state court indicated that the state and federal sentences would run concurrently. No. 9:15–cv–0048, 2014 WL 582097, at \*5 (N.D.N.Y. Oct. 5, 2015). The court rejected that argument, noting that, "[w]hile it [wa]s quite clear from the sentencing transcript that the state court judge believed that the state and federal sentences would run concurrently, the intent of the state court judge cannot change federal law." *Id.*

**\*6** The record here indicates that the period of Wright's federal prosecution was properly credited against Wright's state sentence, and the BOP gave full and fair consideration to Wright's *nunc pro tunc* request in accordance with the BOP Program Policy Statement and 18 U.S.C. § 3621(b). Accordingly, the BOP did not err in calculating Wright's federal sentence and did not abuse its authority in denying Wright a *nunc pro tunc* designation.

## V. CONCLUSION

Wright is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED** THAT the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED.**

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705, 124 S.Ct. 1256, 157 L.Ed.2d 1166 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.' " (quoting *Miller–El v. Cockrell,* 537 U.S. 322, 327, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003))). Any

further request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

The Clerk of the Court is to enter judgment accordingly.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 5971055

---

### Footnotes

1    A writ of ad prosequendum orders the production of a prisoner in court for the purpose of standing trial. *See* 28 U.S.C. § 2241(c)(5); *United States v. Mauro,* 435 U.S. 340, 357–58 (1978). If a prisoner is serving a state sentence when he is produced for a federal prosecution, the writ temporarily transfers him to federal custody for prosecution but the state retains primary custody for the purpose of calculating his state sentence. *Lugo v. Hudson,* 785 F.3d 852, 854–55 (2d Cir.2015) (citing *United States v. Ferman,* 252 F.3d 102, 108 n. 10 (2d Cir.2001)).

2    The Eastern District of Pennsylvania subsequently reduced the term of imprisonment to 114 months.

3    That section enumerates the following five factors:

    (1) the resources of the facility contemplated;

    (2) the nature and circumstances of the offense;

    (3) the history and characteristics of the prisoner;

    (4) any statement by the court that imposed the sentence-

    (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or recommending a type of penal or correctional facility as appropriate; and

    (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

    18 U.S.C. § 3621(b).

4    The BOP does not have authority to decide whether a sentence should run concurrently or consecutively to other sentences where the statutory presumptions of 18 U.S.C. § 3584(a) are applicable. *McCarthy,* 146 F.3d at 122. Section 3584(a) presumes that "terms of imprisonment imposed at different times run consecutively ." That presumption, however, only applies "where a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment." § 3584(a). The presumption of § 3584(a) is inapplicable where, as here, a federal court imposes a sentence on a defendant who is not already subject to a state sentence. *McCarthy,* 146 F.3d at 121–22; *see also Abdul Malik,* 403 F.3d at 75. Thus, the presumption

of § 3584(a) does not apply to Wright's state prison term, and the BOP was required to provide full and fair consideration of Wright's *nunc pro tunc* request.

5      The BOP indicated that it found the first factor, "the resources of the facility contemplated," not applicable to Wright's case.

---

**End of Document**                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:22-cv-01161-BKS-ML   Document 24   Filed 02/04/26   Page 139 of 144

Zenquis v. Pullen, Not Reported in Fed. Supp. (2023)

2023 WL 2931585
Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.

David Morales ZENQUIS, Petitioner,
v.
T. PULLEN, Caverly, and Eftaxas, Respondents.

3:22-CV-1151 (SVN)
|
Signed April 13, **2023**

**Attorneys and Law Firms**

David Morales Zenquis, Danbury, CT, Pro Se.

Jillian Rose Orticelli, United States Attorney's Office, Hartford, CT, for Respondents.

**RULING ON RESPONDENTS' MOTION TO DISMISS**

SARALA V. NAGALA, UNITED STATES DISTRICT JUDGE

**\*1** Petitioner David Morales Zenquis, a prisoner incarcerated at the Federal Correctional Institution in Danbury, Connecticut ("FCI Danbury"), has filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, asking the Court to order that he be tested for autism spectrum disorder ("ASD") and provided psychiatric treatment. Respondents have moved to dismiss the petition on the ground that Petitioner failed to exhaust his administrative remedies before commencing this action. For the following reasons, Respondents' motion to dismiss is DENIED.

**I. SECTION 2241 AND EXHAUSTION OF REMEDIES**

**A. Section 2241**

Section 2241 grants federal courts jurisdiction to issue writs of habeas corpus to prisoners "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A writ of habeas corpus under § 2241 "is available to a federal prisoner who does not challenge the legality of his sentence, but challenges instead its execution subsequent to his conviction." *Carmona v. U.S. Bureau of*

*Prisons*, 243 F.3d 629, 632 (2d Cir. 2001). An inmate may challenge under § 2241, for example, "such matters as the administration of parole, computation of [his] sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions." *Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001).

**B. Exhaustion Procedures**

Before filing a habeas petition pursuant to § 2241, prisoners are required to exhaust the internal grievance procedures of the Bureau of Prisons ("BOP"). *Carmona*, 243 F.3d at 634; *see also Razzoli v. Strada*, No. 10-cv-4802 (CBA), 2013 **WL** 837277, at \*2 (E.D.N.Y. Mar. 6, 2013) (citing *Carmona*, 243 F.3d at 634). The exhaustion requirement applicable to § 2241 petitions is judicial, rather than statutory. *See Carmona*, 243 F.3d at 634 ("[A]lthough § 1997e(a) of the Prisoner Litigation Reform Act [('PLRA')] ... contains a statutory administrative exhaustion requirement, we have held, in the context of a § 2254 petition, that the requirements of the Act do not apply to habeas proceedings.... Doubtless the same rule should obtain in § 2241 cases as in § 2254 petitions." (cleaned up)); *see also Beharry v. Ashcroft*, 329 F.3d 51, 56 (2d Cir. 2003) (noting that the distinction between a statutorily or judicially imposed exhaustion requirement is "pivotal" because "statutory exhaustion requirements are mandatory, while the judicial (common-law) exhaustion doctrine is discretionary and includes a number of exceptions"). [1]

**\*2** Relevant here, the BOP has a four-step process for inmates to exhaust administrative remedies: (1) informal resolution with prison staff through a BP-8 form, 28 C.F.R. § 542.13(a); (2) an initial formal request submitted to the Warden using a BP-9 form, *id.* § 542.14; (3) an appeal to the appropriate BOP Regional Director using a BP-10 form, *id.* § 542.15(a); and (4) a subsequent appeal to the BOP General Counsel using a BP-11 form, *id.*

The BP-9 initial formal filing must be filed within twenty calendar days "following the date on which the basis for the Request occurred." *Id.* § 542.14. [2] The inmate is to receive the BP-9 form from "institution staff (ordinarily, the correctional counselor)." *Id.* § 542.14(c)(1). After the inmate fills out the form, he shall "date and sign the Request and submit it to the institution staff member designated to receive such Requests (ordinarily a correctional counselor)." *Id.* § 542.14(c)(4).

Zenquis v. Pullen, Not Reported in Fed. Supp. (2023)

Case 9:22-cv-01161-BKS-ML    Document 24    Filed 02/04/26    Page 140 of 144

The Warden must respond to the request within twenty calendar days. 28 C.F.R. § 542.18. If the inmate does not receive a response within the allotted time, he may consider the absence of a response to be a denial and proceed to the next step of the administrative remedy process. *Id.*; *see also Rosales v. Petrucci*, No. 20-CV-2136 (CS), 2021 **WL** 5449701, at \*4 (S.D.N.Y. Nov. 22, 2021) (if the inmate has not received a response within the prescribed time, he "may consider the absence of a response to be a denial at that level"). An administrative appeal is not fully exhausted until it has been considered by the General Counsel's Office according to the proper deadlines and procedural rules. *See id.* *See also Woodford v. Ngo*, 548 U.S. 81, 89–90 (2006); *South v. Licon-Vitale*, No. 3:19-cv-1763 (VLB), 2020 **WL** 3064320, at \*1 (D. Conn. June 9, 2020).

The failure to exhaust administrative remedies "results in a procedural default." *Rosenthal v. Killian*, 667 F. Supp. 2d 364, 366 (S.D.N.Y. 2009); *see also Woodford*, 548 U.S. at 92 ("In habeas, the sanction for failing to exhaust properly (preclusion of review in federal court) is given the separate name of procedural default...."). Procedural default by a § 2241 petitioner may be excused upon a showing of cause and prejudice. *Carmona*, 243 F.3d at 634–35. Specifically, when "legitimate circumstances beyond the prisoner's control preclude him from fully pursuing his administrative remedies," the failure to exhaust may be excused. *Id.*; *see also Beharry*, 329 F.3d at 62.

## II. RELEVANT BACKGROUND

The habeas petition and its attachments, which are deemed integral to the petition, are accepted as true for purposes of the present motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002).

Petitioner arrived at FCI Danbury in April of 2021. Pet., ECF No. 1, at 13. He alleges that, upon his arrival there, he communicated with medical staff about his desire to be evaluated for ASD and other mental health concerns. *Id.* He further alleges that his requests were met with no response, and that he was told to "be patient" or that he had been "scheduled" for appointments that never materialized. *Id.*

**\*3** Petitioner has attached documents to his petition that reflect the following series of events concerning his exhaustion of administrative remedies. Between June 3, 2021, and September 8, 2021, Petitioner submitted multiple requests for medical and mental health treatment. Ex. A to

Pet., ECF No. 1, at 29–38. In particular, on June 3, 2021, Petitioner requested an appointment with medical staff to address various health issues he had been experiencing. *Id.* at 31. Then, on June 6, 2021, Petitioner requested assistance in obtaining an evaluation for ASD, stating that he was supposed to have received such an evaluation in Puerto Rico, but the court there denied his request to be evaluated. *Id.* at 30. On June 9, 2021, in response to his June 3, 2021, request, Petitioner was told that he had been scheduled for an appointment. *Id.* at 31. On June 10, 2021, Respondent Eftaxas responded to Petitioner's June 6 inquiry, stating that Petitioner was on her wait list, but there were many inmates who needed to be seen. *Id.* at 30.

Petitioner followed up with various requests for care between June and September of 2021. On June 23, 2021, Petitioner wrote to medical staff to ask about his June 3 request for an appointment with medical staff. *Id.* at 31. On July 27, 2021, Petitioner again asked to be tested for ASD for his "own personal reason[s]." *Id.* at 32. On August 1, 2021, Petitioner sent a message to health services describing his concerns and asking "to talk to someone that [could] help [him]." *Id.* at 33. On September 8, 2021, Petitioner sent two messages to health services complaining that he had not yet been seen. *Id.* at 34–35. Respondent Eftaxas responded to Petitioner's July 27 email on September 9, noting that Petitioner's file included no suggestion that he suffered from ASD and stating that the facility typically did not test for this disorder without a documented history of symptoms. *Id.* at 36. That same day, Petitioner also received a separate response to his July 27 email; specifically, someone from the psychology staff wrote to Petitioner, stating that he might be well-qualified for sex offender programming and asking whether Petitioner was interested in such programming. *Id.* at 37. On September 14, 2021, health services responded to one of Petitioner's September 8 emails; the response stated, "I just placed another request with the below information." *Id.* at 38.

On November 17, 2021, Petitioner filed a BP-8 form, which is a request for informal resolution. *Id.* at 39. He complained that he had not been seen by mental health staff and had not been evaluated for ASD. *Id.* On November 22, 2021, Petitioner wrote a letter to his counselor, stating that he had spoken with Respondent Eftaxas regarding his grievance, but a resolution was not accomplished. *Id.* at 41. In his letter, Petitioner requested that his BP-8 form be returned to him and that he be provided a BP-9 form. *Id.* at 41. On December 7, 2021, Petitioner's correctional counselor marked on the BP-8 form that an informal resolution was accomplished, and the

form was signed by both the correctional counselor and a unit manager. *Id.* at 39. The correctional counselor's comments on the form referenced a statement from the Chief Psychologist, which was attached to the form. *Id.* at 40. In the statement, the Chief Psychologist wrote that Petitioner was seen upon intake at FCI Danbury in May of 2021, and was told at that time that he did not meet the autism criteria and would not be given a diagnosis. *Id.* The Chief Psychologist also stated that Petitioner had been seen on November 22, 2021, in response to his many requests and was told he did not meet the criteria for ASD or bipolar disorder. *Id.*

On January 2, 2022, Petitioner submitted a second request for a BP-9 form, disputing the correctional counselor's representation on his BP-8 form that a resolution had been accomplished. *Id.* at 44. In messages to his counselor and Respondent Pullen dated January 15, 2022, Petitioner recounted that he had requested a BP-9 form several times and finally received it on January 12, 2022. *Id.* at 45–46. Petitioner gave the completed BP-9 form to his counselor on January 13, 2022. *Id.* at 46. The next day, he received an envelope returning the BP-9, dated January 13, 2022, along with a note stating that the deadline for filing a BP-9 is twenty calendar days following the date on which the basis for the request occurred. *Id.*; *see id.* at 42–43. In the messages he sent to his counselor and Respondent Pullen on January 15, 2022, Petitioner claimed that he was unable to timely file his BP-9 because he was not given the form until January 12, 2022. *Id.* at 45–46. Petitioner requested an extension of time and another BP-9 form to complete and file, *id.*, but the record presently before the Court does not reflect whether he was provided with another form.

## III. LEGAL STANDARD GOVERNING DISMISSAL UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) [3]

**\*4** The Court reviews a motion to dismiss a habeas petition brought pursuant to Rule 12(b)(6) under the same principles that apply to a motion to dismiss a civil complaint under the same rule. *Spiegelmann v. Erfe*, No. 3:17-CV-2069 (VLB), 2018 **WL** 1582549, at \*1 (D. Conn. Mar. 29, 2018). To survive a motion to dismiss, the petition must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although "detailed factual allegations" are not required, a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a

cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555–57.

Because Petitioner filed the present petition *pro se* and continues to proceed *pro se*, the Court must construe his filings "liberally" and interpret them "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (emphasis omitted). Yet, "[d]espite the special solicitude that the Court must show [Petitioner] out of consideration for his *pro se* status, his petition must still include sufficient factual allegations to meet the standard of facial plausibility to survive a motion to dismiss under Rule 12(b)(6)." *Anderson v. Williams*, No. 3:15-CV-1364 (VAB), 2017 **WL** 855795, at \*6 (D. Conn. Mar. 3, 2017) (internal quotation marks omitted).

In considering a motion to dismiss, the Court typically may consider only the complaint, or, here, the petition. The petition, however, "is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference," as well as any documents deemed "integral" to the petition. *Chambers*, 282 F.3d at 152–53 (internal quotation marks omitted). *See also Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005) (explaining that, in considering a motion to dismiss, "the court may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint"). To that end, because the petition attaches and relies on records relating to Petitioner's exhaustion of remedies, and because such records are integral to the complaint, the Court will consider those documents in deciding this motion.

## IV. DISCUSSION

Respondents contend that Petitioner failed to properly exhaust his administrative remedies before commencing this action. Specifically, Respondents argue that prison records include no evidence that Petitioner ever filed any BP-9 forms, let alone any appeals at the BP-10 and BP-11 levels. Petitioner responds that the exhibits attached to his petition show that he was unable to pursue his administrative remedies because he was not provided the necessary forms in a timely manner.

For purposes of the present motion, Petitioner has sufficiently alleged that legitimate circumstances beyond his control— particularly, the prison staff's delay in providing Petitioner with a BP-9 form—precluded him from fully pursuing his administrative remedies. *See Carmona*, 243 F.3d at 634–

Zenquis v. Pullen, Not Reported in Fed. Supp. (2023)

Case 9:22-cv-01161-BKS-ML     Document 24     Filed 02/04/26     Page 142 of 144

35. The Court begins by noting that courts in this Circuit have recognized that "a denial of grievance forms does not, in itself, make administrative remedies unavailable." *Tashbook v. Petrucci*, No. 20 Civ. 5318 (KMK)(PED), 2021 WL 8013812, at \*4 (S.D.N.Y. Apr. 22, 2021), *report and recommendation adopted*, 2022 WL 884974 (S.D.N.Y. Mar. 25, 2022) (quoting *Gottesfeld v. Anderson*, No. 18 Civ. 10836, 2020 WL 1082590, at \*8 (S.D.N.Y. Mar. 6, 2020)). Rather, even if a correctional facility fails to make grievance forms available, a prisoner still has an "obligation to undertake reasonable efforts to properly exhaust." *Id.* Here, for the purpose of withstanding dismissal under Rule 12(b)(6), the petition and its attachments provide sufficient support for Petitioner's assertion that he took reasonable efforts to exhaust his administrative remedies but was unable to do so because the BOP failed to provide him with the necessary forms.

**\*5** The materials Petitioner has submitted with his petition demonstrate that he asked prison staff repeatedly for a BP-9 form, beginning on November 22, 2021, (long before his BP-8 was returned on December 8, 2021) and continuing through January 12, 2022. After Petitioner was finally provided the form on January 12, 2022, he submitted it to his counselor, only to have it returned with a note suggesting that he had failed to file it within twenty days of the issue it sought to resolve. [4] Had Petitioner been given the form when he first requested it, or even a reasonable number of days thereafter, it likely would have been timely because, once Petitioner received the form, he acted expeditiously, returning it within one day. It therefore appears that Petitioner took reasonable efforts to exhaust his administrative appeals, but these efforts were, at the very least, hindered—if not affirmatively thwarted—by the counselor's delay in providing him with the BP-9 form. *Cf. Ross v. Blake*, 578 U.S. 632, 644 (2016) (administrative procedure is "unavailable" for purposes of exhaustion under the PLRA where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation"); *Cruz v. Lee*, No. 14 cv 4870 (NSR)(JCM), 2016 WL 1060330, at \*5 (S.D.N.Y. Mar. 15, 2016) (finding that allegations in the complaint might warrant excusing the plaintiff from exhausting administrative remedies under the PLRA where the plaintiff alleged that he had been denied access to grievance procedures despite making reasonable efforts to exhaust by writing a letter to his counselor, speaking to a mental health professional, and writing to the prison superintendent).

For these reasons, Petitioner has demonstrated both good cause for failure to exhaust and prejudice, as Respondents are now claiming that he cannot pursue the present petition because he failed to exhaust. [5] *See Spencer v. Warden FPC Duluth*, Civil No. 13-177 (JNE/JJK), 2014 WL 5106741, at \*5 (D. Minn. Oct. 10, 2014) (declining to find, as a matter of law, that the petitioner had not exhausted administrative remedies where he was denied informal grievance forms and formal BOP appeals forms).

The Court is unpersuaded by Respondents' argument that exhaustion should not be excused because Petitioner was required to treat any non-responses as denials and proceed with the appeals process within the BOP. Here, Petitioner does not merely allege that he received no response to his BP-9 form; rather, he provides documentation suggesting that the BOP returned his BP-9 form as untimely. Contrary to Respondents' suggestion, the BOP did not simply fail to respond to Petitioner's grievance; instead, it issued a response suggesting that Petitioner was foreclosed from filing any additional appeals.

**\*6** While "[e]xhaustion gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court," *Woodford*, 548 U.S. at 89 (internal quotation marks omitted), an inmate must be given a fair opportunity to avail himself of that process. Here, it does not appear Petitioner was provided with such an opportunity because of the actions of institution staff. Moreover, in this case, the petition suggests that the BOP *was* given the opportunity to resolve Petitioner's grievances because Petitioner made multiple attempts to avail himself of the grievance process. Accepting the representations in the petition as true, the BOP simply did not take that opportunity; instead, it refused to provide Petitioner with access to the grievance process. Therefore, based on the allegations of the petition, which the Court must accept as true at this stage, as well as the materials attached to the petition, dismissal for failure to exhaust is not warranted. If Respondents have evidence indicating that excusal of exhaustion is not warranted, they may submit it along with their response to the petition.

In sum, because Petitioner may be excused from exhausting his administrative remedies, Respondents' motion to dismiss, which was based solely on Petitioner's alleged failure to exhaust administrative remedies, is DENIED.

Zenquis v. Pullen, Not Reported in Fed. Supp. (2023)

Case 9:22-cv-01161-BKS-ML    Document 24    Filed 02/04/26    Page 143 of 144

**V. CONCLUSION**

Respondents' motion to dismiss the petition for writ of habeas corpus, ECF No. 6, is **DENIED**. By **May 15, 2023**, Respondents shall show cause why the Petition should not be granted.

**SO ORDERED** at Hartford, Connecticut, this 13th day of April, **2023**.

**All Citations**

Not Reported in Fed. Supp., 2023 WL 2931585

---

**Footnotes**

1    Respondents claim that the PLRA applies to this § 2241 action. *See, e.g.*, ECF No. 6-1 at 7 ("On these facts, Petitioner has failed to satisfy the PLRA's mandate."). The Court disagrees. There is no statutory requirement that an inmate exhaust administrative remedies before filing a habeas petition pursuant to § 2241. *See Carmona*, 243 F.3d at 634; *Cardoza v. Pullen*, 3:22-CV-591 (SVN), 2022 **WL** 3212408, at *4 (D. Conn. Aug. 9, 2022); *Lallave v. Martinez*, 609 F. Supp. 3d 164, 179 (E.D.N.Y. 2022) ("Section 2241's exhaustion requirement is 'prudential, not statutory.' "); *United States v. Basciano*, 369 F. Supp. 2d 344, 348 (E.D.N.Y. 2005) (finding "the statutory exhaustion requirement set forth under the [PLRA]" inapplicable to § 2241 petition); *Perez v. Zenk*, No. 04-CV-5069 (CBA), 2005 **WL** 990696, at *2 (E.D.N.Y. Apr. 11, 2005) (noting that the exhaustion requirement for § 2241 petitions "is not grounded in § 1997e, but rather in the common law").

2    Under certain circumstances, where the inmate has demonstrated a situation preventing him from submitting the request, an extension of the filing time may be allowed. 28 C.F.R. § 542.14(b). Section 542.14 includes examples of such situations, including an extended period in-transit where the inmate was separated from needed documents, time when the inmate was physically incapable of preparing the request or appeal, an unusually long time for informal resolution attempts, or a delayed response to a request for copies of dispositions under § 542.19. *Id.*

3    Respondents have moved to dismiss solely under Federal Rule of Civil Procedure 12(b)(1), claiming that the Court lacks subject matter jurisdiction over this action because Petitioner did not exhaust his administrative remedies before filing suit. Respondents have not provided any binding precedent to support this view and, indeed, whether § 2241's exhaustion requirement is jurisdictional is an "open question." *McDonald v. Sage*, No. 3:20-cv-1737 (SRU), 2022 **WL** 503925, at *2 (D. Conn. Feb. 18, 2022); *Martinez-Brooks v. Easter*, 459 F. Supp. 3d 411, 436 n.18 (D. Conn. 2020) (noting that "[i]t is debatable whether the exhaustion requirement for a [s]ection 2241 habeas petition should be treated as a 'jurisdictional' issue rather than as an affirmative defense"). In light of this uncertainty, the Court will treat the exhaustion of administrative remedies as an affirmative defense, and will address Respondents' motion as a motion to dismiss under the Rule 12(b)(6) standard for failure to state a claim. *See McDonald*, 2022 **WL** 503925, at *2 (doing the same).

4    Respondents have submitted a declaration from Cheryl Magnusson, a legal assistant employed by the BOP, which states that the BOP has no record of Petitioner submitting a BP-9 form related to the issues raised in the Petition. ECF No. 6-2. Even were the Court to consider the declaration and its attachments in ruling on the present motion, which it ordinarily would not do when presented with a motion to dismiss under Rule 12(b)(6), those records do not change the Court's conclusion that Petitioner may be excused from the exhaustion requirement under the circumstances here. At most, the records appear to suggest that the counselor to whom Petitioner gave the BP-9 form on January 13, 2022, never officially submitted it.

5    The Court recognizes that, after *Carmona*, the Second Circuit laid out four exceptions to the judicial exhaustion requirement in *Beharry, see* 329 F.3d at 62, and Petitioner's situation does not necessarily fit squarely into any of those. Nonetheless, the four exceptions listed in *Beharry* were drawn from *Able v. United States,* 88 F.3d 1280, 1288 (2d Cir. 1996), which predates *Carmona*, and the Court has found no binding authority suggesting that the Second Circuit's recognition of the four exceptions in *Beharry* was meant to supplant *Carmona*'s more general cause-and-prejudice standard entirely. In any event, there is ample precedent from within this Circuit suggesting that, where a petitioner makes reasonable efforts to exhaust his administrative remedies, but prison officials do not provide him with the necessary forms, exhaustion may be excused. In light of this case law, and in light of the sufficient allegations of cause and prejudice in the petition at issue here, the Court finds dismissal based on a failure to exhaust inappropriate at this stage. This holding is without prejudice to Respondents raising the issue of exhaustion of remedies again, in their response to the petition, if there is additional information available on this issue at that time.

---

**End of Document**                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

---